UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: EFFEXOR XR ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Indirect Purchaser Class Actions | Lead Case No. 11-5479 (PGS)(LHG)<br><br>Civil Action No. 11-5661 (PGS)(LHG) |

END PAYOR CLASS PLAINTIFFS' RESPONSE TO
THE DEFENDANTS' MEMORANDUM REGARDING THE LEGAL EFFECT
OF THE COURT'S MEMORANDUM OPINION AND ORDER

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Michael M. Buchman
John A. Ioannou
MOTLEY RICE LLC
600 Third Avenue, Suite 2101
New York, New York 10016
(212) 577-0040

Richard J. Burke
Jeff A. Leon
QUANTUM LEGAL LLC
1010 Market Street, Suite 1310
St. Louis, Missouri 63101
(314) 880-7000

James R. Dugan, II
Douglas R. Plymale
David Franco
Kevin Oufnac
DUGAN LAW FIRM, PLC
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
(504) 648-0180

Kenneth A. Wexler
Mark R. Miller
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 346-2222

Jeffrey L. Kodroff
John Macoretta
SPECTOR, ROSEMAN, KODROFF &
WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 496-0300

*Plaintiffs Executive Committee*

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................................ii

Introduction..............................................................................................................................1

Legal Argument .......................................................................................................................2

    1.      The End Payors' Claims Should Be Stayed, Pending The
Direct Purchasers' Motion To Reconsider, Or Appellate Review Of,
The *Actavis* Issues From The October 6th Ruling......................................................2

    2.      The End Payors Should Be Permitted to Amend Their Complaint
To Comply With The New Pleading Standard In The October 6th Ruling................6

          a.      The End Payors Can Allege Sufficient Facts As To
The Large Size And Impact Of The Reverse Payment..................................8

          b.      The End Payors Can Allege Sufficient Facts Demonstrating
That The Payments Are "Unexplained" .......................................................10

    3.      The Defendants' New And Regurgitated Arguments Should Be Rejected ...............12

          a.      The Defendants Correctly Argue That The *Actavis* Decision
Should Govern The State Law Claims That Challenge The
Defendants' Reverse Payment Settlement Agreement .................................13

          b.      The End Payors Can Adequately Allege That Defendants
Have Engaged In Unlawful Concerted Action .............................................14

          c.      The End Payors' Claims Are Not Pre-Empted By Federal Patent Law ........15

          d.      The End Payors' Claims Under The Law Of Several States – With
Claims Under The Consumer Protection Statutes And Under
The Common Law For Unjust Enrichment – Are Not An End-Run
Around The *Illinois Brick* Rule....................................................................16

          e.      The End Payors' Have Alleged Proper Claims Under State Law .................16

Conclusion ..............................................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Altria Group v. Good*, 555 U.S. 70 (2008) ................................................................................... 10
*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) .................................................................................. 7
*Arizona* v. *Maricopa County Medical Society,* 457 U.S. 332 (1982) .......................................... 11
*Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993) ............................................................. 10
*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................................ 7
*Free Speech Coalition, Inc. v. U.S.*, 677 F.3d 519 (3d Cir. 2012) .................................................. 8
*FTC v. Actavis, Inc.*, 133 S.Ct. 2223 (2013) ..................................................................... 3, 12, 14
*FTC v. Sperry Hutchison*, 405 U.S. 233 (1972) ........................................................................... 13
*In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F.Supp.2d 198 (S.D.NY 2012) ........ 16
*In re Effexor XR Antitrust Litig.,* 2014 U.S. Dist. LEXIS 142206 (D.N.J. Oct. 6, 2014 ....... passim
*In re Lipitor Antitrust Litigation*, 2014 U.S. Dist. LEXIS 127877 (D.N.J. Sept. 12, 2014)........... 7
*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367 (D. Mass. 2013) ..................... 5
*In re Niaspan Antitrust Litig.*, 2014 U.S. Dist. LEXIS 124818 (E.D. Pa. Sept. 5, 2014) ............... 5
*LePage's, Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) ...................................................................... 11
*Miller v. Indiana Hospital*, 843 F.2d 139 (3d Cir. 1988)............................................................. 11
*Northern Pacific R. Co.* v. *United States,* 356 U.S 1 (1958) ........................................................ 11
*Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir.2008)........................................................ 6
*Richards v. Jefferson County*, 517 U.S. 793 (1996) .................................................................... 12
*Time Ins. Co. v. Astrazeneca AB*, 2014 U.S. Dist. LEXIS 140110 (E.D. Pa. Oct. 1, 2014) ........... 5
*Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131 (3d Cir. 2009).................................... 6
*West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) .................................... 11

