# COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP

COUNSELLORS AT LAW

PARK 80 WEST - PLAZA ONE 250 PEHLE AVE. SUITE 401 SADDLE BROOK N.J. 07663 201-845-9600 FAX 201-845-9423

General E-mail: clphk@njlawfirm.com
Internet Address:  www.njlawfirm.com

PETER S. PEARLMAN, ESQ.  Email: psp@njlawfirm.com
Direct Dial: 551-497-7131  /  Cell Phone: 201-709-0597

February 21, 2019

*Via ECF*
Honorable Lois H. Goodman, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> **Re:** *In re Effexor XR Antitrust Litigation*
> **Master Docket No. 11-5479 (PGS/LHG)**

Dear Judge Goodman:

The parties submit this joint letter in accordance with this L. Civ. R. 37.1(a)(1). As described in more detail below, Plaintiffs and Teva have met and conferred on discovery-related issues but are at an impasse on several issues that Plaintiffs wish to bring to the Court's attention.

## I. Teva's Production of Documents Concerning its Abbreviated New Drug Application and Its Generic Effexor XR Sales Forecasts

### Plaintiffs' Statement

Plaintiffs and Teva have been unable to resolve two related disputes over Teva's document production:  Teva's refusal to produce (a) Teva's Abbreviated New Drug Application ("ANDA") lab notebooks and development reports, or (b) Teva's generic Effexor XR sales forecasting documents that pre-date the challenged Wyeth-Teva agreement.  Teva does not dispute that these documents are relevant and responsive to Plaintiffs' requests for production, but rather claims that Teva is excused from producing these documents because, according to Teva, they were not among the documents returned by the search terms and custodians that Teva ran.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 2

Teva's position is inconsistent with the governing ESI Protocol (D.E. 245) and case law.  First, to the extent that the unproduced documents at issue are maintained in paper, the ESI Protocol states that "[e]ach Producing Party has an independent and separate obligation to produce Paper Discovery responsive to a Receiving Party's discovery requests" and "[n]othing in this Agreement is intended to interfere with, precluded, alter or otherwise affect the Parties' independent obligations to engage in and produce Paper Discovery."  *Id.* at § J.

Second, to the extent that the unproduced documents at issue are stored electronically (i.e., are electronically-stored information, or "ESI"), Teva's obligations under the ESI Protocol and Rule 26 are not discharged simply by applying search terms to agreed-to custodians' files.  The ESI Protocol requires Teva to search for and produce responsive documents from "additional locations such as shared drives, distribution lists, departments files…."). *Id.* at § C.2(c)(i).

The gaps in Teva's production make clear that it has not fulfilled its obligations under the ESI Protocol and Federal Rules.  Teva – not Plaintiffs – bears the burden of identifying and searching such sources since Teva, not Plaintiffs, knows where the relevant ANDA lab notebooks, development reports and sales forecasts are maintained. *See Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 11233748, at *10 (D.N.J. Sept. 20, 2013) ("Defendant, not plaintiff, is in the best position to know how its files and stores its documents. Plaintiff does not have to identify the specific files and locations defendant should search. This is part and parcel of defendant's duty to conduct a thorough and complete search for responsive documents."); *Linchpins of Liberty v. United States*, 2017 WL 4339637, at *1 (D.D.C. Aug. 17, 2017) (ordering the defendant to "search all relevant sources to ensure that all documents responsive to the document request is identified and produced").[1]  Teva has failed to carry its burden, and should be compelled to produce the ANDA materials and sales forecasts at issue.

---

[1]  Plaintiffs made clear that the custodian and search term negotiations did not relieve Teva of its obligation to search appropriate sources for responsive documents.  *See* Ex. D, May 9, 2018 email from Caitlin Coslett to Jonathan Janow ("Teva is obligated to search for and produce documents responsive to Plaintiffs' requests and Plaintiffs are not agreeing to release Teva from that responsibility.  Teva has an obligation, based on

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 3

### A.    Teva's ANDA Documents

Teva has not adequately responded to Plaintiffs' Request for Production No. 62 ("RFP 62"), which calls for production of documents concerning Teva's ANDA for generic Effexor XR.[2]  As explained on the FDA's website, an ANDA "contains data which is submitted to FDA for the review and potential approval of a generic drug product."[3] Teva has not produced lab notebooks and development reports generated in connection with its generic Effexor XR ANDA – even those specifically referenced in the ANDA.[4]  These documents are responsive to RFP 62 and relevant to Teva's readiness, willingness and ability to get regulatory approval for and launch its generic Effexor XR ANDA prior to July 1, 2010.

Upon determining that Teva had failed to produce these relevant, responsive documents, Plaintiffs specifically requested that Teva produce these materials.[5]  In its

---

its superior knowledge of where responsive documents reside, to identify and search the appropriate custodians or sources.").

[2]  *See* Ex. A, Excerpts of Plaintiffs' First Set of Requests for Production of Documents from Teva Defendants, dated Jan. 19, 2018, at p. 31.

[3]  *See*
https://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopeda ndApproved/Approval
Applications/AbbreviatedNewDrugApplicationANDAGenerics/default.htm

[4]  Teva claims it has produced lab notebooks (pointing to TEVA_EFFEX_0013464, TEVA_EFFEX_0013674, and TEVA_EFFEX_0014208, *infra* p. 7).  However, these produced documents are all dated *after* the original ANDA filings and, therefore, could not possibly have been used to support Teva's original ANDA. Furthermore, these documents are not the actual notebooks used in the studies and analyses, but rather consolidated formal reports of the studies' findings.  In addition, two of these documents contain "notebook reference" numbers at the bottom of each page (TEVA_EFFEX_0013464 and TEVA_EFFEX_0014208), underscoring the fact that these documents contain data selected from the requested lab notebooks, but are *not* the notebooks themselves.

[5]  *See* Ex. B, Dec. 18, 2018 letter from counsel for Direct Purchaser Class Plaintiffs, Caitlin G. Coslett, to counsel for Teva, Jonathan D. Janow, at pp. 2-3.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 4

response, Teva did not deny the relevance or existence of the requested documents or dispute that they are responsive to RFP 62, but rather erroneously claimed that it was excused from its obligation to produce these undisputedly responsive documents because Teva "has produced tens of thousands of documents responsive to the parties' agreed upon [ESI] search terms" and that "there is an entire category of search terms specifically designed to capture documents relevant to Teva's ANDA" but the lab notebooks and development reports were not among those captured by these searches.[6] According to Teva, running search terms that do not capture documents all parties know are relevant and discoverable, fulfills its discovery obligation.  But that is simply wrong.

Teva has not claimed that producing the ANDA lab notebooks and development reports would be unduly burdensome, nor could it.  Plaintiffs are not requesting production of a high volume of materials, but rather are requesting that Teva conduct a targeted search for a limited universe of materials.

It is Teva's obligation to produce the requested, relevant ANDA materials by searching the appropriate sources.

### B.    Teva's Pre-Agreement Sales Forecasts

With a single exception, Teva also has failed to produce its generic Effexor XR sales forecasts pre-dating the challenged Wyeth-Teva agreement.  These documents are relevant and potentially highly probative of several issues in this case, including Defendants' expectations at the time of the challenged settlement, damages, and market power, and were sought by Plaintiffs' Requests for Production Nos. 21-23, 72, 75-76.[7]

Teva's document production includes numerous sales forecasts created after the challenged settlement, but includes a single analogous pre-settlement sales forecast document.[8]  In the context of this action challenging an agreement between Teva and

---

[6]  *See* Ex. C, Jan. 10, 2019 letter from Jonathan Janow to Caitlin Coslett, at p. 4.

[7]  *See* Ex. A.

[8]  Teva's attempt to list documents to demonstrate the reasonableness of its production only underscores that its production is inadequate.  Teva lists three examples of documents in its production that it says are "market analysis" documents "from the

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 5

Wyeth, Teva's production is clearly inadequate because Teva's co-defendant *Wyeth*, has produced to Plaintiffs what appears to be a small group of *Teva's* pre-settlement sales forecasts, which were marked as a deposition exhibit in the underlying Wyeth-Teva patent litigation. The version of the exhibit that Wyeth produced is only partially legible, but establishes that Teva in fact engaged in generic Effexor XR sales forecasting long before the Wyeth-Teva agreement. *Teva*, however, has not produced those same forecasts, even though the document produced by *Wyeth* includes several of the search terms that Teva purportedly ran. At a minimum, Teva should produce to the Plaintiffs in this litigation all the sales forecasts it shared with Wyeth before reaching the challenged agreement or explain when and why these sales forecasts were destroyed. Despite requests from Plaintiffs, Teva has not explained why its searches in this case failed to hit upon the sales forecasts it produced to Wyeth during the Wyeth-Teva patent litigation. In addition, Teva has not produced native versions or legible images of the forecast(s) that Teva produced to Wyeth in the patent litigation, at least some of which were marked as a deposition exhibit.[9]

Teva recently offered to supplement its production of pre-settlement sales forecasts by performing a limited search of one additional custodian.[10] Fewer than two months ago, however, Teva explained in detail why that very same custodian is not the "appropriate" custodian for pre-settlement sales forecasts.[11] Accordingly, Plaintiffs cannot accept a purported solution that Teva itself has said is not appropriate and thus is unlikely to lead to production of the relevant, requested documents. Rather, it is Teva's obligation to produce the requested, relevant generic Effexor XR forecasting documents by engaging in targeted searching the appropriate sources. *Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 11233748, at *10 (D.N.J. Sept. 20, 2013).

---

period after the settlement agreement." However, two of the documents appear to relate only to the immediate release ("IR") version of Effexor leaving just one lone potential example of Teva's pre-agreement forecasting of Effexor *XR* sales.

[9]   *See* Ex. G, Nov. 19, 2018 letter from counsel for Direct Purchaser Class Plaintiffs, Caitlin G. Coslett, to counsel for Teva, Jonathan D. Janow, at p. 2.

[10]   *See* Ex. C, at pp. 1-2.

[11]   *See* Ex. H, Dec. 3, 2018 letter from Jonathan Janow to Caitlin Coslett, at pp. 1-2.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 6

### Teva's Statement

In contrast to Plaintiffs, who have largely (and unilaterally) decided to forego any substantive document collection and production until the Court provides guidance on outstanding disputes over Plaintiffs' discovery obligations, Teva has performed a robust and more-than-reasonable search and production of documents responsive to Plaintiffs' requests in accordance with the parties' agreements regarding the scope and parameters of Teva's search obligations.  Indeed, those agreements were forged via an exhaustive multi-month meet and confer process, during which Plaintiffs raised *zero* issues for the Court's resolution regarding Teva's search parameters.  And for good reason: the result of this meet and confer process was an agreed list of nearly one-hundred search terms that spanned fifteen years of documents and data from sixteen original agreed custodians.[12]  In response to Plaintiffs' later requests for expansion, Teva supplemented its production by adding searches of three additional custodians, using the expanded search terms requested by Plaintiffs.  To date, Teva has produced over ninety-thousand documents as a result of the parties' expansive agreed upon search parameters, and Teva is in the process of reviewing additional documents from one final, supplemental custodian recently discussed by the parties.

In accordance with the ESI protocol, where Plaintiffs raised specific disputes with Teva's document production, Teva agreed to search additional custodians "most likely to possess relevant documents" using amended search terms.  ESI Protocol § C.3.  Additionally, Teva searched for and produced documents through means other than applying the parties' expansive search parameters, such as performing direct pulls of sales data and manual searches of documents.  Teva also agreed to re-review several thousand documents identified by plaintiffs to ensure that documents were not inadvertently withheld or over-redacted, and Teva produced or reproduced documents that required adjustment.

