RECEIVED

JUL 3 1 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK


RECEIVED

JULUB 8 302019

AT 8:30:30_____M M
WILLIAM T. WALSH
CLERK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: EFFEXOR XR ANTITRUST LITIGATION** | Lead Case: 3:11-cv-05479 (PGS)(LGH)<br><br>**DECISION AND ORDER RELATING TO *IN CAMERA* REVIEW** |

**Jonathan J. Lerner, Special Discovery Master**

This discovery dispute was submitted by Plaintiffs and Defendant Teva ("Teva") by joint letter dated June 27, 2019 (the "June 27 Letter") addressed to Magistrate Judge Goodman [ECF#598]. It involves a challenge by Plaintiffs to the invocation by Teva of the attorney-client privilege as the basis for redacting or withholding of certain documents from discovery. The discovery dispute comes within the delegation of responsibility to the Discovery Master pursuant to Paragraph 4 of the Order Appointing Discovery Master "to decide, in the first instance, all discovery disputes that have been raised in letters to Magistrate Judge Goodman and all future discovery disputes that otherwise would have been directed to Magistrate Judge Goodman in these matters" [ECF#603]

I. Background

– Plaintiffs' Position

According to Plaintiffs, "Teva has improperly withheld and redacted relevant factual information involving dates on which Teva expected to launch generic Effexor XR that is not protected by the attorney-client privilege." (June 27 Letter at 1.) There are 110 contested documents listed on Teva's privilege log, which is provided as Exhibit D to the June 27 Letter.

Plaintiffs contend, "None of the documents in Exhibit D were sent to counsel or contained legal advice of counsel; otherwise, Teva would have listed the name of the counsel in these privilege log entries either as the senders, recipients, or sources of privilege in the description field." (June 27 Letter at 1 n.2.) According to Plaintiffs, "Attorneys had no involvement in authoring these documents and even if they had, the facts contained in the documents are not legal advice that a party can exclude from discovery via privilege claims." (June 27 Letter at 2 n.2.) More specifically, Plaintiffs contend "Teva improperly withheld or redacted purely factual information concerning the anticipated launch date for generic Effexor XR", and that "Teva did not redact legal advice, but rather redacted the date information showing when Teva anticipated launching its generic Effexor XR. The information Teva redacted reflects Teva's business judgment about when Teva would be ready, willing, and able to enter the market for generic Effexor XR, not legal advice." (June 27 Letter at 5.)

- Teva's Position

Teva advances the completely opposite position. It contends, "The information sought by Plaintiffs was appropriately withheld or redacted as privileged because the documents contain legal analysis and conclusions, provided by members of Teva's Legal Department, and the majority of these documents contain specific disclaimers stating as much." (June 27 Letter at 11.) According to Teva,

> [I]t determined that information related to As Early As and As Late As potential launch date assessments were projections based upon legal advice, and Reasons for Change were short summaries of the legal basis for any changes to the early and late launch date assessment columns."(Id.)

- The Dispute Over *In Camera* Inspection of the Challenged Documents

Not surprisingly, the Parties also disagree about the appropriate record on which the privilege dispute should be adjudicated. The Plaintiffs contend, "*In camera* review may be

2

necessary to determine the adequacy of claims of privilege where, as here, a party's claim of privilege fails to identify a specific counsel and merely states the document was ' requested by or generated by an attorney.'" (June 27 Letter at 3.) In sharp contrast, Teva opposes *in camera* review. Even though it bears the burden to establish the attorney-client privilege applies (see e.g., In re Grand Jury, 705 F.3d 133, 160 (3d Cir. 2012); Conoco v. United States Department of Justice, 687 F.2d 724, 730 (3d Cir 1982)), Teva argues, "Plaintiffs' request for *in camera* review is at odds with the realities of their request. The only relevant portions of the documents that are redacted as privileged are either date assessments or the legal analysis for changes in the date assessments. The parties, and now the Court, know the type of information that Teva redacted. The question before the Court is whether such content is appropriately redacted as privileged, which does not require *in camera* review." (June 27 Letter at 14-15 n.15.)

Because the Parties' disagreement about *in camera* review affects the content of the record for disposition of the underlying privilege dispute, it presents a threshold issue that is anterior to their underlying dispute over whether the redacted information is privileged. Accordingly, this issue is addressed and decided below.

