# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE: EFFEXOR XR ANTITRUST
LITIGATION

This document relates to:

Direct Purchaser Class Actions

Master Docket No. 3:11-cv-5479
(PGS/JBD)

### SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on March $\underline{2\,l}$, 2024, by

and between Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall

Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company (collectively or

individually, "Wyeth"), by and through their counsel White & Case LLP, and

Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc. d/b/a SAJ

Distributors, and Uniondale Chemists, Inc. (collectively, "Named Plaintiffs," "Direct

Purchaser Plaintiffs," or "Plaintiffs"), individually and on behalf of the Direct

Purchaser Class (as defined in Paragraph 1 below, the "Direct Purchaser Class" or

"Class"), by and through Hagens Berman Sobol Shapiro LLP, Berger Montague PC,

Faruqi & Faruqi LLP, Taus, Cebulash & Landau, LLP, NastLaw LLC, and Barrett

Law Group, P.A., in their capacity as Interim Class Counsel Executive Committee

for the Direct Purchaser Class, *see* ECF No. 85 (Dec. 13, 2011), ("Lead Class

Counsel") in the above-captioned litigation. This Settlement Agreement is intended

1

to, and upon occurrence of the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle all the claims of the Direct Purchaser Class against Wyeth in the above-captioned litigation, subject to the terms and conditions set forth herein.

WHEREAS, Named Plaintiffs each filed lawsuits on behalf of the Direct Purchaser Class alleging that Wyeth violated Sections 1 and 2 of the Sherman Act through an overarching anticompetitive scheme, and that Wyeth together with Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") (Wyeth and Teva are, together, "Defendants") violated Sections 1 of the Sherman Act by entering into an agreement in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1, and that Wyeth willfully and unlawfully maintained its monopoly power in violation of the Sherman Act 15 U.S.C. § 2, with respect to brand and generic Effexor XR (venlafaxine hydrochloride tablets);

WHEREAS, Named Plaintiffs' claims were consolidated under the caption *In re Effexor XR Antitrust Litigation*, Master Docket No. 3:11-cv-5479 (PGS/JBD), before the United States District Court for the District of New Jersey (the "Court") as a putative class action on behalf of the Direct Purchaser Class, as defined in Paragraph 1 below (the "Direct Purchaser Class Action" or the "Action");

WHEREAS, Wyeth denies each and every one of the allegations asserted in the current pending and prior complaints on behalf of the Direct Purchaser Class,

2

and does not concede or admit any liability, and the Direct Purchaser Class and Wyeth agree that neither this Settlement Agreement nor the settlement it embodies (the "Settlement") nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Wyeth, or of the truth of any of claims or allegations asserted on behalf of the Direct Purchaser Class or a waiver of any defenses thereto;

WHEREAS, Lead Class Counsel have concluded, after investigation of the facts and carefully considering the circumstances of the Direct Purchaser Class Action, including the claims asserted in this Action, and the possible and asserted legal and factual defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Direct Purchaser Class and further, that Lead Class Counsel considers the Settlement set forth in this Settlement Agreement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and in the best interests of the Direct Purchaser Class;

WHEREAS, Wyeth has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement solely to avoid the uncertainties and additional costs of further litigation and to finally put to rest all claims asserted on

3

behalf of the Direct Purchaser Class against Wyeth relating to the Action;

WHEREAS, Lead Class Counsel, on behalf of themselves and the Direct Purchaser Class, on the one hand, and counsel for Wyeth on the other, have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the settlement between the Named Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Wyeth;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Named Plaintiffs and the Direct Purchaser Class, on the one hand, and Wyeth, on the other, that the Direct Purchaser Class Action and all claims of Named Plaintiffs and the Direct Purchaser Class be settled, compromised, discharged and dismissed with prejudice as to Wyeth (and, except as hereinafter provided, without any costs being assessed to Named Plaintiffs, the Direct Purchaser Class, or Wyeth), subject to Court approval, on the following terms and conditions:

**1.**     **Direct Purchaser Class.** This settlement is on behalf of the Named Plaintiffs and all "Class Members" of the Direct Purchaser Class (the "Class" or "Direct Purchaser Class") defined as follows:

> All persons or entities in the United States and its territories who purchased Effexor XR and/or AB-rated generic versions of Effexor XR directly from any of the Defendants at any time during the period June 14, 2008 through and until May 31, 2011 (the "Class Period").

4

Excluded from the Direct Purchaser Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all governmental entities, and all persons or entities that purchased Effexor XR directly from Wyeth during the Class Period that did not also purchase generic Effexor XR directly.

Also excluded from the Class for purposes of this Settlement Agreement are the following: Walgreen Co., The Kroger Co. (including Peytons), Safeway, Inc., United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B, L.P. f/k/a HEB Grocery Company, L.P., American Sales Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc. d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer, Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS Caremark Corporation (including Caremark and Omnicare) (collectively, "Retailer Plaintiffs").

2.    **Reasonable Best Efforts to Effectuate This Settlement.** Counsel for Named Plaintiffs and Wyeth agree to recommend approval of this Settlement Agreement to the Court and to undertake their reasonable best efforts, including undertaking all actions contemplated by and steps necessary to effectuate this Settlement Agreement, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of all claims against Wyeth in the Direct Purchaser Class Action. This includes Wyeth serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715 in accordance with the timing set forth therein.

3.    **Motion for Preliminary Approval of the Settlement.** Within twenty-one (21) days of the execution of this Settlement Agreement, Named Plaintiffs shall

submit to the Court—and Wyeth shall support—a motion (the "Motion") requesting entry of an order preliminarily approving the settlement, and authorizing dissemination of notice to the Direct Purchaser Class (the "Preliminary Approval Order") substantially in the form of Exhibit A hereto.

The Motion shall:

        a.     request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Direct Purchaser Class;

        b.     request a schedule for a hearing by the Court after the notice period has expired to approve the Settlement and to consider Lead Class Counsel's applications for attorneys' fees, reimbursement of costs and expenses, and service awards as set forth in this Settlement Agreement;

        c.     request a stay of all proceedings against Wyeth in the Direct Purchaser Class Action until such time as the Court renders a final decision regarding the approval of the Settlement as described below, except those proceedings provided for or required by this Settlement Agreement;

        d.     seek approval of an escrow agreement regarding the Settlement consideration described below;

        e.     seek approval for notice to the Class by means of direct first-class United States mail notice in the form substantially in the form attached hereto as

6

Exhibit B; and

        f.      include a proposed form of order, which includes such provisions as are typical in such orders, including a finding that the proposed plan of notice complies with Fed. R. Civ. P. 23 and the requirements of due process, and a provision that if preliminary or final approval of the settlement is not obtained, the settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses; and

        g.      seek certification of the Direct Purchaser Class as defined in Paragraph 1 for purposes of settlement.

    **4.**      **Class Certification.**

Named Plaintiffs shall seek Court approval of the certification of the Direct Purchaser Class in connection with the proposed Settlement only, concurrently with their Preliminary Approval Motion. Wyeth shall not oppose. Neither this Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed to be evidence of or an admission or concession by Wyeth as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

    **5.**      **Motion for Final Approval and Entry of Final Judgment.**  If the

Court preliminarily approves this Settlement Agreement, Named Plaintiffs shall submit—and Wyeth shall support—a motion for final approval by the Court of this Settlement Agreement ("Final Approval Motion") after notice has been disseminated to the Class pursuant to the Preliminary Approval Order. The Final Approval Motion shall be submitted to the Court no later than 14 days before the date of the final Fairness Hearing set by the Court in its Preliminary Approval Order and shall seek entry of a final judgment and order ("Final Judgment and Order") substantially in the form attached hereto as Exhibit C:

a.     finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Named Plaintiffs and the Direct Purchaser Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.     finding that all members of the Class ("Class Members") shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

c.     finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

d.     incorporating the release set forth in Paragraphs 13 and 14 of this Settlement Agreement, and forever barring the Releasors from asserting any

8

Released Claims against any of the Releasees as defined below;

  e. providing for the payment of reasonable attorneys' fees and reimbursement of expenses solely from the Settlement Fund;

  f. providing for payment solely from the Settlement Fund of a service award in the amount of $100,000 to each of the Named Plaintiffs, in addition to whatever monies each of the Named Plaintiffs may receive from the Settlement Fund pursuant to a Court-approved plan of allocation;

  g. directing that the Direct Purchaser Class Action be dismissed with prejudice as to Wyeth and, except as provided for herein, without costs or attorney's fees recoverable under 15 U.S.C. § 15(a);

  h. retaining exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement; and

  i. directing that the judgment of dismissal with prejudice of all Direct Purchaser Class claims against Wyeth shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay.

**6.**  **Finality of Settlement.** This Settlement Agreement shall become final upon the occurrence of all of the following (the "Effective Date"):

  a. The Settlement is not terminated pursuant to Paragraphs 15 or 17 below;

b.      The Settlement and this Settlement Agreement are approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.      The Court enters an order finally approving the Settlement substantially in the form attached hereto as the Final Judgment and Order, entering a final judgment of dismissal with prejudice against Named Plaintiffs and the Class Members; and

d.      The time for appeal from the Court's signing of the Final Judgment and Order as described in subparagraph 6(b) and entry of the Final Judgment and Order as described in subparagraph 6(c) has expired or, if appealed, either such appeal has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Judgment and Order may be taken.

7.      **Settlement Payment.** The "Settlement Amount" shall be Thirty-Nine Million Dollars and no/100 ($39,000,000.00). Subject to the terms and conditions of this Settlement Agreement and an escrow agreement to be entered into by Class Counsel, and in full, complete, and final settlement of the Direct Purchaser Class Action: (a) within ten (10) calendar days after entry of the Preliminary Approval Order, provided that Lead Class Counsel has notified Wyeth of the establishment and identity of an escrow account (the "Escrow Account") and has provided to Wyeth all information required to process payment no later than fourteen (14)

10

calendar days before such payment is due, Wyeth shall deposit Twenty Million Dollars and no/100 ($20,000,000.00) into the Escrow Account subject to the terms and conditions of the escrow agreement attached hereto as Exhibit D (the "Escrow Agreement"); and (b) the remainder of the Settlement Amount, Nineteen Million Dollars and no/100 ($19,000,000.00) shall be deposited on or before fifteen (15) calendar days prior to the District Court's fairness hearing regarding final approval of the Settlement. Payment shall be made by wire transfer pursuant to instructions from Lead Class Counsel. Wyeth shall not pay any additional amount at any time, whether for wire transfer fees or bank fees of any kind associated with the wire transfer of funds, interest, notice, administration, costs, attorneys' fees, or otherwise, into the Escrow Account. The total consideration that Wyeth will pay for this Settlement shall be the Settlement Amount only (once paid, the "Settlement Fund").

