**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**
Peter S. Pearlman
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
(201) 845-9600 (telephone)
(201) 845-9423 (fax)
psp@njlawfirm.com
mfg@njlawfirm.com

*Attorneys for the Direct Purchaser Plaintiff Class*

*(Additional counsel on signature page)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: EFFEXOR XR ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*All Direct Purchaser Class Actions* | **Master Docket No. 3:11-cv-05479 (PGS/JBD)** |

## MEMORANDUM IN SUPPORT OF DIRECT PURCHASER CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS FOR THE NAMED PLAINTIFFS

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ....................................................................................1

II.    SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS ................5

    A.     Pre-filing investigation. ........................................................................5

    B.     Motions to dismiss and appeal to the Third Circuit. ...........................6

    C.     Discovery..............................................................................................7

    D.     Mediation and settlement .....................................................................8

III.   ARGUMENT.........................................................................................9

    A.     Class counsel should be awarded reasonable attorneys' fees. .............9

    B.     The *Gunter/Prudential* factors support Class Counsel's requested fee. ........................................................................................................9

        1.     The size of the fund created and the number of persons benefitted favor the requested fee.............................................11

        2.     Objections to the requested fee...................................................12

        3.     Class Counsel are highly skilled in antitrust litigation. ............13

        4.     The complexity and duration of the action favor the requested fee.............................................................................................15

        5.     The risk of nonpayment favors the requested fee....................16

        6.     The significant time devoted to this action favors the requested fee.............................................................................................18

        7.     The requested fee is in line with awards in similar cases.........19

        8.     The benefits of the settlement are attributable to Class Counsel. ........................................................................................21

9.     The requested fee is consistent with the percentage fee that courts in this Circuit have held would have been privately negotiated. ...............................................................22

10.    Innovative terms of settlement. ...................................................23

C.    A cross-check of Class Counsel's lodestar confirms the reasonableness of the requested fee. ..............................................................23

D.    Class Counsel's expenses were reasonable and necessary to the result. .............................................................................26

E.    Service awards for the Class Representatives are appropriate and reasonable. ...................................................................27

IV.    CONCLUSION. ............................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    278 F.R.D. 51 (E.D.N.Y. 2010) ..............................................................................28

*Am. Soc'y of Mech. Engineers v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ..............................................................................................28

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................9

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013) ................................................................................................6

*Fusion Elite All Stars v. Varsity Brands, LLC*,
    2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) ....................................................15

*Glaberson v. Comcast Corp.*,
    2015 WL 5582251 (E.D. Pa. Sep. 22, 2015) ........................................................9

*Gunter v. Ridgewood Corp.*,
    223 F.3d 190, 195 n.1 (3d Cir. 2000). .................................................................10

*Hall v. AT&T Mobility LLC*,
    2010 WL 4053547 (D.N.J. Oct. 13, 2010) ...................................................*passim*

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*,
    2022 WL 2985634 (E.D. Pa. Jul. 22, 2022) ........................................................23

*In re HIV Antitrust Litig.*,
    No. 19-cv-02573 (N.D. Cal. Jun. 30, 2023) ........................................................17

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) .....................................................22

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 WL 1320827 (D.N.J. May 3, 2022) ....................................................*passim*

*In re Kirsch v. Delta Dental of N.J.*,
    534 Fed. Appx. 113 (3d Cir. 2013) .......................................................................9

iv

*La. Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
No. 07-cv-07343 (S.D.N.Y. Nov. 20, 2008) ........................................................17

*McDonough v. Toys "R" Us, Inc.*,
80 F.Supp.3d 626 (E.D. Pa. 2015) ........................................................18

*In re Mercedes-Benz Emissions Litig.*,
2021 WL 7833193 (D.N.J. Aug. 2, 2021) ....................................................16, 18

*In re Nexium Antitrust Litig.*,
No. 12-md-02409 (D. Mass. Dec. 5, 2014) ........................................................17

*In re Novartis and Par Antitrust Litig.*,
No. 1:18-cv-04361, ECF No. 635 (S.D.N.Y. Jul. 26, 2023) .............................28

*O'Hern v. Vida Longevity Fund, LP*,
2023 WL 3204044 (D. Del. May 2, 2023) ........................................................24

*In re Opana ER Antitrust Litig.*,
No. 1:14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022)............................28

*In re Opana ER Antitrust Litig.*,
No. 14-cv-10150 (N.D. Ill. Jul. 1, 2022) ........................................................17

*In re Philips/Magnavox TV Litig.*,
2012 WL 1677244 (D.N.J. May 14, 2012)..................................................*passim*

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ....................................................................10, 24

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 8181042 (D.N.J. Nov. 9, 2005) ..................................................19, 22

*In re Remicade*,
2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ......................................15, 18, 24

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................12

*In re Safety Components Int'l Secs. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001)........................................................26

*In re Schering-Plough Corp.*,
2012 WL 1964451 (D.N.J. May 31, 2012) .........................................................12

*In re Suboxone Antitrust Litig.*,
2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ................................................*passim*

*In re Suboxone (Buprenorphine and Naloxone) Antitrust Litig.*,
2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ....................................14, 19, 23, 28

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2022 WL 2373981 (D.N.J. Jun. 30, 2022) .......................................................10

*In re Valeant Pharms. Int'l Third-Party Payor Litig.*,
2022 WL 525807 (D.N.J. Feb. 22, 2022) .........................................................24

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
2020 WL 1922902 ...............................................................................................18

*Wallace v. Powell*,
2015 WL 9268445 (M.D. Pa. Dec. 21, 2015) ...................................................18

**Statutes**

Fed. R. Civ. P. 23(h) ....................................................................................................9

## I.    INTRODUCTION

Class Counsel, who have represented named plaintiffs Rochester Drug Co-Operative, Inc. ("RDC"), Stephen L. LaFrance Holdings, Inc. d/b/a SAJ Distributors ("LaFrance"), and Uniondale Chemists, Inc,. ("Uniondale") (collectively, "Plaintiffs"), and the now-certified direct purchaser settlement class (the "Class") throughout this litigation, respectfully submit this memorandum in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Services Awards for the Named Plaintiffs.

