# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re EFFEXOR XR ANTITRUST LITIGATION<br><br>This Document Relates To:<br>All Indirect Purchaser Class Actions | Civil Action No. 3:11-cv-05661 (ZNQ)(JBD)<br><br>Master Docket No. 3:11-cv-05479 (ZNQ)(JBD) |

---

## MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

---

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973 994-1744
jcecchi@carellabyrne.com

[Additional Attorneys on Signature Page]

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................1

II.  CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
     REASONABLE AND SHOULD BE APPROVED. .....................................4

     A.  Class Counsel Is Entitled to a Reasonable Fee
         from the Common Fund................................................................4

     B.  The Court Should Award a Reasonable Percentage of the Common
         Fund. ...................................................................................5

     C.  The Requested Fee Is Reasonable Under Both the Percentage-of-
         Recovery Method and the Lodestar Method, ...........................................6

     1.  The Requested Fee Is Reasonable Under the Percentage-of-
         Recovery Method. ....................................................................6

     2.  The Reasonableness of the Requested Fee Is Confirmed by a
         Lodestar Cross-Check. ..............................................................8

     D.  The *Gunter/Prudential* Factors Confirm that the Requested Fee Is Fair
         and Reasonable. .....................................................................11

         1.  The Size of the Common Fund Created and the Number of
             Beneficiaries.....................................................................12

         2.  Absence of Objections from Class Members to Date.....................13

         3.  The Skill and Efficiency of the Attorneys Involved. .....................13

         4.  The Complexity and Duration of the Litigation. ...........................15

         5.  The Risk of Non-Payment................................................16

         6.  The Significant Time Devoted to this Case by Plaintiff's
             Counsel.........................................................................18

         7.  The Fee Requested Is In-Line with Fees Awarded in Similar
             Cases...........................................................................18

         8.  Benefits Are Attributable to Class Counsel. ...............................18

9.   The Requested Fee Is In-Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation.........................19

III.   PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED. ....................................20

IV.   SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE AND REASONABLE. .......................................21

V.   CONCLUSION..............................................................22

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **PAGES**

*In re Aggrenox Antitrust Litig.*,
    3:14-md-02516 (D. Conn.) ...................................................................8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    278 F.R.D. 51 (E.D.N.Y. 2010) ........................................................21

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)............................................................13

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) .........................................................5, 19

*Blum v. Stenson*,
    465 U.S. 886 (1984)...........................................................................19

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..............................................................................4

*In re Boy Scouts of Am. and Delaware BSA, LLC*,
    No. 20-br-10343 (Del. Bankr. June 5, 2023).....................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..............................................................13

*Davis v. Kraft Foods N. Am., Inc.*,
    2007 WL 9807445 (E.D. Pa. Aug. 10, 2007) .....................................7

*Demmick v. Cellco P'ship*,
    2015 WL 13646311 (D.N.J. May 1, 2015)..........................................6

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod.
Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ........................................................12, 19

*In re Fasteners Antitrust Litig.*,
    2014 WL 296954 (E.D. Pa. Jan. 27, 2014).....................................7, 10

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013).........................................................7, 8

i

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013) ................................................................................15

*Fusion Elite All Stars v. Varsity Brands, LLC*,
    2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) .....................................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................................6

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ...............................................................5, 11

*Harshbarger v. Penn Mut. Life Ins. Co.*,
    2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) ...........................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................12

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ......................................................14, 19

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 WL 1320827 (D.N.J. May 3, 2022) ..........................................20, 21

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's,
London Members*,
    2019 WL 4877563 (D.N.J. Oct. 3, 2019) ...........................................7, 11

*In re Mercedes-Benz Emission Litig.*,
    2021 WL 7833193 (D.N.J. Aug. 2, 2021) ...............................................16

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010) ...............................................5, 8

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..................................................................................9

*Myers v. Jani-King of Phila., Inc.*,
    2019 WL 4034736 (E.D. Pa. Aug. 26, 2019) ...........................................7