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................................................ 5

**Other Authorities**

*Activating Actavis* , ANTITRUST,Vol.28, No. 1 (Fall 2013) ...................................................... 10

**Rules**

Fed.R.Civ.P. 54(b) .......................................................................................................................... 4

Pursuant to the Court's Order dated October 6, 2014 *(ECF Document 360 in 11-5479)*, and in response to the Defendants' Memorandum *(ECF Document 149 in 11-5661)*, the End Payor Class Plaintiffs (the "End Payors") address the legal effect of the Court's most recent Memorandum Opinion and Order *(In re Effexor XR Antitrust Litig.,* 2014 U.S. Dist. LEXIS 142206 (D.N.J. Oct. 6, 2014) (the "October 6th Ruling")). The End Payors, who have never amended their complaint, believe they should be allowed to amend their Complaint to comply with the ultimately applicable standard. If the End Payors are permitted to amend their complaint, which they reserved the right to do pending the outcome of the motion to dismiss the Direct Purchasers' amended complaint, the impact of the October 6th Ruling, if there is one, will be minimal.

## Introduction

In its October 6th Ruling, the Court said two things that depart from how other Courts apply *FTC v. Actavis, Inc.*, 133 S.Ct. 2223 (2013), and the existing standards for a motion to dismiss:

- The October 6th Ruling imposed very specific requirements for a how a plaintiff must plead evidence of the value of non-cash consideration in a reverse payment settlement agreement under *Actavis* (when no other Court has imposed such specific pleading requirements); and

- The October 6th Ruling held that a reverse payment is not "unexplained" if the Federal Trade Commission declined to challenge the reverse payment settlement agreement (when no other Court has read that standard into *Actavis*).

Although the Court announced these new principles in connection with the Direct Purchasers' complaint, they could have important implications for the End Payors. First, if this Court grants the motion for reconsideration or allows the Direct Purchasers to appeal the October 6th Ruling on an interlocutory basis, the End Payors' claims should not proceed until that appellate review has finished. And second, whenever these issues are resolved for this case, the

3

End Payors must be permitted to file their first amended pleading, to comply with the new pleading standard set by either this Court or the Third Circuit.

Many of the specific state law issues (which have been fully briefed) are not directly impacted by the October 6th Ruling. Defendants simply repeat arguments they have already made. The End Payors have not re-briefed those issues here. For the reasons set forth below, the End Payors should be permitted to amend their complaint.

### LEGAL ARGUMENT

1.  **The End Payors' Claims Should Be Stayed, Pending The Direct Purchasers' Motion To Reconsider, Or Appellate Review Of, The *Actavis* Issues From The October 6th Ruling**

In the October 6th Ruling, the Court interpreted how *Actavis* impacted the pleading obligations for a plaintiff challenging a reverse payment settlement agreement under the Sherman Act. The Direct Purchasers have asked this Court to certify an immediate appeal from the October 6th Ruling *(ECF Document 367-2 in 11-5479)*, because it reflects "a new, heightened pleading standard requiring antitrust plaintiffs challenging non-cash payments to provide appropriate evidence for the Court to determine the value of the payment, which must be based on a reliable foundation used within the industry" *(id. at 1, internal quotation marks omitted)*. The Direct Purchasers have asked for a Rule 54(b) certification, because there is "no just reason to delay" appellate review of the October 6th Ruling *(id. at 8)*. Since this is an issue of first impression on a significant issue impacting numerous cases currently pending, an immediate appeal "could avoid the tremendous waste of the courts' and the parties' time and resources that would occur" if the Third Circuit were to reverse the October 6th Ruling after the parties had litigated the remaining claims in the case *(id. at 12-13)*. That is, without an immediate appeal, discovery may need to be re-opened (and perhaps redone), class certification may need to be

4

revisited, and expert witnesses may need to redo their work *(id. at 13)*. For all of these reasons, a Rule 54(b) certification makes sense for the October 6th Ruling.