When a party, such as Plaintiffs, requests additional document discovery in circumstances such as these, "the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information, and . . . the burden appropriately lies with the requesting party to show that the responding party's search was inadequate." *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (citing *Scott C. v.*

---

[12]  *See* Ex. I, May 18, 2018 letter from Jonathan Janow to Caitlin Coslett, at pp. 2-10.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 7

*Bethlehem Area Sch. Dist.*, No. 00-642, 2002 WL 32349817, at *1 (E.D. Pa. July 23, 2002) (refusing to compel a party to conduct a further search for documents because the requesting party "ha[d] not pointed to any evidence" that the responding party failed to conduct a reasonable search)). Further, "the Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy.'" *Id.* (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006)). "[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files." *Treppel*, 233 F.R.D. at 374. "In an era where vast amounts of electronic information is available for review, . . . [c]ourts cannot and do not expect that any party can meet a standard of perfection." *Enslin*, 2016 WL 7042206, at *3 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010) (internal quotations omitted). Despite Plaintiffs' mischaracterization of Teva's efforts to provide Plaintiffs with responsive documents, Teva has performed a more than reasonable search.

And to be clear: Teva has not refused to produce the ANDA related lab notebooks and development reports or forecasting documents that predate the settlement, and as described below <u>documents falling within these categories have already been produced</u>. In response to Plaintiffs' concerns, Teva has repeatedly explained that Teva undertook the reasonably comprehensive search strategy previously agreed by the parties to collect documents in Teva's possession, custody, or control, including those raised by the Plaintiffs here, and responsive documents have accordingly been produced.

### A.    Teva's ANDA Documents

Despite Teva's production of its ANDA files in 2013 and Teva's rolling production of documents commencing in June 2018, Plaintiffs first identified the purported lack of ANDA related lab notebooks and development reports in Teva's production on December 18, 2018.[13]  On January 10, 2019, Teva explained the steps that it had undergone to collect ANDA related material, including identifying the specific search terms and custodians most likely to possess such documents.[14]  Teva

---

[13]   *See* Ex. B, at p. 1.

[14]   *See* Ex. C, at pp. 1-2.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 8

also highlighted the fact that Teva had already agreed to search <u>two</u> supplemental custodians from Teva's FDA regulatory group using the search terms targeted for ANDA related documents.  Further, Teva requested that Plaintiffs explain "what these reports and notebooks are and why plaintiffs believe that Teva possesses them and failed to produce them."[15]  <u>Plaintiffs never responded to Teva's request for clarification</u>.  Teva asked for clarification, in part, because Teva produced these requested documents over five years ago.[16]

On September 30, 2013, Teva sent Plaintiffs Teva's first document production, including 450 documents.  This first production contained Teva's generic Effexor XR ANDA file.  In addition to Teva's ANDA and amendments submitted to the FDA, <u>these documents include lab notebooks and reports in support of Teva's ANDA</u>.  *See, e.g.,* TEVA_EFFEX_0013464;   TEVA_EFFEX_0013674;   TEVA_EFFEX_0014208.[17] Despite Plaintiffs having these documents for over five years, followed by documents obtained through comprehensive agreed searches of the most relevant custodians, Plaintiffs vaguely suggested that additional documents should exist.  Yet they refused to provide any clarification or specifics that would enable some testing of that assertion.  And indeed Teva reasonably believes that its searches were sufficiently broad and comprehensive to collect responsive documents sought by Plaintiffs.  Plaintiffs' blanket unsupported assertions and demands for more are insufficient grounds to reopen what has been a reasonable, extensive, and accommodating discovery process.

---

[15]  *See id.* at p. 4.

[16]  Plaintiffs have explained herein, *for the first time* and only in response to Teva's statement here, that what they are seeking are any "actual notebooks used in the [underlying] studies and analyses," instead of the notebooks *submitted* to the FDA in support of Teva's ANDA, which, as described below, Teva already produced.  *See* Ex. B, at p.2 (requesting "all development reports and lab notebooks generating [*sic*] in connection with Teva's ANDAs for Generic Effexor XR.").   Notwithstanding Plaintiffs' last-minute clarification of what they seek, for the reasons explained herein, Teva performed a reasonably comprehensive search for all ANDA-related materials and produced all non-privileged documents responsive to Plaintiffs' requests.

[17]  Teva includes bates numbers in this submission for reference only, and does not believe submission of these documents to the Court is necessary or warranted.  This is for the sake of brevity and efficiency, including because the documents bear non-public confidentiality designations under the Discovery Confidentiality Order.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 9

In sum, Teva "conducted a reasonable inquiry for responsive information," and Plaintiffs have not met their burden "to show that the responding party's search was inadequate." *Enslin*, 2016 WL 7042206, at *3.

### B.     Teva's Pre-Agreement Market Analysis Documents

Plaintiffs have repeatedly accused Teva of failing to search for and produce pre-agreement market analysis documents.   To the contrary, Teva has performed a reasonable search for responsive documents—which, despite Plaintiffs' assertion to the contrary, has resulted in the production of market analysis documents from prior to the execution of the agreement—and Teva agreed to perform several additional searches for documents responsive to Plaintiffs' requests.

Plaintiffs identified a purported gap in Teva's production regarding market analysis documents on November 19, 2018.[18]  For support of their claim, Plaintiffs identified a single, apparently scanned hard-copy document from a 2003 patent litigation deposition ("Exhibit 17") that was not found in Teva's production.  Plaintiffs conclude that this single document is evidence that Teva failed to search for and produce an entire class of documents.  In Teva's December 3, 2018 response, Teva articulated Plaintiffs' flawed premise and explained why the parties' agreed upon search parameters were appropriate to identify responsive documents.[19]  Specifically, Teva explained that Exhibit 17 was apparently an exhibit to Wyeth's 30(b)(6) deposition of a then Teva employee, Anne Payne, in 2005.  Teva highlighted the fact that Ms. Payne testified that she believed another Teva employee, Jennifer King, was the person who prepared Exhibit 17, and that Ms. King was already an agreed custodian in this matter and the appropriate custodian for Plaintiffs' requests.[20]  Further, Teva identified and confirmed the specific search strings that Plaintiffs' identified, and the parties agreed, would have hit on these types of documents.  As such, Teva confirmed that it ran the appropriate search terms against the appropriate custodian and produced responsive, non-privileged documents.  And indeed, Teva produced market analysis documents from the period after the settlement agreement, as well as several non-privileged documents from <u>before the execution of the settlement agreement</u>.  *See*

---

[18]   *See* Ex. G, at pp. 2-3.

[19]   *See* Ex. H, at pp. 2-3.

[20]   *See* Ex. H, at pp. 1-2, 2-3; Ex. C at pp. 1-2.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 10

TEVA_EFFEX_0758711; TEVA_EFFEX_00245651; TEVA_EFFEX_00443767. In other words, Teva has already produced precisely the type of document about which Plaintiffs complain.

Nonetheless, even though Teva explained that Ms. King was the custodian most likely to possess relevant documents on this topic, in an effort to avoid any lingering dispute, Teva still agreed to search Ms. Payne's documents using the search terms identified by Plaintiffs as likely to yield market analysis documents.[21] Teva is in the process of reviewing Ms. Payne's documents, and will produce responsive, non-privileged, and non-duplicative documents as soon as reasonably possible.

Finally, out of an abundance of caution and accommodation and in order to ensure that Teva's prior search had appropriately captured all responsive documents of the type Plaintiffs request here, in response to Plaintiffs' requests, Teva has performed a new manual search of the most likely sources for any forecasting documents pre-dating the settlement agreement. Following this completed search, Teva can confirm its reasonable belief that it produced all available, responsive, and non-privileged pre-settlement forecasting documents regarding generic Effexor XR. Given Teva's thorough collection and review of documents—through both the parties' agreed upon search parameters, the manual search for responsive documents, and Teva's agreement to search a new supplemental custodian—Plaintiffs fail to show that Teva did not "conduct[] a reasonable inquiry for responsive information." *Enslin*, 2016 WL 7042206, at *3.

## II. Teva's Redaction of Information Related to Drugs Other Than Generic Effexor XR

### Plaintiffs' Statement

Teva has improperly redacted as purportedly "non-responsive" factual information responsive to RFP 63, such as information regarding which drugs were in Teva's development and manufacturing queue at the same time as generic Effexor XR, and how Teva set its development and manufacturing priorities. This information is relevant and responsive to RFP 63, which requested documents concerning Teva's readiness, willingness, or ability to develop and sell generic Effexor XR. To be clear,

---

[21] *See* Ex. C, at p. 2.

COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
COUNSELLORS AT LAW

Page 11

Plaintiffs are not asking Teva to rerun any searches or run additional searches for these documents. Rather, Plaintiffs request that Teva be compelled to un-redact documents that it has produced but improperly redacted. These documents were hit upon by the search terms Teva ran and then produced to Plaintiffs because they are relevant to Effexor XR, but they were improperly redacted. Plaintiffs have already identified for Teva the documents that must be un-redacted, minimizing any burden to Teva.

On December 11, 2018, Plaintiffs informed Teva that its redactions of specific, relevant, responsive factual information in documents identified in Exhibit B to Plaintiffs' December 11 letter interfered with Plaintiffs' ability to obtain relevant discovery regarding the Defendants' possible defenses regarding Teva's readiness, willingness, and ability to launch generic Effexor XR prior to July 1, 2010.[22] Plaintiffs demanded that Teva produce in unredacted form documents relevant to Teva's prioritization of its allocation of regulatory and manufacturing resources when bringing generic Effexor XR to market. Alternatively, if Teva was unwilling to produce this information relevant to the parties' potential defense, Plaintiffs requested that both Teva and Wyeth stipulate that they would not raise any defenses relating to Teva's readiness, willingness, or ability to launch generic Effexor XR earlier than July 1, 2010 since, without such a stipulation, the requested information is relevant to potential defenses. Teva responded on January 9, 2019, asserting that its redactions complied with both the Discovery Confidentiality Order and the ESI Protocol, which permit the redaction of non-responsive information because Plaintiffs' request seeks "highly sensitive business information relating to Teva's full stable of drugs" but refusing to stipulate to withdraw its potential defense.[23]

Teva's response presumes that the redacted information is non-responsive simply because the redactions contain information about other pharmaceuticals Teva was developing or manufacturing. This is not so. As Plaintiffs explained to Teva, the redacted information is relevant to Teva's prioritization of Effexor XR manufacturing – that is, it is relevant to Teva's ability and willingness to manufacture generic Effexor XR given Teva's other development and manufacturing priorities, which is relevant to Defendants' potential defenses in this case. This information is discoverable under

---

[22] *See* Ex. E, Dec. 11, 2018 Letter from counsel for Direct Purchaser Class Plaintiffs, Erin C. Burns, to counsel for Teva, Matthew P. Downer at pp. 3-4.