II.     The law applicable to *In Camera* Review.

In United States v. Zolin, 491 U.S. 554, 568-69 (1989), the Supreme Court stated, "[T]his Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection, and the practice is well established in the federal courts." The Court of Appeals for the Third Circuit has specifically endorsed the use of *in camera* review to evaluate privilege claims seeking to shield documents from disclosure. Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120,125 n. 2 (3rd Cir 1986). Courts in this district, and elsewhere within the Third Circuit, frequently review documents *in*

3

*camera* to determine whether claims of attorney-client privilege are warranted. See, e.g., Immunex Corp. et al. v. Sandoz Inc., Civ. Action No. 16-1118 (CCC) (D.N.J. June 7, 2017) (Falk, M.J.); King Drug of Florence, Inc. v. Cephalon, 2011 WL 2623306 (E.D. PA. July 5, 2011); FTC v Abbvie, Inc., 2015 WL 8623076 (E.D. PA. Dec. 14, 2015).

In Zolin, where the government asserted the privilege did not apply due to the crime-fraud exception, the Supreme Court held that *in camera* review is not "always permissible," and that a threshold showing was required before an *in camera* review could be ordered: "The judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review may reveal evidence to establish the claim that the crime-fraud exception applies". (491 U.S. at 570.) Once the initial showing is made, the decision to require an *in camera* review is within the discretion of the district court:

> Once that showing is made, the decision rests in the sound discretion of the district court. The court should make the decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court will establish that the crime-fraud exception does apply."

(Id. at 572.)

In adopting a threshold standard for *in camera* review, the Supreme Court noted, "there is no reason to permit opponents of the privilege to engage in groundless fishing expeditions". (Id.at 571; emphasis added.) Significantly, it observed, however, that "the threshold we set need not be stringent one". (Id. at 572; emphasis added.) In keeping with Zolin, courts have characterized the required showing that must be met before permitting an *in camera* review as "minimal" and a "low threshold". In re Grand Jury Investigation, 974 F.2d 1068, 1072 (9th Cir. 1992)("The low threshold set out in Zolin does not result in automatic review. Although the burden is relatively minimal, an evidentiary threshold must first be met by

4

the party requesting the review before the court may exercise its discretion;"(emphasis added).); compare Rock River Communications, Inc. v. Universal Music Group, 730 F.3d, 1060, 1068 (9th Cir 2013) (affirming decision rejecting requested *in camera* review where "belief that the documents are not privileged appears to be based on little more than unfounded suspicion.")

    Indeed, recent Circuit Court decisions have mandated lower courts to conduct *in camera* reviews of withheld documents before deciding whether they are privileged—without even mentioning any required evidentiary threshold. See United States v. Deloitte LLP, 610 F.3d 129,139 (D.C. Cir. 2010) (Vacating district court's decision that Deloitte memorandum was product and remanding "so the district court can examine the document in camera to determine whether it is entirely work product", holding "[W]e conclude that the district court did not have a sufficient evidentiary foundation for its holding that the memorandum was work product."). In reversing a district court's refusal to review *in camera* two memoranda and its holding that the attorney-client and work product privileges shielded the documents from disclosure, a Panel of the Ninth Circuit Court of Appeals stated, "Our resolution of the case would be greatly facilitated by a more informed analysis from the district court. More specifically, we prefer the district court review the documents *in camera* and reconsider its ruling on the asserted privileges following its review of the pertinent documents. Accordingly, we vacate and remand this case for the district court to review the 2006 and 2009 memos *in camera* to determine to determine whether the documents are privileged to any degree." United States v. Sanmina Corp. (9th Cir. Dec. 20, 2017) (Unpublished and Non precedential memorandum decision).