**8.     Discovery.** Wyeth shall not oppose a motion to be filed by Plaintiffs after Preliminary Approval to lift the stay of discovery in the Action. If and when the Court lifts the stay of discovery in the Action, Wyeth shall, within 30 days of the lifting of the stay, identify the additional custodian(s) to be added for forecasting and pricing materials (as discussed in Kathryn Swisher's December 20, 2019 letter) and within 90 days of that disclosure, (a) produce to Plaintiffs any additional documents, and (b) produce certifications pursuant to Federal Rule of Evidence 803(6), 1003, and 901, 902(11), 902(12), 902(13), or 902(14) concerning the authenticity and

11

admissibility of documents and data produced or created by Wyeth no later than 45 days before the close of fact discovery and, if required by the Court, provide a custodian of records, or other witness testimony, at trial to lay a foundation for the admission of any documents or data produced or created by Wyeth. Wyeth, no later than 45 days before the close of fact discovery, shall produce a Rule 30(b)(6) witness or witnesses in response to a Rule 30(b)(6) deposition notice by Plaintiffs as to matters relating to the operative complaint in the Direct Purchaser Class Action, subject to the parties meeting and conferring about the scope of such a 30(b)(6) deposition. As to any additional documents or data that Plaintiffs request that Wyeth produce, or any current or former Wyeth employees whom Plaintiffs seek to depose, Wyeth shall not use the fact of this Settlement Agreement or the Settlement it embodies to try to oppose or preclude or restrict such document requests or depositions in any way, but Wyeth otherwise preserves all other objections it may have to such discovery. As to former employees, if requested by Plaintiffs, Wyeth shall provide information reasonably accessible to it concerning the present location and contact information for such former employees. Wyeth shall, within 90 days of the lifting of the stay of discovery, elect whether it is asserting privilege or work product as to any matter alleged in the operative complaint. If Wyeth elects not to assert privilege, Wyeth shall identify with specificity those matters as to which it is not asserting privilege. Wyeth thereafter shall not change its position regarding such

12

assertion or waiver of privilege without the written consent of Lead Class Counsel or as ordered by the Court. In the event a dispute arises concerning Wyeth's performance under this paragraph, the parties agree to meet and confer in good faith to resolve the issue. If, after meeting-and-conferring, the dispute remains unresolved, the parties may present the issue to the Court to resolve the dispute. Such disputes may be raised and submitted to the Court regardless of whether the Effective Date has passed.

**9.    The Settlement Fund.**

a.    Before the Court issues the Final Judgment and Order, disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with administering the Settlement, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund. In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Wyeth plus interest earned (net of any taxes paid on such interest), minus half the actual costs of class notice and claims administration. Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than $75,000. Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

b. At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested pursuant to Paragraph 3 of the Escrow Agreement as directed in writing by Lead Class Counsel. All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Wyeth. Wyeth shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c. After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. After making the payment of the Settlement Amount described in Paragraph 7 above, Wyeth shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for any disputes relating to the amount, allocation, or distribution of any fees, costs or awards. Further, after making the payment of the Settlement Amount described in Paragraph 7 above, Wyeth shall not be liable for

14

any additional payments to the Direct Purchaser Class or Lead Class Counsel or any other Counsel for the Named Plaintiffs or the Class pursuant to this Settlement Agreement.

       d.    Wyeth shall have no right of reimbursement or repayment from the Settlement Fund except as set forth in Paragraphs 15 or 18 hereof.

       e.    Named Plaintiffs and their counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Wyeth shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Named Plaintiffs or the Direct Purchaser Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

       f.    To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

    **10.**    **No Injunctive Relief.** This Settlement Agreement does not include any provisions for injunctive relief.

    **11.**    **Full Satisfaction; Limitation of Interest and Liability.** Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Wyeth of all claims that are released hereunder.

**12.    Attorneys' Fees, Expenses and Costs.**

a.    Lead Class Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one-third of the Settlement Fund (including interest accrued thereon) and the reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, and service awards to the Named Plaintiffs ("Fee and Expense Award"). Any motion for attorneys' fees, costs and expenses ("Motion for Fee and Expense Award") shall be filed no fewer than fourteen (14) days before the deadline for Class members to opt out or object to the Settlement. Any award of service awards, attorneys' fees, costs and expenses by the Court shall be paid solely out of the Settlement Fund as ordered by the Court. In no event shall any Fee and Expense Award be paid before the Final Approval Date. Named Plaintiffs, Class Members, and their respective counsel, shall not seek payment of any attorneys' fees, expenses, costs, or service awards from Wyeth in this action, or in any other action related to the released claims set forth in Paragraphs 13 and 14 hereof, from any source other than the Settlement Fund.

b.    The procedures for and the allowance or disallowance by the Court of any motion or application for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Notwithstanding any right of

16

termination in Paragraph 15, any order or proceeding relating to the fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, provide a basis to terminate or cancel this Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in Paragraph 12(a).

### 13. Release and Covenant Not to Sue.

a. **Direct Purchaser Class Release.** Upon the occurrence of the Effective Date in accordance with Paragraph 6 hereof, and in consideration for the Settlement Amount described in this Settlement Agreement, Direct Purchaser Plaintiffs and the Direct Purchaser Class, on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as the past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all Class Members (the "Direct Purchaser Class Releasors"), shall release and forever discharge, and covenant not to sue Wyeth and its respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers, directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, successors, heirs, executors, administrators, and assigns of

17

each of the foregoing) (the "Wyeth Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions up to the date of this Settlement Agreement, (a) alleged, or which could reasonably have been alleged, in the Direct Purchaser Class Action, (b) concerning purchases of Effexor XR and/or its generic equivalents and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq*., any state or federal RICO statutes, or any other federal or state statute or common law doctrine relating to antitrust, fraud, unfair competition, unjust enrichment, or consumer protection, or (c) the sale, marketing, or distribution of Effexor XR or generic Effexor XR except as provided for in Paragraph 13(c) and 14 herein (the "Released Claims"). Upon the Effective Date, the Direct Purchaser Class Releasors will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against the Wyeth Releasees. Upon entry of the Final Judgment and Order approving this Settlement, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Amount, the Direct Purchaser

Plaintiffs and Direct Purchaser Class shall dismiss the Direct Purchaser Class Action with prejudice as to Wyeth.

In addition, Direct Purchaser Plaintiffs, on behalf of themselves and all other Releasing Parties, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Direct Purchaser Releasors may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 13, but each Direct Purchaser Releasor hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Direct

Purchaser Releasor also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Wyeth Releasee under Section 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

        b.    **Defendants' Release.**  Upon the occurrence of the Effective Date and in consideration of the Releases and Covenants specified in Paragraph 13.a. above, Wyeth on behalf of itself and its respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (collectively, the "Wyeth Releasors"), hereby release and forever discharge, and covenant not to sue, Class Members and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors,

employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (collectively, the "Direct Purchaser Class Releasees") from all claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of Paragraph 13.

c. **Reservation of Claims.** The Releasing Parties intend by this Settlement Agreement to release only the Wyeth Releasees and the Direct Purchaser Class Releasees with respect to the Released Claims. The Direct Purchaser Releasors specifically do not intend this Settlement Agreement, or any part hereof or any other aspect of the proposed Settlement Agreement, to compromise or otherwise affect in any way any rights the Direct Purchaser Releasors have or may have against any other person, firm, association, or corporation whatsoever. The release set forth above in this Paragraph 13 is not intended to and shall not release any claims other than the Released Claims.

14. **Additional Reservation of Claims.** The intent of this Settlement is to

21

effect a complete and total resolution of this Action to the extent of the claims of the

Direct Purchaser Class against Wyeth, as well as any compulsory counterclaims of

Wyeth, relating to the allegations in this Action that were or should have been

asserted, but is not intended to release any claims (1) arising in the ordinary course

of business between any Direct Purchaser Class member and Wyeth arising under

Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of

negligence or product liability or implied warranty, breach of contract, breach of

express warranty, or personal injury; (2) unrelated to purchases of Effexor XR or

generic Effexor XR; or (3) arising out of or in any way relating to the alleged claims

against Wyeth and other manufacturers of generic pharmaceutical products that are

alleged in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724,

16-MD-2724 (E.D. Pa.).

           **15.**    **Termination - Effect of Disapproval.**

                a.      Wyeth and Plaintiffs shall have the option to terminate the

Settlement and have their Settlement Payment refunded if the Court declines to grant

preliminary or final approval to the Direct Purchaser Class Settlement. If for any

reason the Settlement does not become final in accordance with the terms of

Paragraph 6 of this Settlement Agreement, then (i) this Settlement Agreement shall

be of no force or effect; (ii) all funds paid by Wyeth into the Settlement Fund, plus

interest (net of any taxes paid on such interest), minus half the actual costs of class

notice and claims administration, shall be returned to Wyeth as set forth in Paragraph 18; (iii) any release pursuant to Paragraphs 13 and 14 above shall be of no force or effect; and (iv) the parties agree, subject to the Court's approval, that litigation of the Direct Purchaser Class Action by the Named Plaintiffs and the Direct Purchaser Class will resume, in a reasonable manner and on a reasonable timetable to be approved by the Court.

b. For the avoidance of doubt, any order of the Court that (i) narrows or does not approve the scope of the release and covenant not to sue contemplated by this settlement; (ii) purports to impose additional material obligations on Wyeth; or (iii) declines to enter a final judgment that meets the minimum requirements set forth in Paragraph 5 of this Agreement, or any order on review or appeal that would have the foregoing effects, except as otherwise agreed to in writing by Wyeth and Named Plaintiffs, constitutes a failure to grant preliminary or final approval of this Agreement and confers on Wyeth and Named Plaintiffs the right to terminate provided by this Paragraph.

c. A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such Final Judgment and Order and shall not give rise to any right of termination.