On March 21, 2024, after more than twelve years of litigation and extensive mediation, Class Counsel agreed to a settlement (the "Settlement") with defendants Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company (collectively "Wyeth") providing for an immediate cash payment by Wyeth of $39 million for the benefit of the Class. If finally approved by the Court, the Settlement will result in the dismissal of this long-pending litigation between Plaintiffs and Wyeth.[1]

---

[1] As noted in Plaintiffs' preliminary approval papers, defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") are not part of the Settlement and so litigation will continue against Teva. *See* ECF No. 729. Teva and Wyeth are collectively referred to as "Defendants" herein.

Investigating, bringing, litigating, and mediating this lengthy and highly complex case involving the intersection of patent and antitrust law required Class Counsel to work and persevere for more than twelve years, knowing that they were litigating the case on a wholly contingent basis without any guarantee of success against formidable adversaries. From case investigation through the filing of their motion for preliminary approval of the proposed Settlement with Wyeth, Class Counsel expended more than 43,800 hours of uncompensated professional time. Class Counsel also incurred $2,161,343.51 in unreimbursed out-of-pocket expenses. For these efforts, Class Counsel seek an award of attorneys' fees in the amount of $13 million (or one-third, 33⅓%, of the the Settlement amount) plus a proportionate amount of any interest accrued since the Settlement was escrowed, reimbursement of expenses, and service awards to the named plaintiffs.[2]

As detailed below, Class Counsel's fee request is strongly supported by each of the "*Gunter/Prudential*" factors.

---

[2] The efforts of Class Counsel are described in further detail below and in the accompanying declaration of Peter S. Pearlman ("Pearlman Decl.") and individual law firm declarations, filed contemporaneously herewith (Pearlman Decl. Exs. A through J).

First, the size of the Settlement — $39 million cash — unquestionably represents a substantial, immediate, and guaranteed recovery for the Class in terms of dollar value.

Second, to the extent any objections to Class Counsel's requested fee award are received, Class Counsel will promptly inform the Court.

Third, Class Counsel are highly experienced antitrust litigators, some of whom have been representing essentially the same Class here for decades, and possess the valuable skill, knowledge, and expertise that were necessary to evaluate the Settlement and successfully resolve the claims of the Class against Wyeth in this long-pending litigation.

Fourth and fifth, while all antitrust cases are inherently complex and all litigation involves some degree of risk, these complexities and risks were magnified here for numerous reasons. Most notably, this case was litigated in the midst of rapidly evolving law concerning the appropriate legal standard under which to evaluate reverse payment agreements challenged as violative of the antitrust laws, resulting in the Supreme Court granting *certiorari* and issuing its landmark opinion in *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013) during the initial years of the litigation. Additionally, pharmaceutical antitrust cases involve a unique combination of intricate legal and factual issues spanning multiple fields including pharmaceutical manufacturing, economics, and patent law.

3

Over the course of twelve years that this litigation has been pending, Class Counsel have aggressively litigated numerous key issues – many of which were extensively briefed during mediation –  to ensure that the Class's potential recovery from Wyeth would not be eliminated or curtailed during the litigation, and will be as the case will be successfully maintained against Teva. Still, a high degree of risk remains. As discussed further below, previous pharmaceutical antitrust cases have been lost after significant and lengthy litigation either because of successful defense summary judgment motions or adverse jury verdicts.

Sixth, the Settlement is the result of lengthy, hard-fought, arm's length negotiations that first began in 2020 under the direction of Judge Hochberg pursuant to this Court's directive and proceeded for multiple years, with the parties comprehensively briefing numerous issues on various topics and participating in numerous in-person and telephonic mediation sessions (many of which occurred during the height of the COVID-19 pandemic).

Seventh, the requested fee award of one-third is squarely within the range typically awarded by courts in the Third Circuit and is in line with awards granted in other pharmaceutical antitrust cases.

Eighth, Class Counsel did not ride the coattails of any government investigation in initiating and prosecuting this litigation.

4

Ninth, the requested fee award is consistent with the percentage fee that courts in this Circuit have held would have been privately negotiated.

A lodestar cross-check supports the fee request, as the requested fee is significantly less than Class Counsel's total lodestar, whether calculated using current billing rates (a 0.39 multiplier) or historical rates (a 0.53 multiplier).

## II.   SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS

### A.   Pre-filing investigation.

Certain of Class Counsel filed the first direct purchaser complaint in May 2011.  Pearlman Decl. at ¶ 2. Shortly thereafter, similar direct purchaser complaints were filed by Class Counsel in different districts, which were ultimately centralized in this District by the Judicial Panel for Multidistrict Litigation. *Id.* at ¶¶ 3-4.

None of the above-referenced complaints followed any governmental investigation or enforcement action. All such complaints were the result of pre-filing investigation performed by Class Counsel. That investigation included, *inter alia*, reviewing and analyzing the market availability of generic versions of Effexor XR, including Abbreviated New Drug Applications ("ANDAs") filed with the Food and Drug Administration ("FDA") seeking approval to market generic versions of Effexor XR; publicly available regulatory filings for Effexor XR; publicly available patent litigation records concerning Effexor XR; Wyeth's and

5

Teva's securities filings, including annual and quarterly reports; Wyeth's and

Teva's public statements concerning Effexor XR; publicly available materials

concerning Effexor XR; Wyeth's promotional materials related to Effexor XR; and

information related to Effexor XR product packaging. *Id.* at ¶ 5.