*In re Ocean Power Techs., Inc.*,
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................6, 19

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................4

*In re Processed Egg Prods. Antitrust Litig.*,
2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) .......................................................20

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .................................................7, 12, 18, 19

*In re Remicade Antitrust Litig.*,
2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ...............................................10, 15

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .............................................................6, 9

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001).........................................................20

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012).......................................................16

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...........................................................9

*Schuler v. The Medicine Cos.*,
2016 WL 3457218 (D.N.J. June 23, 2016).......................................................12

*In re Suboxone (Bonprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
2023 WL 8437034 (E.D. Pa. Dec. 4, 2023).................................................*passim*

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .......................................................5, 6, 8

*In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*,
2022 WL 525807 (D.N.J. Feb. 22, 2022) .......................................................10, 22

*In re ViroPharma Secs. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016).................................................12, 20

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*,

798 F.2d 35 (2d Cir. 1986)..............................................................................14, 16

*In re Wilmington Trust Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018)..................................................10, 14

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................5

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Class Counsel, on behalf of the Indirect Purchaser Plaintiffs[1] and the Class they represent, respectfully submit this Memorandum of Law in support of their Motion for: (i) an award of attorneys' fees for Class Counsel in the amount of 34% of the Settlement Fund; (ii) payment of $518,247.99 for expenses reasonably and necessarily incurred by Class Counsel in prosecuting the Action; and (iii) payment of $15,000 to each of the Indirect Purchaser Class Plaintiffs for their service in this lengthy litigation.[2]

## I.    INTRODUCTION

After more than 12 years of hard-fought litigation, Indirect Purchaser Plaintiffs reached a Settlement with Wyeth[3] which, if approved, would resolve the

---

[1] Indirect Purchaser Plaintiffs are A. F. of L. – A.G.C. Building Trades Welfare Plan, IBEW - NECA Local 505 Health & Welfare Plan, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, New Mexico United Food And Commercial Workers Union's And Employers' Health And Welfare Trust Fund, Painters District Council No. 30 Health and Welfare Fund, Plumbers and Pipefitters Local 572 Health and Welfare Fund, City of Providence, Rhode Island, Sergeants Benevolent Association Health and Welfare Fund, and Patricia Sutter ("Indirect Purchaser Class Plaintiffs" or "Class Plaintiffs").

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Agreement, which is attached as Exhibit A to the Declaration of James E. Cecchi in Support of Indirect Purchaser Class Plaintiffs' Unopposed Motion for Preliminary Approval of Class-Action Settlement, executed April 26, 2024 (ECF No. 733-2), and in the Declaration of James E. Cecchi ("Cecchi Decl.") filed herewith.

[3] The settling defendants are Wyeth—a/k/a Wyeth LLC, f/k/a Wyeth, Inc., f/k/a American Home Products—Wyeth Pharmaceuticals, Inc., Wyeth Pharmaceuticals Company, and Wyeth-Whitehall Pharmaceuticals (collectively, "Wyeth," and

litigation between them concerning the alleged suppression of generic competition for Effexor XR. The proposed Settlement will resolve all claims against Wyeth, in exchange for the creation of a non-reversionary common fund of $25,500,000 (the "Settlement Amount") for the benefit of the Indirect Purchaser Class. With claims still pending against Teva, this is an excellent result for the Indirect Purchaser Class.

Class Counsel undertook significant efforts to achieve this recovery, from investigating the underlying facts, filing the initial complaints, obtaining a reversal on appeal of the District Court's order of dismissal, sustaining the operative amended complaint, engaging in discovery, working with experts, and otherwise participating in extensive pretrial proceedings.

As detailed in the Cecchi Declaration,[4] the Settlement was reached after years of litigation and good-faith negotiations conducted both directly between the parties and with the assistance of a nationally recognized mediator, the Honorable Faith S. Hochberg (ret.). The process was protracted, difficult, and hard-fought.