Alternatively, the Direct Purchasers have asked for a certification under 28 U.S.C. § 1292(b), because the October 6th Ruling involves a controlling issue of law that is "serious to the conduct of the litigation" *(id. at 17-18)*. Such an interlocutory appeal could save the Court's time and could save the litigants from unnecessary expense *(id. at 18)*. The October 6th Ruling presents "substantial grounds for a difference of opinion" on the applicable pleading standard *(id. at 20)* and there is "genuine doubt" regarding whether the October 6th Ruling is correct *(id. at 21)*. This is illustrated by contrasting the October 6th Ruling with the rulings in *Niaspan* and *Nexium*, where the Courts did not require the level of detail that would be required by the October 6th Ruling. *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367, 391-92 (D. Mass. 2013); *In re Niaspan Antitrust Litig.*, 2014 U.S. Dist. LEXIS 124818, at *10 (E.D. Pa. Sept. 5, 2014); *see also Time Ins. Co. v. Astrazeneca AB*, 2014 U.S. Dist. LEXIS 140110, at *12-*13 (E.D. Pa. Oct. 1, 2014). No other Court has required a plaintiff to plead the level of detail and the amount of evidence that would be required to satisfy the October 6th Ruling

End Payors agree that either Rule 54(b) or §1292(b) certification would "materially advance the outcome of the litigation" *(ECF Document 367-2 at 27)*, facilitating discovery and trial, and streamlining the entire proceedings *(id. at 28-29)*. Neither certification would disrupt the case, which is otherwise "in its infancy" *(id. at 27)*. Should certification be granted and the *Walker Process* portion of the Direct Purchasers' case be stayed to conserve resources, End Payors believe that their case should be stayed in its entirety pending the outcome in the Third Circuit. Whatever standard the Third Circuit enunciates with respect to the Direct Purchasers

5

will apply equally to the End Payors and, therefore, a stay would promote efficiency and judicial economy.

2.  **The End Payors Should Be Permitted to Amend Their Complaint To Comply With The New Pleading Standard In The October 6th Ruling**

If the Direct Purchasers' request for certification is denied, or if it is granted but the *Walker Process* portion of their case proceeds, the Court should allow the End Payors to amend their Complaint to comply with the Court's just announced standard for analyzing reverse payment settlements. Unlike the Direct Purchasers, the End Payors have not yet amended their Complaint to address the Supreme Court's holding in *Actavis*.

The Court and Defendants have already acknowledged End Payors' right to amend their Complaint. During oral argument on June 5, 2014, counsel for the End Payors expressly reserved their right to amend until this Court made a decision on the Direct Purchasers' Amended Complaint. In response, the Court acknowledged Plaintiffs' reservation of rights and the Defendants did not object. *See* Transcript of June 5, 2014 Hearing on *Walker Process* and State Law Issues at pages 118-19, attached as Exhibit A. This prior recognition of the right to amend, by itself, means that that the End Payors should be allowed to amend their Complaint, and in no circumstances should the End Payors' claims be dismissed with prejudice.

The Defendants cite no case law in support of dismissal with prejudice. This is because the Federal Rules of Civil Procedure and the Third Circuit's rulings all state that a plaintiff's request to amend a complaint should be liberally granted, especially in circumstances such as are present here. Rule 15(a) requires a Court to "freely give leave when justice so requires." The Third Circuit has repeatedly quoted this Rule, *see Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 144, n. 10 (3d Cir. 2009) (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.2008)). In *Toll Bros*. the Third Circuit also restated its long held position that "a

district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Id*. Consistent with the policy of a liberal right to amend, the Third Circuit has also noted that dismissal with prejudice is a "severe and disfavored" remedy that should not be used often. *Alvin v. Suzuki*, 227 F.3d 107, 121-2 (3d Cir. 2000). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here the Defendants have not, and cannot, make any claim that allowing an amended complaint would be harmful or inequitable, given that the case is still in the pleadings stage and the Court has set forth a new standard. As detailed below, the End Payors can, and will, file an Amended Complaint which provides the specificity the Court is seeking as to the amount and impact of the reverse payments. Indeed, they have taken the unprecedented step of attempting to hire an expert to provide the evidence this Court is requiring to survive a motion to dismiss.