[23] *See* Ex. F, Jan. 9, 2019 Letter from Matthew P. Downer to Erin C. Burns, at p. 2.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 12

Rule 26, which permits expansive discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs for the case." Fed. R. Civ. P. 26(b)(1). *See also Microsoft Corp. v. Softicle.com*, No. 2:16-CV-02762-MCA-SCM, 2017 WL 4387376, at *3 (D.N.J. Oct. 2, 2017) ("District courts must remain mindful that relevance is a broader inquiry at the discovery stage than at the trial stage.") While discovery is limited to relevant information, the party subject to a discovery request may not unilaterally determine relevance. *Sanchez v. U.S. Airways, Inc.*, 202 F.R.D. 131, 135 (E.D. Pa. 2001). Consequently, courts discourage unilateral redactions for non-responsiveness that are so extensive a production becomes unusable to the receiving party. *See Engage Healthcare Commc'ns., LLC v. Intellisphere, LLC*, 2017 WL 3624262, at *3-4 (D.N.J. Apr. 26, 2017) (Goodman, MJ) (quotation omitted), *adopted by Engage Healthcare Commc'ns., LLC v. Intellisphere, LLC*, 2017 WL 3668391 (D.N.J. Aug. 23, 2017). In the interest of fairness, a party cannot rely on defenses that are based upon evidence the party withheld from discovery. *See Tetris Holding, LLC v. Xio Interactive*, 2011 WL 13141049, at *17 (D.N.J. June 20, 2011) (defendant waived attorney-client privilege where fairness necessitated plaintiff's examination of documents to confront defense of reliance on counsel).

The information Teva redacted from its productions is far from the non-responsive information that may be redacted under the Discovery Confidentiality Order (D.E. 244 § 5(g)) and ESI Protocol (D.E. 245 § D.1(i)). The redacted information is responsive to RFP 63 and includes, for example, information contained in board minutes, sales and operations meeting notes, and/or new product launch meeting notes from the time of the Teva-Wyeth settlement in 2005 through July 1, 2010 discussing Teva's activity on drugs in its pipeline at the same time it was developing generic Effexor XR and sheds light on the priority Teva gave such drugs vis-à-vis generic Effexor XR. That Teva may consider such information "highly sensitive business information" does not provide a basis for these redactions. The Discovery Confidentiality Order specifically contemplates production of this type of information and provides Teva with protection by allowing it to designate documents containing sensitive business information as "Highly Confidential – Attorneys' Eyes Only". *See* D.E. 244, at § 3.

Finally, Teva has not claimed that producing the information responsive to RFP 63 is unduly burdensome, nor can it. The relevant information is contained in a discrete

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 13

group of documents that Teva has already produced.  Teva need only unredact the relevant information and reproduce the documents.

Teva's improper redactions of relevant, responsive, non-privileged factual information have prejudiced Plaintiffs' ability to conduct discovery into potential defenses regarding Teva's readiness, willingness, and ability to obtain FDA approval and launch generic Effexor XR prior to July 2010.  Teva should be compelled to fully respond to RFP 63 by producing unredacted versions of the documents referenced in Plaintiffs' December 11 letter.[24]

### Teva's Statement

Contrary to Plaintiffs' assertions, Teva has complied with the parties' longstanding agreement and understanding, embodied in the agreed Discovery Confidentiality Order (D.E. 244 § 5(g)) and ESI Protocol (D.E. 245 § D.1(i)) entered by the Court in 2013, that producing parties may redact non-responsive and confidential information, including information concerning unrelated drug products. Indeed, as Teva made clear in its response to Plaintiffs on this issue, which Plaintiffs do not contest, "the parties extensively negotiated and agreed to these provisions, later adopted by the Court, with the express understanding that confidential information regarding unrelated drug products would be redacted."[25]  And to be clear, the redaction of materials relating to unrelated drug products was understood by the parties to be a central, if not the central, driving rationale for these provisions and one based on past need and practice in similar litigation.

Relying on these agreements, Teva engaged in the time consuming and expensive process of reviewing and redacting a voluminous set of documents such that information relevant and related to venlafaxine in this case was produced, while unrelated confidential business information regarding other drugs with no nexus to venlafaxine was redacted.  And rightly so:  Plaintiffs' RFP 63 and the search terms

---

[24]  On January 31, 2019 Teva produce unredacted versions or partially unredacted versions of several documents identified in Plaintiffs' December 11, 2018 letter. Teva's production does not moot this issue, as Teva still refuses to produce unredacted versions of almost 80% of the document Plaintiff identified in the December 11 letter.

[25]  *See* Ex. F, Jan. 9, 2019 Letter from Matthew P. Downer to Erin C. Burns, at p. 2.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 14

Plaintiffs agreed to in order for Teva to obtain these documents were entirely focused on venlafaxine.[26]   Indeed, Plaintiffs' RFP 63 calls only for information related specifically to "Generic Effexor XR," and falls under Section H, entitled "Documents concerning Generic Effexor XR ANDAs." [27]

Yet it is only now, *after* Teva performed the document searches requested by Plaintiffs and engaged in this burdensome redaction process expressly permitted by the agreements and orders in this case, that Plaintiffs for the first time purport to seek expansive information regarding these non-responsive and unrelated drugs, such as regulatory approval status, research and development, manufacturing capabilities, business strategy, and litigation issues.  In essence, Plaintiffs' counsel are seeking at this late stage a vast amount of information on non-responsive drugs in the off chance that there is some tangentially relevant evidence as to how Teva was preparing for the manufacture and launch of generic Effexor XR.   As described above, this is fundamentally incongruent with what they asked for with RFP 63 and the exact opposite of what was contemplated by the parties and embodied in the ESI Protocol and Confidentiality Order.

Although Plaintiffs assert that producing this information would not be burdensome, that is not accurate.  Teva has already undergone the process of collecting, processing, reviewing, and producing these documents in the first instance, which included manual redactions of non-responsive other drug information.   And as Plaintiffs ultimately acknowledge in a footnote (and thus bury the lede), after Plaintiffs requested that Teva reassess documents relating to this non-responsive redaction issue, Teva took the appropriate steps to re-review these documents and reproduce them, if necessary, with manual redaction adjustments.  Each step of this process has required time and expense from Teva in order to accommodate Plaintiffs' request.  Requesting that Teva now go back and review—for the *third* time—information that is

---

[26]  *See* Ex. A, Plaintiffs' First Set of Requests for Production of Documents from Teva Defendants, dated Jan. 19, 2018, at p. 31 ("63.  Any and all documents concerning the readiness, willingness, or ability of pharmaceutical companies, including Teva, to develop, formulate, scale up, process validate, manufacture, market, and sell, Generic Effexor XR, and to seek (by way of ANDA or otherwise) and obtain FDA approval to do any of the foregoing.").

[27]  *Id.*

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

Page 15

unresponsive to Plaintiffs' request would pose an undue burden on Teva for what is, at best, information that Plaintiffs speculate may be tangentially relevant.  Indeed, any effort at undoing redactions would necessarily require a comprehensive re-review for privilege.  The cumulative burden outweighs any hypothetical benefit.

Finally, as a practical matter, Teva has already produced volumes of documents responsive to RFP 63 that relate to Teva's ability and willingness to launch generic Effexor XR.  Teva respectfully submits that it has already provided what Plaintiffs requested in their document requests, and complied with its obligations under the parties' longstanding agreements embodied in the Discovery Confidentiality Order and ESI Protocol.  Plaintiffs' request for more should be denied.

Respectfully submitted,

*/s/ Peter S. Pearlman*

Peter S. Pearlman

PSP:mds
Enclosures

cc:     All Counsel of Record *(W/Encl. via ECF)*

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

In re EFFEXOR XR ANTITRUST
LITIGATION

This Document Relates To:

All Actions

Master Docket No.
3:11-cv-05479 (PGS/LHG)

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**
**OF DOCUMENTS TO TEVA DEFENDANTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the plaintiffs[1] request that

defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.

(collectively, "Teva") produce for inspection and copying the documents listed in Section III

below within 30 days or as otherwise required by the Court.

## I.    DEFINITIONS

1.      The words "and/or," "or," and "and" are used inclusively, not exclusively.  As

such, "and/or," "or," and "and" should be construed so as to require the broadest possible

response.  If, for example, a request calls for information about "A or B" or "A and B," you

should produce all information about A and all information about B, as well as all information

about A and B collectively.

2.      The words "any," "each," and "all" are to be construed as to be synonymous so as

---

[1] The term "plaintiffs" includes (a) the direct purchaser plaintiffs,  Professional Drug Company, Inc., Rochester
Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Uniondale Chemists, Inc.; (b) the retailer
plaintiffs, Rite Aid Corporation, Rite Aid Hdqtrs. Corp., JCG (PJC) USA, LLC, Maxi Drug d/b/a Brooks Pharmacy,
Eckerd Corporation, CVS Caremark Corporation, Walgreen Co., The Kroger Co., Safeway Inc., Supervalu, Inc.,
HEB Grocery Company LP, and American Sales Company, Inc.; (c) the end-payor plaintiffs, A. F. of L. – A.G.C.
Building Trades Welfare Plan, IBEW - NECA Local 505 Health & Welfare Plan, Louisiana Health Service
Indemnity Company d/b/a Bluecross/Blueshield of Louisiana, New Mexico United Food And Commercial Workers
Union's And Employers' Health And Welfare Trust Fund, Plumbers and Pipefitters Local 572 Health and Welfare
Fund, City of Providence, Rhode Island, Sergeants Benevolent Association Health and Welfare Fund, and Patricia
Sutter; and (d) the individual third-party payor plaintiffs (or "ITPPs"), Painters District Council No. 30 Health and
Welfare Fund and Medical Mutual of Ohio.

Teva and Wyeth, concerning the vacating of the *Markman* ruling issued in *Wyeth v. Teva Pharmaceuticals USA, Inc.,* No. 03-cv-01293 (D.N.J.).

21.     All documents concerning Teva's evaluation, assessment, or determination concerning the actual, expected, or potential impact, value, or valuation to Teva or to Wyeth of Teva's agreement to delay its market entry for Effexor XR until July 2010, including the impact of such agreement on Teva or Wyeth's actual, expected, forecasted, or potential unit and dollar sales and/or profits on sales of Effexor XR and/or Generic Effexor XR (including Authorized Generic Effexor XR).

22.     All documents concerning the actual, expected, or potential impact, purpose, value, or valuation of Wyeth's agreement to delay or refrain from launching an Authorized Generic Effexor XR under the Agreement with Teva, including the impact of such agreement on Wyeth's or Teva's actual, expected, forecasted, or potential unit and dollar sales and/or profits on sales of Generic Effexor XR and Authorized Generic Effexor XR.

23.     All documents concerning the actual, expected, or potential impact, purpose, value, or valuation of Wyeth's agreement to delay or refrain from launching an authorized generic Effexor IR under the Agreement with Teva, including the impact of such agreement on Wyeth's or Teva's actual, expected, forecasted, or potential unit and dollar sales and/or profits on sales of generic Effexor IR and an authorized generic Effexor IR.

24.     If you contend that any of the Agreements had a pro-competitive impact or effect all documents concerning such purportedly pro-competitive impact or effect.

25.     If you contend that there were any business justifications for entering any of the Agreements, all documents concerning such business justifications.