III. <u>Application</u>

- <u>Good Faith Belief</u>

As the party asserting privilege as a basis to resist discovery, it is well established that Teva bears the burden of proof. <u>In re Grand Jury</u>, <u>supra</u>, 705 F.3d at 160; <u>Conoco v. United States Department of Justice</u>, <u>supra</u>, 687 F.2d at 730. In this case, Teva also acknowledges that its inability to identify a specific attorney to anchor its claim of attorney-client privilege, at the very least, subjects its privilege claim to "close judicial scrutiny". (June 27 Letter at 10-11.) It also correctly observes, "[t]o evaluate a privilege claim appropriately, a court must distinguish between legal advice and business advice, as well as between legal advice and facts. In the corporate context, 'legal advice is often intimately intertwined and difficult to distinguish from business advice.'" (June 27 Letter at 11; citations omitted.) In <u>American Nat. Bank and Trust Co. v. Equitable Life Soc. Of the United States</u>, 406 F.3d 867, 879 (7th Cir. 2005), the Court observed that "distinguishing in-house counsels' legal advice from their business advice" involved, "treading in an area of privilege law that is generally recognized to be 'especially difficult'". The very difficulty in making the correct call on this "especially difficult" distinction between business and legal advice supports the good faith of Plaintiffs' challenge.

Although Teva has not identified a specific lawyer who provided the legal advice that underpins its attorney-client privilege claim, it is undisputed that any legal advice emanated from Teva's Legal Department : "The information sought by Plaintiff...contains legal analysis <u>by members of Teva's Legal Department</u>." (June 27 Letter at 11; emphasis added.) As a result, Teva's already heavy burden to survive "close judicial scrutiny" of its privilege claim is heightened further, "In recognition that 'in house counsel performs a dual role of legal advisor and business advisor' (citation omitted) 'the corporation <u>must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business</u>

6

advice'." FTC v. Abbvie, Inc., supra (emphasis added). Given the "minimal" evidentiary threshold to warrant an *in camera* review, the heavy lift imposed on Teva by these burdens to sustain privilege claims predicated on legal advice from unidentified members of the Teva Legal Department, standing alone, might suffice to establish the "good faith belief" required by Zolin..

In all events, the record bristles with other serious issues that would support a "good faith belief by a reasonable person" that Teva's privilege claims may not prevail. As Teva puts it, there are two types of information at issue here, "To be clear,[1] the information in the early and late launch date assessment columns, [2] as well as columns containing the legal basis for changes to these date assessments, are not facts, but rather legal analysis and conclusions from Teva's Legal department." (June 27 Letter at 12.) More specifically, "Teva took the approach of redacting the 'As early as' and 'As late as' columns for venlafaxine, and any column containing the legal rationale for changing these date assessments (i.e., the 'Reason for Change column' as privileged.") (Id. at 14.) On their face, it is by no means self-evident from the redacted documents themselves that launch date columns are natural or likely places to contain privileged legal advice, and the so-called "spread sheets" were created by business people for business purposes, not by the Legal Department. Significantly, the disclosure of the early or late anticipated product launch dates themselves ordinarily would not reveal the content of the legal advice that may have contributed to—or even dictated—the selection of those dates. See In Re: Niaspan Antitrust Litigation, MDL 13-MD-2460 (E.D. Pa., May 23, 2018) (Testimony that "Barr would not have launched "at risk" that "did not mention advice of counsel or the merits of underlying patent litigation"[and therefore]" fails to show testimony implicates attorney advice." The Court of Appeals has held that, "a litigant [cannot] refuse to disclose facts simply because that information came from a lawyer." Rhône-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d

7

851, 864 (3rd Cir 1994). Accord, In re Effexor XR Antitrust Litig., No. 3:11-cv-05479 (May 23, 2019) (ECF#590) at 23 ("Defendants argue 'facts' cannot be protected and, indeed, the Third Circuit has said as much, at least with respect to attorney client privilege.") According to Teva, "While some of the redacted analysis was conveyed in the form of (then) future date assessments, the mere fact that the analysis was reduced to a date assessment (sometimes with rationale) cannot mean, as a categorical matter, that the information was purely factual." (June 27 Letter at 12.) Even if Teva's position were not subject to "close judicial scrutiny", its conclusion that the date assessments constitute "legal advice", and not facts, is a subject of good faith debate, and on the record here is sufficient to permit *in camera* inspection of the unredacted documents to inform the privilege decision. As the Seventh Circuit stated in American Bank &Trust Co., supra, in language equally applicable here, "Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-privilege in fact applies." (Quoting Holifield v. United States, 909 F.2d 201, 294 (7th Cir 1990).)[1]