**16. Contingency in the Event the Settlement is Not Approved for Reasons Other Than Fairness or an Effexor XR Direct Purchaser Requests**

**Exclusion from the Direct Purchaser Class.**

a. In the event the Settlement is disapproved by the Court or on appeal (including because the Court does not certify the Direct Purchaser Class for purposes of settlement) for any reason other than the Settlement is not fair, reasonable or adequate, Wyeth agrees to offer, as soon as practical, each entity falling within the definition of Direct Purchaser Class (as defined in Paragraph 1) ("Effexor XR Direct Purchaser") at least its *pro rata* share of the Settlement Fund Amount (as defined below in Paragraph 16(e)), net of all known assignments to the Retailer Plaintiffs, after conferring with Lead Class Counsel in exchange for a release substantively equivalent to the one set out in Paragraphs 13 and 14, above.

b. If the Settlement is approved by the Court and becomes final as defined in Paragraph 6, and one or more Effexor XR Direct Purchaser(s) had properly excluded itself (themselves) from the Direct Purchaser Class (other than a Retailer Plaintiff) prior to the expiration of the opt-out period prescribed by the Court, the Settlement Fund (as discussed in Paragraph 7) will be reduced by the amount of the *pro rata* share for that Effexor XR Direct Purchaser, net of all known assignments to the Retailer Plaintiffs (as defined below, in Paragraph 16(e)). Nothing herein will preclude an Effexor XR Direct Purchaser(s) who has sought exclusion from the Direct Purchaser Class from seeking leave of court to rescind its (their) decision to exclude itself (themselves) from the Direct Purchaser Class until

24

such time the Settlement becomes final pursuant to Paragraph 6. Nothing precludes Lead Class Counsel or counsel for Wyeth from contacting such Effexor XR Direct Purchaser(s) concerning its (their) decision(s) to opt out of the Class. A decision by one or more Effexor XR Direct Purchasers to opt out of the Direct Purchaser Class will have no impact on the validity and enforceability of this Settlement Agreement as to the remaining members of the Direct Purchaser Class, including the release provisions in Paragraphs 13 and 14.

        c.     Any offer to an individual Effexor XR Direct Purchaser under Paragraph 16(a) shall be expressly subject to the condition that the Effexor XR Direct Purchaser(s) receiving the offer(s) submit to the jurisdiction of the United States District Court for the District of New Jersey regarding the issue of its obligation to pay its proportionate share of the Direct Purchaser Class Counsel's attorneys' fees, costs and expenses, and service awards. Each Effexor XR Direct Purchaser that chooses to accept an offer from Wyeth shall be given written notice by Wyeth (the content of which is to be agreed to by Lead Class Counsel) of Lead Class Counsel's intent to apply for Direct Purchaser Class Counsel's attorneys' fees, costs, expenses, and service awards and to seek the awards out of the escrowed funds (described below), and an opportunity to respond to the application. Wyeth shall inform Lead Class Counsel of any subsequent private offers made to, and accepted

25

by, Effexor XR Direct Purchasers within five (5) days of the acceptance of the offer by the Effexor XR Direct Purchaser.

           d.      For any offer accepted by an Effexor XR Direct Purchaser under Paragraph 16(a), Wyeth agrees to place 40% of the accepted offer into escrow to cover the Effexor XR Direct Purchaser's proportionate share of Lead Class Counsel's attorneys' fees, costs and expenses, and service awards. The amount of any such attorneys' fees, costs, expenses, and service awards awarded shall be determined by the Court. Any funds placed into escrow pursuant to this provision that exceed the amount of attorneys' fees, costs, expenses, and/or incentive awards awarded by the Court shall be paid out to the Effexor XR Direct Purchaser.

           e.      The amount of each Effexor XR Direct Purchaser's *pro rata* share of the Settlement Fund Amount shall be based on a schedule prepared by Dr. Jeffrey J. Leitzinger ("Dr. Leitzinger") using the data Wyeth produced showing its sales of brand Effexor XR, the data Teva has produced showing its sales of generic Effexor XR, and available data related to the Retailer Plaintiffs' assignments from certain Class members.

           f.      The parties will use their best efforts to implement this Paragraph 16.

      **17.**    **Opt-Outs.** Class Notice shall provide that the opt-out shall be in writing and shall be signed by the member of the Class who is opting-out. In the event of any opt outs from the Class prior to final approval of the Settlement, the Settlement

26

Amount will be reduced in proportion to the opt-out Class Members' pro rata share of aggregate brand and generic Effexor XR purchases of Class Members. Further, Wyeth shall have the option in its sole discretion to terminate the Settlement Agreement in the event that Class Members representing in the aggregate more than a certain percentage of total brand and generic Effexor XR purchases (as set forth in a confidential side letter that, with the Court's permission, will not be filed with the Court or, alternatively, with the Court's permission will not be filed publicly) opt out of the Class following the preliminary approval of the Settlement. All pro rata shares shall be calculated by Dr. Leitzinger, the expert economist for the Direct Purchaser Class.

**18.      Effect of Termination.** If this Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 17 above, or for any reason does not become final in accordance with the terms of Paragraph 6 hereof, the Escrow Agent (as defined in the Escrow Agreement) shall return the Settlement Fund to Wyeth, plus interest (net of any taxes paid on such interest), minus half the actual costs of class notice and claims administration. Subject only to expiration of any time deposit investment(s) not to exceed ninety (90) days, the Escrow Agent shall disburse the Net Settlement Fund to Wyeth in accordance with this Paragraph within fifteen (15) business days after receipt of either (i) written notice signed by Wyeth's counsel or Lead Class Counsel stating that this Settlement Fund has been terminated; or (ii) any

order of the Court so directing. Any remaining portion of the Net Settlement Fund invested in time deposits not to exceed ninety (90) days shall be disbursed within ten (10) days after the expiration of such investments. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 17 above, any obligations pursuant to this Settlement Agreement (other than disbursement of the Net Settlement Fund to Wyeth as set forth above) shall cease immediately and the releases set forth in Paragraphs 13 and 14 shall be null and void.

**19.   Stay of Proceedings.** Pending Court approval of the Settlement embodied in this Settlement Agreement, the parties agree to stay any and all proceedings against Wyeth in the Direct Purchaser Class Action other than those incident to the settlement process and agree to extensions of time with respect to any court filings necessary to effectuate such stays. Nothing herein alters the provisions of Paragraph 8, above.

**20.   Claim Forms.** Direct Purchaser Plaintiffs and Lead Class Counsel will ensure that each claim form contains a copy of the release set forth in Paragraphs 13 and 14 hereof. A claim form shall be signed by each member of the Direct Purchaser Class or its authorized representative as a precondition to receiving any portion of the Settlement Fund.

**21.   Preservation of Rights.** The parties hereto agree that this Settlement Agreement, whether it becomes final or not, and any and all negotiations, documents

28

and discussions associated with it shall be without prejudice to the rights of any party (except to the extent provided herein), shall not be deemed or construed to be an admission or evidence of any violation of any statute or law (or lack thereof), of any liability or wrongdoing by Wyeth (or lack thereof), or of the truth (or lack thereof) of any of the claims or allegations contained in the Complaints or any other pleading or document, and evidence thereof shall not be discoverable or used directly or indirectly, in any way (other than to effectuate or enforce the terms of this Settlement Agreement). The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

22.     **Confidentiality.** The fact of settlement of the Direct Purchaser Class Action and the terms of this Settlement Agreement shall remain confidential until Direct Purchaser Plaintiffs move for preliminary approval of the Settlement, except that the Court and any other parties may be informed of the fact of settlement, unless Wyeth and Lead Class Counsel agree otherwise. Lead Class Counsel and Wyeth agree that they will not, at any time, make public statements (which includes press releases, communication to the press or other media, statements in the Internet, speeches, or other communications in public fora) concerning the Settlement, the Direct Purchaser Class Action, the litigation of the Direct Purchaser Class Action, or the parties, witnesses, or counsel involved in the Direct Purchaser Class Action, apart from their mutually agreed public relations statements, with the exceptions that

(i) the parties shall have the right to disclose the Settlement to comply with their financial, legal, reporting, and securities obligations, and (ii) the parties shall have the right to take actions to enforce the Settlement to the extent necessary; and (iii) Counsel for the Direct Purchaser Class shall have the right to post the Settlement Agreement and related filings on their websites and note the same. Additionally, Direct Purchaser Plaintiffs, their counsel and other agents for or representatives of Direct Purchaser Plaintiffs and of the Direct Purchaser Class, as well as Wyeth, its counsel, and other agents for or representatives of Wyeth, shall abide by the terms of the Discovery Confidentiality Order approved and entered by the Court on August 23, 2013 (ECF No. 244), and as amended on January 23, 2019 (ECF No. 572) (the "Confidentiality Order"). Any obligation to abide by the Confidentiality Order shall survive beyond the Effective Date of this Settlement Agreement

**23.    Taxes.**

a.    The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead Class Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Lead Class

Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph. Wyeth shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Wyeth. Other than as specifically set forth herein, Wyeth shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Wyeth is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Wyeth with notice to Lead Class Counsel, timely pay to Wyeth sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

b. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns,

all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

          c.     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

        **24.**     **Binding Effect.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the

Named Plaintiffs and Lead Class Counsel shall be binding upon all Class Members.

**25.     Integrated Agreement.** The documents incorporated herein by reference, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Agreement, and supersede all prior agreements or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the parties hereto.

**26.     Independent Settlement.** This Settlement of the Direct Purchaser Class Action is not conditioned on approval by any other direct purchaser or settlement of any other case. This Settlement of the Direct Purchaser Class Action is not conditioned on the disposition of the claims of any other plaintiff or proposed class of plaintiffs.

**27.     Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

**28.     No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

**29.** **Choice of Law.** All terms of this Settlement Agreement shall be governed by federal common law.

**30.** **Consent to Jurisdiction.** Wyeth and each Class Member hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the District of New Jersey for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim; or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

**31.** **Representations and Warranties.** Each party hereto represents and warrants to each other party hereto that it has the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

**32.** **No Admission.** Nothing in this Settlement Agreement, nor in any document related to this Settlement Agreement, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein, shall be construed as an admission or concession in any action or proceeding of any kind

whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Wyeth, including, without limitation, that Wyeth has engaged in any conduct or practices that violate any antitrust statute or other law.

33. **Notice.** Notice to Wyeth pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

Raj Gandesha
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
rgandesha@whitecase.com

Notice to the Plaintiffs pursuant to this Settlement Agreement shall be sent

by United States mail and electronic mail to Lead Class Counsel:

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
tom@hbsslaw.com

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103

pkohn@faruqilaw.com

Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

Any of the parties may, from time to time, change the address to which such

notices, requests, consents, directives, or communications are to be delivered, by

giving the other parties prior written notice of the changed address, in the manner

hereinabove provided, ten (10) calendar days before the change is effective.

**34.** **Execution in Counterparts.** This Settlement Agreement may be

executed in counterparts, and a facsimile or .pdf signature shall be deemed an

original signature for purposes of executing this Settlement Agreement.