### B.    Motions to dismiss and appeal to the Third Circuit.

Class Counsel opposed two rounds of motions to dismiss, which spanned the

period before and after the Supreme Court's issuance of its landmark *Actavis*

opinion establishing the appropriate legal framework under which to analyze

reverse payment agreements alleged to be violative of the antitrust laws. Pearlman

Decl.  at ¶ 95.[3] Because Defendants' first round of motions to dismiss preceded the

*Actavis* decision, the parties undertook a second round of motion to dismiss

briefing which focused on applying Actavis to Plaintiffs' claims.[4]

On October 6, 2014, this Court granted in part and denied in part

Defendants' motion to dismiss. The Court dismissed Plaintiffs' claims based on

their reverse payment theory, while allowing Plaintiffs' claims based on Wyeth's

alleged *Walker Process* fraud to continue. After this Court granted Plaintiffs'

motion for a final judgment under Rule 54(b), Plaintiffs appealed to the Third

Circuit. There, Plaintiffs first defeated Defendants' attempt to transfer the appeal to

---

[3] *See also FTC v. Actavis, Inc.*, 570 U.S. 136 (2013).

[4] *Id.*

6

the Federal Circuit. After rejecting Defendants' argument to transfer in a precedential opinion, the Third Circuit thereafter addressed the merits of Plaintiffs' appeal, and in a second precedential opinion, concluded that Plaintiffs' allegations were sufficient, and reversed this Court's decision and remanded the case to this Court for further proceedings. Pearlman Decl. at ¶ 50.

### C.    Discovery

While a limited amount of discovery (and discovery-related motion practice) occurred prior to the Third Circuit's remand, full fact discovery did not open until January 2018.  Over the next two years, substantial discovery was conducted and numerous discovery disputes were briefed and resolved, some necessitating the appointment of a Special Master. Pearlman Decl. at ¶ 70.  In 2020, discovery was stayed so the parties could devote full attention to mediation.

Even though full discovery has not yet been completed, Class Counsel has already received approximately 7.5 million pages of documents from Defendants. Pearlman Decl. at ¶ 69. Class Counsel carefully reviewed and analyzed the large volumes of documents produced, and marshalled this evidence for various purposes, including working with experts and during the extensive and lengthy briefing that took place during mediation. Pearlman Decl. at ¶ 95. In addition, and based on this review, Plaintiffs identified deponents and requested that Defendants

provide deposition dates for deponents before discovery was stayed. Pearlman Decl. at ¶¶ 70-71.

Class Counsel also engaged in extensive discovery-related motion practice. Indeed, the extent of the discovery disputes that arose was such that this Court deemed it appropriate to appoint a Special Discovery Master. Pearlman Decl. at ¶ 70.

### D.    Mediation and settlement

The parties' mediation began in March 2020 pursuant to the directive of the Court, which, with the consent of the parties, appointed the Honorable Faith Hochberg (Ret.) as mediator. The mediation process, which started during the height of the COVID-19 pandemic, progressed via various written submissions followed by Zoom and/or telephonic sessions. Subsequently, mediation progressed to several years of extensive and lengthy briefing across five sets of issues outlined by Judge Hochberg. *Id.* at ¶¶ 81-82.

At all times through and including the execution of a written agreement, both Class Counsel and Wyeth presented their views on the merits of each other's positions and engaged in hard fought, arm's length negotiations. Finally, on March 21, 2024, they executed a written settlement agreement and shortly thereafter Class Counsel filed a motion for preliminary settlement approval. *Id.* at ¶ 85.

8

### III.    ARGUMENT

**A.    Class counsel should be awarded reasonable attorneys' fees.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[5] An attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[6]

While attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar method, "[t]he Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases."[7]

**B.    The *Gunter/Prudential* factors support Class Counsel's requested fee.**

In evaluating fee awards, courts within the Third Circuit often consider the following factors as articulated in *Gunter v. Ridgewood Energy Corp.*:

---

[5] *See* Fed. R. Civ. P. 23(h).

[6] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

[7] *Glaberson v. Comcast Corp.*, 2015 WL 5582251 (E.D. Pa. Sep. 22, 2015) (collecting cases); *see also In re Kirsch v. Delta Dental of N.J.*, 534 Fed. Appx. 113, 115 (3d Cir. 2013) (percentage of recovery method "generally favored in common fund cases") (internal quotation omitted); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022) (common fund settlements "best analyzed using the percentage-of-recovery methodology") (internal quotation omitted); *In re Philips/Magnavox TV Litig.*, 2012 WL 1677244, at *15 (D.N.J. May 14, 2012) ("The percentage-of-recovery method is preferred in common fund cases…").

9

(1) the size of the fund created and the number of persons benefitted;
(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel;
(3) the skill and efficiency of the attorneys involved;
(4) the complexity and duration of the litigation;
(5) the risk of nonpayment;
(6) the amount of time devoted to the case by counsel; and
(7) awards in similar cases.[8]

Additionally, as articulated in *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,[9] courts may also consider:

[8] [T]he value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;
[9] the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and
[10] any "innovative" terms of settlement.[10]

Once all of the *Gunter* and *Prudential* factors have been considered, the Third Circuit has suggested that it is "sensible" for district courts to cross check the percentage fee award yielded against the lodestar method.[11]

---

[8] *Gunter v. Ridgewood Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000).

[9] *In re Prudential Insurance Company*, 148 F.3d 283, 336-40 (3d Cir. 1998).

[10] *Kanfesky,* 2022 WL 1320827, at *10-11. *See also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2022 WL 2373981, at *2-3 (D.N.J. Jun. 30, 2022) (in the Third Circuit, courts consider "the *Gunter-Prudential*" factors). Courts "need not apply these [factors] in a formulaic way" and "[c]ertain factors may be afforded more weight than the others." *In re Philips/Magnavox*, 2012 WL 1677244, at *17.