---

together with the Indirect Purchaser Plaintiffs, the "Parties"). After the start of this litigation, Wyeth became a wholly owned subsidiary of Pfizer Inc.

The Teva Defendants—Teva Pharmaceuticals USA, Inc. or Teva Pharmaceutical Industries Ltd. (collectively, "Teva," and together with Wyeth, the "Defendants")— are neither a party to, nor subject to the release under, the Settlement Agreement.

[4] The Cecchi Declaration is an integral part of this submission and, for the sake of brevity herein, the Court is respectfully referred to the Cecchi Declaration for a detailed description of, *inter alia*: the history of the Action and Class Counsel's extensive litigation efforts (¶¶ 6-56) and the settlement negotiations (¶¶ 57-60).

As compensation for achieving a successful resolution as to Wyeth for the Class, while maintaining the prospect of additional recovery against Teva, Class Counsel seeks attorneys' fees in the amount of 34% of the Settlement Fund. As set forth herein, the requested 34% fee (*i.e.*, $8,670,000 plus interest) is well within the range of fees awarded in other antitrust class actions. Further, the requested fee represents a ***negative*** multiplier of approximately .58 on Class Counsel's lodestar. Class Counsel also requests payment from the Settlement Fund of $518,247.99 in Litigation Expenses.

The reaction of the Class to date also supports Class Counsel's fee and expense request. Pursuant to the Court's Preliminary Approval Order (ECF No. 739), Notice was sent to 42,005 entities in A.B. Data's third-party payor ("TPP") Database via First-Class Mail; AB. Data also sent 1,211 emails to entities in that Database. Publication notice was also effectuated through digital, social, and print advertising—with the digital media resulting in 328,138,292 gross impressions—and through an earned media campaign. *See* Decl. of Eric J. Miller Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received To Date ("Miller Decl."), ¶¶ 4-5, filed herewith. These notices advised recipients that Class Counsel would be applying to the Court for attorneys' fees in an amount not to exceed 34% of the Settlement Fund, plus litigation expenses and service awards for each of the Class Plaintiffs in the

amount of $15,000. *See id.*, Exs. A, C-E. The July 29, 2024 deadline set forth in the Notices has passed, and no objections have been made. *Id.* ¶ 18.

For the reasons discussed herein, Class Counsel respectfully submit that their requested fee is fair and reasonable under the applicable legal standards. Class Counsel also respectfully submit that the litigation expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Action as to Wyeth. Further, Class Counsel requests that each of the Class Plaintiffs receive $15,000 in recognition of their continuous participation in this lengthy litigation. Accordingly, Class Counsel requests that its Motion for Attorneys' Fees and Litigation Expenses be granted in full.

## II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED.

### A.    Class Counsel Is Entitled to a Reasonable Fee from the Common Fund.

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013) ("[W]e agree with the long line of common fund cases that hold that attorneys whose efforts

create, discover, increase, or preserve a common fund are entitled to compensation." (alteration in original)).

Further, as courts recognize, in addition to providing just compensation, an award of attorneys' fees from a common fund ensures that "competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

## B.    The Court Should Award a Reasonable Percentage of the Common Fund.

An award of attorneys' fees and the method used to determine that award are "within the discretion of the court." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010). In the Third Circuit, the percentage-of-recovery method for evaluating fees is "generally favored" in cases, such as this one, involving a settlement that creates a common fund. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method is

almost universally preferred in common fund cases because it closely aligns the interests of counsel and the class. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016). The Third Circuit recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness. *See Sullivan*, 667 F.3d at 330; *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