A dismissal with prejudice is especially inappropriate in a situation such as this, where the standard for dismissal was unknown at the time the Complaint is filed, and has just recently been announced by the Court. There is no dispute that this Court's standard for analyzing the sufficiency of a Complaint alleging a reverse payment is unique, and had not been previously announced by any other Court prior to this Court's decision in *In re Lipitor*.[1] The End Payors had no way of knowing what the October 6th Ruling's standard would be prior to the *Lipitor* decision, or how that standard would be applied in the presence of evidence of the value of the reverse payment as presented by the Direct Purchasers. Therefore they had no way of drafting a Complaint that could meet the Court's heretofore unknown standard. The End Payors'

---

[1] *In re Lipitor Antitrust Litigation*, 2014 U.S. Dist. LEXIS 127877 (D.N.J. Sept. 12, 2014).

7

complaint was drafted in January 2012 and their Opposition to the Defendants' motion to Dismiss was filed in May 2012, over 2 years before the October 6th Ruling.

In *Free Speech Coalition, Inc. v. U.S.*, 677 F.3d 519, 542-5 (3d Cir. 2012), the Third Circuit reversed a dismissal with prejudice and allowed plaintiff to file an amended complaint, both to add greater factual specificity and to address the impact of a recent Supreme Court decision. The Court also stated the general principle that "leave to amend should be freely given when justice so requires, including for a curative amendment…" and noted that there was no "substantial prejudice" to the opposing party. *Id*. at 545. This case is in the same situation. Absent a stay pending an appeal taken by the Direct Purchasers, the End Payors should be allowed to amend their complaint to add additional facts and to address this Court's implementation of the *Actavis* decision.

### a. The End Payors Can Allege Sufficient Facts As To The Large Size And Impact Of The Reverse Payment

The End Payors can plead facts to meet the new standard for a Motion to Dismiss announced in the October 6th Ruling. The Court dismissed the Direct Purchasers' Complaint because it did not plead evidence in support of the actual dollar value paid by Wyeth to its generic competitor, Teva. *In re Effexor*, 2014 U.S. Dist. LEXIS 142206, at *73. The Court found that a non-cash agreement (in the form of a promise not to launch an authorized generic) could constitute a payment. *Id.* at *61-*63. However, the Court required detailed evidence on which to value the payment. Without a dollar figure supported by evidence and methodology, the Court opined that it could not determine whether the payments from Wyeth were "reverse" or "large" under *Actavis*, so it dismissed the Direct Purchasers' Complaint with prejudice. *Id.* at *71-*76.

The End Payors do not believe the Court's new standard is supported by existing case law, and goes beyond what is required.[2] Nevertheless, if permitted to do so, the End Payors, with the aid of their expert, are confident they can meet the Court's standard and plead detailed facts by which they can quantify the payments from Wyeth. Once quantified, the End Payors can plead facts to show both that the payments were reverse (meaning Wyeth gave out more than it got back through any side agreements with Teva) and that they were "large".

The End Payors will cite the Defendants' own sales and marketing data, from their public filings, as well as FTC reports and widely published pharmaceutical industry analyses, to place specific dollar figures on the value of the reverse payments, the amount of likely royalty payments by Teva, and highly supported estimates of the market share and price impact of both generic and authorized generic competition for Effexor ER. For example, the End Payors will rely on the estimated dollar value of the unauthorized-generic provision, the value of allowing Teva to release a generic Effexor IR early, the value of Wyeth's avoided litigation costs, and the value of any royalties that Wyeth received from Teva under the reverse payment settlement agreement. These facts can be pled with specificity and in compliance with the Court's requirements (*see, e.g., ECF Document 365-2 in 11-5479 at pp. 6-10, and in the Direct Purchasers Proposed amended complaint, ECF 365-2 in 11-5479 at ¶¶ 44, 56, 288-89, 293, 295, 299-301, and 306*).

It would be improper to dismiss the End Payors' Complaint without allowing the End Payors to submit an Amended Complaint that includes the additional factual support this Court now requires.