26.     All documents concerning any predictions, projections, evaluations, or

## H.    Documents Concerning Generic Effexor XR ANDAs[8]

62.    All documents concerning any ANDAs for Generic Effexor XR.  This includes, but is not limited to:

a.    All documents concerning FDA regulatory approval of any ANDA for Generic Effexor XR, including: (i) the ANDA, including any and all amendments, supplements, and approval letters; (ii) all correspondence with the FDA, including deficiency notices and responses; and (iii) all documents and internal communications about the ANDA, including telephone contact reports, notes and memoranda;

b.    All communications by or among any of Teva and Wyeth, or their agents, or between any Generic Manufacturer and Teva, concerning any ANDAs for Generic Effexor XR, including but not limited to ANDAs filed by Teva, and including any Paragraph IV certifications;

c.    All analyses of any ANDAs for Generic Effexor XR;

d.    All documents concerning the scientific research, formulation, ANDA filing, and FDA approval concerning Generic Effexor XR by any entity, including without limitation documents concerning the status and timing of FDA consideration or approval (tentative or final) of any ANDA for Generic Effexor XR;

e.    Any documents concerning the actual or expected timing, progress, or impediments of would-be ANDA filers to submit ANDAs to FDA seeking to market Generic Effexor XR; and

f.    All documents concerning FDA's actual, anticipated, or potential grant of first-to-file exclusivity to Teva, and Teva's retention, relinquishment, forfeiture, or waiver of such exclusivity.

63.    Any and all documents concerning the readiness, willingness, or ability of pharmaceutical companies, including Teva, to develop, formulate, scale up, process validate, manufacture,  market, and sell, Generic Effexor XR, and to seek (by way of ANDA or otherwise) and obtain FDA approval to do any of the foregoing.

64.    All documents concerning any regulatory, legal, technical, manufacturing or other issues regarding the readiness, willingness or ability of any generic manufacturer (including but

---

[8] The relevant time period for these requests is January 1, 2001 through December 31, 2012.

commercialization of Generic Effexor XR, Authorized Generic Effexor XR, and/or an authorized generic of Effexor IR.

## I.     Documents Concerning Generic Effexor XR Market Entry

68.     All documents concerning the projected or actual date of Generic Effexor XR market entry, including the projected or actual date of market entry for an Authorized Generic Effexor XR.

69.     All documents concerning the projected or actual date of Generic Effexor IR market entry, including the projected or actual date of market entry for an authorized generic Effexor IR.

70.     All documents concerning FDA's actual, anticipated, or potential grant of first-to-file exclusivity to Teva for Generic Effexor XR and/or Generic Effexor IR, and Teva's potential or actual retention, relinquishment, or waiver of such exclusivity.

71.     All documents concerning the projected or actual rate of substitution of any version(s) of Generic Effexor XR for Effexor XR.

72.     All documents concerning Teva's understanding, expectation, forecasting, of analysis of Wyeth's financial, manufacturing, marketing, or sales plans or strategies to prepare for, or respond to, the projected or actual effects on Effexor XR sales, prices, revenues, or profits of the market entry of Generic Effexor XR.  This includes, but is not limited to:

> a.     All documents concerning Wyeth's development, manufacture, storage and destruction of any quantity of Authorized Generic Effexor XR;
>
> b.     All documents concerning any Wyeth's readiness, willingness, and ability to sell or license an Authorized Generic Effexor XR (including with, by, or through a third-party); and
>
> c.     All documents concerning actions taken by, or considered by, Wyeth that were designed to, or did in fact, delay, prevent or impede the sale of Generic Effexor XR including, but not limited to, any act to extend market exclusivity of Effexor XR.

34

73.     All documents relating to strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on/successor product strategies, product withdrawal or discontinuance strategies, patent strategies, or litigation strategies, considered or implemented by Wyeth to prepare for, respond to, or adapt to the projected or actual effects of the marketing or sale of one or more versions of Generic Effexor XR.

74.     All documents concerning the projected or actual impact of market entry, or absence thereof, of any version of Generic Effexor XR.  This includes any projections or analyses of the actual or potential impact on sales, prices, or price adjustments, revenue, or profits, including, without limitation, the effect on:

 a.   Unit and dollar volume sales (net and gross dollar sales) and revenues derived from the sale of Effexor XR;

 b.   Unit and dollar volume sales (net and gross dollar sales), revenues, profits, margins, and contribution derived from the sale of Generic Effexor XR, including from the sale of Authorized Generic Effexor XR;

 c.   Pricing of and margins, profits, and contribution derived from the sales of Effexor XR and Generic Effexor XR (including Authorized Generic Effexor XR);

 d.   Cost of goods (also known as cost of goods sold or "COGS") for Effexor XR and Generic Effexor XR (including Authorized Generic Effexor XR); and

 e.   Competition or competitive condition(s) for Effexor XR and Generic Effexor XR (including Authorized Generic Effexor XR) generally.

75.     All documents concerning the actual and/or forecasted sale of Authorized Generic Effexor XR and/or an authorized generic of Effexor IR in the United States market, including, but not limited to, forecasted, price, revenue and profits, contribution, margins, prescription volume, unit and dollar sales, and production and distribution costs.

76.     All documents concerning the potential or forecasted impact of the market entry, or absence thereof, of an authorized generic version of Effexor XR on sales (measured by units

or dollars), profits, and/or unit prices for Effexor XR and/or Generic Effexor XR.

77.    All documents concerning the potential or forecasted impact of the market entry, or absence thereof, of an authorized generic version of Effexor IR on sales (measured by units or dollars), profits, and/or unit prices for Effexor IR and/or Generic Effexor IR.

78.    All documents concerning any actual or potential "at-risk" launch of Generic Effexor XR.

79.    Documents sufficient to identify or assess any launch of a generic drug product by Teva that was "at risk" of infringement of any unexpired patent.

**J.    Documents Concerning Government Inquiry or Review Concerning the Agreements[9]**

80.    All documents concerning any inquiry, investigation, communication, or evaluation by the FTC, the Department of Justice, or any other government body or agency, concerning any Agreement.

**K.    Documents Concerning Document Retention Policies**

81.    Documents sufficient to show your document destruction, retention and archiving policies and practices, as well as any changes in such policies and practices implemented since 2002.

82.    Documents sufficient to show your policies and procedures for electronic data backup, maintenance, and control.

83.    Documents sufficient to show your policies and procedures concerning confidentiality of your business information.

**L.    Documents Concerning Teva's Potentially Asserted Justifications.**

84.    All documents concerning any actual, perceived or intended procompetitive

---

[9] The relevant time period for Request No. 80 is June 30, 2005 to the present.

# EXHIBIT B



**CAITLIN G. COSLETT** / *SHAREHOLDER*
**p.** 215.875.3057 | ccoslett@bm.net

December 18, 2018

**VIA EMAIL**
Jonathan D. Janow
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

  RE:  *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

  We write on behalf of all Plaintiffs to respond to your letter of December 3, 2018.

  First, Teva provides an unsatisfactory response to Plaintiffs' request that Teva produce its generic Effexor XR forecasting documents.[1]  These documents are relevant and potentially highly probative of several issues in this case, including Teva's expectations at the time of the challenged settlement, damages, and market power. Teva's failure to produce its generic Effexor XR forecasting documents from the period prior to the challenged Wyeth-Teva agreement is unacceptable, particularly given that Plaintiffs know from a document produced in this litigation by Wyeth, WYEFFAT2411831, that Teva generated such forecasts and even produced at least one of them to Teva's co-defendant Wyeth during the Wyeth-Teva litigation.  Moreover, at least four of the searches Teva ran (T80, T80-A, T91 and T91-A[2]) should have yielded documents similar to and including WYEFFAT2411831.  Please explain why Teva's searches failed to hit upon the Teva forecast produced at WYEFFAT2411831, and please explain why Teva has failed to produce WYEFFAT2411831 and/or similar forecasting documents.  If Teva destroyed all copies and versions of its generic Effexor XR forecasting documents, including WYEFFAT2411831, please advise when and why the file(s) were destroyed.

---

[1] *See* Plaintiffs' November 19, 2008 Letter to Counsel for Teva, at 1-2.

[2] Teva's searches are listed in the attachment to Teva's May 18, 2018 Letter to Counsel for Plaintiffs, as modified by my September 26, 2018 letter to Teva.

December 18, 2018
Page 2 of 3



Plaintiffs note that, in accordance with the ESI Protocol's[3] requirement that the parties meet and confer over searches, Plaintiffs offered *several* potential solutions by identifying an exemplar document, suggesting an additional custodian and requesting additional searches of an existing custodian. Teva's categorical refusal to cure the deficiency is improper. Please reconsider and identify by January 3, 2019 the additional searches for pre-settlement forecasting documents Teva will be conducting. Otherwise, Teva will cause the Court to be burdened with this dispute.

Second, your December 3, 2018 letter proposes for the first time to limit the searches run in the files of Deborah Jaskot and Robert Vincent. Plaintiffs believe that all of the agreed-upon searches should be run in Ms. Jaskot's and Mr. Vincent's files, but in an effort resolve this issue by compromise are willing to agree to Teva's proposal to use the regulatory-related searches identified as falling within RFP Categories H and I in the "Teva Search Periods" chart attached to Teva's May 18, 2018 letter (as modified by my September 26, 2018 letter to Teva), so long as Teva also runs the following searches:

- T45 (from March 24, 2003-June 30, 2011); and

- T16, T43-T44, and T46-T49 (from March 24, 2003-February 14, 2006).

Please confirm that Teva will run the above-listed searches for the above-listed time periods in Ms. Jaskot's and Mr. Vincent's files, and please provide a date certain in early January by which Teva will produce responsive documents identified in the files of Ms. Jaskot and Mr. Vincent, as Teva agreed to do in your October 19, 2018 letter.

Third, please immediately produce unredacted copies of the October 11, 2005 proposed Joint Pretrial Order or the October 12, 2005 final Joint Pretrial Order from the Wyeth-Teva litigation. Plaintiffs previously requested production of these documents on November 19, 2018. In addition, please promptly produce an unredacted copy of Teva's Proposed Pretrial Order, which was filed at ECF No. 100 in the Wyeth-Teva litigation. Production of this small handful of documents is not burdensome and should be done immediately given that these documents should have been produced months ago. Please produce these documents by January 3, 2019.

Finally, please immediately produce all development reports and lab notebooks generating in connection with Teva's ANDAs for Generic Effexor XR. These documents are responsive to Request Number 62 of Plaintiffs' First Set of Requests for Production

---

[3] The "ESI Protocol" is ECF No. 245.

December 18, 2018
Page 3 of 3



of Documents to Teva Defendants, but Teva has not yet produced them.  Please produce these documents by January 3, 2019.

Sincerely,

/s/ Caitlin G. Coslett

Caitlin G. Coslett

cc:    Counsel of Record

# EXHIBIT C

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Jonathan D. Janow
To Call Writer Directly:
+1 202 879 5203
jonathan.janow@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005
United States

+1 202 879 5000

www.kirkland.com

Facsimile:
+1 202 879 5200

January 10, 2019

**By Email**

Caitlin G. Coslett
Berger & Montague L.P.
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Re:     *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

We write in response to Caitlin G. Coslett's letter of December 18, 2018 regarding Teva's document production and agreement to include additional custodians and search terms. As an initial matter, plaintiffs' insistence on arbitrary deadlines does not help the discovery process and disregards the breadth of plaintiffs' supplemental discovery requests. As Teva has done throughout this discovery period, Teva will produce the responsive, non-privileged documents within a reasonable time to allow for processing and review of the documents.

## I.     Market Analysis Documents

Teva objects to plaintiffs' characterization of Teva's December 3, 2018 letter as an unsatisfactory response regarding Teva's search for so-called "forecasting" documents. On the contrary, Teva highlighted plaintiffs' flawed premise: a single (apparently scanned) hard-copy document from a deposition in 2003 that is not found in Teva's production of materials from an agreed search of custodians in 2018 is *not* evidence that Teva failed to produce the entire class of similar documents. Plaintiffs' argument ignores the legitimate practical reasons why such a document that existed in 2003 may not have been not collected and produced in 2018. Further, despite plaintiffs' insistence otherwise, Teva produced relevant documents during the time period prior to the execution of the Wyeth-Teva Agreement.