---

[1] The Third Circuit has recognized that documents within the attorney-client privilege are "zealously protected" and that protection of privileged communications "is a professional mandate". Haines v. Liggett Group, 975 F.2d 81, 90 (3d Cir. 1992). Thus, both Teva and its counsel are entitled to advocate an expansive interpretation of the attorney-client privilege as long as it is predicated on a good faith basis. Indeed, "it is expected that clients and their attorneys will 'zealously' protect documents believed, in good faith, to be within the scope of the privilege". American National Bank and Trust Co. v. Equitable Life, 406 F. 3d 867, 878-79 (7th Cir. 2005). Where, as here, the privilege issue is complex and Teva has exclusive knowledge of the redacted information on which its interpretation of the attorney-client privilege is based, it is especially appropriate to review the documents claimed to be privileged *in camera* to assure the adjudication of the privilege dispute is made on an informed basis. United States v. Tratner, 511 F.2d 248, 252 (7th Cir. 1975) ("'The responsibility of determining whether the privilege exists rests upon the District Judge and not upon the lawyer whose client claims the privilege.' Where this evidence may be presented only by revealing the very information sought to be protected by the privilege, an in camera inspection of the evidence may be appropriate." (quoting NLRB v. Harvey, 349 F.2d 900, 907 (4th Cir. 1965))).

Newmark v. BGC Partners, Inc., Case No. 16- Civ- 01702 (N.D. Ca. May 24, 2018) is instructive. In Newmark, the court considered whether the Zolin threshold for *in camera* inspection was met by certain redactions made by Plaintiff to marketing activity summaries which the privilege log asserted contained "privileged and work product information communicated to one of plaintiff's employees reflecting strategy and legal advice from Plaintiff's attorneys on various topics identified in the log". Plaintiff agued "Defendants' alleged infringement has forced Plaintiff to engage in corrective advertising" and therefore "it was unsurprising that legal issues and related legal advice would appear in marketing activity summaries, which was prepared for one of Plaintiff's board members who is managing this litigation and coordinating with Plaintiff's counsel." But it was undisputed in Newmark, as it is here, that the redacted portions "were prepared by one non-attorney for another non-attorney employee and the redactions appear in portions of the document that do not, on their face, relate to legal issues." On those facts, "the Court acknowledges the possibility that the redactions contain attorney-client privileged communications or work product, but on balance Defendants have established reasonable, good faith doubts about the propriety of the redactions. In particular, the location of redactions do not appear to be a natural location where privileged or work product materials would be included. Accordingly...the Court exercises its discretion to order an *in camera* review."

It bears emphasis that the determination there is sufficient evidence on the record here to permit *in camera* review of the documents listed on Exhibit D is based on the low bar imposed by the "minimal" Zolin threshold. Accordingly, it is by no means indicative that Plaintiffs ultimately will prevail on the underlying privilege issues.

9

In light of determination that *in camera* review is permissible, it is appropriate to consider the other practical factors outlined in Zolin to determine whether an *in camera* inspection is appropriate and that discretion should be exercised here.

- The Importance of the Allegedly Privileged Information

Under Zolin, if the disputed information is insignificant to the case, *in camera* review still may not be appropriate, especially if the *in camera* review would divert significant judicial resources. In this case, the information Plaintiffs are seeking pertaining to the Teva's contemplated launch dates for generic Effexor XR is potentially important to this case. As described by the Court of Appeals for the Third Circuit in its decision in this case, among Plaintiffs' "key allegations" is that as part of the settlement agreement to resolve the patent litigation by Wyeth against Teva, "Wyeth agreed it would not compete with Teva by producing an authorized generic of either Effexor XR or Effexor IR" which "allegedly constituted a substantial, net payment by Wyeth to Teva in exchange for Teva agreeing to delay generic entry much later than it otherwise would have....According to Effexor Plaintiffs, Teva's promise to delay entry of generic Effexor XR 'meant that United States drug purchasers paid billions of dollars more for extended release venlafaxine than they would have absent the Wyeth-Teva agreement.'" In Re Lipitor Antirust Litigation, 868 F.3d 231,258 (3d Cir. 2017; emphasis added). In this context, the allegedly privileged information sought by Plaintiffs relating to Teva's contemplated potential launch dates for its generic Effexor XR before, after and during the Settlement, and the reasons for any changes in its contemplated entry into the market, could provide important evidence pertaining to these "key allegations". Therefore, this factor weighs in favor of *in camera* review.