By: _____

Raj Gandesha
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
rgandesha@whitecase.com

*Counsel for Wyeth Inc., Wyeth*
*Manufacturing Ireland, Warner-Lambert*
*Co., and Warner-Lambert Co. LLC*

By: _____

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Faneuil Hall, Square, 5th Floor
Boston, MA 02109
tom@hbsslaw.com

By: _____

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

By: _____

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
pkohn@faruqilaw.com

By: _____

Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

By:

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

By:

Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

*Interim Lead Counsel Executive*
*Committee for Direct Purchaser*
*Class Plaintiffs and the Class*

38

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE EFFEXOR XR ANTITRUST LITIGATION | |
| THIS DOCUMENT RELATES TO: | Master Docket No. 3:11-cv-05479 (PGS/JBD) |
| Direct Purchaser Class Actions | |

## [PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF LEAD CLASS COUNSEL, APPOINTMENT OF NOTICE/CLAIMS ADMINISTRATOR, APPOINTMENT OF ESCROW AGENT, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING

Upon review and consideration of Direct Purchaser Class Plaintiffs'

Unopposed Motion for Certification of a Settlement Class, Appointment of Lead

Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form

and Manner of Notice to the Class, Proposed Schedule for a Fairness Hearing, and

exhibits thereto, and any hearing thereon, IT IS HEREBY ORDERED, ADJUDGED

AND DECREED that said motion is GRANTED as follows:

### Jurisdiction

1.     This Order hereby incorporates by reference the definitions in the

Settlement Agreement dated March ___, 2024 between Wyeth LLC, Wyeth

Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth

1

Pharmaceuticals Company (collectively or individually, "Wyeth"), and Rochester

Drug Co-Operative, Inc. ("RDC"), Stephen L. LaFrance Holdings, Inc. d/b/a SAJ

Distributors ("LaFrance"), and Uniondale Chemists, Inc. ("Uniondale"),

(collectively, "Named Plaintiffs," "Direct Purchaser Plaintiffs," "Direct Purchaser

Class Plaintiffs," or "Plaintiffs"), individually and on behalf of the Direct Purchaser

Class, and all capitalized terms used and not otherwise defined herein shall have the

meanings set forth in the Settlement Agreement.

2.     This Court has jurisdiction over each of the Named Plaintiffs, RDC,

LaFrance, Uniondale, and Defendant Wyeth, and jurisdiction over the litigation to

which the Named Plaintiffs and Wyeth are parties.

## Certification of the Proposed Class

3.     The Court makes the following determinations as required by Federal

Rule of Civil Procedure 23 solely in connection with the proposed Settlement:

        a.     Pursuant to Rule 23(c)(1)(B), the Class, which shall hereinafter

be denominated "the Class" or "Direct Purchaser Settlement Class" is defined

as follows:

> All persons or entities in the United States and its
> territories who purchased Effexor XR and/or AB-rated
> generic versions of Effexor XR directly from any of the
> Defendants at any time during the period June 14, 2008
> through and until May 31, 2011 (the "Class Period").
>
> Excluded from the Direct Purchaser Class are Defendants
> and their officers, directors, management, employees,

> subsidiaries, or affiliates, all governmental entities, and
> all persons or entities that purchased Effexor XR directly
> from Wyeth during the Class Period that did not also
> purchase generic Effexor XR directly.
>
> Also excluded from the Class for purposes of this
> Settlement Agreement are the following: Walgreen Co.,
> The Kroger Co. (including Peytons), Safeway, Inc.,
> United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B,
> L.P. f/k/a HEB Grocery Company, L.P., American Sales
> Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs.
> Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc.
> d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer,
> Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS
> Caremark Corporation (including Caremark and
> Omnicare) (collectively, "Retailer Plaintiffs").

4.    Pursuant to Rule 23(a)(1), the Court determines that, in connection with

and solely for purposes of settlement, the Class is so numerous and geographically

dispersed that joinder of all members is impracticable. The Class has 59 members

geographically dispersed throughout the United States, which is sufficient to satisfy

the impracticality of joinder requirement of Rule 23(a)(l).

5.    Pursuant to Rule 23(c)(l)(B), the Court determines that, in connection

with and solely for purposes of settlement, the following issues relating to claims

and/or defenses (expressed in summary fashion) present common, class-wide

questions, including:

> a.    whether Wyeth and Teva conspired to suppress generic
> competition for Effexor XR;

3

      b.      whether Teva agreed to delay its entry into the market with generic Effexor XR;

      c.      whether Wyeth made a large reverse payment to Teva;

      d.      whether Wyeth's reverse payment to Teva was for a purpose other than the delayed entry of generic Effexor XR;

      e.      whether Wyeth's reverse payment to Teva and Teva's associated delayed launch of generic Effexor XR were reasonably necessary to yield and/or were the least restrictive means of yielding a procompetitive benefit that is cognizable and non-pretextual;

      f.      whether the challenged conduct is illegal under the antitrust rule of reason;

      g.      whether the challenged conduct suppressed generic competition to Effexor XR;

      h.      whether Wyeth possessed market or monopoly power over Effexor XR;

      i.      to the extent a relevant market must be defined, what that definition is;

      j.      whether the challenged conduct substantially affected interstate commerce;

4

> k.    whether, and to what extent, Wyeth and Teva's conduct caused antitrust injury (overcharges) to Direct Purchaser Class Plaintiffs and the Direct Purchaser Class; and
>
> l.    the quantum of overcharge damages paid by the Direct Purchaser Class in the aggregate.

6.    The Court determines, in connection with and solely for purposes of settlement, that the foregoing class wide issues relating to claims and/or defenses are questions of law or fact common to the Class that satisfy Rule 23(a)(2).

7.    The Named Plaintiffs are hereby appointed as representatives of the Class, for the following reasons:

> a.    The Named Plaintiffs allege, on behalf of the Class, the same manner of injury from the same course of conduct that they complain of themselves and assert on their own behalf the same legal theory that they assert for the Class. The Court therefore determines that the Named Plaintiffs' claims are typical of the claims of the proposed Class within the meaning of Rule 23(a)(3); and
>
> b.    Pursuant to Rule 23(a)(4), the Court determines that the Named Plaintiffs will fairly and adequately protect the interests of the Class.  The Named Plaintiffs' interests do not conflict with the

interests of absent members of the Class. All of the members of the Class share a common interest in proving Wyeth's and Teva's alleged anticompetitive conduct, and all Class Members share a common interest in recovering the overcharge damages sought in the Complaint. Moreover, the Class is made up of business entities and any Class Member that wishes to opt out will be given an opportunity to do so. Furthermore, the Named Plaintiffs are well qualified to represent the Class in this case, given their experience in prior cases, and the vigor with which they have prosecuted this action thus far.

8. Pursuant to Rule 23(b)(3), the Court determines that, in connection with and solely for purposes of settlement, common questions of law and fact predominate over questions affecting only individual members. In light of the Class-wide claims, issues, and defenses set forth above, the issues in this action that are subject to generalized proof, and thus applicable to the Class as a whole, predominate over those issues that are subject only to individualized proof. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-311 (3d Cir. 2008).

9. Also pursuant to Rule 23(b)(3), the Court determines that, in connection with and solely for purposes of settlement, a class action is superior to other available methods for the fair and efficient adjudication of this action. The Court believes it

is desirable, for purposes of judicial and litigation efficiency, to concentrate the claims of the Class in a single action. The Court also believes that there are few manageability problems presented by a case such as this, particularly in light of the Settlement preliminarily approved in this Order.

10. Pursuant to Fed. R. Civ. P. 23(c)(l)(B) and 23(g), the Court, having considered the factors provided in Rule 23(g)(1)(A), appoints Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP, David F. Sorensen and his firm Berger Montague PC, Peter Kohn and his firm Faruqi & Faruqi LLP, Barry S. Taus and his firm Taus, Cebulash & Landau, LLP, Dianne M. Nast and her firm Nastlaw LLC, and Don Barrett and his firm Barrett Law Group, P.A. as Lead Class Counsel, having previously appointed those firms as Interim Lead Counsel Executive Committee on December 13, 2011. ECF No. 85 ¶ 1.

**Preliminary Approval of the Proposed Settlement**

11. Pursuant to Rule 23(e)(1)(B)(i), the Court finds that it will likely be able to approve the Settlement under Rule 23(e)(2), and therefore preliminarily approves the Settlement as set forth in the Settlement Agreement, including the releases contained therein, as being fair, reasonable and adequate to the Class based on the relevant factors under Rule 23(e)(2), subject to the right of any class member to challenge the fairness, reasonableness or adequacy of the Settlement Agreement and to show cause, if any exists, why a final judgment dismissing the Action against

7

Wyeth, and ordering the release of the Released Claims against the Wyeth Releasees and the Direct Purchaser Class Releasees, should not be entered after due and adequate notice to the Class as set forth in the Settlement Agreement and after a hearing on final approval.

12. The Court finds that the proposed Settlement, which includes a cash payment of thirty-nine million dollars (\$39,000,000.00) into an escrow account for the benefit of the Class (the "Settlement Fund") in exchange for, *inter alia*, dismissal of the litigation between Direct Purchaser Class Plaintiffs and Wyeth with prejudice and releases of certain claims against Wyeth by Direct Purchaser Class Plaintiffs and the Class, as set forth in the Settlement Agreement, was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation and a mediation led by experienced mediator, the Hon. Faith Hochberg, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below.

## Approval of the Plan of Notice to the Class and Plan of Allocation

13. The proposed form of Notice to Class Members of the pendency of this Class Action and the proposed Settlement thereof (annexed as Exhibit B to the Settlement Agreement) satisfies the requirements of Rule 23(e) and due process, is otherwise fair and reasonable, and therefore is approved. Lead Class Counsel shall cause the Notice substantially in the form attached to the Settlement Agreement to

8

be disseminated by _____, 2024 (15 days following the entry of this Order) via first-class mail to the last known address of each Class Member.

14. Members of the Class may request exclusion from the Class or object to the Settlement no later than _____, 2024 (45 days from the date that the Notice is mailed to each member of the Class). Lead Class Counsel or their designee shall monitor and record any and all opt-out requests that are received.

15. Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Wyeth shall serve notices as required under CAFA within 10 days from the date Direct Purchaser Class Plaintiffs file the Settlement Documents with the Court. Wyeth shall contemporaneously provide Lead Class Counsel with copies of any such notices.

16. The Court appoints RG/2 Claims Administration to serve as Notice and Claims Administrator and to assist Lead Class Counsel in disseminating the Notice. All expenses incurred by the claims administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. The proposed Plan of Allocation, filed as Exhibit 2 to Plaintiffs' motion, satisfies the requirements of Rule 23(e), is otherwise fair and reasonable, and is, therefore, preliminarily approved, subject to further consideration at the Final Fairness Hearing.

17. The Court appoints The Huntington National Bank to serve as Escrow Agent for the purpose of administering the escrow account holding the Settlement

9

Fund.  All expenses incurred by the Escrow Agent must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. A copy of the Escrow Agreement executed by The Huntington National Bank and Lead Class Counsel is annexed as Exhibit D to the Settlement Agreement. The Court approves the establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF. Lead Class Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

## Final Fairness Hearing

18.    A hearing on final approval (the "Fairness Hearing") shall be held before this Court at _____ on _____, 2024, at the United States District Court for the District of New Jersey, 402 East State Street, Courtroom 1, Trenton, New Jersey 08608.  At the Fairness Hearing, the Court will consider, *inter alia*: (a) the fairness, reasonableness and adequacy of the Settlement and whether the Settlement should be finally approved; (b) whether the Court should approve the proposed plan of allocation of the Settlement Fund among Class members; (c) whether the Court should approve any motion for attorneys' fees and reimbursement

10

of costs and expenses; (d) whether service awards should be awarded to the Named Plaintiffs; and (e) whether entry of a Final Judgment and Order terminating the litigation between Direct Purchaser Class Plaintiffs and Wyeth should be entered. The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Lead Class Counsel shall be responsible for communicating any such notice promptly to the Class by ensuring the posting of a conspicuous notice on the website of the appointed Notice and Claims Administrator.

19. Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing must first send an Objection and, if intending to appear, a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) to be asserted and the grounds therefore, together with copies of any supporting papers or briefs, via first class mail, postage prepaid, to the Clerk of the United States District Court for the District of New Jersey, 402 East State Street, Trenton, New Jersey 08608, with copies to the following counsel:

*On behalf of Direct Purchaser Class Plaintiffs and the Class*:

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
tom@hbsslaw.com

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
pkohn@faruqilaw.com

Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

*On behalf of Wyeth*:

Raj Gandesha
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020
rgandesha@whitecase.com

To be valid, any such Objection and/or Notice of Intention to Appear and Summary statement must be postmarked no later than _____, 2024 (45 days from the date that the Notice is mailed to each member of the Class). Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed Settlement. All persons and entities who fail to file an Objection and/or Notice of Intention to Appear as well as a Summary Statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.

20.  All briefs and materials in support of the final approval of the Settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by _____, 2024 (21 days after the expiration of the deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorneys' fees, expenses and service awards).

21.  All briefs and materials in support of any motion or application for an award of attorneys' fees and reimbursement of costs and expenses shall be filed with the Court by _____, 2024 (14 days prior to the expiration of the deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorneys' fees, expenses and service awards).

22.  All proceedings in the action between the Direct Purchaser Class Plaintiffs and Wyeth are hereby stayed until such time as the Court renders a final

decision regarding the approval of the Settlement and, if the Court approves the Settlement, enters Final Judgment and dismisses such actions with prejudice.

23. Neither this Order, nor the Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Wyeth as to the validity of any claim that has been or could have been asserted by Direct Purchaser Class Plaintiffs against Wyeth or as to any liability by Wyeth as to any matter set forth in this Order, or as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

24. If final approval of the Settlement is not obtained, the Settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

SO   ORDERED   this _____ day   of

_____, 2024

_____
The Honorable Peter G. Sheridan
United States District Judge

14

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

## If you purchased brand or generic Effexor XR® (venlafaxine hydrochloride) directly from Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, Wyeth Pharmaceuticals Company, Teva Pharmaceuticals USA, Inc., or Teva Pharmaceutical Industries Ltd., your rights may be affected by the settlement of a class action lawsuit.

*A federal court authorized this Notice. It is not a solicitation from a lawyer. You are not being sued.*

The purpose of this Notice is to alert you to the existence of and provide important details about a proposed settlement relating to a class action lawsuit brought by Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc. d/b/a SAJ Distributors, and Uniondale Chemists, Inc., (collectively "Plaintiffs" or "Class Representatives") on behalf of direct purchasers of brand or generic Effexor XR directly from Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company (collectively, "Wyeth") and/or Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") (Wyeth and Teva collectively "Defendants") and to give you the opportunity to object to or opt out of a proposed settlement of that lawsuit with only Wyeth.

The proposed settlement is with Wyeth only and will provide $39,000,000 in cash to resolve the Direct Purchaser Class's claims against Wyeth only (the "Settlement Fund").

### YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT, SO PLEASE READ THIS NOTICE CAREFULLY.

The Court has scheduled a hearing to decide on final approval of the settlement with Wyeth, the plan for allocating the Settlement Fund to Direct Purchaser Class members (summarized in the responses to Questions 6 and 7 below), and Lead Class Counsel's request for settlement administration costs, attorneys' fees, reimbursement of Class Counsel's out-of-pocket expenses and costs, and service awards to the Class Representatives. That hearing is scheduled for [date] before U.S. District Court Judge Peter G. Sheridan in Courtroom [xx] of the United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

Judge Peter G. Sheridan of the United States District Court for the District of New Jersey has determined that the lawsuit between Plaintiffs and Wyeth can proceed as a class action for purposes of this settlement because it meets the requirements of the Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The class (hereinafter, the "Direct Purchaser Class" or the "Class") includes the following:

> All persons or entities in the United States and its territories who purchased Effexor
> XR and/or AB-rated generic versions of Effexor XR directly from any of the

Defendants at any time during the period June 14, 2008 through and until May 31, 2011 (the "Class Period").

Excluded from the Direct Purchaser Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all governmental entities, and all persons or entities that purchased Effexor XR directly from Wyeth during the Class Period that did not also purchase generic Effexor XR directly.

Also excluded from the Class for purposes of this Settlement Agreement are the following: Walgreen Co., The Kroger Co. (including Peytons), Safeway, Inc., United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B, L.P. f/k/a HEB Grocery Company, L.P., American Sales Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc. d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer, Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS Caremark Corporation (including Caremark and Omnicare) (collectively, "Retailer Plaintiffs").

The proposed settlement will affect the rights of all members of the Class, as defined above, unless they exclude themselves from the Class.

The Court in charge of this case still has to decide whether to give Final Approval to the proposed settlement with Wyeth.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **IF YOU WISH TO RECOVER A SHARE OF THE SETTLEMENT FUND, PROMPTLY COMPLETE AND RETURN THE ENCLOSED CLAIM FORM** | You do not need to do anything now to remain a member of the Direct Purchaser Class.<br><br>*However, to recover a share of the Settlement Fund, you must complete and return the enclosed Claim Form within 60 days of the date of the Claim Form (by date).* |
| **EXCLUDE YOURSELF FROM THE CLASS** | You may choose to exclude yourself (*i.e.*, "opt out") from the Class. If you decide to exclude yourself, you will not be bound by any decision in this lawsuit relating to Wyeth. This is the only option that allows you to ever be part of any legal action other than this lawsuit relating to the legal claims against Wyeth in this case. If you decide to "opt out," do not complete and return the Claim Form because you will not be eligible to receive a share of the Settlement Fund if you exclude yourself from the Class. |
| **STAY IN THE LAWSUIT BUT OBJECT TO THE SETTLEMENT** | If you object to any part or all of the proposed settlement but you do not wish to exclude yourself from the Class, write to the Court about why you do not like the proposed settlement. |

| | |
|---|---|
| | *Regardless of whether you object to any part of the settlement, you must complete and return the enclosed Claim Form within 60 days of the date of this Notice (by date) in order to recover a share of the Settlement Fund.* |
| **GET MORE INFORMATION** | If you would like to receive more information about the proposed settlement, you can send questions to the lawyers identified in this Notice and/or attend the hearing at which the Court will evaluate the proposed settlement. |

*These rights and options—and the deadlines to exercise them—are explained in this Notice.*

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................................................................ **5**

    1.    Why Did I Get This Notice? ............................................................................ 5

    2.    What Is This Lawsuit About? .......................................................................... 5

    3.    Why Is This Lawsuit a Class Action? ............................................................. 6

    4.    Why Is There a Settlement? ............................................................................ 6

**WHO IS INCLUDED IN THE CLASS AND THE SETTLEMENT** ........................................ **7**

    5.    Am I Part of the Class and the Settlement? .................................................... 7

**THE SETTLEMENT BENEFITS: WHAT YOU GET** ....................................................... **7**

    6.    What Does the Settlement Provide? ................................................................ 7

    7.    When Would I Get My Payment and How Much Would It Be? ...................... 8

    8.    How Can I Get a Payment? ............................................................................. 8

**THE LAWYERS REPRESENTING YOU** ....................................................................... **9**

    9.    Do I Have a Lawyer in this Case? .................................................................. 9

    10.   Should I Get My Own Lawyer? ...................................................................... 9

    11.   How Will the Lawyers Representing the Class Be Paid? ................................ 9

**EXCLUDING YOURSELF FROM THE CLASS AND THE SETTLEMENT** ..................... **10**

    12.   Can I Get Out of the Settlement with Wyeth? .............................................. 10

    13.   If I Don't Exclude Myself, Can I Sue Wyeth for the Same Thing Later? ........... 10

**OBJECTING TO THE SETTLEMENT** ........................................................................ **11**

    14.   How Do I Tell the Court That I Do Not Like the Settlement? .......................... 11

**THE COURT'S FINAL FAIRNESS HEARING** ............................................................ **12**

    15.   When and Where Will the Court Decide Whether to Approve the
         Settlement? ................................................................................................... 12

    16.   Do I Have to Come to the Hearing? .............................................................. 12

    17.   May I Speak at the Hearing? ......................................................................... 13

**IF YOU DO NOTHING** ............................................................................................ **13**

    18.   What Happens If I Do Nothing at All? .......................................................... 13

**GETTING MORE INFORMATION** ............................................................................. **13**

    19.   How Do I Get More Information? .................................................................. 13

## BASIC INFORMATION

### 1. Why Did I Get This Notice?

You received this Notice because, according to sales data produced by Wyeth and Teva, you may have purchased brand Effexor XR directly from Wyeth and/or generic Effexor XR directly from Teva during the period from June 14, 2008 through May 31, 2011.

A federal court authorized this Notice because you have a right to know about the proposed settlement with Wyeth and about all of your options before the Court decides whether to grant final approval of the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and eligibility for those benefits. Note that you may have received this Notice in error; simply receiving this Notice does not mean you are definitely a member of the Direct Purchaser Class. You may confirm that you are a member of the Direct Purchaser Class by reviewing the criteria set forth in Question 5 below. You may also call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 9 below.

### 2. What Is This Lawsuit About?

Plaintiffs filed lawsuits individually and as representatives of all persons or entities in the U.S. and its territories who purchased brand or generic Effexor XR directly from Wyeth and/or Teva at any time during the period from June 14, 2008 through May 31, 2011 (the "Class"). Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all governmental entities, and all persons or entities that purchased Effexor XR directly from Wyeth during the Class Period that did not also purchase generic Effexor XR directly. Also excluded from the Class for purposes of this Settlement Agreement are the following: Walgreen Co., The Kroger Co. (including Peytons), Safeway, Inc., United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B, L.P. f/k/a HEB Grocery Company, L.P., American Sales Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc. d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer, Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS Caremark Corporation (including Caremark and Omnicare) (collectively, "Retailer Plaintiffs").

The lawsuit asserts that as a result of Wyeth's and Teva's alleged unlawful conduct, the prices paid for brand Effexor XR and generic Effexor XR (extended release venlafaxine hydrochloride capsules) were higher than they otherwise would have been. The Plaintiffs seek to recover damages in the form of overcharges on direct purchases of brand or generic Effexor XR from Wyeth or Teva. Plaintiffs allege the overcharges were caused by Wyeth's and Teva's conduct. Under federal antitrust law, any damages awarded at trial are automatically trebled (that is, tripled). Plaintiffs also seek to recover attorneys' fees and costs.