[11] *In re Prudential*, 148 F.3d at 333. *See also Kanefsky*, 2022 WL 1320827, at *11 ("Courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method").

10

As demonstrated below, consideration of each *Gunter/Prudential* factor, followed by a lodestar cross check, supports the requested fee.

**1.    The size of the fund created and the number of persons benefitted favor the requested fee.**

Here, the Class consists of 63 direct purchasers that will be entitled to share in a recovery of $39 million (net of any attorneys' fees, expenses and service awards granted by the Court). Upon the Settlement becoming final, Class members will receive a substantial and immediate economic recovery. In fact, in accordance with ¶ 13 of the Court's April 25, 2024 Preliminary Approval Order (ECF No. 732), Class members were sent a Settlement Notice via first-class mail on May 3, 2024 which also included individualized, pre-populated claim forms. The Settlement Notice (and claim forms) instructed Class members to complete, sign and return or postmark claim forms by the deadline of July 2, 2024.

The Settlement provides recovery to the Class that is substantial not only in terms of dollar value, but also when assessed in light of the risks Class Counsel faced in prosecuting the Class's claims, as discussed below in Section III.B.5. Absent the Settlement, Class Counsel would have had to continue to litigate against Wyeth (as Class Counsel is still doing with respect to Teva) and secure a favorable jury verdict. And even assuming that occurred, an appeal (and possibly a subsequent petition for *certiorari*) would inevitably follow, presenting additional risk and delay in a case already more than twelve years old. In comparison, the

11

Settlement assures the Class of an immediate and substantial recovery free from

the risks and delays of a jury trial and subsequent appeals.[12]

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 2.    Objections to the requested fee.

Receipt of few objections to a fee request indicates that the class's "reaction

to the fee request supports approval," particularly where class members are

"sophisticated" entities that have "considerable financial incentive to object had

they believed the requested fees were excessive."[13]

On May 3, 2024 Class members were mailed a notice of settlement approved

by the Court, which included notice that Class Counsel intended to submit an

application for attorneys' fees of up to 33⅓% of the Settlement Fund (including a

proportionate share of interest accrued), plus Court-approved expenses and service

---

[12] *See generally Kanefsky*, 2022 WL 1320827, at *11 ($10 million settlement in securities class action created a "significant" fund that benefitted the class); *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *16 (D.N.J. Oct. 13, 2010) (one third fee award reasonable in $18 million settlement in consumer protection class action); *In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *40 (E.D. Pa. Dec. 4, 2023) (one third fee award reasonable in $30 million settlement benefitting class of purchasers in pharmaceutical antitrust class action).

[13] *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005).  *See also In re Schering-Plough Corp.*, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) ("The lack of objections to the requested attorneys' fees supports the request, especially because the settlement class includes large, sophisticated institutional investors") (internal quotation omitted); *In re Philips/Magnavox*, 2012 WL 1677244, at *17 (absence of objections "strongly support[ed] approval" of requested fees).

awards, and that Class members had the right to object to any or all of the above or to opt out of the Class. The period for lodging objections to either the Settlement or Class Counsel's fee application or to opt out of the Class concludes in one week, on June 17, 2024. *See* ECF No. 732 (Order) at ¶¶ 14, 19. To date, six weeks since the notice was mailed, *no* such objections have been received and no opt-outs from the Class have been received.  In the event any objection is received during the final week, Class Counsel will promptly inform the Court.

Accordingly, barring a significant number of last-minute objections, analysis of this factor supports Class Counsel's fee request.

### 3.    Class Counsel are highly skilled antitrust litigators.

Courts consider "the skill and efficiency of Plaintiff's counsel as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."[14] "The Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'"[15]

---

[14] *Hall*, 2010 WL 4053547, at *19 (internal quotation omitted).

[15] *In re Suboxone*, 2023 WL 8437034, at *15 (quoting *Gunter*, 223 F.3d at 198)) (quotations omitted).

13

Here, Class Counsel is highly experienced in prosecuting pharmaceutical antitrust class actions, as one district court in this Circuit recently recognized.[16] Collectively, Class Counsel, and the sophisticated group of co-counsel who have litigated this case alongside Class Counsel, are some of the most preeminent antitrust firms in the country, with decades of experience in complex pharmaceutical antitrust litigation. *See generally* Pearlman Decl. at Exs. A through J. The attorneys involved specialize in particular areas of expertise (*e.g.*, issues relating specifically to patent law, liability, causation, regulatory regimes, economics, pharmaceutical manufacturer business operations, pharmaceutical wholesaler business operations), providing Class Counsel the ability to deploy efficient and non-duplicative resources meant to build the strongest case possible for the Class and to rebut each of Wyeth's numerous defenses.[17] Class Counsel also

---

[16] *See In re Suboxone (Buprenorphine and Naloxone) Antitrust Litig.*, 2024 WL 815503, at *15 (E.D. Pa. Feb. 27, 2024) ("As repeatedly discussed above…Class Counsel are skilled and effective class action litigators that have obtained a highly favorable settlement in an extremely complex case litigated over the course of ten years").

[17] *See In re Philips/Magnavox*, 2012 WL 1677244, at *5, *18 (class counsel had extensive experience litigating and settling complex consumer class actions and obtained substantial benefit for class through settlement); *Kanefsky*, 2022 WL 1320827, at *11 (noting "zealous advocacy" by counsel for all parties, which consisted of "highly reputable firms with experience in complex class actions and civil litigation").

14

had formidable adversaries in the form of a large and sophisticated defense firm retained by Wyeth.

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 4.    The complexity and duration of the action favor the requested fee.

Courts recognize that "antitrust class actions are among the most complex to litigate."[18] This case is no exception, and in fact, has been exceptionally complex for numerous reasons.