### C.    The Requested Fee Is Reasonable Under Both the Percentage-of-Recovery Method and the Lodestar Method,

#### 1.    The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method.

The requested 34% fee is reasonable under the percentage-of-recovery method. Although there is no absolute rule, courts in this Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Demmick v. Cellco P'ship*, 2015 WL 13646311, at *3 (D.N.J. May 1, 2015). A 34% fee is thus well within the range of fees typically approved as reasonable by courts in the Third Circuit. *See, e.g.*, *In re Suboxone (Bonprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2023 WL 8437034, at *14 (E.D. Pa. Dec. 4, 2023) ("Class

Counsels' requested fees in this case represent 33 1/3 % of the total recovery—a percentage which is well within the range of reasonable fees, on a percentage basis, in the Third Circuit."); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable." (citing cases)); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) (citing cases and remarking that "[a] one-third fee award is standard in complex antitrust cases of this kind" and "is consistent with awards in other complex antitrust actions involving the pharmaceutical industry" (quotations omitted)); *Davis v. Kraft Foods N. Am., Inc.*, 2007 WL 9807445, at *2 (E.D. Pa. Aug. 10, 2007) ("[a]pplying the *Gunther* and *Prudential* factors to the instant case demonstrates that the fee request [of 34%] is reasonable and justified." (citing cases)).

A review of attorneys' fees awarded in complex class actions in this Circuit strongly supports the reasonableness of a 34% fee. *See, e.g.*, Order, *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, at 2 (W.D. Pa. Aug. 9, 2023), ECF No. 253 (awarding 33⅓% of $74 million settlement); *Myers v. Jani-King of Phila., Inc.*, 2019 WL 4034736, at *11 (E.D. Pa. Aug. 26, 2019) (citing cases and noting that "the requested fee of one-third (1/3) of the settlement amount is reasonable in comparison to awards in other cases."); *In re Fasteners Antitrust Litig.*, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014) ("Co-Lead Counsel's request for one third of the settlement

fund is consistent with other direct purchaser antitrust actions" (citing cases)); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("review of 289 settlements demonstrates 'average attorney's fee percentage [of] 31.71% with a median value that turns out to be one-third'" (citation omitted)).

So, too, is a 34% fee consistent with fees awarded in pharmaceutical antitrust class actions, more specifically. *See, e.g.*, *In re Suboxone Antitrust Litig,*, 2023 WL 8437034, at *20 (awarding fee of 33-1/3% of the settlement fund plus interest); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521 (N.D. Cal.) (awarding one-third fee on settlement of $104.7 million); *In re Aggrenox Antitrust Litig.*, 3:14-md-02516 (D. Conn.) (awarding one-third fee on settlement of $50.2 million); *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (E.D. Pa.) (awarding one-third fee on settlement of $150 million); *In re Solodyn Antitrust Litig.*, 1:14-md-02503 (D. Mass.) (awarding one-third fee on settlement of $40 million).

Thus, it is respectfully submitted that Class Counsel's 34% fee request is reasonable and comparable to fees typically awarded in these types of cases.

## 2. The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check.

As noted above, the Third Circuit recommends district courts use counsel's lodestar as a "cross-check" to determine whether a requested fee is reasonable. *See Sullivan*, 667 F.3d at 330; *In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *14. "The lodestar cross-check serves the purpose of alerting the trial judge that when the

multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

Here, Indirect Purchaser Plaintiffs' Counsel have devoted over 20,040.3 hours to the prosecution and resolution of this Action. Cecchi Decl. ¶ 71. Plaintiffs' Counsel's lodestar—which is derived by multiplying the hours spent on the litigation by each firm's hourly rates for attorneys, paralegals, and other professional support staff—is $14,833,399.74. *Id.*[5]

The hourly rates utilized by Indirect Purchaser Plaintiffs' Counsel in calculating their lodestar range from: (i) $1,500 to $720 per hour for partners; (ii) $975 per hour for counsel; (iii) $775 to $250 per hour for other attorneys. Cecchi Decl. Exs. B, D-I.[6] Class Counsel believes these hourly rates are within the range of

---

[5] The Supreme Court has approved the use of current hourly rates to calculate the lodestar as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). This figure only reflects the time of Indirect Purchaser Plaintiff's Executive Committee, additional firms have assisted the litigation efforts and incurred time on this Action.