---

[2] The Indirect Purchasers incorporate by reference the reasoning of the Direct Purchasers in their pending Motion for Reconsideration and Alternative Motion for Judgment or Interlocutory Appeal. *See ECF 365-2 and 367-2, both in 11-5479.*

### b. The End Payors Can Allege Sufficient Facts Demonstrating That The Payments Are "Unexplained"

The End Payors can plead facts to show the payments from Wyeth are also "unexplained" under *Actavis*. Such facts would include the substantial amount Wyeth paid to Teva beyond what Teva gave Wyeth in return. The *Activating Actavis* article relied on by the Court concludes that the excess consideration flowing from the brand company to the generic (after deducting litigation costs and whatever value the generic provided) is "otherwise unexplained."[3] As demonstrated above, Plaintiffs can allege reliable facts to calculate this amount. End Payors also allege Wyeth's knowledge that its patents were fraudulent (*ECF Document 31 in 11-5590, at ¶¶ 173-75, 206-15, 232-34, 257-59, 418-21*). Along with the large size of the reverse payment, such knowledge further supports a claim that any reverse payments were unexplained and therefore anti-competitive. However, the October 6th Ruling disregards all such well-pled facts, instead holding that the payment is unassailable, given the FTC's failure to object, and given Judge Martini's entry of a Consent Order created by the conspirators. *In re Effexor*, 2014 U.S. Dist. LEXIS 142206, at *76-*78.

For the same reasons the Direct Purchasers have explained *(ECF Document 365-2 in 11-5479),* this holding should be reconsidered. The Court's holding that the FTC's lack of action is enough to justify any reverse payment, no matter how large, is beyond the holding or intent of the Supreme Court in *Actavis*, creates a new legal standard for the private enforcement of antitrust laws and, most crucially for this case, is not in compliance with the standards for a motion to dismiss. In fact, the FTC's lack of action would not even be admissible evidence at trial. *Altria Group v. Good*, 555 U.S. 70, 89-90 (2008); *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993).

---

[3] *Activating Actavis*, ANTITRUST,Vol.28, No. 1 (Fall 2013)

As the Court notes, the term "unexplained" was not defined by the Supreme Court in *Actavis*. Like the other parts of a rule of reason analysis, deciding if a payment is "unexplained" requires a fact intensive analysis, not a bright-line test based on the FTC's lack of action in any particular case.[4] The rule-of-reason is a fact-intensive analysis. *See West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010) ("agreements are condemned only if evaluation under the fact-intensive rule of reason indicates that they unreasonably restrain trade"); *LePage's, Inc. v. 3M*, 324 F.3d 141, 164 (3d Cir. 2003) ("defendant bears the burden of persuading the jury that its conduct was justified by any normal business purpose"); *Miller v. Indiana Hospital*, 843 F.2d 139, 144-45 (3d Cir. 1988) (reversing summary judgment where plaintiff challenged defendant's pro-competitive justifications)

To base a determination of "unexplained" solely on the FTC's decision would interpret *Actavis*, and antitrust law, in an unreasonably narrow and restrictive way. This Court, contrary to the Supreme Court's rule of reason determination in *Actavis*, created a *per se* rule, *i.e.*, if the FTC takes action then the payment is unexplained and if the FTC fails to take action then the payment is explained. The rationale for a *per se* rule is to avoid the necessity for a detailed investigation into the history of the industry involved in an effort to determine at large whether a particular restraint has been unreasonable. *Arizona* v. *Maricopa County Medical Society,* 457 U.S. 332, 350-351 (1982) (quoting *Northern Pacific R. Co.* v. *United States,* 356 U.S 1, 5 (1958)). Thus, this Court's ruling that a single fact (whether the FTC takes action) is determinative contradicts the fact-intensive analysis required in a rule of reason case. *See West Penn*, 627 F.3d at 99.

---

[4] The Direct Purchasers correctly argue that the FTC's action or inaction is irrelevant to an analysis of "unexplained." If the FTC's position is relevant at all, it should be considered as just one of several factors a fact finder considers when deciding whether a payment is unexplained.

11

This Court noted that the "Supreme Court's general concern is to determine if there are "'genuine adverse effects on competition.'" *In re Effexor,* 2014 U.S. Dist. LEXIS 142206, at *65 (quoting *Actavis*, 133 S.Ct. at 2234). Automatically upholding a questionable settlement based on what the FTC did or did not do will not get to a determination of whether there is real harm to competition.