Additionally, Teva objects to plaintiffs' mischaracterization of "Teva's categorical refusal to cure the deficiency." Plaintiffs' assertion ignores the facts. Teva has responded to plaintiffs' letters by either accepting your proposals, suggesting modifications, or explaining why such a proposal was unnecessary or duplicative of Teva's prior document search and production. As plaintiffs identify in your December 18, 2018 letter, Teva ran at least four searches (T80, T90-A,

# KIRKLAND & ELLIS LLP

Erin C. Burns
January 10, 2019
Page 2

T91, and T91-A) that "should have yielded documents similar to" the so-called "forecasting documents."  Teva ran these searches during the appropriate and agreed time period and, as explained in Teva's December 3, 2018 letter, against the appropriate custodians, including Jennifer King.  Teva produced all responsive, non-privileged documents, including market analysis documents, to plaintiffs.  Further, Teva agreed to run supplemental searches, including the searches identified by plaintiffs as likely to yield market analysis documents, against two additional custodians, Deborah Jaskot and Robert Vincent.  Plaintiffs' statement that Teva has refused to address plaintiffs' concerns is unfounded.  Rather, Teva has explained that the purported "deficiency" does not exist, identified the steps taken to collect these documents, and agreed to search additional custodians.

As stated above and in Teva's December 3, 2018 letter, Teva believes that it has already performed a reasonable search of the appropriate custodians on this issue.  However, in the spirit of compromise and in an effort to accommodate plaintiffs' request and bring this matter to a close, Teva will agree to perform a targeted search of the additional custodian identified by plaintiffs, Anne Payne, by running the terms that plaintiffs' identified as likely to yield  documents relevant to this issue (T80, T90-A, T91, and T91-A) for the time periods identified in Teva's May 18, 2018 letter.

## II.  Plaintiffs' Misstatement of the Parties' Prior Agreement to Search Additional Custodians

In plaintiffs' December 18, 2018 letter, plaintiffs assert that Teva proposed limited searches for two additional custodians, Ms. Jaskot and Mr. Vincent, "for the first time" in Teva's December 3, 2018 letter.  Additionally, plaintiffs argue that Teva's new proposal is insufficient and request that Teva run additional search terms against these custodians.  Plaintiffs' request contradicts the facts, including plaintiffs' prior letter agreeing to Teva's proposal.  Further, under the ESI protocol, Teva is under no obligation to re-search the files of custodians with additional search terms as plaintiffs now request.

In plaintiffs' December 18, 2018 letter, plaintiffs state, "[Teva's] December 3, 2018 letter proposes for the first time to limit the searches run in the files of Deborah Jaskot and Robert Vincent."  Plaintiffs' statement is demonstrably false.  Teva stated explicitly in its October 19, 2018 letter that "Teva will agree to run the regulatory related searches identified as falling within RFP Category H and I in the 'Teva Search Periods' chart attached to [Teva's] May 18 letter for . . . Debbie Jaskot and Robert Vincent."  Plaintiffs then agreed to Teva's proposal in your response of November 19, 2018: "Plaintiffs appreciate Teva's agreement to add Debbie Jaskot and Robert Vincent as document custodians *as set forth in your October 19 letter*."  (Emphasis added).  Teva's December 3, 2018 letter made clear this targeted search was not a new proposal by referring back to and repeating the language of Teva's October 19, 2018 letter.  Plaintiffs' claim that Teva

# KIRKLAND & ELLIS LLP

Erin C. Burns
January 10, 2019
Page 3

proposed a targeted search of Ms. Jaskot and Mr. Vincent's files "for the first time" in Teva's December 3, 2018 letter is therefore untrue and inappropriate.

Premised on that mischaracterization, plaintiffs now request that Teva run additional searches beyond the discrete searches originally requested and agreed to by the parties for these two supplemental custodians. To wit: in plaintiffs' September 26, 2018 letter, plaintiffs requested that Teva run additional searches for documents related to a single specific issue—Teva's "ANDA prosecution." Accordingly, Teva agreed to run the specific searches related to Teva's Effexor ANDA and launch for the appropriate time period. Now plaintiffs request eight additional search terms that are *entirely unrelated* to the ANDA prosecution; rather, these searches relate to the settlement agreement between Teva and Wyeth. Yet plaintiffs provide no rationale as to why these additional, unrelated terms are appropriate for custodians from Teva's regulatory group.

Further, by trying to label Teva's targeted search as new, plaintiffs attempt to escape the restrictions of the Court's ESI protocol. As stated in the ESI protocol, "Once the files of a custodian are searched with all Agreed Terms . . . , the Producing Party shall not be under any obligation, absent a Court Order, to re-search that custodian's files using additional search terms." (ECF No. 245 at 5.) On November 19, 2018, plaintiffs explicitly agreed to Teva's targeted search terms. After the parties reached that agreement, but before plaintiffs suggested additional search terms in your December 19, 2018 letter, Teva collected and searched these new custodians' documents with the agreed terms. As such, Teva is under no obligation to "re-search [those] custodian[s'] files using additional search terms." And, as described in detail above, plaintiffs cannot mischaracterize the parties' agreement as Teva's "first" proposal in order to do an end run around this order. Accordingly, Teva will not run the additional search terms proposed in plaintiffs' December 18, 2018 letter for Ms. Jaskot and Mr. Vincent. Instead, Teva will abide by the agreement the parties made and produce non-privileged documents responsive to the targeted searches.

Teva has collected and is close to concluding the process of reviewing documents from Ms. Jaskot and Mr. Vincent. At this point, we believe that we can produce responsive, non-privileged, and non-duplicative documents before the end of January, provided that Teva does not encounter any technical issues with the processing of these documents for production.

## III.   Documents from Underlying Patent Litigation

Teva has undertaken a reasonable search for and has contacted its former patent counsel in the underlying *Wyeth v. Teva* patent litigation in an effort to collect the October 11, 2005 proposed Joint Pretrial Order and October 12, 2005 final Joint Pretrial Order. The patent counsel is in the process of reviewing its archives to see if copies of these documents still exist. As Teva explained in its October 19, 2018 letter, these documents were voluminous and filed under seal over 13 years

# KIRKLAND & ELLIS LLP

Erin C. Burns
January 10, 2019
Page 4

ago.  As such, the search process takes some time, but Teva will produce these documents within a reasonable time after Teva determines whether such documents are in Teva's possession, custody, or control or in that of Teva's former patent counsel.

Further, plaintiffs request Teva's Proposed Pretrial Order from the underlying litigation, which is available publicly on PACER.  As a courtesy, Teva will produce the Proposed Pretrial Order as part of a future production.

## IV.    Plaintiffs' Additional Requests

Plaintiffs demand that Teva "produce all development reports and lab notebooks generating [*sic*] in connection with Teva's ANDAs for Generic Effexor XR."  Plaintiffs fail to explain what these reports and notebooks are and why plaintiffs believe that Teva possesses them and failed to produce them.  To date, Teva has produced tens of thousands of documents responsive to the parties' agreed upon search terms, which the parties' negotiated in a months' long meet-and-confer process.  Indeed, there is an entire category of search terms specifically designed to capture documents relevant to Teva's ANDA.  Teva produced all non-privileged documents in Teva's possession, custody, or control responsive to Request No. 62 of Plaintiffs' First Set of Requests for Production of Documents using the search parameters agreed by the parties.  Further, both Ms. Jaskot and Mr. Vincent were members of Teva's regulatory group, and Teva has agreed to search their documents for ANDA related material.  As with the initial document search and collection, Teva will produce all responsive, non-privileged documents as a result of this search.

*****

We believe that this letter addresses the concerns raised in your December 18, 2018 letter, but we remain available for a telephonic meet and confer if plaintiffs would like to discuss any of these issues further.

Sincerely,

*/s/ Jonathan D. Janow*

Jonathan D. Janow

CC: Counsel of Record

# EXHIBIT D

## Caitlin G. Coslett

| | |
|---|---|
| **From:** | Caitlin G. Coslett |
| **Sent:** | Wednesday, May 9, 2018 9:39 PM |
| **To:** | 'Janow, Jonathan D.'; Berse, Farrah R |
| **Cc:** | grega@hbsslaw.com; *davidn@hbsslaw.com; Adam Steinfeld (asteinfeld@faruqilaw.com); *rgandesha@whitecase.com; sgeorge@whitecase.com; bgant@whitecase.com; Kovalenko, Nina; Downer, Matthew; LWalsh@walsh.law; EOfosuantwi@walsh.law; wwalsh@walsh.law; Karen N. Walker; Tisdale, Gavin R. |
| **Subject:** | RE: Effexor - Joint letter logistics and timing |

Jon,

First, Plaintiffs do not believe there is any dispute as to the universe of Teva's custodians to be searched in light of Teva's agreement to search the files of George Barrett.  Plaintiffs note, however, that Teva is obligated to search for and produce documents responsive to Plaintiffs' requests and Plaintiffs are not agreeing to release Teva from that responsibility.  Teva has an obligation, based on its superior knowledge of where responsive documents reside, to identify and search the appropriate custodians or sources. Plaintiffs reserve all rights to request additional custodians (or searches) based on information revealed through further discovery.

Second, Plaintiffs believe the parties have reached agreement regarding Teva's production of emails and email attachments, as set forth in your April 23, 2018 letter.  One clarifying question:  does Teva also agree to review and produce responsive files that are embedded within a responsive document hit upon by search terms?  For example, does Teva agree to produce excel spreadsheets that are embedded in powerpoint presentations that Teva produces?

Finally, we are working on a response to your May 8 letter.  To that end, can you please send a word version of the Teva Search Periods portion of attachment A to your May 8 letter?  Or, can you let us know if the Teva Search Periods in yesterday's letter are exactly the same as the search periods you sent on May 2, 2018?

Thank you,
Caitlin

---

**From:** Janow, Jonathan D. [mailto:jonathan.janow@kirkland.com]
**Sent:** Wednesday, May 9, 2018 12:23 PM
**To:** Caitlin G. Coslett <ccoslett@bm.net>; Berse, Farrah R <fberse@paulweiss.com>
**Cc:** grega@hbsslaw.com; *davidn@hbsslaw.com <davidn@hbsslaw.com>; Adam Steinfeld (asteinfeld@faruqilaw.com) <asteinfeld@faruqilaw.com>; *rgandesha@whitecase.com <rgandesha@whitecase.com>; sgeorge@whitecase.com; bgant@whitecase.com; Kovalenko, Nina <nkovalenko@paulweiss.com>; Downer, Matthew <matthew.downer@kirkland.com>; LWalsh@walsh.law; EOfosuantwi@walsh.law; wwalsh@walsh.law; Karen N. Walker <kwalker@kirkland.com>; Tisdale, Gavin R. <gavin.tisdale@kirkland.com>
**Subject:** RE: Effexor - Joint letter logistics and timing

Caitlin,

I have two discrete Teva related question for you and Greg:

1

(1) Per Greg's May 8 9:34 am email below, it's our understanding that there is no longer any issue as to (**d) Universe of Teva custodians to be searched** given Teva's agreement to including George Barrett as a custodian, as indicated in my letter yesterday.  Can you please confirm that Plaintiffs will not include this in your list of issues?