10

- The likelihood the *in camera* evidence will help resolve the privilege issues

If a review of the evidence would not inform the outcome of the privilege dispute, Zolin counsels this factor would tilt against conducting *in camera* review. It is likely the unredacted documents to be reviewed *in camera* will provide evidence illuminating the ultimate privilege issue. In the June 27 Letter, Teva urges that the "As early as" and "As late as" date assessments that were redacted constitute legal advice from members of its Legal Department. According to Teva, the redacted information also contains columns providing "the legal rationale for changing the date assessments." At a minimum, the redacted information in the Reasons for Change columns describing the reasons those contemplated launch dates were changed can be expected to assist in validating—or invalidating—the description in the privilege log that these descriptions are the contemplated launch dates "convey[] legal advice and analysis from Teva Legal Department". Accordingly, this factor also weighs in favor of *in camera* review.

- The volume of materials to be reviewed *in camera*

Finally, Zolin instructs consideration also be given to the magnitude of the task and whether undertaking an in camera review will unduly impact judicial resources. Here, the total number of documents in dispute is limited to 110 and many are repetitive types of spread sheets that could limit the task further. Accordingly, the number of documents to be reviewed *in camera* is manageable.

In American Nat. Bank and Trust Co., supra, a sanctions case, the Court of Appeals for the Seventh Circuit criticized the lower court for refusing to conduct an *in camera* inspection of all but a small percentage of 408 documents that were subject to claims of privilege. The Court of Appeals carefully described the proceedings below for resolving the privilege claims, "The process for winnowing down the number of privileged documents was

11

tedious and protracted." The Court found the root of the problem was the lower court's refusal to conduct a full *in camera* review of each of the documents:

> The Magistrate Judge's continued refusal of a full, document by document *in camera* inspection was not helpful. By effectively taking full *in camera* review off the table the magistrate judge created a situation that got out of hand: with that option unavailable, the magistrate judge inevitably struggled to find a way of fairly resolving the parties' disputes...To avoid this unfortunate situation, while still addressing Emerald's privilege concerns, the magistrate judge should have reviewed more than the total of forty-four documents reviewed....[T]he magistrate judge given the manageable quantity of documents at issue, should have simply instituted a procedure by which he would review (himself or through a Special Master) every document contested by Emerald—even if that meant every document in that half box.

406 F.2d at 879-880.

Here the volume of challenged documents is a small fraction of the number the Seventh Circuit ordered to be reviewed *in camera* in <u>American Nat. Bank and Trust Co</u>. In any event, any possible diversion of judicial resources stemming from an *in camera* review already has been ameliorated by the Court's appointment of a Special Discovery Master. As one commentator observed, "To mitigate the burden of *in camera* review...district courts send out work.... They may and do appoint special masters under FRCP 53. Delegation and sampling often work together to strike the balance the often competing goals of getting it right and getting it done, while also providing reviewing courts a record to decide whether the district court's ultimate decision was indeed an abuse of discretion." B. Camp, A New *In camera* Review requirement For Summons Proceedings? Tax Notes Feb. 26, 2018 at 1201.

IV. Conclusion

Based on the arguments advanced by both sides in the June 27 Letter and a review of the accompanying exhibits, the record is sufficient to establish that Plaintiffs' challenge to Teva's privilege claims to the Documents listed on Exhibit D is based on "a good faith belief by a

reasonable person". Accordingly, the threshold showing to permit an *in camera* review required by Zolin has been met.

The remaining decisional factors established by Zolin also weigh in favor of conducting an *in camera* review. An *in camera* review of the challenged documents in exhibit D plainly meets all the Zolin tests, will enable a more informed and principled decision to be made on the challenges to Teva's privilege claims, and will provide a better record for Judge Sheridan (and the Circuit Court) should either party seek further review of the decision on the ultimate privilege issue.

Accordingly, Teva shall submit for *in camera* review an unredacted copy of each of the documents listed on Exhibit D to the June 27 Letter by August 9, 2019.

Dated: July 31, 2019

JONATHAN J. LERNER

/s/: Jonathan J. Lerner

Special Discovery Master

13