The lawsuit alleges that Wyeth and Teva violated federal antitrust laws by unlawfully impairing and delaying the introduction of generic versions of the prescription drug Effexor XR into the United States market. The Plaintiffs allege that Wyeth, the manufacturer of brand Effexor XR, and Teva, a generic pharmaceutical company, entered into a "pay for delay" or "reverse payment" agreement in violation of the federal antitrust laws. A "pay for delay" or "reverse payment" agreement, generally speaking, is an agreement in which a brand name drug company provides compensation to a generic competitor, and in return, the generic competitor agrees to stop

5

challenging, or stop trying to invent around, the brand company's patent and agrees to delay launching its generic product. Absent the alleged unlawful conduct, the Plaintiffs claim, Teva would have launched generic Effexor XR earlier than July 1, 2010, the date on which Teva actually launched generic Effexor XR. The Plaintiffs allege that the prices for brand and generic Effexor XR were higher than they would have been absent the challenged unlawful conduct.

Wyeth denies all these allegations, including that the Plaintiffs or Class members are entitled to damages or any other relief.

There has been no determination by the Court or a jury that the allegations against Wyeth have been proven or that, if proven, Wyeth's conduct caused harm to the Class. This Notice is not an expression of any opinion by the Court as to the claims against Wyeth or Teva or the defenses asserted by Wyeth or Teva.

Judge Peter G. Sheridan of the United States District Court for the District of New Jersey is overseeing this class action and the settlement. The lawsuit is known as *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-5479 (PGS/JBD) (D.N.J.).

### 3.   Why Is This Lawsuit a Class Action?

In a class action lawsuit, one or more persons or entities sue on behalf of others who have similar claims. Together, all these entities make up the "Class" and are called "Class members." The companies that filed suit are called the "Plaintiffs" (or "Class Representatives"). The companies that are sued are called the "Defendants."

In a class action lawsuit, one court resolves the issues for everyone in the class, except for those class members who exclude themselves from the class.

For the purpose of this proposed settlement, the Court has decided that this lawsuit can proceed as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The common legal and factual questions include:

- Whether Wyeth conspired with Teva to suppress generic competition to Effexor XR;
- Whether Wyeth's conduct caused the Plaintiffs and members of the Class to pay higher prices than they otherwise would have; and
- Whether the alleged unlawful conduct is illegal under the antitrust laws.

The members of the Class are "Class members" or "Direct Purchaser Class members." A copy of the Court's preliminary order certifying the Class is available at [website].

### 4.   Why Is There a Settlement?

Plaintiffs and Wyeth were preparing to proceed with the litigation and eventually to go to trial, but they have now agreed to a proposed settlement. By settling, both the Plaintiffs and Wyeth avoid the risk of trial and the continued costs of litigation. The Class Representatives and Lead Class

6

Counsel believe that the proposed settlement with Wyeth is fair, adequate, reasonable, and in the best interests of the Class.

## WHO IS INCLUDED IN THE CLASS AND THE SETTLEMENT

To see if you are in the Class, and if so, how you will be able to share in the Settlement Fund, you first have to decide if you are a Class member.

**5.    Am I Part of the Class and the Settlement?**

You are in the Class if you are a person or entity in the United States and its territories who purchased Effexor XR or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 14, 2008 through May 31, 2011 (the "Class Period"). Excluded from the Direct Purchaser Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all governmental entities, and all persons or entities that purchased Effexor XR directly from Wyeth during the Class Period that did not also purchase generic Effexor XR directly. Also excluded from the Class for purposes of this Settlement Agreement are the following: Walgreen Co., The Kroger Co. (including Peytons), Safeway, Inc., United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B, L.P. f/k/a HEB Grocery Company, L.P., American Sales Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc. d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer, Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS Caremark Corporation (including Caremark and Omnicare) (collectively, "Retailer Plaintiffs").

If you are not sure whether you are included, you may call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 9 below.

## THE SETTLEMENT BENEFITS: WHAT YOU GET

**6.    What Does the Settlement Provide?**

Wyeth has agreed to pay $39,000,000 in cash into an interest-bearing escrow account ("Settlement Fund") for the benefit of the Class.

If approved by the Court, the Settlement Fund, minus any Court-awarded fees and expenses to Lead Class Counsel, the cost of settlement notice and administration, and service awards to the Class Representatives (the "Net Settlement Fund"), will be distributed to Class members who return valid and timely Claim Forms. The distribution will be made on a *pro rata* basis, consistent with each Class member's aggregate share of the total Class purchases of brand and generic Effexor XR during the relevant time periods described below in response to Question 7. The Allocation Plan utilizes the combined totals of each Class member's purchases of brand and generic Effexor XR during the relevant time periods described below in response to Question 7.

Transactional sales data from Wyeth and Teva will be used to make these calculations. Class members will be given the opportunity to provide data or information to supplement or correct this information if they choose. With this Notice, each Class member is being sent a Claim Form pre-populated with information about Class members' purchases to review, sign, and submit.

Lead Class Counsel will ask for service awards for each Class Representative of $100,000 from the Settlement Fund in recognition of their efforts to date on behalf of the Class.

In exchange for the Settlement Fund, Wyeth will be released and discharged from all antitrust and similar claims relating to brand and generic Effexor XR ("Wyeth Releasees" and "Released Claims" as defined in the Settlement Agreement). In addition, Wyeth will release Direct Purchaser Class Releasees from claims asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of this case. The full text of the release is included in the Settlement Agreement, available at [website].

This Notice is a summary only and is not intended to, and does not, vary the terms of the actual Settlement Agreement.

### 7. When Would I Get My Payment and How Much Would It Be?

Each Class member's proportionate *pro rata* recovery will be determined using a Court-approved Plan of Allocation. The detailed Plan of Allocation is posted and can be reviewed at [website]. Under the Plan of Allocation, your share of the Net Settlement Fund will depend on the total amount of brand Effexor XR that you purchased from Wyeth from June 14, 2008 through May 31, 2011 and generic Effexor XR that you purchased from July 1, 2010 through May 31, 2011 ("Class Purchases"). Generally, those who purchased more will get a higher recovery.

Your share of the Net Settlement Fund will also depend on the number of valid Claim Forms that Class members submit. If fewer than 100% of the Class members send in a Claim Form, you could get a larger *pro rata* share.

Money from the settlement will only be distributed to Class members if the Court grants final approval of the settlement. Payment is conditioned on several matters, including the Court's approval of the settlement and such approval no longer being subject to any appeals to any court or, if there is an appeal, such appeal being final and no longer subject to any further appeal.

The Settlement Agreement may be terminated if the Court does not approve the settlement or materially modifies it. If the Settlement Agreement is terminated, the lawsuit will proceed against Wyeth as if such settlement had not been reached.

### 8. How Can I Get a Payment?

You must complete and return the enclosed Claim Form by mail within 60 days (by date) to request a *pro rata* share of the Net Settlement Fund (though money from the settlement will only be distributed to Class members if the Court grants final approval of the settlement). Court-approved fees and expenses for the attorneys and service awards to the Class Representatives will also be paid by the Settlement Fund. Transactional sales data from Wyeth and Teva will be used to make the *pro rata* share calculations. You will need to verify the accuracy of the information in the Claim Form, and to sign and return the Claim Form according to the directions on the Claim Form. Class members have the opportunity to provide data or information to supplement or correct this information.

Claim Forms must be postmarked (with any necessary supporting documentation if the Claimant disagrees with the information contained in its Claim Form) within sixty (60) days of the date of the Claim Form (so by date).

## THE LAWYERS REPRESENTING YOU

### 9.   Do I Have a Lawyer in this Case?

The Court appointed the following attorneys to serve as Lead Class Counsel to represent you and all Class members. Their contact information is as follows:

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
tom@hbsslaw.com

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
pkohn@faruqilaw.com

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

### 10.   Should I Get My Own Lawyer?

You do not need to hire your own lawyer if you are in the Class because the lawyers appointed by the Court are working on your behalf as to claims against Wyeth. You may hire a lawyer and enter an appearance through your lawyer at your own expense if you so desire.

### 11.   How Will the Lawyers Representing the Class Be Paid?

If the Court gives Final Approval to the settlement with Wyeth, then the Court will be asked to approve reasonable fees and expenses for the lawyers who worked on the case and for reimbursement of the litigation expenses they have advanced on behalf of the Class. Lead Class Counsel intend to seek attorneys' fees of up to one third (33 1/3%) of the Settlement Fund, less court-approved expenses and service awards, but including a proportionate share of accrued interest. If the Court grants Lead Class Counsel's request, attorneys' fees and expenses would be deducted from the Settlement Fund. Class members will not have to pay any attorneys' fees or expenses out of their own pockets.

Any application by Lead Class Counsel for an award of attorneys' fees, reimbursement of expenses, and service awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before [date] at [website(s)], as well as the offices of the Clerk of Court for the United States District Court for the District of New Jersey, United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, during normal business hours.

## EXCLUDING YOURSELF FROM THE CLASS AND THE SETTLEMENT

### 12.   Can I Get Out of the Settlement with Wyeth?

Yes, if you exclude yourself from the Class (*i.e.*, "opt out" of the Class) on or before [date]. To exclude yourself, you must send a letter via first class U.S. mail saying that you want to exclude yourself from the Direct Purchaser Class Action in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-5479 (PGS/JBD) (D.N.J.). Be sure to include your name, address, telephone number, and your signature. Mail the exclusion to the lawyers listed in Question 14 below. Your letter requesting exclusion must be postmarked no later than [date].

If you exclude yourself from the Class, you will not get a share of the Net Settlement Fund, you will not be legally bound by anything that happens in the lawsuit between Plaintiffs and Wyeth, and you may be able to sue (or continue to sue) Wyeth in the future about the legal issues in this case. If you exclude yourself from the Class, do not complete and return the Claim Form. If you exclude yourself from the Class so that you can start, or continue, your own lawsuit against Wyeth and/or Teva, you should talk to your own lawyer as soon as possible because your claims will be subject to a statute of limitations, which means that your claims will expire if you do not take timely action. You need to contact your own lawyer about this issue.

If you do not exclude yourself from the Class, you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Wyeth arising from the claims released as part of the settlement, including claims brought in the case between Plaintiffs and Wyeth. All of the Court's orders in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-5479 (PGS/JBD) (D.N.J.) relating to claims against Wyeth will apply to you and legally bind you. You will also be bound by the Settlement Agreement between Plaintiffs and Wyeth if the Court grants Final Approval to the proposed settlement and enters final judgment in the case between the Plaintiffs and Wyeth.

### 13.   If I Don't Exclude Myself, Can I Sue Wyeth for the Same Thing Later?

No. If you remain in the Class and the settlement is approved by the Court, you give up your right to sue Wyeth relating to your purchases of brand and generic Effexor XR. That is called "releasing" your claims and potential claims against Wyeth relating to your purchases of Effexor XR from Wyeth and/or generic Effexor XR from Teva. The full text of the release is included in the Settlement Agreement at Paragraph 13.