This litigation was brought during an era of rapidly evolving antitrust law. Shortly after the litigation was filed, the Supreme Court granted *certiorari* to address the appropriate antitrust framework for evaluating "reverse payment" agreements such as the one in the instant litigation, resulting in its landmark *Actavis* opinion. Following the *Actavis* opinion, Plaintiffs had to reassess and refine their litigation strategies to successfully navigate the new legal landscape. The *Actavis* decision and subsequent second round of briefing required on motions to dismiss new strategic choices and cutting-edge research and argument. Plaintiffs' case is also factually complex as both the *Walker-Process* fraud and

---

[18] *In re Remicade*, 2023 WL 2530418, at *25 (E.D. Pa. Mar. 15, 2023) (citing cases). *See also Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at *4-5 (W.D. Tenn. Oct. 4, 2023) ("Antitrust actions are 'arguably the most complex actions[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.'") (internal quotation omitted).

reverse payment allegations present myriad technical and scientific issues.   And

the duration of the litigation – more than twelve years – is significant by any

measure.[19]

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 5.    The risk of nonpayment favors the requested fee.

"Courts in the Third Circuit have consistently recognized that the attorneys'

contingent fee risk is an essential factor in determining a fee award."[20] In the

contingent fee context:

> Counsel's contingent fee risk is an important factor in determining the fee
> award. Success is never guaranteed and counsel faced serious risks since
> both trial and judicial review are unpredictable. Counsel advanced all of the
> costs of litigation, a not insubstantial amount, and bore the additional risk of
> unsuccessful prosecution.[21]

Here, Class Counsel have litigated this case for more than twelve years,

despite the very real risk that they would receive zero compensation for their hard

work and long hours and would never recover the millions of dollars in out-of-

---

[19] *See, e.g., In re Suboxone*, 2023 WL 8437034, at *15 (litigation pending
more than ten years); *Kanefsky*, 2022 WL 1320827, at *4, *10 (litigation pending
three years, including through COVID-19 pandemic); *In re Philips/Magnavox*,
2012 WL 167724, at *18 (litigation pending three years).

[20] *In re Mercedes-Benz Emissions Litig.*, 2021 WL 7833193, at *13 (D.N.J.
Aug. 2, 2021). *See also In re Philips/Magnavox*, 2012 WL 1677244, at *18
("Courts recognize the risk of non-payment as a major factor in considering an
award of attorneys' fees").

[21] *Hall*, 2010 WL 4053547, at *20 (internal quotation omitted).

pocket cash outlays. That risk was particularly significant here given that, as noted

above, the law on reverse payment agreements was still developing..

Moreover, proving that a defendant has engaged in *Walker-Process* fraud or

that Wyeth had a weak patent case at the time of its settlement with Teva and thus

paid Teva to avoid competition, as alleged here, is notoriously difficult. While

Class Counsel believe in the merits of the Class's claims, there was no guarantee of

prevailing against Wyeth at trial (or that a favorable verdict would withstand the

inevitable appeal). These risks are evident in view of several pharmaceutical

antitrust cases that some or all of Class Counsel have been involved in that have

been unsuccessful and yielded no recovery after Class Counsel expended

thousands of hours and millions of dollars in resources.[22]

Nonetheless, Class Counsel represented the Class on a purely contingent

basis, with no up-front retainer fees or allowance for expenses, or any

compensation during the lengthy pendency of the litigation.[23]

---

[22] After years of litigation, jury trials were lost in *In re HIV Antitrust Litig.*,
No. 19-cv-02573 (N.D. Cal. Jun. 30, 2023), *In re Opana ER Antitrust Litig.*, No.
14-cv-10150 (N.D. Ill. Jul. 1, 2022), *In re Nexium Antitrust Litig.*, No. 12-md-
02409 (D. Mass. Dec. 5, 2014), and *La. Wholesale Drug Co., Inc. v. Sanofi-
Aventis*, No. 07-cv-07343 (S.D.N.Y. Nov. 20, 2008).

[23] *See generally In re Suboxone*, 2023 WL 8437034, at *15 (for over "ten
years, Class Counsel devoted extensive amounts of time and resources to litigating
this case, all while pursuing complex legal theories which brought with them no
guarantee of recovery at trial."); *In re Philips/Magnavox*,  2012 WL 1677244, at

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 6. The significant time devoted to this action favors the requested fee.

Class Counsel collectively expended 43,817.4 hours litigating this case and have incurred expenses of $2,161,343.51 in that effort to date. Courts have found that where class counsel expends significant time in litigating the case, this represents a "substantial commitment" to the case that weighs in favor of approving a fee request.[24]

Such was the case here. As detailed in the accompanying Pearlman Declaration, from pre-complaint investigation through the time that the Court granted preliminary approval to the Settlement, Class Counsel expended an

---

*18 ("Class Counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts"); *Hall*, 2010 WL 4053547, at *20 (that class counsel undertook litigation on a contingent basis was "a real and important factor to consider").

[24] *See, e.g., Vista Healthplan, Inc. v. Cephalon, Inc.,* 2020 WL 1922902, at *29 (class counsel devoted more than 41,000 hours over a twelve year period in antitrust litigation); *In re Suboxone*, 2023 WL 8437034, at *16 (class counsel spent over 26,000 hours prosecuting case); *McDonough v. Toys "R" Us, Inc.*, 80 F.Supp.3d 626, 653 (E.D. Pa. 2015) (class counsel devoted more than 84,000 hours over an eight-year period in price-fixing case); *In re Remicade*, 2023 WL 2530418, at *26 (class counsel devoted more than 23,000 hours in "complex antitrust litigation that involved lengthy discovery"); *In re Mercedes-Benz*, 2021 WL 7833193, at *14 (class counsel expended more than 25,000 hours in complex litigation); *Wallace v. Powell*, 2015 WL 9268445, at *19 (M.D. Pa. Dec. 21, 2015) (where class counsel expended more than 40,000 hours such "a substantial commitment to this litigation…strongly favor[ed]" granting fee request).

enormous amount of time over more than twelve years prosecuting the Class's

claims. Pearlman Decl. at ¶ 95. Moreover, if the Court grants final approval to the

Settlement, Class Counsel will expend a significant number of non-compensable

hours seeking final approval of, and administering, the Settlement so that Class

members can achieve immediate financial recovery.[25]

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 7. The requested fee is in line with awards in similar cases.