[6] By way of comparison, Wyeth's Counsel in the Action, White & Case LLP, reported in a recent fee application blended hourly rates during the 12-month period

reasonable rates for attorneys working on sophisticated class action litigation in this Circuit. *See, e.g.*, *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (finding that class counsel hourly rates ranging from $115 to $1,325 "fall well within the range of rates charged by other attorneys in this market"); *In re Wilmington Trust Sec. Litig.*, 2018 WL 6046452, at *10 n.4 (D. Del. Nov. 19, 2018) (finding attorney hourly rates from $295 to $1,250 reasonable).

Accordingly, the requested 34% fee (*i.e.*, $8,670,000, plus interest) represents a negative multiplier of approximately .58 on Class Counsel's lodestar. Cecchi Decl. ¶¶ 73-74. A negative multiplier means that Class Counsel will "receive less . . . than their regular billing rates." *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *29.  Courts in this Circuit have found that "[s]ince the multiplier here is less than one, which means that the requested fee is less than the amount that would be awarded using the lodestar method, we are satisfied that a lodestar cross-check confirms the reasonableness of Co-Lead Counsel's request for attorney's fees." *In re Fasteners Antitrust Litig.*, 2014 WL 296954, at *8; *see also In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022) ("Lead Counsel's lodestar results in a negative multiplier, thereby furnishing strong

---

of May 1, 2022 to April 30, 2023 of $1,334 for partners, $1,131 for counsel, and $816 for associates. *See In re Boy Scouts of Am. and Delaware BSA, LLC*, No. 20-br-10343, at 2 (Del. Bankr. June 5, 2023), ECF No. 11316-5. These blended rates are in line with, or exceed, Class Counsel's rates.

evidence that the requested fees are reasonable."); *Lincoln Adventures LLC*, 2019 WL 4877563, at *8 ("The negative multiplier of 0.36 is much lower than lodestar multipliers of between one and four that have been found to be reasonable in this Circuit.").

Accordingly, the lodestar cross-check firmly supports the reasonableness of the 34% fee request.

### D. The *Gunter/Prudential* Factors Confirm that the Requested Fee Is Fair and Reasonable.

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in common fund cases. *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998). These factors "need not be applied in a formulaic way. . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *Schuler v. The Medicine Cos.*, 2016 WL 3457218, at *9 (D.N.J. June 23, 2016). Here, each factor supports the 34% fee request.

### 1.    The Size of the Common Fund Created and the Number of Beneficiaries.

The result achieved is a major factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re ViroPharma Secs. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Class Counsel, on behalf of the Indirect Purchaser Class, secured a Settlement that provides for a substantial and certain payment of $25,500,000. The Settlement provides a favorable recovery for the Indirect Purchaser Class and will benefit a large number of indirect purchasers. To date, A.B. Data has mailed Postcard Notices to 42,005 TPPs, sent 1,211 emails to TPPs, and provided extensive paid media and earned media notice consistent with the Notice Plan. *See* Miller Decl., ¶¶ 4-14. While the claim-submission deadline is not until September 16, 2024, a large number of Class Members are expected to submit Claims in order to be eligible to receive a payment from the Net Settlement Fund.

12

## 2.     Absence of Objections from Class Members to Date.

The notices provided to the Class indicate that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 34% of the Settlement Fund. Miller Decl., Exs. A, C-E. The notices also advised Class Members that they could object to the fee request and explained the procedures for doing so. *Id*. The deadline for objecting passed, and no objections have been received. Cecchi Decl. ¶¶ 64; Miller Decl. ¶ 18. Given the robust notice campaign, the dearth of objections weighs heavily in favor of approval of the requested fee award. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement").