Under the Court's October 6th Ruling, no private antitrust action in a reverse payment could proceed if the FTC did not take prior action. This is an unprecedented restriction on antitrust law. Never before has it been held that private antitrust cases are limited to situations where the government also investigates or files suit against the challenged conduct. Moreover, it is well settled that what the FTC does or not do, or what a judge in another matter does or does not do, is inadmissible at trial. The reason is simple: not all of the parties to this case – Plaintiffs here – were there. *Richards v. Jefferson County*, 517 U.S. 793, 802 (1996).

If this Court does not make the FTC's actions a complete bar, the End Payors can plead sufficient facts to show that Wyeth's payments were "unexplained" under *Actavis*. They should be allowed to do so.

3.      **The Defendants' New and Regurgitated Arguments Should Be Rejected**

In their Memorandum, the Defendants raise a number of arguments about the legal impact of the October 6th Ruling, but none of the Defendants' arguments even remotely justifies the dismissal of the End Payors' claims.

Initially, the End Payors note that the Plaintiffs in *Lipitor did not* concede that consumer protection and unjust enrichment claims could not flow from a reverse payment settlement scheme if the antitrust claims are rejected. Defendants' unsupported claims of admissions *(ECF Document 149 in 11-5661 at 2)* are incorrect. What the End Payors stated in *Lipitor* was nothing

12

more or less, than, given the way the Court framed the issue in its decision dismissing the Direct Purchasers' case, it appeared that dismissal of the End Payors' claims was inevitable. In *Lipitor*, unlike here, no *Walker Process* claims survived the decision, so they could not form the basis of defendants' anti-competitive scheme. In addition, the Defendants' Memorandum never deals with the well-established principle that consumer protection statutes have a broader reach than antitrust statutes, and unfair conduct may be actionable even if it not a violation of the federal antitrust standards. *See FTC v. Sperry Hutchison*, 405 U.S. 233, 244-50 (1972).

      **a.**    **The Defendants Correctly Argue That The *Actavis* Decision Should Govern The State Law Claims That Challenge The Defendants' Reverse Payment Settlement Agreement**

In their Memorandum *(at 5-8)*, Defendants argue that End Payors' claims rest on the same factual predicate as the federal claims that were decided in the October 6th Ruling. The Defendants are essentially correct on that point. Indeed, the End Payors have pled claims under both state law *(ECF Document 31 in 11-5590, Counts 1-4 and 6)* and federal law *(id., Count 5)*, based on the same core of facts. The Defendants also correctly argue that the state law antitrust claims should be governed by the same principles from *Actavis* that govern the federal claims on reverse payment settlement agreements.

However, the End Payors disagree with the Defendants about how *Actavis* applies in this case. As discussed above *(in Part 2)*, the End Payors believe that they can fully satisfy the pleading requirements under *Actavis* for all of their claims. Once the claims are re-pled, the End Payors believe that they will be able to show that the Defendants acted unlawfully under *Actavis* and under the other applicable standards.

> b. **The End Payors Can Adequately Allege That Defendants Have Engaged In <u>Unlawful Concerted Action</u>**

The Defendants next argue that, given the October 6th Ruling's interpretation of *Actavis*, the End Payors state law antitrust claims must fail for California, Kansas, New York and Tennessee, arguing that those states require concerted action as a prerequisite for their statutory antitrust claims *(ECF Document 149 at 8-9)*. This argument is baseless, for several reasons.

First, as discussed above *(in Part 2)*, the End Payors can and do allege unlawful concerted action in connection with the reverse payment settlement agreements, and those allegations will satisfy *Actavis*. The End Payors will supplement these allegations when given an opportunity to amend their complaint. Those allegations will show how the Defendants have acted in concert and unlawfully to restrain trade with their reverse payment settlement agreements, in violation of each of those state's antitrust laws. If required to do so, the End Payors could meet the heightened pleading requirements that the Court announced for the first time in its October 6th Ruling.