(2) I am unclear as to whether item **(b) Proper production of emails/attachments and embedded files** in the same email relates to Teva, as I am unaware of any remaining dispute between Teva and Plaintiffs on that issue.  Can you please let me know if this relates to Teva, or is it directed only to Wyeth?  If it does relate to Teva, I would like to better understand Plaintiffs' view as what remains in dispute and Plaintiffs rationale for their position as it relates to Teva.

Thanks very much.

Jon

**Jonathan D. Janow**

**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W., Washington, D.C. 20005
**T** +1 202 879 5203
**F** +1 202 879 5200

jonathan.janow@kirkland.com

EXHIBIT E



December 11, 2018

<u>VIA ELECTRONIC MAIL</u>

Matthew P. Downer, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

  Re: *In re Effexor XR Antitrust Litigation,*
    <u>Master Docket No. 11-cv-5479 (D.N.J.)</u>

Dear Mr. Downer:

  Plaintiffs write to raise objections to (1) Teva's "Partially Privileged" redactions for certain documents identified in its first four privilege logs and (2) Teva's redaction of certain documents on "Non-responsive" grounds.

  Teva's claims of privilege over the partially redacted documents identified in its first four privilege logs are largely deficient under Rule 26(b)(5) because frequently Teva has redacted responsive, non-privileged information, such as launch dates or the names of individuals at Teva.  Similarly, throughout its productions, Teva has also improperly redacted as purportedly non-responsive information that is relevant to defenses Defendants will likely raise in this litigation.  Teva also sometimes has identified documents as privileged yet made no redactions for privilege.  Still at other times, Teva had produced documents that are illegible, thereby failing to provide Plaintiffs with an adequate basis to assess Teva's redactions.

  Sections I through IV of this letter address each of these problems in more depth with the hope that Teva will promptly address Plaintiffs' concerns.  Plaintiffs, however, will file a motion to compel if Teva fails to produce all non-privileged, responsive information in documents to which Plaintiffs' are entitled.

## I. Teva Redacted for Privilege Information that is Responsive and Not Privileged.

  Many of Teva's redacted privilege log entries correspond to spreadsheets, emails, and other documents that do not contain any legal advice or requests for legal advice. Without the crucial component of legal advice, these documents are not protected under attorney-client privilege and Teva must produce the documents without spurious redactions for privilege.  These improperly redacted documents include:  factual

Matthew P. Downer, Esq.
December 11, 2018
Page 2

_____

information, such as launch dates, paragraph IV filings, and sites where drugs are manufactured; financial information; communications between non-attorneys; the names of individuals involved in a committee; and full titles of columns and rows in spreadsheets. These incorrectly redacted documents are reflected in the privilege log entries in the spreadsheet attached as Exhibit A.

Attorney-client privilege does not extend to facts, only to communications where a client sought or obtained legal counsel. *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1997) (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). *See also Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) ("A fact is one thing and a communication concerning that fact is an entirely different thing.") (internal quotes removed). Even though the legal advice of corporate attorneys "is often intimately intertwined and difficult to distinguish from business advice," attorney-client privilege does not protect communications that "relate to business rather than legal matters." *La.Mun.Police Emp. Ret. Sys. v. Sealed Air Condition*, 253 F.R.D. 300, 305-06 (D.N.J. 2008) (internal quotes removed).

Thus, a corporate client asserting attorney-client privilege must demonstrate that the purportedly privileged communication only existed because of "the client's need for legal advice or services." *Id.* at 306. This party bears the burden of providing the opposing party with a "specific designation and description of the documents" it claims are privileged. *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (M.D. Pa. 2001). This burden entails providing "precise and certain reasons for preserving their confidentiality" beyond "mere conclusory or *ipse dixit* assertions." *Id.* (internal quotes removed). For instance, a spreadsheet containing merely financial information is not itself a privileged document absent information about who authored the document and for what purpose. *RBS Citizens, NA v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013).

Throughout the documents identified in Exhibit A, Teva has failed to meet this burden. Many of the documents in Exhibit A are spreadsheets where Teva redacted purely factual information under a claim of privilege. *See e.g.,* PRIV-00734, TEVA_EFFEX_0145327 (redacting financial information). An examination of these documents and the privilege logs does not support these redactions, yet Teva nonetheless has incorrectly asserted attorney-client privilege over the factual information the documents contain. Indeed, Teva recognizes this type of information is not privileged by producing it in similar documents without claiming privilege. *Compare* PRIV-09104, TEVA_EFFEX_0268345 (redacting all information entered in column titled ███████) *and* PRIV-09107, TEVA_EFFEX_0268372 (redacting all information entered in column titled ███████) *with* PRIV-09141, TEVA_EFFEX_0138894 (leaving all information entered in column titled ███████) *and* PRIV-09660, TEVA_EFFEX_0323049 (leaving all information entered in column titled ███████).

Matthew P. Downer, Esq.
December 11, 2018
Page 3

_____

Similarly, Teva often has redacted as privileged the titles of columns and rows in a spreadsheet that came from the custodial file of a non-attorney. *See e.g.*, PRIV-00486, TEVA_EFFEX_0134468 (redacting full column in spreadsheet titled ███████████ ███). Mere titles of columns and the information that business spreadsheets contain are discoverable facts and could not constitute information within the scope of attorney-client privilege. Teva's privilege log descriptions for such entries fail to explain whose legal counsel the redaction removed, and instead feature vague and conclusory descriptions. *See e.g.*, *id.* ████████████████████████████████████ ███). After a close examination of these documents in conjunction with a review of the vague privilege log descriptions supporting Teva's claims of privilege, Plaintiffs conclude that Teva has failed to carry its burden of showing that attorney-client privilege protects these spreadsheets from discovery since recitation of factual information is not privileged.

Teva's problematic claims of privilege persist across all types of documents identified in its privilege logs. A review of numerous redacted emails confirms what their accompanying, sparse privilege log entries hint at: attorney-client privilege does not shield these documents because they appear to only involve responsive, discoverable facts. *See e.g.*, PRIV-00445, TEVA_EFFEX_0135805—TEVA_EFFEX_0135806 █████████ ████████████████████████████████████

█████ PRIV-00679 ██████████████████████████████ ████████████████████████████████████

Plaintiffs demand that Teva produce versions of the documents identified in Exhibit A without the unjustified redactions.

## II.   Teva Redacted Information as "Non-Responsive" Despite It Being Relevant and Responsive.

Separate from the privilege issues discussed above, Teva has improperly withheld and redacted information as "non-responsive," impeding Plaintiffs' ability to assess defenses Defendants may raise. Unless Teva and Wyeth are both willing to stipulate now that they will not raise any defenses relating to Teva's readiness, willingness, or ability to launch its generic Effexor XR earlier than July 1, 2010, Teva must produce the information improperly redacted as non-responsive.

Teva's non-responsiveness redactions are keeping Plaintiffs from getting a full sense of how Teva prioritizes its allocation of regulatory and manufacturing resources when bringing a drug to market. *See e.g.*, TEVA_EFFEX_0453135, at TEVA_EFFEX_0453173 ██████████████████████████████████

Matthew P. Downer, Esq.
December 11, 2018
Page 4

_____

); TEVA_EFFEX_0259740—
TEVA_EFFEX_0259743 █████████████████████████████████████
█████████████████████████████████████████████████████ ;
TEVA_EFFEX_0094586—TEVA_EFFEX_0094602 (██████████████████████
█████████████████████████████████); TEVA_EFFEX_0094767
████████████████████████████████████████████████████████
█; TEVA_EFFEX_0245641 ████████████████████████████████████
██████████████████████. TEVA_EFFEX_0269705 ████████████████
█████████████████████████████. Teva's over redaction of
information also prejudices Plaintiffs because it makes many of Teva's documents
incomprehensible to a juror or witness and prevents Plaintiffs from gaining a full
understanding of the context of a given document.

In addition, Teva has redacted information specifically relevant to generic Effexor
XR itself, including anticipated launch dates and correspondence from the FDA regarding
the launch of generic Effexor XR.  *See, e.g.*, TEVA_EFFEX_00716220 (████████████████
█████████████████████); TEVA_EFFEX_0253373 (████████████████████████████
██████████████).[1]

These facts in the documents listed in Exhibit B are relevant if either Defendant
will assert a defense that Teva was not ready or was unable to get FDA approval and
launch its generic Effexor XR earlier than July 2010.  Thus, the factual information is
relevant, and Teva's redaction of this information for purported non-responsiveness is
improper and prejudices Plaintiffs.  *See Tetris Holding, LLC v. Xio Interactive*, No. CV 09-
6115 (FLW), 2011 WL 13141049, at *17 (D.N.J. June 20, 2011) (finding defendant waived
attorney-client privilege where fairness necessitated the plaintiff's examination of
documents to meet certain defenses).  Unless Teva promptly produces versions of these
documents that do not include these improper redactions, Plaintiffs will move to compel
their production.

Additionally, Teva has redacted hundreds of documents in their entirety as non-
responsive.  Based on prior meet and confers, Plaintiffs understand that some of these
documents are non-responsive documents that are part of a document family that includes
responsive documents, such as a non-responsive attachment to a responsive cover email
that has been produced.  Nonetheless, given the sheer volume of such entirely withheld
"non-responsive" documents, Plaintiffs have identified these documents in the attached
Exhibit C and request that Teva confirm why these documents have been withheld.

_____

[1] The above are just a few examples of what is a pervasive problem throughout Teva's production.  A more
comprehensive list of similarly improperly redacted documents is attached at Exhibit B.  Plaintiffs reserve
the right to further update this list as discovery progresses, but at this point request that Teva reproduce
unredacted versions of all documents listed in Exhibit B.

Matthew P. Downer, Esq.
December 11, 2018
Page 5

_____

### III.    Documents on Teva's Log That Have Not Been Redacted for Privilege.

Teva incorrectly identifies numerous documents as redacted on account of privilege with the code "Partially Privileged – Redact" in its privilege logs. Yet, Teva in fact made no redactions based upon a claim of privilege in the documents themselves. These documents instead feature only redactions for non-responsiveness. *See e.g.,* PRIV-00961, TEVA_EFFEX_0167148—TEVA_Effex_0167167 (redacting only for non-responsiveness). The privilege log entries corresponding to these documents are contained in the spreadsheet attached as Exhibit D.

Documents not redacted for privilege do not belong in the privilege logs. However, it is possible that Teva has marked redactions for privilege as redacted for non-responsiveness. Such an error would significantly prejudice Plaintiffs' ability to assess Teva's redactions for privilege if those redactions are wrongly identified in the documents. Teva must confirm that its redactions are accurately characterized.

### IV.    Teva Produced Illegible Documents.

Plaintiffs also have identified various documents redacted as privileged that are impossible to evaluate in their current format because they are partially illegible. These entries are contained in a spreadsheet attached as Exhibit E.

Plaintiffs demand that Teva produce legible versions of the documents identified in Exhibit E so that Plaintiffs can properly assess Teva's claims of privilege.

* * *

Plaintiffs look forward to Teva's response. Please respond to these issues by Friday, December 28, 2018.

Sincerely,

*/s/ Erin C. Burns*

Erin C. Burns

Attachments
cc:  Gregory T. Arnold, Esq.
      Lauren G. Barnes, Esq.
      Don Barrett, Esq.
      Jack Baughman, Esq.
      Farrah R. Berse, Esq.