If you have your own pending lawsuit, speak to your lawyer in that case immediately, because you must exclude yourself from this Class to continue your own lawsuit against Wyeth. Remember, the exclusion deadline is [date].

10

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or any part of the proposed settlement, and/or the application for attorneys' fees, costs, and expenses, and/or service awards to the Class Representatives. If you exclude yourself from the Class, however, you cannot object to the proposed settlement or the application for attorneys' fees, costs, expenses and/or service awards to the Class Representatives. If you object to the proposed settlement but remain in the Class, you still must complete and return the enclosed Claim Form by mail within 60 days (by date) to request a *pro rata* share of the Net Settlement Fund.

| 14. How Do I Tell the Court That I Do Not Like the Settlement? |
| --- |

If you are a member of the Class, you can object to the settlement or any part of it if you do not like it. The Court will consider your views. To object, you must send a letter via First Class U.S. Mail saying that you object to the settlement in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-5479 (PGS/JBD) (D.N.J.). Be sure to include your name, address, telephone number, signature, and the reasons why you object to the settlement. Mail the objection separately to each of the following:

| **Counsel for Wyeth** | **Lead Class Counsel** |
| --- | --- |
| Raj Gandesha<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>rgandesha@whitecase.com | David F. Sorensen<br>Berger Montague PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>dsorensen@bm.net |
| | Thomas M. Sobol<br>Hagens Berman Sobol Shapiro LLP<br>1 Faneuil Hall Sq., 5th Floor<br>Boston, MA 02109<br>tom@hbsslaw.com |
| | Peter Kohn<br>Faruqi & Faruqi LLP<br>One Penn Center, Suite 1550<br>1617 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>pkohn@faruqilaw.com |
| | Barry S. Taus<br>Taus, Cebulash & Landau, LLP<br>123 William Street, Suite 1900A<br>New York, NY 10038<br>btaus@tcllaw.com |

| | Dianne M. Nast<br>NastLaw LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, PA 19107<br>dnast@nastlaw.com<br><br>Don Barrett<br>Barrett Law Group, P.A.<br>404 Court Square<br>P.O. Box 927<br>Lexington, MS 39095<br>donbarrettpa@gmail.com |
|---|---|
| **Clerk of the Court** | |
| Clerk of the United States District Court for the District of New Jersey<br>United States District Court for the District of New Jersey<br>Clarkson S. Fisher Federal Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 | |

**Your objection must be postmarked no later than [date]. Again, whether or not you object to the proposed settlement, if you remain in the Class and do not opt out, you must complete and return the enclosed Claim Form by mail by [date] to request a *pro rata* share of the Net Settlement Fund.**

## THE COURT'S FINAL FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend, and you may ask to speak, but you do not have to.

### 15. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Final Fairness Hearing at [date/time] in Courtroom xx of the United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608. At this hearing, the Court will consider whether the settlement with Wyeth is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The date and time of the hearing is subject to change. Notice of such change will be posted at [website].

### 16. Do I Have to Come to the Hearing?

No, you do not have to attend the hearing. Lead Class Counsel will answer any questions that Judge Sheridan may have. You are welcome to attend at your own expense, however.

If you send an objection, you do not have to come to Court to talk about it. So long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but this is not necessary for you to receive a *pro rata* share of the Net Settlement Fund.

## 17.   May I Speak at the Hearing?

If you are a member of the Class, you may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter via First Class U.S. Mail saying that it is your "Notice of Intention to Appear in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-5479 (PGS/JBD) (D.N.J.)." Be sure to include your name, address, and telephone number, your signature, and a summary statement outlining your positions and the reasons for them, as well as copies of any supporting documents or briefs you want the Court to consider. Your Notice of Intention to Appear must be postmarked no later than [date], and must be sent to the Clerk of the Court, Class Counsel and Counsel for Wyeth, at the addresses set forth in the responses to Question 14.

You cannot speak at the hearing if you do not send a Notice of Intention to Appear.

## IF YOU DO NOTHING

## 18.   What Happens If I Do Nothing at All?

If you are a member of the Class and you do nothing and the Court approves the settlement, then you will remain in the Class and will be eligible to participate in the settlement as described in this Notice. You will also release your claims against Wyeth as described in the Settlement Agreement. However, you will need to complete, sign, and return the Claim Form within sixty (60) days of the date on this Notice (so by date) in order to obtain a payment.

## GETTING MORE INFORMATION

## 19.   How Do I Get More Information?

If you have questions about this case or wish to read more detailed information about this litigation, you may call or write to Lead Class Counsel as indicated in Question 14. Further information is also available at [website(s)]. The Notice and Claims Administrator, RG/2 Claims Administration, can be contacted at the following address:

> RG/2 Claims Administration
> P.O. Box 59479
> Philadelphia, PA 19102-9479

This Notice is only a summary of the proposed settlement and is qualified in its entirety by the terms of the actual Settlement Agreement. A copy of the Settlement Agreement is on public file with the Office of the Clerk, United States District Court for the District of New Jersey, United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S.

Courthouse, 402 East State Street, Trenton, New Jersey 08608, and is also available at [website].

**PLEASE DO NOT CALL OR WRITE TO THE COURT OR THE CLERK'S OFFICE FOR INFORMATION. PLEASE DIRECT ANY INQUIRIES TO ANY OF LEAD CLASS COUNSEL LISTED ABOVE.**

DATE: [date]                                    BY THE COURT

                                    The Honorable Peter G. Sheridan
                                    United States District Judge

14

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE EFFEXOR XR
ANTITRUST LITIGATION

THIS DOCUMENT RELATES
TO:

Direct Purchaser Class Actions

Master Docket No. 3:11-cv-05479
(PGS/JBD)

### [PROPOSED] ORDER GRANTING FINAL JUDGMENT AND ORDER OF DISMISSAL APPROVING DIRECT PURCHASER CLASS SETTLEMENT AND DISMISSING DIRECT PURCHASER CLASS CLAIMS AGAINST WYETH LLC, WYETH PHARMACEUTICALS, INC., WYETH-WHITEHALL PHARMACEUTICALS LLC, AND WYETH PHARMACEUTICALS COMPANY

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated March __, 2024 between Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company (collectively or individually, "Wyeth"), and Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc. d/b/a SAJ Distributors, and Uniondale Chemists, Inc., (collectively, "Named Plaintiffs," "Direct Purchaser Plaintiffs," "Direct Purchaser Class Plaintiffs," or "Plaintiffs"), individually and on behalf of the Direct Purchaser Class (as defined in Paragraph 2 below, the "Direct Purchaser Class" or "Class"), in the above-captioned litigation (the "Action"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1

1.    This Final Judgment and Order of Dismissal hereby incorporates by

reference the definitions in the Settlement Agreement among Wyeth, the Plaintiffs,

and the Direct Purchaser Class, and all capitalized terms used and not otherwise

defined herein shall have the meanings set forth in the Settlement Agreement.

2.    The following class (the "Class" or "Direct Purchaser Class") has

been certified under Fed. R. Civ. P. 23(b)(3) for purposes of Settlement with

Wyeth:

> All persons or entities in the United States and its
> territories who purchased Effexor XR and/or AB-rated
> generic versions of Effexor XR directly from any of the
> Defendants at any time during the period June 14, 2008
> through and until May 31, 2011 (the "Class Period").
>
> Excluded from the Direct Purchaser Class are Defendants
> and their officers, directors, management, employees,
> subsidiaries, or affiliates, all governmental entities, and all
> persons or entities that purchased Effexor XR directly
> from Wyeth during the Class Period that did not also
> purchase generic Effexor XR directly.
>
> Also excluded from the Class for purposes of this
> Settlement Agreement are the following: Walgreen Co.,
> The Kroger Co. (including Peytons), Safeway, Inc.,
> United Natural Foods, Inc. f/k/a Supervalu Inc., H-E-B,
> L.P. f/k/a HEB Grocery Company, L.P., American Sales
> Company, Inc., Rite Aid Corporation, Rite Aid Hdqtrs.
> Corporation, JCG (PJC) USA, LLC, Maxi Drug, Inc.
> d/b/a/ Brooks Pharmacy, Eckerd Corporation, Meijer,
> Inc., Meijer Distribution, Inc., Giant Eagle, Inc., and CVS
> Caremark Corporation (including Caremark and
> Omnicare) (collectively, "Retailer Plaintiffs").

2

3.      The Court previously appointed the Class Representatives. The Court previously appointed David F. Sorensen of Berger Montague PC, Thomas M. Sobol of Hagens Berman Sobol and Shapiro LLP, Peter Kohn of Faruqi & Faruqi, Barry Taus of Taus Cebulash & Landau LLP, Dianne M. Nast of NastLaw LLC and Don Barrett of Barrett Law Group as Lead Counsel for the Class ("Lead Class Counsel"). The Class Representatives and Lead Class Counsel have fairly and adequately represented the interests of the Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

4.      The Court has jurisdiction over these actions, each of the parties, and all members of the Class for all manifestations of this case, including this Settlement.

5.      The notice of settlement (substantially in the form presented to this Court as Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class via First Class Mail, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all members of the Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class Members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the

Class and a full opportunity having been offered to the Class to participate in the

_____ Fairness Hearing, it is hereby determined that all Class Members

are bound by this Order and Final Judgment.

7.      The Settlement of this Class Action was not the product of collusion

between the Class Representatives and Wyeth or their respective counsel, but rather

the result of *bona fide* and extensive arm's-length negotiations conducted in good

faith between Lead Class Counsel and counsel for Wyeth, with the assistance of a

mediator, the Hon. Faith S. Hochberg.

8.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court

hereby approves the Settlement and finds that the Settlement is, in all respects, fair,

reasonable and adequate to Class members and in their best interests. Accordingly,

the Settlement shall be consummated in accordance with the terms and provisions

of the Settlement Agreement.

9.      The Court hereby approves the Plan of Allocation of the Settlement

Fund as proposed by Lead Class Counsel (the "Plan of Allocation"), which was

summarized in the Notice of Proposed Settlement and filed as Exhibit 2 with

Plaintiffs' Motion for Preliminary Approval of Settlement, and directs RG/2 Claims

Administration, the firm retained by Lead Class Counsel and previously appointed

4

by the Court as the Notice and Claims Administrator, to distribute the Net Settlement Fund as provided in the Plan of Allocation.

10. All claims against Wyeth in the Action are hereby dismissed with prejudice and without costs (other than as provided herein).

11. Upon the Settlement Agreement becoming final in accordance with Paragraph 13.b of the Settlement Agreement, Wyeth on behalf of itself and its respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (collectively, the "Wyeth Releasors"), release and forever discharge, and covenant not to sue, Direct Purchaser Class Members and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing

5

(collectively, the "Direct Purchaser Class Releasees") from all claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of Paragraph 13 of the Settlement Agreement.