"The Third Circuit has found that, in common fund cases…in which the

percentage-of-recovery methodology is used, the fees typically awarded to class

counsel generally range between 19% to 45% of the settlement fund."[26] Thus,

Class Counsel's one-third fee request falls squarely in line with fee awards in this

Circuit in common fund cases.

Moreover, Class Counsel's one-third fee request is in line with numerous

instances of one third fee awards in other complex pharmaceutical antitrust cases

---

[25] *See In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 8181042, at
*15 (D.N.J. Nov. 9, 2005) (observing that class counsel would "likely incur
hundreds of additional hours in connection with administering the settlement,
without [compensation]").

[26] *Kanefsky*, 2022 WL 1320827, at *11 (same); *In re Suboxone*, 2024 WL
815503, at *16 (same and noting that "[c]ourts have consistently approved such
awards").

brought by direct purchasers both within and outside of this Circuit, as the chart

below reflects:

| Case | Settlement | Fee |
|---|---|---|
| *In re Opana ER Antitrust Litig.,* MDL No. 2580, (N.D. Ill. Nov. 3, 2022), ECF Nos. 1081, 1085 | $145MM | 36% |
| *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-cv-340 (D. Del. Apr. 23, 2009), ECF Nos. 531, 543. | $250MM | 33⅓% |
| *In re Buspirone Antitrust Litig.,* No. 01-cv-7951 (S.D.N.Y. Apr. 17, 2003), ECF No. 22 | $220MM | 33⅓% |
| *La. Wholesale Drug Co. v. Pfizer, Inc. (In re Neurontin Antitrust Litig.),* 2014 WL 12962880 (D.N.J. Aug. 6, 2014) | $191MM | 33⅓% |
| *In re Relafen Antitrust Litig.,* 2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) | $175MM | 33⅓% |
| *In re Novartis and Par Antitrust Litig.,* No. 18-cv-04361 (S.D.N.Y. Jul. 26, 2023), ECF Nos. 604, 635 | $126MM | 33⅓% |
| *In re Prograf Antitrust Litig.,* No. 2015 WL 13908415 (D. Mass. May 20, 2015) | $98MM | 33⅓% |
| *In re Celebrex (Celecoxib) Antitrust Litig.,* 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) | $94MM | 33⅓% |
| *In re Remeron Direct Purchaser Antitrust Litig.,* 2005 WL 8181042 (D.N.J. Nov. 9, 2005) | $75MM | 33⅓% |
| *In re Skelaxin (Metaxalone) Antitrust Litig.,* 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) | $73MM | 33⅓% |
| *In re Solodyn Antitrust Litig.,* No. 14-md-2503 (D. Mass. Nov. 27, 2017), ECF No. 808 | $72.5MM | 33⅓% |
| *In re Terazosin Hydrochloride Antitrust Litig.,* No. 99-md-1317 (S.D. Fla. Apr. 19, 2005), ECF No. 1557 | $72.5MM | 33⅓% |
| *In re K-Dur Antitrust Litig.,* No. 01-cv-1652 (D.N.J. Oct. 5, 2017), ECF No. 1057 | $60.2MM | 33⅓% |

| Case | Settlement | Fee |
|---|---|---|
| *Meijer, Inc. v. Abbott Labs.*, No. 07-cv-5985 (N.D. Cal. Aug. 11, 2011), ECF No. 514 | $52MM | 33⅓% |
| *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431 (E.D. Pa. Nov. 7, 2012), ECF No. 485 | $37.5MM | 33⅓% |
| *In re Nifedipine Antitrust Litig.*, No. 03-md-223 (D.D.C. Jan. 31, 2011), ECF No. 333 | $35MM | 33⅓% |
| *Meijer, Inc. v. Barr Pharm., Inc.*, No. 05-cv-2195 (D.D.C. Apr. 20, 2009), ECF No. 210 | $22MM | 33⅓% |
| *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237 (S.D.N.Y. Nov. 28, 2011), ECF No. 113 | $20.025MM | 33⅓% |
| *In re Metoprolol Succinate Antitrust Litig.*, No. 06-cv-52 (D. Del. Jan. 12, 2012), ECF No. 194 | $20MM | 33⅓% |
| *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141 (E.D. Mich. Jan. 20, 2015), ECF No. 68 | $19MM | 33⅓% |
| *Rochester Drug Co.-Op., Inc. v. Braintree Labs, Inc.*, No. 07-cv-142 (D. Del. May 31, 2012), ECF No. 243 | $17.25MM | 33⅓% |
| *In re OxyContin Antitrust Litig.*, No. 04-md-1603 (S.D.N.Y. Jan. 25, 2011), ECF No. 360 | $16MM | 33⅓% |
| *Mylan Pharm., Inc. v. Warner Chilcott plc.*, No. 12-cv-3824 (E.D. Pa. Sept. 6, 2014), ECF No. 665 | $15MM | 33⅓% |
| *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass. Dec. 7, 2017), ECF No. 648 | $15MM | 33⅓% |

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 8. The benefits of the settlement are attributable to Class Counsel.

Class Counsel did not "ride on the coattails" of any government

investigation or enforcement action. Rather, as described above, it was Class

Counsel who developed and prosecuted this case in their role as private attorneys

21

general. Thus, the benefits of the Settlement are attributable to Class Counsel's own efforts.[27]

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 9. The requested fee is consistent with the percentage fee that courts in this Circuit have held would have been privately negotiated.