## 3.     The Skill and Efficiency of the Attorneys Involved.

Class Counsel has achieved a highly favorable outcome for the benefit of the Class. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[t]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained" (alteration in original)). The recovery obtained is the direct result of the significant efforts of skilled attorneys and staff working at their direction who possess substantial experience in the prosecution of complex antitrust

actions.[7] Class Counsel's success in maintaining this litigation through several pleading challenges, reversing dismissal in the Third Circuit, pursuing extensive discovery, and doggedly advancing the arguments of the Class through years of mediation efforts created the circumstances in which they could negotiate a $25.5 million Settlement on behalf of the Class. The evident preparedness, experience, and skill of Class Counsel provided leverage to secure the very favorable recovery for the benefit of the Class.

The quality of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel. *See, e.g.*, *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Plaintiffs' Counsel were opposed by White & Case LLP, a prominent firm with deep experience and skill in the antitrust arena. The ability of Class Counsel to obtain a favorable outcome for the Class despite this formidable opposition further confirms the quality of their representation. *See Wilmington Trust*, 2018 WL 6046452, at *8 ("Plaintiffs' Counsel's ability to

---

[7] The experience of Class Counsel is set forth in their firm resumes. *See* Cecchi Decl, Exs. D-I.

successfully litigate against and negotiate with [Defendants' Counsel] further shows Plaintiffs' Counsel's legal prowess.").

### 4. The Complexity and Duration of the Litigation.

Antitrust litigation is regularly acknowledged to be "among the most complex to litigate." *In re Remicade*, 2023 WL. 2530418, at *25 (citing cases); *accord Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at *4-5 (W.D. Tenn. Oct. 4, 2023) ("Antitrust actions are arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.'" (internal quotation omitted)). This pharmaceutical antitrust case is no different. Class Counsel addressed numerous difficult issues in opposing Defendants' challenges to the pleadings in an ever-evolving litigation environment, including the Supreme Court's issuance of *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013), during the pendency of the litigation. Class Counsel also faced a jurisdictional challenge before the Third Circuit and engaged in discovery battles cutting across numerous topics. These complex issues, which weighed heavily on the future and direction of the litigation, underscore some of the myriad challenges faced by the Indirect Purchaser Plaintiffs. Indeed, the complexity of this litigation is highlighted by the fact that it has spanned nearly 13 years.  *See* Cecchi Decl. ¶¶ 6 – 56.

The $25.5 million recovery is substantial in light of the complexity of this case and the significant risks and expenses the Class would have faced had they gone to

trial against both Wyeth and Teva. As it stands, Teva remains in the case and Class Counsel are faced with the expense and risk of additional discovery, motion practice, and trial. By obtaining the Settlement, Class Counsel have mitigated that risk, ensuring that the Class will recover at least $25.5 million instead of potentially nothing at all.[8]

### 5.    The Risk of Non-Payment.

Class Counsel undertook this Action on a contingent-fee basis—assuming the risk that the case would yield no or very little recovery and leave them uncompensated for their time and out-of-pocket expenses. In such circumstances, "[c]ourts in the Third Circuit have consistently recognized that the attorneys' contingent fee risk is an essential factor in determining a fee award." *In re Mercedes-Benz Emission Litig.*, 2021 WL 7833193, at *13 (D.N.J. Aug. 2, 2021); *accord In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risks created by undertaking an action on a contingency fee basis militate[] in favor of approval.").

---

[8] After years of litigation, jury trials were lost in *In re HIV Antitrust Litig.*, No. 19-cv-02573 (N.D. Cal.), *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.), *In re Nexium Antitrust Litig.,* No. 12-md-02409 (D. Mass.), and *La. Wholesale Drug, Co. Inc. v. Sanofi-Aventis,* No. 07-cv-07343 (S.D.N.Y.). And even if Plaintiffs prevailed at trial, any victory could be washed away by a successful appeal. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

As detailed in the Cecchi Declaration, Class Counsel faced numerous significant risks in this case that could have resulted in no recovery or a recovery less than the Settlement Amount. Here, the risk of non-payment was heightened following the Court's decisions and the need for appellate review and multiple amended pleadings.