Second, the Defendants' argument seriously mischaracterizes the End Payors' claims. The Complaint plainly alleges that, separate and apart from the reverse payment settlement agreements, Wyeth procured fraudulent patents and then pursued sham patent litigation as part of a scheme to monopolize. Next, Wyeth folded in Teva and the other generic companies as part of its scheme to monopolize, by getting those companies to vouch for the fraudulently-obtained patents as part of that sham litigation. In these *Walker Process* and patent fraud claims, the End Payors have alleged that Wyeth acted in concert with Teva and others as part of its unlawful scheme to monopolize *(see Counts One and Two, ¶¶ 407-433 of ECF Document 31 from 11-5590)*. Count Two in the pending complaint plainly alleges that Wyeth and Teva acted in concert – with each other and with others – as part of this scheme to monopolize *(id., ¶¶ 425-*

*33)*, and Count Two alleges state law claims for each of the four states that Defendants have identified in this argument. The Defendants' Memorandum never deals with these specific allegations.

Third, the End Payors have already dealt with these "concerted action" arguments in detail in a previous brief *(see ECF Document 91 from 11-5661, at pp. 26-28)*. In that brief, the End Payors explained how they have adequately pled Wyeth's collusion with others to monopolize the market, with specific discussion of the requirements of those states. For example, the End Payors have shown that California law recognizes a claim for unlawful monopolization, even if only unilateral conduct is involved *(id. at 27-28)*. The October 6th Ruling does not moot any of these arguments, and the Defendants' Memorandum never acknowledges any of them.

    c.    <u>**The End Payors' Claims Are Not Pre-Empted By Federal Patent Law**</u>

The Defendants do not show that the Court's October 6th Ruling and dismissal of the *Actavis*-based claims strengthens their arguments for pre-emption of the End Payors' state law claims. The Defendants merely cite to their earlier briefs and suggest Teva's removal from the case mean the End Payors' claims of marketplace misconduct are no longer viable. This is nonsense and ignores the plain allegations of the Complaint. The End Payors have alleged that both Wyeth and Teva engaged in marketplace misconduct. *See ECF Document 91 in 11-5561 at 20, referencing Complaint ¶¶ 263-278.* Wyeth listed fraudulent patents in the Orange Book and engaged in serial sham infringement litigations *(See ECF Document 31 in 11-5590 at ¶¶ 295-356)*.

The End Payors fully briefed the issue of why their state court claims are not pre-empted by federal patent law *(see ECF Document 91 in 11-5661, at 16-23)*. Since then another Court considering nearly identical state court *Walker-Process* type claims has held that such claims are

15

not pre-empted by federal law. *In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F.Supp.2d 198, 214-19 (S.D.NY 2012). The *DDAVP* Opinion was identified as supplemental authority in the End Payors' Letter to the Court of September 12, 2013 (*ECF Document* 262).

### d. The End Payors' Claims Under The Law Of Several States – With Claims Under The Consumer Protection Statutes And Under The Common Law For Unjust Enrichment – Are Not An End-Run Around The *Illinois Brick* Rule

In their brief *(ECF Document 149 at 9)*, the Defendants argue that the End Payors' claims under the consumer protection laws and the common law of unjust enrichment are an improper end-run around *Illinois Brick* for four states – California, Kansas, New York and Tennessee. That is simply a repeat of the argument that the Defendants made earlier in this case. The Defendants offer no new analysis, and they do not attempt to connect any of this to the legal effect of the October 6th Ruling. The End Payors have already responded and explained why Defendants' "end-run" arguments are wrong *(see ECF Document 91 in 11- 5661, at 29-34, 44-46, and 48-49)*. Those same responses apply here, and the October 6th Ruling did not affect them.

### e. The End Payors' Have Alleged Proper Claims Under State Law

For several pages of their Memorandum *(ECF Document 149 at 10-12)*, Defendants refer the Court to their previous legal arguments about the state law claims, without making any effort to connect these issues to the October 6th Ruling. Because this entire section is outside the scope of the briefing that the Court ordered – and because the Defendants' discussion is so cursory that it adds nothing helpful – the Court can disregard this entire section in the Defendants' Memorandum.

If the Court is inclined to work through the Defendants' cross-references to their previous arguments, the Court should also consider the End Payors' earlier responses to those arguments.