Matthew P. Downer, Esq.
December 11, 2018
Page 6
_____

John P. Bjork, Esq.
Rachel A. Blistan, Esq.
Eric L. Bloom, Esq.
Justin N. Boley, Esq.
Elizabeth Brehm, Esq.
Michael M. Buchman, Esq.
Moira Cain-Mannix, Esq.
James E. Cecchi, Esq.
Neill W. Clark, Esq.
Yahonnes Cleary, Esq.
Michelle C. Clerkin, Esq.
Deborah Sampieri Corbishley, Esq.
Caitlin G. Coslett, Esq.
Brian M. English, Esq.
Lori A. Fanning, Esq.
Michael D. Ford, Esq.
Susan M. Fowler, Esq.
Raj Gandesha, Esq.
Bryan Gant, Esq.
Matthew F. Gately, Esq.
David P. Germaine, Esq.
Sheryn George, Esq.
Brandi R. Hamilton, Esq.
Brian Hill, Esq.
Jonathan D. Janow, Esq.
Debra G. Josephson, Esq.
Jeffrey L. Kodroff, Esq.
Peter Kohn, Esq.
Nina Kovalenko, Esq.
David E. Kovel, Esq.
Maureen S. Lawrence, Esq.
John Marcoretta, Esq.
Marvin A. Miller, Esq.
Robert Milne, Esq.
David S. Nalven, Esq.
Dianne M. Nast, Esq.
Anna T. Neill, Esq.
Linda P. Nussbaum, Esq.
Peter S. Pearlman, Esq.
Scott E. Perwin, Esq.
Lauren C. Ravkind, Esq.
Barry L. Refsin, Esq.

Matthew P. Downer, Esq.
December 11, 2018
Page 7
_____

      Emily M. Renzelli, Esq.
      Kevin P. Roddy, Esq.
      Michael L. Roberts, Esq.
      Stephanie E. Smith, Esq.
      Thomas M. Sobol, Esq.
      David F. Sorensen, Esq.
      Sterling Starns, Esq.
      Adam Steinfeld, Esq.
      Kathryn Swisher, Esq.
      Barry S. Taus, Esq.
      Lindsey H. Taylor, Esq.
      Gavin R. Tisdale, Esq.
      William H. Trousdale, Esq.
      Bethany R. Turke, Esq.
      Joseph M. Vanek, Esq.
      Karen N. Walker, Esq.
      Kenneth A. Wexler, Esq.
      Matthew Wisnieff, Esq.

# EXHIBIT F

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Matthew P. Downer
To Call Writer Directly:
+1 202 879 5226
matthew.downer@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005
United States

+1 202 879 5000

www.kirkland.com

Facsimile:
+1 202 879 5200

January 9, 2019

**Via Email**

Ms. Erin C. Burns
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107

Re: *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

We write in response to Erin C. Burns's letter of December 11, 2018, which raised various objections to Teva's redactions of information that is either privileged or confidential and non-responsive. As discussed below, Teva is re-reviewing the documents challenged in plaintiffs' five exhibits to the December 11, 2018 letter to ensure that any inadvertent redactions are corrected and that all remaining redactions are appropriate. In addition to the responses below, Teva will re-produce to plaintiffs any documents that required adjustment.

## I. Teva Properly Redacted Privileged Information Related to Possible Launch Dates and Will Re-Produce Documents that were Redacted Inadvertently

Plaintiffs contend that Teva "improperly redacted…factual information" ranging from "launch dates" to "the names of individuals involved in a committee." Plaintiffs' Letter at 2.[1] But as Teva has explained previously, information that reflects legal advice or analysis is not merely factual. Analysis of potential launch dates is a prime example. The redacted documents demonstrate that potential launch dates were not mere descriptive facts but were the product of legal analysis and advice from Teva's legal counsel. They are therefore properly redacted as privileged.

At the same time, Teva acknowledges that a document should not be redacted as privileged when the information is truly only factual and disconnected from legal advice, such as a partial list

---

[1] Plaintiffs also raise concerns related to Teva's privilege log descriptions. *See* Plaintiffs' Letter at 3. Teva already addressed those concerns in its December 18, 2018 letter.

# KIRKLAND & ELLIS LLP

Ms. Erin C. Burns
January 9, 2019
Page 2

of committee members, *see* Plaintiffs' Letter at 3 (challenging PRIV-00679), or a spreadsheet column title, *see id.* (challenging PRIV-00486).  Once Teva has completed the process of re-reviewing the documents listed in the various exhibits to plaintiffs' letter of December 11, 2018, Teva will identify, correct, and re-produce any documents that were redacted inadvertently.

## II.     Teva Properly Redacted Non-Responsive, Confidential Business Information

Plaintiffs next contend that Teva "improperly withheld and redacted as 'non-responsive'" documents related to Teva's production pipeline for drugs **other than** Effexor.  Plaintiffs' Letter at 3.  But there is nothing improper about redacting non-responsive and confidential business information.  To the contrary, both the Discovery Confidentiality Order and the ESI Protocol specifically contemplate and authorize the redaction of "non-responsive Confidential Information."  *See* R. 245 at 12, PageID # 3820 (Order on ESI Protocol); R. 244 at 12, PageID # 3792 (Discovery Confidentiality Order).  Indeed, the parties extensively negotiated and agreed to these provisions, later adopted by the Court, with the express understanding that confidential information regarding unrelated drug products would be redacted.[2]

That is precisely what Teva has done here.  Specifically, plaintiffs' requests for production related to Effexor do not entitle plaintiffs to rummage through highly sensitive business information relating to Teva's full stable of drugs—all of which are completely distinct from Effexor and the disputes in this case.

Without any legal basis, plaintiffs invite Teva to "stipulate now that [it] will not raise any defenses relating to Teva's readiness, willingness, or ability to launch its generic Effexor XR earlier than July 1, 2010[.]"  Plaintiffs' Letter at 3.  Teva declines this invitation.  Nor do plaintiffs have any basis to demand that Teva either waive possible defenses or else produce highly confidential business information that is non-responsive to plaintiffs' requests for production.

Plaintiffs also "request that Teva confirm why [the documents listed in Exhibit C] have been withheld."  Plaintiffs' Letter at 4.  After a thorough re-review of the 700+ documents listed in Exhibit C, Teva can confirm what plaintiffs already suspected—the documents listed in Exhibit C are non-responsive in their entirety but were nonetheless produced in redacted form because plaintiffs requested that even non-responsive documents be produced when they "are part of a document family that includes responsive documents."  *Id.*  There are, however, two documents

---

[2] This is all the more necessary given plaintiffs' insistence that even entirely non-responsive documents be produced if they part of a document family that includes one responsive document.

# KIRKLAND & ELLIS LLP

Ms. Erin C. Burns
January 9, 2019
Page 3

that were accidently over-redacted.  These documents will be reproduced with the appropriate redactions.

### III.     Teva Will Correct And Withdraw Notations that Misidentify Non-Responsiveness Redactions as Privilege Redactions

Plaintiffs' next identify in Exhibit D 15 documents that were logged as containing privilege redactions but that actually contain only non-responsiveness redactions.  Plaintiffs' Letter at 5. After reviewing those documents, Teva can confirm that the privilege notations were inadvertent but that the documents were appropriately redacted for non-responsiveness.  Teva therefore withdraws its privilege assertions as to the 15 documents listed in Exhibit D and will adjust the privilege log accordingly.

### IV.     Teva Has Already Accommodated Plaintiffs' Request to Re-Produce Select Documents in More Legible Form

Finally, plaintiffs identify various documents that were "partially illegible."  Plaintiffs' Letter at 5.  On January 8, 2019, Teva re-produced those documents after ensuring their legibility.

*     *     *

Once Teva has finished re-reviewing and (where necessary) correcting and re-producing the documents challenged by plaintiffs, Teva will provide plaintiffs with its availability to meet and confer about any remaining questions that plaintiffs might have.


Sincerely,

/s/ Matthew P. Downer

Matthew P. Downer

# EXHIBIT G



**CAITLIN G. COSLETT** / *SHAREHOLDER*
**p.** 215.875.3057 | ccoslett@bm.net

November 19, 2018

**VIA EMAIL**
Jonathan D. Janow, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

RE: *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

I write on behalf of all Plaintiffs to respond to your letter of October 19, 2018, to follow up on my November 2, 2018 letter, and to raise three additional issues regarding Teva's document production.

### I.    Additional Custodians

As an initial matter, Plaintiffs disagree with your suggestion, in your October 19, 2018 letter, that Plaintiffs' September 26, 2018 letter requesting that Teva add additional document custodians somehow breached a purported agreement the parties reached on a "final list" of custodians on May 18, 2018.  While the parties negotiated that list together in good faith pursuant to the ESI Order, the parties are not precluded from adding additional custodians.  The ESI Order specifically contemplates that additional custodians may be added during discovery.  *See* ECF No. 245 at ¶ 2(e)(ii) ("…each Party may, upon reviewing documents actually produced in the Litigation, and conducting other investigation and discovery, request the files from additional custodians be searched. The parties agree to meet and confer in good faith concerning any such requests.").

Plaintiffs appreciate Teva's agreement to add Debbie Jaskot and Robert Vincent as document custodians as set forth in your October 19 letter.  Please confirm that you will search Ms. Jaskot's and Mr. Vincent's files and produce responsive documents no later than December 7, 2018.  In addition, Plaintiffs' review of Teva's document production to date, including Teva's October 19, 2018 production, makes clear that Teva should also add Idit Shallem as a custodian (in addition to Ms. Jaskot and Mr. Vincent).  Ms. Shallem appears to have been the point person for Teva in Israel who was responsible for Teva's Effexor XR ANDA and was involved with drafting the first responses to FDA deficiency letters on CMC issues, based on information she obtained



from others at Teva Israel and Teva USA.  Because she appears to have interacted with others at her level or below within Teva's hierarchy, Ms. Shallem's ESI would not be duplicative of other Teva custodians, who are more senior.[1]  Plaintiffs thus renew our request that Teva add Ms. Shallem as a custodian.  By November 27, 2018, please confirm that you will search Ms. Shallem's files and produce responsive documents on or before December 7, 2018.

## II.   Generic Effexor XR Sales Data

Teva has not responded to my November 2, 2018 letter raising Teva's failure to produce data showing Teva's sales of generic Effexor XR to direct purchasers, and related data showing price adjustments, chargebacks, returns, etc.  Unless Teva produces the requested data by November 27, 2018, we will understand that Teva is refusing to do so and will seek Court intervention.

## III.   Other Gaps In Teva's Document Production

Through our ongoing review of Teva's document production, Plaintiffs have thus far discovered three other gaps in Teva's document production.

### a.   Teva Forecasting Documents

Teva has not produced its Effexor XR forecasting documents from the period prior to the challenged Wyeth-Teva agreement.[2]  This gap in Teva's production is made evident by the fact that Wyeth's production includes what appears to be a pre-settlement Teva forecasting document that was not produced by Teva: WYEFFAT2163587, which was marked as Exhibit 17 in the January 1, 2005 deposition of Teva's corporate designee Anne Payne.  Ms. Payne testified that Exhibit 17 was prepared by Teva's Jennifer King.  *See* WYEFFAT2411831.  Teva's production, however, includes no native versions or legible images of the forecasts included in Exhibit 17 or any similar forecasts pre-dating the challenged reverse payment agreement despite the fact that Ms. King is an agreed-to custodian.  It thus appears that Ms. King's files have not been adequately searched.  Please investigate and produce by December 7, 2018 responsive forecasting documents from Ms. King's files, including

---

[1] Moreover, purported overlap between and among potential custodians is no reason not to include all such individuals as custodians.  Section C.4 of the ESI Protocol provides that the same document need not be produced more than once.  Thus, searching Ms. Shallem's files will result only in the production of additional, non-duplicative responsive documents and will not cause Teva to produce multiple copies of the same documents due to any purported overlap between the documents included in the files of multiple custodians.