12.     In addition, upon the occurrence of the Effective Date set forth in Paragraph 6 of the Settlement Agreement, and in consideration of payment of the Settlement Amount specified in Paragraph 7 of the Settlement Agreement, Named Plaintiffs and all Class Members, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as the past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all Class Members (the "Direct Purchaser Class Releasors"), release and forever discharge, and covenant not to sue Wyeth and its respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers,

6

directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing) (the "Wyeth Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions up to the date of the Settlement Agreement, (a) alleged, or which could reasonably have been alleged, in the Direct Purchaser Class Action, (b) concerning purchases of Effexor XR and/or its generic equivalents and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, any state or federal RICO statutes, or any other federal or state statute or common law doctrine relating to antitrust, fraud, unfair competition, unjust enrichment, or consumer protection, or (c) the sale, marketing, or distribution of Effexor XR or generic Effexor XR except as provided for in Paragraphs 13(c) and 14 of the Settlement Agreement (the "Released Claims"). The Direct Purchaser Class Releasors will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or

administrative forum, asserting the Released Claims against the Wyeth Releasees.

In addition, Direct Purchaser Class Releasors hereby expressly waive,

release and forever discharge, upon the Settlement becoming final, any and all

provisions, rights and benefits conferred by Section 1542 of the California Civil

Code, which reads:

> Section 1542. General Release; extent. A general release
> does not extend to claims that the creditor or releasing
> party does not know or suspect to exist in his or her favor
> at the time of executing the release and that, if known by
> him or her, would have materially affected his or her
> settlement with the debtor or released party;

or by any law of any state or territory of the United States or other jurisdiction, or

principle of common law, which is similar, comparable, or equivalent to Section

1542 of the California Civil Code. The Direct Purchaser Releasors may hereafter

discover facts other than or different from those which he, she or it knows or believes

to be true with respect to the claims which are the subject matter of Paragraph 13 of

the Settlement Agreement, but each Direct Purchaser Releasor hereby expressly

waives and fully, finally, and forever settles, releases, and discharges any known or

unknown, suspected or unsuspected, asserted or unasserted, contingent or non-

contingent claim that would otherwise fall within the definition of Released Claims,

whether or not concealed or hidden, without regard to the subsequent discovery or

existence of such different or additional facts. Each Direct Purchaser Releasor also

hereby expressly waives and fully, finally and forever settles, releases and

8

discharges any and all claims it may have against any Wyeth Releasee under Section 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

13.     The Settlement Agreement releases only the Wyeth Releasees and the Direct Purchaser Class Releasees with respect to the Released Claims.     The Settlement Agreement, in whole or in part, does not compromise or otherwise affect in any way any rights the Direct Purchaser Releasors have or may have against any other person, firm, association, or corporation whatsoever. The release set forth in Paragraph 13 of the Settlement Agreement is not intended to and does not release any claims other than the Released Claims.

14.     The Settlement effects a complete and total resolution of this Action to the extent of the claims of the Direct Purchaser Class, as well as any compulsory counterclaims of Wyeth relating to the allegations in this Action that were or should have been asserted, but Direct Purchaser Class members do not release any claims (1) arising in the ordinary course of business between any Direct Purchaser Class member and Wyeth arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; (2) unrelated to

purchases of Effexor XR or generic Effexor XR; or (3) arising out of or in any way relating to the alleged claims against Wyeth and other manufacturers of generic pharmaceutical products that are alleged in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724, 16-MD-2724 (E.D. Pa.).

15.  Lead Class Counsel have moved for the award of attorneys' fees, reimbursement of expenses and service awards for the Class Representatives. Lead Class Counsel request an award of attorneys' fees of ____% of the Settlement amount (including the interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $_____, and service awards of $100,000 to each Class Representative, and such motion has been on the docket and otherwise publicly available since _____.

16.  Upon consideration of the motion for attorneys' fees, costs and expenses, the Court hereby awards attorneys' fees of $_____ (representing ____% of the Settlement Fund), and costs and expenses totaling $_____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund. The attorneys' fees, costs and expenses authorized and approved by this Final Judgment and Order shall be paid within ten

10

(10) business days after this Final Approval Order is entered or as soon thereafter as is practical and in accordance with the terms of the Settlement Agreement and the Escrow Agreement.

17.    Upon consideration of Lead Class Counsel's petition for service awards for Class Representatives, Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc. d/b/a SAJ Distributors, and Uniondale Chemists, Inc., are each hereby awarded \$100,000, to be paid solely from the Settlement Fund as soon as possible after the Settlement becomes final in accordance with Paragraph 6 of the Settlement Agreement.

18.    The Releasees shall have no responsibility for, and no liability whatsoever with respect to any payment or disbursement of attorneys' fees, expenses, costs or service awards among Lead Class Counsel or other counsel and/or Class Representatives, nor with respect to any allocation of attorneys' fees, expenses, costs or service awards to any other person or entity who may assert any claim thereto. The attorneys' fees, costs and expenses, and service awards authorized and approved by this Final Judgment and Order shall constitute full and final satisfaction of any and all claims that Plaintiffs and any Class Member, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and service awards, and Plaintiffs and members of the Class, and their

respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or service awards from Wyeth other than from the Settlement Fund.

19.   The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement, and over this Final Judgment and Order.

20.   The Court finds that this Final Judgment and Order adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Class) and is final and shall be immediately appealable pursuant to Fed. R. Civ. P. 54(b). Neither this Order nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by Wyeth or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Order, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim, including because such

12

claim is covered by Paragraphs 13(c) and 14 of the Settlement Agreement ("Reservation of Claims" and "Additional Reservation of Claims").

SO ORDERED this _____ day of _____, 2024

_____
The Honorable Peter G. Sheridan
United States District Judge

13

# EXHIBIT D

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated March ___, 2024, is made among Hagens Berman Sobol Shapiro, LLP, Berger Montague PC, Faruqi & Faruqi LLP, Taus Cebulash & Landau, LLP, NastLaw LLC, and Barrett Law Group, P.A. ("Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

### Recitals

A.     This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement Agreement (the "Settlement Agreement") dated March ___, 2024, entered into by, among others, Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company (collectively or individually, "Wyeth" or "Defendant") and Class Counsel on behalf of the Direct Purchaser Class Plaintiffs, will be paid to settle the class action captioned *In re Effexor XR Antitrust Litigation,* No. 3:11-cv-5479 (PGS) (the "Class Action"), pending in the United States District Court for the District of New Jersey (the "Court").

B.     Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid the total amount of thirty-nine million dollars ($39,000,000) in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.     The Settlement Amount, together with any interest accrued thereon, is to be deposited into Custodian/Escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, service awards, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### **Agreement**

1.     Appointment of Custodian/Escrow Agent.     The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the

1

Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      The Custodian/Escrow Account.  The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as Effexor XR DPP Settlement Fund (the "Custodian/Escrow Account").   Pursuant to the Settlement Agreement, the Defendant shall cause twenty million dollars ($20,000,000.00) of the Settlement Amount to be deposited into the Custodian/Escrow Account within ten (10) calendar days after entry of the Preliminary Approval Order pursuant to Paragraph 7 of the Settlement Agreement and the remainder of the Settlement Amount ($19,000,000.00) to be deposited on or before fifteen (15) calendar days prior to the District Court's fairness hearing regarding final approval of the Settlement.  Custodian/Escrow Agent shall receive the Settlement Amount into the Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3.      Investment of Settlement Fund.  At the written direction of Class Counsel, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.      Custodian/Escrow Funds Subject to Jurisdiction of the Court.  The Custodian and Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.      Tax Treatment & Report.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  Class Counsel and, as required by law, the Defendant, shall jointly and

timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel. Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.  Tax Payments of Settlement Fund. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Class Counsel. Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Custodian/Escrow Agent at Class Counsel's direction. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Custodian/Escrow Agent, as directed by Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

7.  Disbursement Instructions

(a)  Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Custodian/Escrow Agent to

3

disburse the funds necessary to pay Notice and Administration Expenses not to exceed, in the aggregate, $75,000.

(b)     Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of either David F. Sorensen or Thomas M. Sobol, Class Counsel.

(c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.     It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs.     If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.     The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent.     Class Counsel will notify Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.     If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.     Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of

4

the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.    Termination of Settlement. If the Settlement Agreement terminates in accordance with its terms, Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Class Counsel.

9.    Fees. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit A. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.    If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.    Duties, Liabilities and Rights of Custodian/Escrow Agent.    This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)    Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the

5

correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Class Counsel or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement.   The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further

obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)   In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.   Non-Assignability by Custodian/Escrow Agent.   Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.   Resignation of Custodian/Escrow Agent.   Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief.   Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

13.   Notices.   Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

7

If to Class Counsel: Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
tom@hbsslaw.com

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
pkohn@faruqilaw.com

Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

8

| If to | THE HUNTINGTON NATIONAL BANK |
| Custodian/Escrow | Robyn Griffin |
| Agent: | Senior Managing Director |
| | National Settlement Team |
| | The Huntington National Bank |
| | One Rockefeller Plaza 10th Fl |
| | New York, NY 10020 |
| | Office: 212-581-5051 |
| | Mobile: 646-265-3817 |
| | E-mail: robyn.griffin@huntington.com |

Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA5W63
Columbus, Ohio 43219
Telephone: (614) 331-9804
E-mail: susan.brizendine@huntington.com

14. Patriot Act Warranties. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15. Entire Agreement. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16. Governing Law. This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding

this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17. Termination of Custodian/Escrow Account. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18. Miscellaneous Provisions.

(a) Counterparts. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b) Further Cooperation. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c) Electronic Signatures. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

10

(d) Non-Waiver. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____

   Robyn Griffin, Senior Managing Director


Class Counsel

By: _____

David F. Sorensen
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

By: _____

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
tom@hbsslaw.com

By: _____

Peter Kohn
Faruqi & Faruqi LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
pkohn@faruqilaw.com

11

By: _____
Barry S. Taus
Taus, Cebulash & Landau, LLP
123 William Street, Suite 1900A
New York, NY 10038
btaus@tcllaw.com

By: _____
Don Barrett
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

By: _____
Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

12

## Exhibit A

### Fees of Custodian/Escrow Agent

**Acceptance Fee:**                                                        **Waived**

The Acceptance Fee includes the review of the
Custodian/Escrow Agreement, acceptance of the role as
Custodian/Escrow Agent, establishment of
Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                             **Waived**

The Annual Administration Fee includes the performance
of administrative duties associated with the
Custodian/Escrow Account including daily account
management, generation of account statements to
appropriate parties, and disbursement of funds in
accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance
without proration for partial years.

**Out of Pocket Expenses:**                                                **Waived**

Out of pocket expenses include postage, courier,
overnight mail, wire transfer, and travel fees.

13