This factor compares the requested fee to that which "would have been negotiated if the case had been subject to a private contingent agreement at the time counsel was retained. Courts in the Third Circuit have found that a one-third contingency fee would fit within the customary range."[28]

Here, the requested fee of one-third is consistent with what courts have awarded in other pharmaceutical antitrust cases.

Accordingly, this factor supports Class Counsel's fee request.

---

[27] *Kanfesky*, 2022 WL 1320827, at *11.

[28] *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *11 (E.D. Pa. Oct. 28, 2022) (granting requested fee of one third); *see also Hall*, 2010 WL 4053547, at *21 ("The requested fee of 33⅓ % is…consistent with a privately negotiated fee in the marketplace"); *In re Remeron*, 2005 WL 8181042, at *16 ("Attorneys regularly contract for contingent fees between 30% to 40% with their clients in non-class, commercial litigation" (citations omitted)).

### 10. Innovative terms of settlement.

Where a settlement does not contain any innovative terms, courts deem this factor as neutral.[29] Here, no innovative terms were required to benefit the Class. Class Counsel spent significant time negotiating the specific terms of a Settlement which will provide a prompt cash payment to the Class, and to which no Class members have objected to date.

Accordingly, analysis of this factor weighs neither in favor nor against Class Counsel's fee request.

### C. A cross-check of Class Counsel's lodestar confirms the reasonableness of the requested fee.

A lodestar crosscheck is "a tool to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple."[30] The multiplier is meant to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work" as well as "to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation."[31]

---

[29] *See, e.g., Kanfesky*, 2022 WL 1320827, at *11; *In re Suboxone*, 2024 WL 815503, at *17.

[30] *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 WL 2985634, at *15 (E.D. Pa. Jul. 22, 2022) (internal quotation omitted).

[31] *Id.* at *15 (internal quotations omitted). The multiplier is calculated by dividing the requested fee by Class Counsel's lodestar.

As detailed in the Pearlman Declaration, Class Counsel worked over 43,800 hours on this case, and each firm has submitted declarations attesting to both the reasonableness of their firm's time and compliance with the Time and Expense Order. *See* Pearlman Decl. at Exs. A through J.[32]

While the Third Circuit has recognized that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied,"[33] the requested fee award here under results in a 'multiplier' of less than one – whether calculated using historical billing rates (0.53) or current billing rates (0.39). This means that Class Counsel will "receive *less*…than their regular billing rates."[34] Indeed, an examination of the multipliers that are routinely awarded in this Circuit and in comparable cases demonstrates that the lodestar multiplier based on historical billings rates in well within that range (and indeed, lower than many multipliers previously awarded), as the chart below reflects.

---

[32] *See* ECF No. 800 at Section I.B (stating that, *inter alia*, counsel must submit time to Co-Lead Counsel at "then-current billing rates for each individual listed," that "[b]illing rates may be adjusted at the conclusion of the matter…" and that contract attorneys are subject to a $250 cap).

[33] *In re Prudential*, 148 F.3d at 341

[34] *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *29 (internal quotation omitted). *See also O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at *10 (D. Del. May 2, 2023) (negative multiplier provided "strong additional support for approving the attorneys' fee request") (internal quotation omitted); *In re Valeant Pharms. Int'l Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022) (negative multiplier is "strong evidence that the requested fees are reasonable").

24

Case 3:11-cv-05479-ZNQ-JBD    Document 740-1    Filed 06/10/24    Page 31 of 37
PageID: 13195

| Case | Settlement | Multiplier |
|------|-----------|-----------|
| *In re Relafen Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) | $175MM | 4.87 |
| *In re Provigil Antitrust Litig.,* No. 06-cv-1797 (E.D. Pa. Oct. 15, 2015), ECF Nos. 858, 870 | $512MM | 4.12 |
| *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-cv-340 (D. Del. Apr. 23, 2009), ECF Nos. 531, 543 | $250MM | 3.93 |
| *In re Prandin Direct Purchaser Antitrust Litig.,* No. 10-cv-12141 (E.D. Mich. Jan. 20, 2015), ECF No. 68 | $19MM | 3.01 |
| *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 750-51 (E.D. Pa. 2013) | $150MM | 2.99 |
| *In re Prograf Antitrust Litig.*, 2015 WL 13908415 (D. Mass. May 20, 2015) | $98MM | 2.35 |
| *In re Skelaxin (Metaxalone) Antitrust Litig.,* 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) | $73MM | 2.26 |
| *In re Glumetza Antitrust Litig.*, No. 19-cv-5822 (N.D. Cal. Feb. 3, 2022), ECF No. 706 | $453.8MM | 2.20 |
| *In re Namenda Direct Purchaser Antitrust Litig.,* No. 15-cv-7488 (S.D.N.Y. May 27, 2020), ECF No. 947. | $750MM | 2.0 |
| *La. Wholesale Drug Co. v. Pfizer, Inc. (In re Neurontin Antitrust Litig.)*, 2014 WL 12962880 (D.N.J. Aug. 6, 2014) | $191MM | 1.99 |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) | $94MM | 1.94 |
| *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237 (S.D.N.Y. Nov. 28, 2011), ECF No. 113 | $20.025MM | 1.92 |
| *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 8181042 (D.N.J. Nov. 9, 2005) | $75MM | 1.8 |

Given the risks Class Counsel assumed and the amount of time, labor and expense dedicating to litigating for more than a decade, the requested fee is reasonable using a lodestar crosscheck, regardless of whether current or historical billing rates are used to calculate the multiplier.

Accordingly, the lodestar crosscheck supports Class Counsel's fee request.