Indirect Purchaser Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in 2011. Since that time, Class Counsel have expended 20,040.3 hours in the prosecution of this litigation with a resulting lodestar of $14,833,399.74 and incurred $518,247.99 in expenses.[9] *See* Cecchi Decl, Ex. A. Unlike defense counsel—who typically receive payment on a timely and regular basis throughout a case, win or lose—Class Counsel carried the significant risk of not only funding the expenses of this Action, but also that they would receive no compensation whatsoever for the thousands of hours they invested in litigating it.[10] This factor strongly favors approval of the requested fee.

---

[9] Class Counsel will continue to perform legal work on behalf of the Class should the Court approve the Settlement. Additional resources will be expended assisting Class Members with their Claim Forms and related inquiries and working with A.B. Data to ensure the smooth progression of claims processing. Cecchi Decl. ¶ 69. Class Counsel will also continue their efforts against Teva on behalf of the Class.

[10] *See In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *15 ("Given Class Counsels' diligent pursuit of this case for more than a decade with significant risk and no immediate financial reward in sight, I find that this factor weighs in favor of the requested fee award.").

### 6. The Significant Time Devoted to this Case by Plaintiff's Counsel.

As set forth above and detailed in the Cecchi Declaration, since the inception of the case, Indirect Purchaser Plaintiffs' Counsel have expended substantial resources and effort towards the prosecution of this Action on behalf of the Class. The winding path of this litigation involved multiple pleading challenges, an appeal to the Third Circuit, myriad discovery battles, voluminous document productions, and years of mediation efforts. Cecchi Decl. ¶¶ 6-60. This all involved a very significant commitment of time, personnel, and out-of-pocket expenses by Class Counsel, all while taking on the risk of recovering nothing for their efforts.

### 7. The Fee Requested Is In-Line with Fees Awarded in Similar Cases.

As discussed above in Section II.C.1, the requested fee of 34% of the Settlement Fund is well within the range of fees awarded in similar cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

### 8. Benefits Are Attributable to Class Counsel.

The Third Circuit has advised district courts to examine whether class counsel benefited from governmental investigations or enforcement actions concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. The Complaints in this Action were not based upon any

18

pre-existing government investigation, nor has any government investigation or prosecution produced an admission of fault by Wyeth. Accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Class Counsel in this litigation. This fact thus supports the reasonableness of the requested fee. *See, e.g.*, *AT&T*, 455 F.3d at 173.

### 9. The Requested Fee Is In-Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation.

A 34% fee is also consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *Blum v. Stenson*, 465 U.S. 886, 903 n.* (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Class Counsel's requested fee of 34% is fully consistent with these non-class standards.

Accordingly, the application of the Third Circuit's *Gunter/Prudential* factors makes clear that Class Counsel's fee request is fair and reasonable.[11]

---

[11] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 339-40. This Settlement does not, because Class Counsel believes an all-

### III.  PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED.

Class Counsel also respectfully requests that this Court approve payment of $518,247.99 for the unreimbursed, out-of-pocket expenses that Class Counsel incurred in connection with this Action. These expenses, which are set forth in declarations submitted by Class Counsel, were reasonably necessary for the prosecution and settlement of this Action. Counsel in a class action are entitled to recover expenses that were "adequately documented and reasonable and appropriately incurred in the prosecution of the class action." *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001); <u>*Kanefsky v. Honeywell Int'l Inc.*</u>, 2022 WL 1320827, at *12 (D.N.J. May 3, 2022).

The expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, document management costs, expert/consultant fees, online research, travel-related expenses, photocopying, postage/mail services, and mediation expenses. These expense items are not duplicated in Class Counsel's hourly rates. Such documented expenses are of the

---

cash recovery is the best remedy for the injury suffered by the Class. In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees" *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

type routinely deemed as reasonable and appropriately incurred. *See, e.g.*, *Kanefsky*, 2022 WL 1320827, at *12 ("These expenditures, which are for expert or consultants, computer research, and travel, are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." (citations omitted)).

Accordingly, the Court should approve in full reimbursement of Class Counsel's expenses of $518,247.99.

## IV. SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE AND REASONABLE.

Class Counsel request that the Court approve service awards in the amount of $15,000 each for each of the Indirect Purchaser Class Plaintiffs in recognition of their participation in this lengthy litigation. These nine class representatives actively pursued the Class's interests by filing suit on behalf of all indirect purchasers and undertaking the responsibilities of serving as class representatives, including responding to discovery requests, regularly being apprised of the progress of the case for more than twelve years and being available for participation in mediation and settlement negotiation efforts.

It has long been recognized that private antitrust actions are critical to the enforcement of the antitrust laws for the protection of the general public. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010) ("[E]nforcement through private civil actions…is a critical tool for encouraging

compliance with the country's antitrust laws"). As such, "[i]ncentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'" *In re Suboxone Antritrust Litig.*, 2024 WL 8437034, at *19. Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks that they incurred during the course of the class action litigation." *Id.* Numerous other courts have approved service awards in other pharmaceutical antitrust class actions, and the amount requested here is in line with the awards in such cases. *Id.* at *19-20 (awarding $15,000 each in incentive awards to seven end payor class representatives); *In re Valeant Pharms. Int'l Third-Party Payor Litig.*, 2022 WL 525807, at *9 (awarding $20,000 each in incentive awards to five named plaintiffs).

Accordingly, the Court should approve these appropriate and reasonable service awards to the Indirect Purchaser Class Plaintiffs, particularly given the long pendency of the litigation.

## V.    CONCLUSION

For the reasons stated herein and in the Cecchi Declaration, Class Counsel respectfully requests that the Court: (i) award attorneys' fees in the amount of 34% of the Settlement Fund, plus interest; (ii) award $518,247.99 for Class Counsel's reasonable expenses; and (iii) award $15,000 per Indirect Purchaser Class Plaintiff

in recognition of their continuous and extensive participation in this lengthy litigation.

Dated:  August 8, 2024               Respectfully submitted

                                     **CARELLA, BYRNE, CECCHI,
                                     OLSTEIN, BRODY & AGNELLO, P.C.**

                                     s/ *James E. Cecchi*_____
                                     James E. Cecchi
                                     Caroline F. Bartlett
                                     5 Becker Farm Road
                                     Roseland, New Jersey 07068
                                     Telephone: (973) 994-1700

                                     ***Lead Counsel***

                                     Michael M. Buchman
                                     MOTLEY RICE LLC
                                     800 Third Avenue
                                     New York, New York 10022
                                     Telephone: (212) 577-0040

                                     James R. Dugan, II
                                     Douglas R. Plymale
                                     David Scalia
                                     DUGAN LAW FIRM, PLC
                                     One Canal Place
                                     365 Canal Street, Suite 1000
                                     New Orleans, LA 70130
                                     Telephone: (504) 648-0180

                                     Kenneth A. Wexler
                                     Justin N. Boley
                                     Bethany R. Turke
                                     WEXLER BOLEY & ELGERSMA LLP
                                     311 S. Wacker Drive, Suite 5450
                                     Chicago, Illinois 60606

23

Telephone: (312) 346-2222

Jeffrey L. Kodroff
John Macoretta
SPECTOR, ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, Pennsylvania 19103
Telephone:  (215) 496-0300

Richard J. Burke
QUANTUM LEGAL LLC
2801 Lakeside Drive
Suite 100
Bannockburn, Illinois 60015
Telephone: (847) 433-4500

Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone: (312) 332-3400

***Class Counsel for Plaintiffs and the proposed Class***