That is, the End Payors have already responded to the Defendants' arguments about the state antitrust statutes, because the previous briefing showed that the End Payors: (a) do not lack standing due to an *Illinois Brick* rule in Puerto Rico (*see ECF Document 91 from 11-5661 at 24*); and (b) have pled facts required by any "intrastate" conduct requirement for Massachusetts, Mississippi, and New York (*id. at 24-26*). Also, the End Payors have properly pled a risk of injury that will justify injunctive relief under the Clayton Act (*id. at 55-57*).

Similarly, the End Payors have already responded to the Defendants' arguments about specific consumer protection statutes, showing: (a) that there is no improper "end-run" around the *Illinois Brick* rule *(see ECF Document 91 from 11-5661 at 30-34, 44-46, 48-49)*; (b) that the consumer protection statutes can cover the anticompetitive conduct at issue here *(id. at 30-35)*; (c) that the claims here meet any "consumer nexus" requirement *(id. at 35-37)*; (d) that the third-party payors can bring claims under the relevant statutes *(id. at 37-42)*; (e) that the claims here meet any consumer reliance or deception requirement *(id. at 35-37, 43-50)*; (f) that the claims here do not run afoul of any pre-suit demand requirement *(id. at 51-54)*; (g) that the claims here meet any intra-state commerce requirements *(id. at 54-55)*; (h) that the claims here are proper, despite any supposed state law bar on class-wide claims for consumer protection *(id. at 57-59)*; and (i) that the Nevada statute has no "elderly and disabled" rule *(id. at 59-60)*. Nothing in the October 6th Ruling bolsters Defendants' arguments on these points, and Defendants never suggest otherwise.

Similarly, the Defendants refer back to several of their previous unjust enrichment arguments, without mentioning that the End Payors have already dealt with all of those issues. The End Payors have already shown: (a) that unjust enrichment claims are not an impermissible an end-run around the *Illinois Brick* rule *(id. at 29-30)*; (b) that the claims here do not involve a

17

federal common law claim for unjust enrichment *(id. at 60-61)*; (c) that California, Illinois Georgia and Mississippi all permit claims for unjust enrichment *(id. at 62-63)*; (d) that the existing complaint has adequately pled the required relationships for Florida, Idaho, Kansas, New York, South Carolina and Tennessee *(id. at 63-66)*; (e) that the claims here meet any "direct benefit" requirement *(id. at 66-67)*; (f) that there is no "mistake or fraud" requirement for Alabama or West Virginia *(id. at 67-68)*; (g) that unjust enrichment claims may be pled in the alternative, even alongside other statutory claims *(id. at 68-69)*; and (h) that none of the unjust enrichment claims should be dismissed for lack of standing *(id. at 69-71)*. Again, the Defendants have not presented anything new on any of those arguments, and the Defendants have made no effort to connect those issues to the legal effect of the October 6th Ruling.

## CONCLUSION

For the foregoing reasons, the End Payors respectfully request that:

1. All proceedings on the End Payors' claims should be stayed pending resolution of the Direct Purchasers' Motions for Reconsideration and Motion for Leave to Appeal;

2. If Direct Purchasers are granted leave to appeal and their *Walker Process* claims are stayed, End Payors' claims should be stayed pending resolution of the appeal;

3. If Direct Purchasers' remaining claims proceed, the End Payors should be permitted to file their First Amended Complaint in this case; and

4. With respect to the End Payors, the Defendants' arguments regarding the legal effect of the Court's October 6th Ruling should be overruled.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Chair, End Payor Plaintiffs' Executive
Committee


By: /s/ James E. Cecchi
      JAMES E. CECCHI

Dated: October 27, 2014

18

Jeffrey L. Kodroff
John Macoretta
SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 496-0300

Richard J. Burke
Jeff A. Leon
COMPLEX LITIGATION GROUP LLC
1010 Market Street, Suite 660
St. Louis, Missouri 63101
(314) 880-7000

James R. Dugan, II
Douglas R. Plymale
David Franco
Kevin Oufnac
DUGAN LAW FIRM, PLC
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
(504) 648-0180

Kenneth A. Wexler
Mark R. Miller
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 346-2222

Michael M. Buchman
John A. Ioannou
MOTLEY RICE LLC
600 Third Avenue, Suite 2101
New York, New York 10016
(212) 577-0040

*Plaintiffs Executive Committee*