[2] These documents were sought by, *inter alia*, Requests for Production Nos. 21-23, 72, 75-76.

November 19, 2018
Page 3 of 4



forecasting documents created before the challenged agreement and including a legible versions of the source documents included in Payne deposition Exhibit 17.

It also appears that Anne Payne's files should be searched—by November 27, 2018, please confirm that Teva will do so and will produce responsive documents no later than December 7, 2018.  Also by November 27, 2018, please identify any additional custodians and/or search terms that must be added to capture the requested forecasting documents, including any centralized files or servers that should be searched.  If the requested forecasting documents have been destroyed, please explain when and why they were destroyed.

### b.    Litigation Expenses (Request for Production No. 13)

Plaintiffs have searched for and been unable to locate any documents responsive to Request for Production No. 13 to Teva, which seeks documents concerning (i) the total litigation expenses incurred by Teva in connection with the *Wyeth v. Teva Pharmaceuticals*, No. 03-cv-01293 (D.N.J.) ("Wyeth-Teva Litigation") from inception to November 2, 2005; (ii) as of November 2, 2005, the expected, estimated, or projected future litigation expenses to Teva associated with continuing to litigate the Wyeth-Teva Litigation to resolution; and (iii) the total amount of expected, estimated or projected future litigation expenses avoided by Teva as a result of entering into a settlement of the Wyeth-Teva Litigation.[3]  Please either produce responsive documents by November 27, 2018 or confirm that you have searched for and been unable to locate any documents responsive to this Request, and explain why such documents do not exist.  Or, if such documents have been improperly redacted, please produce by November 27, 2018 unredacted versions of these documents.[4]

### c.    Joint Pretrial Order Documents

Plaintiffs' Request for Production No. 2 to Teva requested production of the litigation file in unredacted form for the Wyeth-Teva Litigation.  Neither Teva nor Wyeth has produced the October 11, 2005 proposed Joint Pretrial Order or the October 12, 2005 final Joint Pretrial Order.  Please produce the proposed and final Joint Pretrial Order from the Wyeth-Teva Litigation on or before November 27, 2018.

* * * * *

---

[3] This includes, for example, budgets, forecasts, or estimates concerning Teva's litigation expenses in connection with the Wyeth-Teva Litigation.

[4] For example, it appears that documents such as TEVA_EFFEX_0476294 may include relevant information, but the potentially relevant information has been redacted.

November 19, 2018
Page 4 of 4



     We look forward to your prompt attention to these issues given that the Court-ordered completion date for document production has passed.

Sincerely,

/s/ Caitlin G. Coslett

Caitlin G. Coslett

cc:    Counsel of Record

# EXHIBIT H

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Jonathan D. Janow
To Call Writer Directly:
+1 202 879 5203
jonathan.janow@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005
United States

+1 202 879 5000

www.kirkland.com

Facsimile:
+1 202 879 5200

December 3, 2018

**Via Email**

Ms. Caitlin G. Coslett
Berger & Montague L.P.
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Re:   *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

We write in response to Caitlin G. Coslett's November 19, 2018 letter regarding requested additional custodians and purported gaps in Teva's document production.

## I.   Additional Custodians

As mentioned in our October 19, 2018 letter to plaintiffs, and given the confirmation received in your November 19 letter, Teva will collect data for Deborah Jaskot and Robert Vincent using the regulatory-related searches identified as falling within RFP Categories H and I in the "Teva Search Periods" chart attached to our May 18, 2018 letter, and as modified by your September 26, 2018 letter.

Regarding your request that Teva add Idit Shallem as an additional custodian relating to these same regulatory issues, for the reasons stated in our October 19, 2018 letter, Teva believes that it has already searched the appropriate set of custodians relating to plaintiffs' regulatory-related requests, especially in light of Teva's agreement to supplement the previously agreed custodians with a search of Ms. Jaskot and Mr. Vincent's documents.  Teva's custodian list now includes four individuals who span the relevant time period of plaintiffs' requests, and who held positions in various levels of Teva's regulatory affairs department.

Teva also objects to plaintiffs' new request to add Anne Payne as an additional custodian. Plaintiffs cite the fact that Ms. Payne was asked about a single so-called "forecasting" document in her 2005 deposition as Teva's 30(b)(6) witness as the sole basis for plaintiffs' purported need for a search of her documents.  However, as her deposition makes clear, Ms. Payne testified that Jennifer King was the Teva employee in charge of creating or coordinating similar documents

# KIRKLAND & ELLIS LLP

Ms. Caitlin G. Coslett
December 3, 2018
Page 2

related to market analysis, and Ms. Payne explained repeatedly that she conferred with Ms. King in preparation for the deposition for that reason.  And although plaintiffs propose Exhibit 17 to Ms. Payne's deposition as the type of document that Ms. Payne might possess, Ms. Payne testified that it was Ms. King who created Exhibit 17.  *See* WYEFFAT2411831 at 170 ███████. This testimony makes clear that Teva has already searched and produced documents from the appropriate custodian relating to plaintiffs' request: Jennifer King.

For Teva's production of Ms. Jaskot and Mr. Vincent's documents, plaintiffs now request that Teva "produce responsive documents on or before December 7, 2018."  Plaintiffs waited a month to respond to Teva's October 19, 2018 proposal and now request that Teva produce documents from two new custodians in two and a half weeks.  Such a request is untenable.  Teva has begun collecting the requested documents, and Teva will produce responsive, non-privileged, and non-duplicative documents for the above-named custodians within a reasonable period allowing for appropriate processing and review.

## II.  Sales Data

Please see Teva's document production and letter to plaintiffs from November 19, 2018, in which Teva produced the agreed upon sales data and responded to plaintiffs' letter concerning sales data.

## III.  Purported Gaps in Teva's Production

Teva disagrees with plaintiffs' assertion that there are "three other gaps in Teva's document production."  After reviewing plaintiffs' contentions, Teva confirms that Teva collected, reviewed, and produced non-privileged documents responsive to plaintiffs' requests using the parties' agreed upon search parameters.

### a.  Market Analysis Documents

Plaintiffs contend "Teva has not produced its Effexor XR forecasting documents from the period prior to the challenged Wyeth-Teva Agreement."  For support, plaintiffs cite a single document found in Wyeth's production of materials from the underlying patent litigation that is not found in Teva's production as evidence that Teva failed to appropriately search for and produce the entire class of similar documents.  Plaintiffs' argument is a non sequitur.

Using expansive agreed search terms negotiated with plaintiffs over the course of several months, Teva searched the files of the agreed custodians—including Ms. King, the custodian plaintiffs themselves identify as most appropriate in this context—and produced or logged all

## KIRKLAND & ELLIS LLP

Ms. Caitlin G. Coslett
December 3, 2018
Page 3

spreadsheets, presentations, and other documents prior to (and after) the execution of the Wyeth-Teva Agreement responsive to plaintiffs' Requests Nos. 21–23, 72, and 75–76.  Plaintiffs' argument ignores the myriad of practical reasons why a single and apparently scanned hard-copy document from 2003 may not have been collected and produced in 2018, and plaintiffs' argument is incompatible with the fact that Teva produced other documents responsive to these requests, including documents from before the Wyeth-Teva Agreement.

Teva accordingly declines plaintiffs' invitation to provide "additional custodians and/or search terms that must be added to capture the requested forecasting documents."  Teva has already completed a more-than reasonable search for these types of documents via its collection and production of documents responsive to plaintiff's requests using the parties' expansive agreed upon search terms (including T41, T54, T91, and T91A) against all previously agreed custodians including the individual custodian plaintiffs state is most relevant here.

### b.  Litigation Expenses

Plaintiffs state that they are unable to locate any documents responsive to plaintiffs' Request No. 13, which seeks documents regarding litigation expenses in *Wyeth v. Teva Pharmaceuticals*, No. 03-cv-01293 (D.N.J.).  Plaintiffs assert that Teva either failed to produce documents responsive to this request or inappropriately redacted the responsive documents.  Plaintiffs cite TEVA_EFFEX_0476294 as a document where it appears that "potentially relevant information has been redacted."

Teva collected and reviewed documents using the parties' agreed upon search terms for Teva's custodians, which included four members of Teva's legal team.  Teva confirms that it produced or logged all documents that may be responsive to plaintiffs' request regarding litigation expenses.  Further, Teva confirms that it properly produced TEVA_EFFEX_0476294 and all responsive information is left unredacted in that document.

### c.  Joint Pretrial Order Documents

Teva and Wyeth are in the process of searching for the two specific documents requested in Section III.c. of plaintiffs' November 19, 2018 letter.  Teva will produce the documents if they are in Teva's possession, custody, or control, or in the alternative, consent to Wyeth's production of those documents if they are in Wyeth's possession, custody, or control.

\* \* \* \* \*

As a final matter, we look forward to hearing back from plaintiffs regarding the status of plaintiffs' production of agreed transaction data as requested in our November 19, 2018 letter.

# KIRKLAND & ELLIS LLP

Ms. Caitlin G. Coslett
December 3, 2018
Page 4

Sincerely,

*/s/ Jonathan D. Janow*

Jonathan D. Janow

CC: All Counsel of Record

# EXHIBIT I

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

|  | 655 Fifteenth Street, N.W. |  |
|---|---|---|
|  | Washington, D.C. 20005 |  |
| Jonathan D. Janow | United States |  |
| To Call Writer Directly: |  | Facsimile: |
| +1 202 879 5203 | +1 202 879 5000 | +1 202 879 5200 |
| jonathan.janow@kirkland.com |  |  |
|  | www.kirkland.com |  |

May 18, 2018

**Via Email**

Ms. Caitlin G. Coslett
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6305

Re:     *In re Effexor XR Antitrust Litigation*, Case No. 3:11-cv-05479 (D.N.J.)

Dear Counsel:

I write in response to Caitlin G. Coslett's letter of May 14, 2018 regarding Teva and plaintiffs' ongoing meet-and-confer discussions concerning the agreed parameters of Teva's ESI searches and collection, and specifically regarding the final remaining points of discussion on relevant search periods. In order to reach final agreement and conclude our meet and confer with plaintiffs regarding search terms, custodians, and search-date limitations, Teva agrees to plaintiffs' proposed edits as laid out in the attachment to your letter of May 14, 2018 and as confirmed in Teva's attachment herewith. In the attachment to your letter of May 14, 2018, however, plaintiffs list search string T68 twice—once in each of the two date ranges for category I. Teva presumes that plaintiffs meant for T68 to be included in the January 1, 2002 to July 1, 2010 date range in which it was specifically referenced, and Teva made that minor correction. Please advise us immediately if this is incorrect.

The final list of Teva search terms, custodians, and time periods as have been agreed to by Teva and plaintiffs is attached.

Sincerely,

/s/ Jonathan D. Janow

Jonathan D. Janow

Beijing   Boston   Chicago   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai

## Teva Custodians



## Teva Search Periods





## Teva Search Strings











8