**D.    Class Counsel's expenses were reasonable and necessary to the result.**

Class counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."[35]

Here, Class Counsel's unreimbursed expenses were reasonably incurred and necessary to the prosecution of the litigation. These expenses, which fall within the confines of the Court's Time and Expense Order, include, *inter alia*, mediation fees, legal research, the creation and maintenance of an electronic document database, travel and lodging, court reporting services, and expert costs associated

---

[35] *In re Safety Components Int'l Secs. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). *See also In re Philips/Magnavox*, 2012 WL 1677244, at *20 (same).

with class certification and other motion briefing.[36] Such documented expenses are

of the type routinely deemed as reasonable and appropriately incurred.[37]

Accordingly, the Court should approve reimbursement of Class Counsel's

expenses of $2,161,343.51 in full.

### E. Service awards for the Class Representatives are appropriate and reasonable.

Class Counsel request that the Court approve service awards in the amount

of $100,000.00 each for each of the three Named Plaintiffs, class representatives

RDC, LaFrance and Uniondale, in recognition of their continuous and extensive

participation in this lengthy litigation. The Named Plaintiffs actively pursued the

Class's interests by filing suit on behalf of all direct purchasers and undertaking the

---

[36] Certain of the individual declarations of Class Counsel may list "contribution to litigation fund" (or similar phrasing) as an expense. As typically occurs, Co-Lead Counsel established a litigation fund at the inception of the litigation that was used to pay certain of the reasonable expenses herein, most particularly expert and central document database hosting fees, with various firms making regular funding contributions throughout the litigation. The expenses paid from the litigation fund throughout the course of the litigation were examined by a Certified Public Account, who determined that all such expenses were supported by receipt, reasonable and non-excessive. *See* Pearlman Decl. at ¶ 98; Exhibits A-J to Pearlman Decl.

[37] *See, e.g., In re Philips/Magnavox*, 2012 WL 1677244, at *20 (expenses for court fees, experts, computerized research, long distance telephone calls, photocopies, postage, couriers and travel expenses were reasonably and appropriately incurred); *Kanfesky*, 2022 WL 1320827, at *12 (noting that expenditures for travel, computer research, expert witnesses were routine and reimbursable).

responsibilities of serving as class representatives, including responding to discovery requests, being deposed, regularly being apprised of the progress of the case for more than twelve years and participating in mediation and settlement negotiation efforts.

It has long been recognized that private antitrust actions are critical to the enforcement of the antitrust laws for the protection of the general public.[38] As such, "[i]ncentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'"[39] Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks that they incurred during the course of the class action litigation."[40] Numerous other courts have approved service awards in other pharmaceutical antitrust class actions, and the amount requested here is in line with the awards in such cases.[41] Accordingly, the Court

---

[38] *See Am. Soc'y of Mech. Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 573 n.10 (1982); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010) ("[E]nforcement through private civil actions…is a critical tool for encouraging compliance with the country's antitrust laws").

[39] *In re Suboxone*, 2024 WL 815503, at *18 (internal quotation omitted).

[40] *Id.* (approving service awards where named plaintiffs "assisted greatly in the prosecution of this case by filing suit on behalf of the [direct purchaser class] and undertaking all responsibilities involved in being a named plaintiff, including monitoring the progress of the case and responding to discovery requests").

[41] *See, e.g.*, *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022) at ¶ 16 (awarding $150,000 each to two class

28

should approve these appropriate and reasonable service awards to the Named

Plaintiffs , particularly given the long pendency of the litigation.

## IV.    CONCLUSION

For the reasons set forth above and in the Pearlman Declaration, Class

Counsel respectfully request that this Court enter an Order awarding Class Counsel

$13 million  (one-third or 33⅓% of the Settlement amount) plus a proportionate

amount of any interest accrued since the Settlement was escrowed, and

$2,161,343.51 in unreimbursed expenses. *See* Pearlman Decl. at ¶ 103.

---

representatives); *In re Novartis and Par Antitrust Litig.*, No. 1:18-cv-04361, ECF
No. 635 (S.D.N.Y. Jul. 26, 2023) at ¶ 15 (awarding $100,000 to each of four class
representatives); *In re Suboxone*, 2024 WL 815503, at *19 (awarding $100,000
each to three class representatives).

Class Counsel also respectfully request that the Court approve service awards of $100,000.00 for each of the three Named Plaintiffs for their efforts on behalf of the Class.

Dated: June 10, 2024                      Respectfully submitted,

                                          */s/ Peter S. Pearlman*
                                          **COHN LIFLAND PEARLMAN
                                          HERRMANN & KNOPF LLP**
                                          Peter S. Pearlman
                                          Park 80 West, Plaza One
                                          250 Pehle Avenue, Suite 401
                                          Saddle Brook, NJ 07663
                                          psp@njlawfirm.com

*Liaison Counsel for the Direct Purchaser Class Plaintiffs*

**HAGENS BERMAN SOBOL SHAPIRO LLP**     **BERGER MONTAGUE PC**
Thomas M. Sobol                          David F. Sorensen
Gregory T. Arnold                        Caitlin G. Coslett
One Faneuil Hall, Square, 5th Floor      1818 Market Street, Suite 3600
Boston, MA 02109                         Philadelphia, PA 19103
tom@hbsslaw.com                          dsorensen@bm.net
grega@hbsslaw.com                        ccoslett@bm.net

**FARUQI & FARUQI LLP**                  **TAUS, CEBULASH & LANDAU, LLP**
Peter Kohn                               Barry S. Taus
One Penn Center, Suite 1550              123 William Street, Suite 1900A
1617 John F. Kennedy Boulevard           New York, NY 10038
Philadelphia, PA 19103                   btaus@tcllaw.com
pkohn@faruqilaw.com

30

**NASTLAW LLC**
Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, PA 19107
dnast@nastlaw.com

**BARRETT LAW GROUP, P.A.**
Don Barrett
404 Court Square
P.O. Box 927
Lexington, MS 39095
donbarrettpa@gmail.com

*Lead Class Counsel for Direct Purchaser Class Plaintiffs and the Class*