# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re EFFEXOR XR ANTITRUST LITIGATION | Civil Action No. 3:11-cv-05661 (ZNQ)(JBD) |
| This Document Relates To: All Indirect Purchaser Class Actions | Master Docket No. 3:11-cv-05479 (ZNQ)(JBD) |

## MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, AND APPROVAL OF NOTICE OF SETTLEMENT

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973 994-1744
jcecchi@carellabyrne.com

[Additional Attorneys on Signature Page]

# **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................2

II. FACTS AND PROCEDURAL HISTORY..................................................6

III. SUMMARY OF SETTLEMENT ...........................................................10

    A.   The Settlement Fund. ........................................................10

    B.   The Releases. .....................................................................11

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.......................................................................................12

    A.   The Standard and Procedures for Granting Preliminary Approval.......12

    B.   The Rule 23(e)(2) Factors Are Likely to be Satisfied...........................17

        1.   Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class. ...................................................................................17

        2.   The Settlement Resulted from Arm's-Length Negotiations. ..........18

        3.   The Relief Provided to the Settlement Class is Adequate. .............19

            a.  The Complexity, Expense, and Likely Duration of the Litigation Support the Settlement. .................................................19

            b. The Stage of the Proceedings and the Amount of Discovery Completed Support the Settlement..............................20

            c. Plaintiffs' Risks on the Merits Support the Settlement. .............22

            d. The Settlement Amount Is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation. .......................................................23

        4.  The Remaining Rule 23(e)(2)(C) Factors Are Met. ........................24

            a. The Proposed Method for Distributing Relief Is Effective........24

            b. There Are No Other Agreements. ...............................................25

      c.  Class Members Are Treated Equitably. ....................................26

      d.  The Requested Attorneys' Fees Are Reasonable. .....................27

V.  THE INDIRECT PURCHASER CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ...................................................................29

    A.  The Court "will likely be able to certify the class." ................................30

      1.  Rule 23(a) is Satisfied. ....................................................................31

        a. Rule 23(a)(1) – "Numerosity" – is met. ....................................31

        b. Rule 23(a)(2) – "Commonality" – is met. ..................................32

        c. Rule 23(a)(3) – "Typicality" –is met. .........................................33

        d. Rule 23(a)(4) – "Adequacy" – is met. .......................................34

      2.  Rule 23(b)(3) is Satisfied. ...............................................................35

      3.  The Settlement Class Members are Ascertainable. ..........................38

        a. The Settlement Class is defined with reference to objective criteria. ............................................................................39

        b. There is a reliable and administratively feasible mechanism for determining Settlement Class membership. ..........41

V. PROPOSED LEAD COUNSEL SATISFY RULE 23(G) ..................................42

VI. THE FORM AND MANNER OF NOTICE ARE PROPER ...........................44

VII. A.B. DATA IS QUALIFIED TO SERVE AS CLAIMS ADMINISTRATOR ..................................................................................48

VIII. CITIBANK IS QUALIFIED TO BE THE ESCROW AGENT ....................48

IX. THE PROPOSED SCHEDULE FOR FINAL APPROVAL IS FAIR AND ADEQUATE..........................................................................................49

X. CONCLUSION ................................................................................................50

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Altnor v. Preferred Freezer Servs., Inc.*,
    No. 14-cv-7043, 2016 WL 9776078 (E.D. Pa. Feb. 9, 2016)............................28

*Alves v. Main*,
    No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ..................................18

*Amchem Prods, Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................30, 36, 38

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................36

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D. N.J. 2002)................................................................................25

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ...................................................................................17

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ...................................................................................14

*Beltran v. Sos Ltd.*,
    No. 21-cv-7454, 2023 WL 319895 (D.N.J. Jan. 3, 2023) ...................................24

*Bernhard v. TD Bank, N.A.*,
    No. 08-cv-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009)................................18

*Byrd v. Aaron's, Inc.*,
    784 F.3d 154 (3d Cir. 2015) .......................................................................38, 39, 41

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) .............................................................................39, 41

*Castro v. Sanofi Pasteur Inc.*,
    No. 11-cv-7178, 2017 WL 4776626 (D.N.J. Oct. 23, 2017)..............................20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................23

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*,
  867 F.3d 434 (3d Cir. 2017) ...............................................................39

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
  333 F.R.D. 364 (E.D. Pa. Sept. 24, 2019). .......................................37

*Curiale v. Lenox Grp., Inc.*,
  No. 07-cv-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008)..........18

*Davis v. Kraft Foods N. Am., Inc.*,
  No. 03-cv-6060, 2007 WL 9807445 (E.D. Pa. Aug. 10, 2007)..........29

*Demmick v. Cellco P'ship*,
  No. 06-2163, 2015 WL 13646311 (D.N.J. May 1, 2015) ...................28

*In re Effexor Antitrust Litig.*,
  337 F. Supp. 3d 435 (D.N.J. 2018).............................................10, 23

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...............................................................13

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008).........................................................21

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .......................................................*passim*

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  934 F.3d 316 (3d Cir. 2019) ...............................................................14

*Hall v. Accolade, Inc.*,
  No. 17-cv-3423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019)....19, 29

*Hays v. Eaton Grp. Att'ys, LLC*,
  No. 17-cv-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) .................26

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013)............................................................47

*In re K-Dur Antitrust Litig.*,
  686 F.3d 197 (3d Cir. 2012) .................................................................8

*Kopchak v. United Res. Sys.*,
No. 13-cv-5884, 2016 WL 4138633 (E.D. Pa. Aug. 4, 2016)...........................28

*Kress v. Fulton Bank, N.A.*,
No. 19-cv-18985, 2021 WL 9031639 (D.N.J. Sept. 17, 2021) .........................13

*Lazy Oil Co. v. Witco Corp.*,
166 F.3d 581 (3d Cir. 1999) ...............................................................22

*Lazy Oil, Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997)......................................................22

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's,
London Members*,
No. 08-235, 2019 WL 4877563 (D.N.J. Oct. 3, 2019)....................................28

*In re Lipitor Antitrust Litig.*,
868 F.3d 231 (3d Cir. 2017) ...............................................................9

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F Supp. 2d 633 (N.J. 2004).........................................................25

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ...............................................34, 39, 40

*Martina v. L.A. Fitness Int'l, LLC*,
No. 2:12-cv-2063, 2013 WL 5567157 (D.N.J. Oct. 8, 2013)............................20

*Martinez-Santiago v. Public Storage*,
312 FRD 380 (D.N.J. 2015)...............................................................31

*Maverick Neutral Levered Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*,
No. 3:20-cv-02190, 2021 WL 7872087 (D.N.J. Jan. 26, 2021) .........................14

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015)....................................................20

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007).........................................................18

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
No. 08-cv-2177, 2012 WL 4482041 (D.N.J., Sept. 25, 2012) ..........................33

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..........................................................................................44

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ..........................................................32, 36, 44, 47

*In re Ocean Power Techs., Inc.*,
    No. 14-cv-3799, 2016 WL 6778218 (D.N.J. Oct. 15, 2016)......................44, 45

*Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*,
    No. 21-cv-2530, 2023 WL 3983877 (D.N.J. June 13, 2023) ............................13

*Pollak v. Portfolio Recovery Assocs., LLC*,
    285 F. Supp. 3d 812 (D.N.J. 2018)...................................................................40

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012)........................................................................21

*In re Remeron End-Payor Antitrust Litig.*,
    No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ...........................46

*In re Remicade Antitrust Litig.*,
    No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022)........................38

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ......................................................................33, 35

*In re Schering-Plough/Merck Merger Litig.*,
    No. 09-cv-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010)............................17

*Sheinberg v. Sorensen*,
    606 F.3d 130 (3d Cir. 2010) .............................................................................35

*Singleton v. First Student Mgmt. LLC*,
    No. 13-cv-1744, 2014 WL 3865853 (D.N.J. Aug. 6, 2014)..............................17

*Smith v. Merck & Co.*,
    No. 13-cv-2970, 2019 WL 3281609 (D.N.J. July 19, 2019)............................12

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
    421 F. Supp. 3d 12 (E.D. Pa. 2019)..................................................................33

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone)*
  *Antitrust Litig.*,
  2023 WL 8437034 (E.D. Pa. Dec. 4, 2023)................................................28, 29

*Sullivan v. DB Invs., Inc.*,
  667 F. 3d 273 (3d Cir. 2011) ........................................................19, 32

*Swinton v. SquareTrade, Inc.*,
  No. 18-cv-00144, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019).......................16

*Thomas v. NCO Fin. Sys., Inc.*,
  No. 00-cv-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002)..........................21

*Tumpa v. IOC-PA, LLC*,
  No. 18-cv-112, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021)..................................28

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15-cv-8954, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017).......................21

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)........................................................................32

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ................................................13, 32, 37

*In re Wilmington Tr. Sec. Litig.*,
  10-cv-0990, 2018 WL 6046452 (D. Del. Nov. 19, 2018) ..................................20

*Yaeger v. Subaru of Am., Inc.*,
  No. 14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016)............................34

## Other Authorities

Fed. R. Civ. P. 23 .............................................................................*passim*

Indirect Purchaser Plaintiffs,[1] on behalf of themselves and the Indirect Purchaser Class, respectfully submit this Memorandum of Law in support of their Unopposed Motion for: (i) preliminary approval of the Indirect Purchaser Class Settlement (set forth in the Settlement Agreement dated March 7, 2025 ("Agreement" or "Settlement")[2]; (ii) certification of the proposed Indirect Purchaser Class for settlement purposes; (iii) approval of the form and manner of giving notice of the proposed Settlement to Class Members; and (iv) the scheduling of a date for the hearing ("Fairness Hearing") at which the Court will consider: (a) final approval of the proposed Settlement and entry of a Final Judgment and Order; (b) the Plan of Allocation of settlement proceeds; and (c) Lead Counsel's application for an award of attorneys' fees and reimbursement of any not-previously-reimbursed litigation costs and expenses.

---

[1] Indirect Purchaser Plaintiffs are A. F. of L. – A.G.C. Building Trades Welfare Plan, IBEW - NECA Local 505 Health & Welfare Plan, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, Painters District Council No. 30 Health and Welfare Fund, Plumbers and Pipefitters Local 572 Health and Welfare Fund, City of Providence, Rhode Island, Sergeants Benevolent Association Health and Welfare Fund, and Patricia Sutter ("Indirect Purchaser Class Plaintiffs" or "Class Plaintiffs").

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Agreement, which is attached as Exhibit A to the Declaration of James E. Cecchi in Support of Indirect Purchaser Class Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement, executed March 7, 2025 ("Cecchi Decl."), filed concurrently herewith.

## I.    INTRODUCTION

After more than 12 years of hard-fought litigation, Indirect Purchaser Plaintiffs reached a Settlement with Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (together, "Teva")[3] following last year's settlement with Wyeth[4] (the "Wyeth Settlement") which, if approved, would fully resolve Indirect Purchaser Plaintiffs' litigation concerning Defendants' alleged suppression of generic competition for Effexor XR. The proposed Settlement will resolve all claims against Teva, in exchange for the creation of a non-reversionary common fund of $2,250,000 (the "Settlement Amount") for the benefit of the Indirect Purchaser Class. Together with the previous Wyeth Settlement, this represents a total recovery of $27,750,000 for the Indirect Purchaser Class. This is an excellent result for the Indirect Purchaser Class and is both substantively and procedurally fair. Accordingly, Class Plaintiffs respectfully submit that the Court should enter the Preliminary Approval Order.

---

[3] Teva and the Indirect Purchaser Plaintiffs are collectively referred to as the "Parties."

[4] Wyeth—a/k/a Wyeth LLC, f/k/a Wyeth, Inc., f/k/a American Home Products—Wyeth Pharmaceuticals, Inc., Wyeth Pharmaceuticals Company, and Wyeth-Whitehall Pharmaceuticals (collectively, "Wyeth"). After the start of this litigation, Wyeth became a wholly owned subsidiary of Pfizer Inc. Wyeth and Teva are collectively referred to as the "Defendants."

The Indirect Purchaser Plaintiffs brought this class action against Defendants, alleging they engaged in an anticompetitive scheme to prevent and/or delay the approval and marketing of generic versions of the brand-named drug Effexor XR, a prescription antidepressant used to treat anxiety disorder in adults. As alleged by the Indirect Purchaser Plaintiffs, Defendants' unlawful agreement violated certain state antitrust, consumer protection, and/or unjust enrichment laws. As a direct and proximate result of Defendants' unlawful agreement to prevent or delay the entry of a less expensive generic version of Effexor XR, consumers and third-party payors ("TPPs") like insurance carriers, providers of health, welfare, and pension benefit plans, Taft-Hartley funds, and municipalities that provide prescription drug coverage for their members and employees (collectively, "Indirect Purchasers") paid inflated prices for Effexor XR and its generic equivalents. Absent Defendants' alleged misconduct, Indirect Purchasers would have paid far less for Effexor XR and its generic equivalents.

The proposed Settlement will conclude Indirect Purchasers Plaintiffs' claims concerning the alleged suppression of generic competition for Effexor XR from June 14, 2008 through May 31, 2011. The Settlement provides for Teva to pay $2,250,000.00 into an escrow account, to be apportioned to the Settlement Class based on their relative shares of damages as determined by Indirect Purchaser Plaintiffs' consulting economist as follows: 78% to TPPs and 22% to consumers.

This Settlement was reached after years of litigation and good-faith negotiations conducted both directly between the parties and with the assistance of a nationally recognized mediator, the Honorable Faith S. Hochberg. *See* Cecchi Decl., Ex. A. The process was protracted, difficult, and hard-fought.

The Indirect Purchaser Plaintiffs, with Teva's agreement, now request that the Court enter an Order:

1)    preliminarily approving the proposed Settlement and Plan of Allocation;

2)    preliminarily certifying, for settlement purposes only, the proposed Indirect Purchaser Class[5];

---

[5] The proposed Indirect Purchaser Class (also referred to as the "Settlement Class") includes "[a]ll persons or entities in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin (the "Class States") who purchased, paid, and/or provided reimbursement for Effexor XR or AB-rated generic versions of Effexor XR for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries, from June 14, 2008 through May 31, 2011 (the "Class Period"). For purposes of this definition, persons or entities "purchased" Effexor XR or its generic versions if they paid or reimbursed some or all of the purchase price. Cecchi Decl., Ex. A (Settlement Agreement), ¶ 1.

Certain persons and entities are excluded from the Settlement Class, namely: 1) Wyeth and Teva and their respective subsidiaries and affiliates; (2) state and local governments to the extent their claims may be asserted under applicable state law only by the state Attorney General, or are otherwise prohibited by applicable law from being asserted by private counsel on a contingent fee basis; (3) all persons or entities who purchased Effexor XR or its generic equivalent for purposes of resale

3) approving the proposed Notice Plan and form and content of the proposed Class Notices and Claim Forms, annexed to the Cecchi Decl. as Exhibits B, C, D, E, and F, and directing distribution of notice to the members of the proposed Indirect Purchaser Class in accordance with the Notice Plan;

4) preliminarily appointing Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Chair of Lead Counsel, and Motley Rice LLC, Dugan Law Firm, PLC, Wexler Boley & Elgersma LLP, Spector, Roseman & Kodroff, P.C., Miller Law LLC, and Quantum Legal LLC as Lead Counsel ("Lead Counsel" or "Class Counsel");

5) appointing the named Indirect Purchaser Plaintiffs as Settlement Class Representatives;

6) appointing A.B. Data, Ltd. ("A.B. Data" or "Settlement Administrator"), *see* Cecchi Decl., Ex. G, as the notice provider to implement the Notice Plan and as the settlement administrator to supervise and administer claims processing and distribution;

---

or directly from Wyeth, Teva, or their affiliates; (4) fully insured health plans (*i.e.*, Plans that purchased insurance from another third-party payor covering 100% of the Plan's reimbursement obligations to its members); (5) pharmaceutical benefit managers; and (6) the judges in this case and any members of their immediate families.

7)    appointing Citibank, N.A. ("Citibank") as Escrow Agent;

8)    setting a schedule for completing the notice and approval process and all related dates, including setting a date for the Fairness Hearing; and

9)    staying the Indirect Purchaser Class Action except proceedings for purposes of effectuating the Settlement.

Preliminary approval of this Settlement is appropriate. It comes after more than 12 years of well-developed litigation and protracted settlement negotiations. Counsel for the Indirect Purchaser Plaintiffs and Teva are highly experienced in pharmaceutical antitrust litigation and were well-equipped to assess the risks and rewards of this case. Substantively, the Settlement is fair to all Indirect Purchaser Class Members, who will receive cash payments instead of an uncertain result occasioned by continued litigation against Teva. Put simply, the Parties agree it is appropriate to bring the litigation to an end through this meritorious Settlement.

## II.    FACTS AND PROCEDURAL HISTORY

Beginning in late September 2011, various consumer and TPP plaintiffs filed indirect purchaser class actions against Defendants to recover damages for violations of state antitrust and consumer protection laws and for unjust enrichment arising from the manufacturing, marketing, and sale of Wyeth's Effexor XR. *See, e.g.*, ECF

No. 1.[6] On December 13, 2011, the Court entered Case Management Order No. 1, consolidating all Indirect Purchaser actions and coordinating them with similarly consolidated direct purchaser cases. ECF No. 18. On February 8, 2012, the Court appointed interim Class Counsel for the Indirect Purchasers. ECF No. 33.

The Indirect Purchaser Plaintiffs filed a Consolidated Class Action Complaint ("CAC") on January 9, 2012. ECF No. 37. The Indirect Purchaser Plaintiffs alleged that, although Wyeth's marketing exclusivity for the original compound patent for Effexor XR lapsed on June 13, 2008, the first generic equivalent was prevented from entering the market for two more years, until June 2010, and other generics remained foreclosed until June 2011, because Wyeth and Teva engaged in a multifaceted anticompetitive scheme designed to prevent and/or delay the approval and marketing of generic versions of Effexor XR. *See id.* Indirect Purchaser Plaintiffs alleged that Wyeth fraudulently procured three patents for extended-release formulations of venlafaxine hydrochloride, improperly listed those patents in the United States Food & Drug Administration (FDA) Orange Book, and engaged in serial sham litigation to prevent and/or and delay generic manufacturers from timely entering the market with less expensive versions of extended-release venlafaxine hydrochloride

---

[6] Unless otherwise indicated below, "ECF" citations are to *Man-U-Service Contract Trust Fund v. Wyeth*, Case No. 3:11-cv-05661 (D.N.J.), the lead docket for the Indirect Purchaser Class Actions.

capsules; that Wyeth and generic manufacturer Teva entered into a horizontal market-allocation and price-fixing agreement; and that Wyeth negotiated settlement agreements with subsequent generic applicants to preserve and protect its monopoly and market-division agreement with first-filer Teva. *See id.* Indirect Purchaser Plaintiffs brought claims for violation of numerous state antitrust and consumer protection laws, and for unjust enrichment under state law. *See id.* ¶¶ 407-62; 472-82. They also sought declaratory and injunctive relief for Defendants' violations of Sections 1 and 2 of the Sherman Act. *Id.* ¶¶ 463-71.

Defendants moved to dismiss the CAC on April 6, 2012. *See* ECF Nos. 75, 77. On September 10, 2012—while the motions to dismiss were pending—Defendants moved for a stay pending the resolution of *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), *cert. granted, judgment vacated sub-nom. Upsher-Smith Labs., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 570 U.S. 913 (2013), which the Court ultimately granted. ECF Nos. 116, 123. That stay was in effect until July 17, 2013, when the Court lifted the stay after *K-Dur* was decided. ECF No. 211. No. 3:11-cv-05479 (D.N.J.).

On August 8, 2013, the Court established a single master docket for all previously consolidated and/or coordinated cases—Case No. 3:11-cv-05479

8

(D.N.J.). *See* ECF 233, No. 11-cv-5479.[7] On January 16, 2015, the Court granted Defendants' motions to dismiss the claims related to Indirect Purchaser Plaintiffs' allegations of an unlawful reverse-payment settlement and entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b). ECF Nos. 151, 152.

Indirect Purchaser Plaintiffs appealed the Court's January 16, 2015 decision on February 4, 2015. ECF No. 156. Thereafter, on August 21, 2017, the United States Court of Appeals for the Third Circuit reversed. *See In re Lipitor Antitrust Litig.*, 868 F.3d 231 (3d Cir. 2017). In relevant part, the Court of Appeals held that Plaintiffs adequately alleged that Wyeth had entered into an unlawful, monopolistic ("reverse payment") settlement agreement with would-be generic manufacturer Teva.

On January 12, 2018, the Indirect Purchaser Plaintiffs filed a Second Amended Consolidated Class Action Complaint. ECF No. 470, No. 3:11-cv-05479 (D.N.J.). Defendants answered on February 15, 2018. ECF Nos. 470, 476, No. 3:11-cv-05479 (D.N.J.). Thereafter, on April 16, 2018, Defendants moved for judgment on the pleadings, pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See* ECF No. 165; *see also* ECF No. 146, No. 3:11-cv-05590 (D.N.J.).

On May 17, 2018, the Indirect Purchaser Plaintiffs filed a Third Amended Consolidated Class Action Complaint, ECF No. 155, No. 3:11-cv-05590. On May

---

[7] Unless otherwise noted, all future "ECF" citations herein are to this single Master Docket.

21, 2018, Defendants answered Indirect Purchaser Plaintiffs' Third Amended Complaint. ECF No. 521, No. 3:11-cv-05479 (D.N.J.). Indirect Purchaser Plaintiffs subsequently filed on October 18, 2018 a Fourth Amended Consolidated Class Action Complaint, ECF No. 171, Case No. 3:11-cv-0559; no ruling was issued as to that Complaint.

The Court granted in part and denied in part Defendants' motions for judgment on the pleadings on September 18, 2018 and November 11, 2018, respectively. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363 (D.N.J. 2018); *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 442 (D.N.J. 2018).

Over the ensuing five years, the parties engaged in vigorous document discovery while engaging in settlement discussions, both privately and in mediation under the direction of the Honorable Faith S. Hochberg. This Settlement is the product of these multi-year efforts.

On April 24, 2024, the Indirect Purchaser Plaintiffs presented the Court with a settlement of the litigation as against Wyeth. ECF No. 733. The Court granted final approval of the Wyeth Settlement on September 12, 2024. ECF No. 761.

### III.    SUMMARY OF SETTLEMENT

#### A.    The Settlement Fund.

Teva has agreed to pay $2,250,000 (the "Settlement Fund Amount") to settle all Indirect Purchaser Class claims against it in this Action. Cecchi Decl, Ex. A

10

(Settlement Agreement), ¶¶ 7, 9, 12. Teva is to deposit the Settlement Fund Amount in an escrow account maintained by Citibank (the "Escrow Agent"). *Id.* ¶ 7. Subject to Court approval, the Settlement Fund Amount and any accrued interest or earnings after deposit (the "Settlement Fund") will be used to pay the costs of notice, administration of the Settlement Fund, escrow administration, and taxes; reimburse any not-previously-reimbursed costs and expenses incurred by Class Counsel in litigating the case and bringing it to a conclusion; and pay Class Counsel's attorneys' fees (collectively, "Fund Expenses"). *Id.* ¶¶ 7, 10-11. After subtracting Fund Expenses, the remaining balance of the Settlement Fund (the "Net Settlement Fund") shall be distributed to the Indirect Purchaser Class pursuant to the Plan of Allocation (attached as **Exhibit B** to the Cecchi Decl.).

## B.    The Releases.

In exchange for the Settlement Fund Amount, Indirect Purchaser Plaintiffs, on behalf of themselves and the Indirect Purchaser Class, have agreed to release Teva and its related entities from all claims arising out of or relating to any conduct, events, or transactions, prior to the date of preliminary approval of this Settlement Agreement, (a) alleged, or which reasonably could have been alleged, in the Indirect Purchaser Class Action concerning the alleged anticompetitive scheme to prevent and delay approval and market entry of AB-rated generic equivalents of Effexor XR, or (b) concerning end-payor purchases of Effexor XR and/or its AB-rated generic

equivalents in the Class States and arising under the Sherman Act, 15 U.S.C. §§ 1 &

2, *et seq.*, or any other federal or state statute or common-law doctrine relating to

antitrust or consumer protection. *Id.* ¶ 12(a). This fact notwithstanding, the Release

does not apply to Class Members in certain types of matters specified in Paragraph

12(d) of the Settlement. *Id.* ¶ 12(d). Nor does it apply to claims Indirect Purchaser

Plaintiffs may have against any person, firm, association, or corporation other than

Teva and the other Released Parties. *Id.* ¶ 12(c). Further, the Indirect Purchaser

Plaintiffs, on behalf of themselves and members of the Indirect Purchaser Class,

agreed to waive their rights under § 1542 of the California Civil Code—respecting

unknown claims—and any similar state or federal laws. *Id.* ¶ 12(b).

### IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

**A.    The Standard and Procedures for Granting Preliminary Approval.**

Indirect Purchaser Plaintiffs present this Settlement to the Court for its review

under Rule 23(e) of the Federal Rules of Civil Procedure, which provides, in

pertinent part, that the Court must direct notice regarding the Settlement in a

reasonable manner and may approve a class-action settlement after a hearing and

upon finding that the settlement is "fair, reasonable and adequate." Fed. R. Civ. P.

23(e)(2).

"Review of a proposed class action settlement is a two-step process: (1)

preliminary approval, and (2) a subsequent fairness hearing." *Smith v. Merck & Co.*,

12

No. 13-cv-2970, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019). "[P]reliminary approval is not binding and is granted unless the proposed settlement is obviously deficient." *Kress v. Fulton Bank, N.A.*, No. 19-cv-18985, 2021 WL 9031639, at *9 (D.N.J. Sept. 17, 2021), *report and recommendation adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022).

Courts within this Circuit have a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("overriding public interest in settling class action litigation"); *Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, No. 21-cv-2530, 2023 WL 3983877, at *3 (D.N.J. June 13, 2023) ("in New Jersey, there is a strong public policy in favor of settlements. . . . Courts, therefore, will 'strain to give effect to the terms of a settlement whenever possible.'" (citations omitted)). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. Settlement is particularly favored "in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).[8] As such, courts are "hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation," such as this one. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013).

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Amendments to Rule 23 that took effect on December 1, 2018, clarified the standards that guide a district court's preliminary review of a proposed settlement. As amended, Rule 23(e)(1)(B)(i)-(ii) now provides specific requirements that a district court must ensure are satisfied prior to granting preliminary approval. *See* Fed. R. Civ. P. 23 Advisory Committee Note on 2018 Amendment to Subdivision (c)(2) (noting that Rule 23(e)(1) addresses the "decision [that] has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions"). Specifically, the court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Maverick Neutral Levered Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*, No. 3:20-cv-02190, 2021 WL

---

[8] *See also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (for motions seeking approval of "settlement only" class actions, "we favor the parties reaching an amicable agreement" and should not "intrude overly on the parties' hard-fought bargain[,]" but also, "[a]t the same time, [a] district court has an obligation as a fiduciary for absent class members to examine the proposed settlement with care").

7872087, at *5 (D.N.J. Jan. 26, 2021) ("Thus, in connection with an order preliminarily granting approval of a class action settlement, the Court is not certifying the class at the preliminary approval stage, but rather, is making a preliminary determination that it will likely be able to certify the class at the final approval stage." (citing William B. Rubenstein, *4 Newberg on Class Actions* § 13:17 (5th Ed.))). If these requirements are satisfied, then notice of the proposed settlement will be disseminated to the class. Fed. R. Civ. P. 23(e)(1).

With respect to the first showing required under Rule 23(e)(2)—which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A) whether the class representatives and class counsel have adequately represented the class;

(B) whether the proposed settlement was negotiated at arm's length;

(C) whether the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) whether the proposal treats class members equitably relative to each other.

15

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918; *see also Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific consideration in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement.").  For this reason, the traditional factors utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class-action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant, namely:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class

16

action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh*, 521 F.2d 153); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).[9]

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, it remains the case that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

**B.    The Rule 23(e)(2) Factors Are Likely to be Satisfied.**

Each of the Rule 23(e)(2) factors is satisfied here, so a finding that they are "likely" to be satisfied is elemental.

**1.    Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class.**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Because

---

[9] The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

this factor overlaps significantly with the class certification analysis on adequacy, to avoid duplicative briefing, it is discussed there. *See infra* at 34-35.

### 2.    The Settlement Resulted from Arm's-Length Negotiations.

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." Whether a class-action settlement arises from arm's-length negotiations is often the central focus of the analysis on a motion for preliminary approval. *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Curiale v. Lenox Grp., Inc.*, No. 07-cv-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008). Here, settlement negotiations were both arm's-length and hard-fought. The Settlement was negotiated by counsel with extensive experience in pharmaceutical antitrust and consumer protection-related litigation, who were well versed in the strengths and weaknesses of their respective positions. *See* Decl. of James E. Cecchi in Supp. of Mot. for Preliminary Approval of Class-Action Settlement (ECF No. 733-2), dated Apr. 26, 2024, Exs. I-O (firm resumes). Further, negotiations took place under the supervision of a well-respected mediator. Combined, these circumstances weigh heavily in favor of preliminary approval. *See Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties."); *Bernhard v. TD Bank, N.A.*, No. 08-cv-4392, 2009 WL 3233541, at

18

*2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement and noting that the proposed settlement, which was achieved with the assistance of a mediator, appeared to be the result of serious negotiation between the parties).

### 3.    The Relief Provided to the Settlement Class is Adequate.

Rule 23(e)(2)(C)(i)[10] overlaps significantly with *Girsh* (*e.g.*, factors 1, 4-9); both sets of factors advise the Court to consider the adequacy of the settlement relief given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157. Thus, the *Girsh* factors, analyzed below, inform the Rule 23(e)(2)(C)(i) inquiry.[11]

### a.    The Complexity, Expense, and Likely Duration of the Litigation Support the Settlement.

"The first *Girsh* factor 'captures the probable costs, in both time and money, of continued litigation.'" *Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 320 (3d Cir. 2011) (quoting *Warfarin*, 391 F.3d at 535-36). This Action involves complicated antitrust

---

[10] This factor "balances the 'relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome.'" *Hall v. Accolade, Inc.*, No. 17-cv-3423, 2019 WL 3996621, at *4 (E.D. Pa. Aug. 23, 2019) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* (internal quotation omitted).

[11] Because notice to the Settlement Class has not yet been issued, the second *Girsh* factor—concerning the reaction of the Class to the Settlement—cannot be assessed. However, the named Indirect Purchaser Class Plaintiffs support the Settlement. The Wyeth Settlement was also well received by the Indirect Purchaser Class. *See* ECF No. 757 at 13-14.

and patent issues in the realm of pharmaceutical manufacturing and marketing. As this Court has recognized, an "'antitrust class action is arguably the most complex action to prosecute.'" *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178, 2017 WL 4776626, at *3 (D.N.J. Oct. 23, 2017) (quoting *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *17 (D.N.J. Sept. 13, 2005)). The litigation has been ongoing for over 12 years and, barring settlement, would undoubtedly extend significantly further.

This Court has recognized that "continuing litigation sometimes presents plaintiffs with the risk of losing class certification and any substantial trial award, so a settlement which provides immediate and definite relief is preferable to the prospect of receiving no relief at all." *Martina v. L.A. Fitness Int'l, LLC*, No. 2:12-cv-2063, 2013 WL 5567157, at *6 (D.N.J. Oct. 8, 2013). Because a private resolution of the conflict "reduces expenses and avoids delay," this factor weighs heavily in favor of approving the Settlement. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 640 (E.D. Pa. 2015).

### b. The Stage of the Proceedings and the Amount of Discovery Completed Support the Settlement.

The relevant inquiry under the third *Girsh* factor is "whether Plaintiffs had an 'adequate appreciation of the merits of the case before negotiating' settlement." *In re Wilmington Tr. Sec. Litig.*, 10-cv-0990, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018). Here, the Parties engaged in substantial discovery over the course of the

20

last 12 years, so Plaintiffs were adequately informed of the relative strengths and weaknesses of their case. Indirect Purchaser Plaintiffs also responded to multiple motions to dismiss, ultimately filing four amended complaints; consulted with class, liability, and damages experts; and participated in multiple virtual and in-person day-long mediation sessions during which the Parties debated the merits of the Action. These steps, among others, gave interim Lead Counsel a clear and realistic appreciation of the value of the case and the benefits of settling with Teva. *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 270-71 (E.D. Pa. 2012); *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15-cv-8954, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs: (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

Courts have granted preliminary approval of class-action settlements occurring at much earlier stages of litigation. *See, e.g.*, *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (before discovery on the merits); *Thomas v. NCO Fin. Sys., Inc.*, No. 00-cv-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (where there was "no reference to any formal discovery"). The advanced stage

of this litigation thus furnishes more support for preliminary approval of the Settlement. *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999) (finding that post-discovery class-action settlements are more likely to be fair and reflect the true value of the case).

### c.    Plaintiffs' Risks on the Merits Support the Settlement.

The fourth, fifth, and sixth *Girsh* factors—the risks of establishing liability, establishing damages, and maintaining the class action through the trial—also support approval. Class-action antitrust cases, like all complex litigation against companies ably represented by teams of talented defense counsel, carry inherent risks. *See Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) (noting that "[h]ere, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict the way in which a jury will resolve disputed issues"), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *see also* Joshua P. Davis, Robert H. Lande, Defying Conventional Wisdom: The Case for Private Antitrust Enforcement, 48 Ga. L. Rev. 1, 79 (2013) ("highly respected scholars . . . believe that because many judges accept the field's conventional wisdom, they systematically bias virtually every aspect of antitrust litigation in defendants' favor."). Indirect Purchaser Plaintiffs believe their claims to be meritorious and have held that belief from the inception of the litigation. Defendants previously achieved dismissal of substantial portions of the Indirect Purchasers' case, however,

highlighting the risks of continued litigation. *In re Effexor Antitrust Litig.*, 357 F.

Supp. 3d 363 (D.N.J. 2018); *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 442

(D.N.J. 2018). With neither class certification nor summary judgment decided as

yet, not to mention the vagaries of trial and post-trial proceedings, it would be

unreasonable to assert no risk exists in proceeding.

### d.    The Settlement Amount Is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation.

The seventh, eighth, and ninth *Girsh* factors—a defendant's ability to

withstand a greater judgment and the range of reasonableness of the settlement

given the best possible recovery and considering all the attendant risks of

litigation—strongly support approval. The proposed Settlement recovers

$2,250,000 for the Settlement Class. Although Teva could withstand a judgment

of considerably more, this is an excellent result. *See City of Detroit v. Grinnell

Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may

amount to a fraction of the potential recovery does not, in and of itself, mean that

the proposed settlement is grossly inadequate and should be disapproved."). The

Settlement guarantees a significant recovery for the Settlement Class and allows

for payment after 12 years of litigation. The consideration to be paid by Teva and

obtained by the Settlement Class, when balanced against the risks of continued

litigation that could result in no recovery at all, demonstrates that the Settlement

falls well within the range of what is fair, reasonable, and adequate, and clearly merits preliminary approval.

### 4. The Remaining Rule 23(e)(2)(C) Factors Are Met.

Rule 23(e)(2)(C) provides three more factors to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval of the Settlement or is neutral and thus does not suggest any basis for concluding the Settlement is inadequate.

### a. The Proposed Method for Distributing Relief Is Effective.

The proposed plan of distribution is fair, reasonable, and adequate, and warrants preliminary approval. *Beltran v. Sos Ltd.*, No. 21-cv-7454, 2023 WL 319895, at *9 (D.N.J. Jan. 3, 2023) (approval of plan of allocation is governed by the same standards applicable to a settlement generally). That plan of distribution apportions the Settlement Fund between TPPs and consumers based on the percentage of damages suffered by each group as determined by Indirect Purchasers' consulting economic expert. Cecchi Decl., Ex. B (Plan of Allocation). Once apportioned to the respective TPP and consumer pools, Settlement Class Members submitting valid claims will be reimbursed their damages from the Net Settlement Fund on a *pro rata* basis, subject to the proof submitted with their respective claim

24

forms and/or procured by the Claims Administrator. *Id.* Claimants that submitted valid claims for the Wyeth Settlement will be included in this allocation and distribution without the need for additional submissions, thereby reducing administrative costs and maximizing the recovery for Class Members.[12]

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F Supp. 2d 633, 649 (N.J. 2004); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D. N.J. 2002). This is precisely what the proposed method of distribution contemplates here. The claims process is straightforward and not burdensome, essentially consisting of the same process utilized in scores of settlements of similar pharmaceutical antitrust cases. Cecchi Decl., Ex. G (Decl. of Elaine Pang, Vice President of Media with A.B. Data, Ltd. ("Pang Decl.")). The plan of distribution has a "reasonable, rational basis" and should be preliminarily approved.

### b.    There Are No Other Agreements.

Rule 23(e)(2)(C)(iv) calls for disclosure of any other agreements entered in connection with the settlement of a class action. Here, this factor will be satisfied because the accompanying Settlement Agreement is the only agreement connected to the subject matter of this lawsuit or settlement, with the exception of the

---

[12] Such claimants will, of course, retain their rights to opt out and object to the Teva Settlement.

Confidential Supplement relating to the percentage of opt-outs necessary to trigger Teva's right to terminate the Settlement. This Supplement is to be filed under seal with the Court, upon request, and is of the type that is routinely utilized in class settlements in this District and elsewhere.

### c.   Class Members Are Treated Equitably.

Rule 23(e)(2)(D) seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Fed. R. Civ. P. 23, *Advisory Committee Notes to December 1, 2018 Amendments*. This factor is satisfied here because, as discussed above, each Class Member is entitled to the same relief depending on their status as a TPP or consumer and based upon how much they purchased, paid, and/or provided reimbursement for Effexor XR or AB-rated generic versions of Effexor XR for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries during the Class Period. *See* Cecchi Decl, Ex. A (Settlement Agreement), ¶ 1; Cecchi Decl., Ex. B (Plan of Allocation). The Settlement does not provide preferential treatment to any segment of the Settlement Class. Accordingly, the factor addressing equitable treatment of class members supports preliminary approval of the Settlement. *See Hays v. Eaton Grp. Att'ys, LLC*, No. 17-cv-88, 2019 WL 427331, at *13 (M.D. La. Feb. 4, 2019) (the equitable-treatment factor is "easily met as each class member, save the Class representative, will receive the same amount").

In sum, as discussed above, the Court "will likely be able to . . . approve the proposal under Civil Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### d. The Requested Attorneys' Fees Are Reasonable.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments.

Indirect Purchaser Plaintiffs reserve the right to file a formal fee petition 35 days before the Fairness Hearing. The proposed Class Notice, however, will inform Settlement Class Members that, pursuant to the Settlement, Lead Counsel may seek attorneys' fees of up to 34% of the Settlement Fund, plus reimbursement of any non-previously-reimbursed costs and expenses incurred in the litigation, including the costs of Notice for the Teva Settlement. *See* Cecchi Decl., Exs. C-D (proposed notices). All fees and expenses will be paid from the Settlement Fund Amount, leaving the Net Settlement Fund for distribution to the Settlement Class. Cecchi Decl., Ex. A (Settlement Agreement), ¶ 11.

In their fee petition, Indirect Purchaser Plaintiffs will address the requested attorneys' fees under the Third Circuit's *Gunter* factors*. See, e.g.*, *Tumpa v. IOC-PA, LLC*, No. 18-cv-112, 2021 WL 62144, at *10-13 (W.D. Pa. Jan. 7, 2021). Such

detailed analysis is not necessary at the preliminary approval stage. *See, e.g.*, *Altnor v. Preferred Freezer Servs., Inc.*, No. 14-cv-7043, 2016 WL 9776078, at *1 n.1 (E.D. Pa. Feb. 9, 2016) (attorneys' fees "will be addressed at the final fairness hearing"); *Kopchak v. United Res. Sys.*, No. 13-cv-5884, 2016 WL 4138633, at *5 n.8 (E.D. Pa. Aug. 4, 2016) ("I will defer approval of attorneys' fees until after the final fairness hearing . . . .").

Suffice it to say, however, that a 34% fee award is within the range of amounts typically approved as reasonable by courts in the Third Circuit, including this Court. *See, e.g.*, ECF No.  761, No. 3:11-cv-05479, ¶¶ 15-16 (Order and Judgment, in this Action, approving attorneys' fees amounting to 34% of the Wyeth Settlement); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2023 WL 8437034, at *13-18 (finding requested fee of approximately 33 1/3% of the recovery "consistent with the awarded fee in other, similar cases"); *Demmick v. Cellco P'ship*, No. 06-2163, 2015 WL 13646311, at *3 (D.N.J. May 1, 2015) ("The Third Circuit has noted with approval percentage-of-recovery attorneys' fee awards which range from as little as 19% of the recovery to as much as 45% of the recovery." (citing cases)); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-235, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable." (citing cases)); *Hall*, 2019 WL 3996621, at *5 ("the average attorney's

fees percentage in [surveyed class action] cases was 31.71% and . . . the median fee award was 33.3%); *Davis v. Kraft Foods N. Am., Inc.*, No. 03-cv-6060, 2007 WL 9807445, at *2 (E.D. Pa. Aug. 10, 2007) ("[a]pplying the *Gunther* and *Prudential* factors to the instant case demonstrates that the fee request [of 34%] is reasonable and justified." (citing cases)). This amount is also consistent with fees awarded in pharmaceutical antitrust class actions. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2023 WL 8437034, at *20 (awarding fee of 33-1/3% of the settlement fund plus interest); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521 (N.D. Cal.) (awarding one-third fee on settlement of $104.7 million); *In re Aggrenox Antitrust Litig.*, 3:14-md-02516 (D. Conn.) (awarding one-third fee on settlement of $50.2 million); *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (E.D. Pa.) (awarding one-third fee on settlement of $150 million); *In re Solodyn Antitrust Litig.*, 1:14-md-02503 (D. Mass.) (awarding one-third fee on settlement of $40 million).

For these reasons, the Court should preliminarily approve the Settlement.

## V.   THE INDIRECT PURCHASER CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Having determined the parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," Indirect Purchaser Plaintiffs address the second part of the

preliminary approval analysis concerning whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).[13]

A.   **The Court "will likely be able to certify the class."**

The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives." *Id.* at 621. To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three provisions of Rule 23(b). *See* Fed R. Civ. P. 23. As with the Wyeth Settlement—which involved the same proposed class of indirect purchasers—the proposed Class for the Teva Settlement readily satisfies each of these requirements. *See* ECF No. 761, No. 3:11-cv-05479, ¶ 2 (Order and Judgment Granting Final Approval of Class-Action Settlement with Wyeth).

---

[13] Teva does not object to certification of the Indirect Purchaser Class for purposes of settlement.

### 1. Rule 23(a) is Satisfied.

In order for a class to be certified under Rule 23, a named plaintiff must establish that the proposed class meets each of the four requirements of subsection (a) of the Rule. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). All four elements are satisfied as to the proposed Class.

### a. Rule 23(a)(1) – "Numerosity" – is met.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R Civ. P. 23(a)(1). "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met." *Martinez-Santiago v. Public Storage*, 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)). Here, there are hundreds of thousands of Settlement Class Members who engaged in millions of transactions over the Class Period. The numerosity requirement is readily satisfied.

### b.    Rule 23(a)(2) – "Commonality" – is met.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). The commonality inquiry focuses on the defendant's conduct. *Sullivan*, 667 F. 3d at 297 ("[C]ommonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). A finding of commonality does not require that all class members share identical claims if there are common questions at the heart of the case. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 426-27 (stating that Rule 23(a) commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"); *Warfarin*, 391 F.3d at 530. "For purposes of Rule 23(a)(2), even a single common question will do." *Dukes*, 131 S. Ct. at 2551.

Here, the claims of the Settlement Class raise common questions of law and fact. Indirect Purchaser Plaintiffs allege a common course of conduct, namely that Wyeth and Teva engaged in anticompetitive behavior to prevent and delay the approval and marketing of generic Effexor XR, causing Class Members to pay inflated prices for Effexor XR and its generic equivalents. The Indirect Purchaser Plaintiffs' claims thus involve common facts surrounding this anticompetitive scheme. The common legal issues include whether Defendants' scheme violated

32

state antitrust and consumer-protection laws and laws pertaining to unjust enrichment. As such, the commonality requirement here is easily met. *See In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 67 (E.D. Pa. 2019) (commonality met where "[r]esolution of each of these issues depends entirely on [defendant's] conduct and, thus, on evidence common to the class:" "whether defendant's "anticompetitive scheme suppressed generic competition to Suboxone" and "whether Reckitt had the ability to control prices and exclude competition"), *aff'd*, 967 F.3d 264 (3d Cir. 2020).

### c.      Rule 23(a)(3) – "Typicality" –is met.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. As the Third Circuit has stated, "the named plaintiffs' claims must merely be typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation and quotation marks omitted).

Where it is alleged that the defendant engaged in a behavior common to all members of the class, "there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012) (citation omitted). Likewise, "[w]hen a class includes purchasers of

33

a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus*, 687 F.3d at 599; *see also Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490, 2016 WL 4541861, at *6 (D.N.J. Aug. 31, 2016) (finding typicality where "plaintiffs allege that the class claims arise out of the same conduct of the defendants related to their design, manufacture, and sale of the class vehicles that suffered from an alleged oil consumption defect, and defendants' alleged failure to disclose that material fact").

Here, the Indirect Purchaser Plaintiffs' claims, and those of the Settlement Class, arise from the same common course of conduct in which Defendants are alleged to have engaged. Proof by the Indirect Purchaser Plaintiffs of Defendants' anticompetitive scheme and consumer protection violations will be the same for themselves, individually, as for the rest of the Settlement Class. The typicality prong of Rule 23(a)(3) is satisfied.

### d.    Rule 23(a)(4) – "Adequacy" – is met.

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R Civ. P. 23(a)(4). In the Third Circuit, this requirement is met when two prongs are satisfied: 1) the plaintiffs have no interests antagonistic to those of the class; and 2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed

litigation. *In re Schering Plough Corp.*, 589 F.3d at 602. The core analysis for the first prong is whether plaintiffs have interests antagonistic to those of the class. The second prong analyzes the capabilities and performance of class counsel based upon factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs seek to hold Defendants accountable for, among other things, anticompetitive behavior and consumer protection violations. Further, Plaintiffs have demonstrated their allegiance and commitment to this litigation by consulting with Class Counsel, collecting documents for litigation, reviewing the pleadings, responding to discovery propounded by Defendants, and keeping informed of the progress of the litigation. Their interests are aligned with the interests of absent Settlement Class Members.

Second, as discussed more extensively in the firm resumes previously submitted, Class Counsel are qualified, experienced, and competent in complex class litigation and have established, successful track records with consumer and TPP class cases. *See* ECF No. 733-2, Exs. I-O. Accordingly, the adequacy requirement is satisfied.

**2.    Rule 23(b)(3) is Satisfied.**

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When common questions are a significant aspect of a case and can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (3d ed. 1986).

Superiority "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 434. Here, the Settlement Class readily meets both requirements.

First, common questions exist relating to Defendants' alleged conduct, such as whether they engaged in anticompetitive conduct and whether such conduct caused damages to Plaintiffs and the Settlement Class. If each Class Member were to bring an individual action, each would need to demonstrate the same conduct of Defendants to prove liability. Because the evidence needed to prove such claims would be the same for all, a finding of predominance is appropriate. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013); *see also Amchem*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging consumer

or securities fraud or violations of the antitrust laws"). These claims thus present common operative facts and common questions of law that predominate over any factual variations.

Second, certification of the Settlement Class under Rule 23 is "superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R Civ. P. 23(b)(3). The settlement affords benefits to a large number of putative Settlement Class Members who, absent a class settlement, may not have been aware of their legal rights or may not have had the desire or resources to pursue an individual suit involving the matters at issue. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d at 534 (finding superiority requirement satisfied in antitrust class action where there were a "potentially large number of class members [ ], including some 2 million consumers and potentially thousands of TPPs" and reasoning in part that "individual consumer members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit"); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. at 378 (finding superiority requirement met in antitrust class action for similar reasons, *i.e.*, that there were millions of class members with low-dollar-value claims). "Moreover, '[i]ndividual treatment of each class members' claims would require duplicative, expensive litigation, which would come at enormous expense to the parties and judicial

economy. Class resolution would also avoid problems of inconsistent resolution.'"
*In re Remicade Antitrust Litig.*, No. 17-cv-04326, 2022 WL 3042766, at *8 (E.D.
Pa. Aug. 2, 2022) (citation omitted). Thus, resolving the Settlement Class Members'
claims in a single, consolidated settlement proceeding is far superior to individual
adjudication of their claims. And, as this is a class settlement, the court need not
address manageability issues that may otherwise exist in a contested class action.
*Amchem*, 521 U.S. at 620.

### 3. The Settlement Class Members are Ascertainable.

Although not explicitly set forth in the Federal Rules, courts have read into
Rule 23 an implicit requirement that a class be "definite" or "ascertainable." A
proper class definition is necessary to ensure clarity as to who is entitled to relief,
who is bound by a final judgment, and who is entitled to the "best notice practicable"
in a Rule 23(b)(3) action. *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 175 (3d Cir. 2015);
Manual § 21.222; 5 James W. Moore, *Moore's Federal Practice* 23.21[3][d] (3d ed.
2013) ("*Moore's*"). "For a class to be sufficiently defined, the court must be able to
resolve the question of whether class members are included or excluded from the
class by reference to objective criteria." *Moore's* 23.21[3]; *see also Byrd*, 784 F.3d
at 164.

Through several cases, the Third Circuit has clarified what is required to
establish ascertainability. Building upon the Third Circuit's previous decisions in

38

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), and *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012), the Third Circuit has explained that ascertainability requires: 1) that the class members be identifiable by objective criteria and 2) that "'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Marcus*, 687 F.3d at 593-94). "The ascertainability requirement consists of nothing more than these two inquiries. It does not mean that plaintiffs must identify all class members at class certification . . . ." *Id.* Nor must plaintiffs "demonstrate that a single record, or set of records, conclusively establishes class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Rather, at this stage of the litigation, a plaintiff need only show that "class members *can* be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). The Settlement Class proposed here meets all relevant ascertainability criteria.

### a. The Settlement Class is defined with reference to objective criteria.

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592. Such is the case here.

The Settlement Class includes (a) all persons or entities in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin (the "Class States") who (b) purchased, paid, and/or provided reimbursement for some or all of the purchase price of Effexor XR or AB-rated generic versions of Effexor XR (c) for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries, (d) during the period June 14, 2008 through May 31, 2011; and (e) do not fall within any of the six exclusion categories. *See* discussion *supra* at 4 n.5. None of these components requires the Court to rely on impermissible subjective standards, potential Class Members' beliefs, or a resolution of the merits of the claims. *Cf.* Manual § 21.222 (indicating in its discussion of ascertainability that "order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against"). Instead, these criteria provide a clean and straightforward way to identify "a particular group [that] was harmed during a particular time frame, in a particular location, in a particular way," in accordance with law from this Circuit. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 841 (D.N.J. 2018) (citation omitted). Thus, the first criterion of the Third Circuit's ascertainability analysis is met.

40

### b. There is a reliable and administratively feasible mechanism for determining Settlement Class membership.

Second, the Court must be satisfied that there is a "reliable, administratively feasible" method to identify the Settlement Class Members. The Third Circuit addressed this requirement in *Byrd*, where it stated: "We were careful to specify in *Carrera* that '[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members *can be identified*.'" *Byrd*, 784 F.3d at 164 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). In other words, there must be evidence that it can be done. *Id.*

Indirect Purchaser Plaintiffs have submitted as evidence proposed TPP and consumer claim forms for their respective shares of the Net Settlement Fund, as well as the Declaration of Elaine Pang, Vice President of Media with A.B. Data, the firm proposed to act as the Claims Administrator should the Court approve the Settlement. *See* Cecchi Decl., Exs. E & F (claim forms); Ex. G (Pang Decl.). As reflected in Ms. Pang's Declaration, it is incumbent on a claims administrator to determine if a claimant is a class member; otherwise, they are not entitled to a recovery. Cecchi Decl., Ex. G (Pang Decl.), ¶¶ 33. To do so, TPPs and consumers can be required to submit proof that they paid for all or part of the purchase price of brand or generic Effexor XR at some point during the Class Period. *Id.* ¶¶ 35-36. If they did, they are in the class—so long as they do not fit one of the objective class

41

exclusions. *Id.* ¶¶ 5 n.1; 36; 38. The claim forms are designed to help the Claims Administrator determine eligibility. *See id.* ¶ 36. And if a claimant is unable to prove class membership or is excluded from the class, their claim is rejected. *Id.* ¶ 37-38.

A strong indicator of the reliability and feasibility of this methodology is the fact that the exercise is performed routinely in the settlement context and was previously utilized for the Wyeth Settlement. *See* ECF No. 739.

Accordingly, the Indirect Purchaser Class should be certified for settlement purposes.

## V.    PROPOSED LEAD COUNSEL SATISFY RULE 23(G)

Pursuant to Rule 23(g), Plaintiffs also move to appoint Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Chair of Lead Counsel, and Motley Rice LLC, Dugan Law Firm, PLC, Wexler Boley & Elgersma LLP, Spector, Roseman & Kodroff, P.C., Miller Law LLC, and Quantum Legal LLC as Lead Counsel. Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i)   the work counsel has done in identifying or investigating potential claims in the action;

      (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

      (iii) counsel's knowledge of the applicable law; and

      (iv)  the resources that counsel will commit to representing the class.

*Id.* Here, each of these considerations weighs strongly in favor of the adequacy of proposed Lead Counsel. Proposed Lead Counsel performed substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints, as shown by the fact that this Court ultimately denied, in large part, Defendants' motions to dismiss, leading to the operative Fourth Amended Complaint. As part of their investigation and work, Lead Counsel retained and consulted with multiple experts in different fields and carefully reviewed public materials and documents and information produced by Defendants in discovery.

     As reflected in their firm resumes, proposed Lead Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation throughout the United States, including antitrust actions. *See* ECF No. 733-2, Exs. I-O. Moreover, the firms have demonstrated their abilities and commitment to this litigation, devoting the resources and personnel necessary to get to this point—achieving substantial settlements 12 years after the litigation began. They far exceed the requirements of Rule 23(g). *See, e.g.*, ECF No.  761, No. 3:11-

cv-05479, ¶ 8 (Order and Judgment Granting Final Approval of Class-Action Settlement with Wyeth).

## VI.    THE FORM AND MANNER OF NOTICE ARE PROPER

Rule 23(e) requires that notice of a proposed settlement be provided to class members. Fed. R. Civ. P. 23. "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 446. Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances" and that such notice contain "'sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *In re Ocean Power Techs., Inc.*, No. 14-cv-3799, 2016 WL 6778218, at *10 (D.N.J. Oct. 15, 2016) (*quoting In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 435).

The best notice practicable is notice that can be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950). Notice may be provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P.

23(c)(2)(B). "'It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both FED. R. CIV. P. 23 and the due process clause.'" *In re Ocean Power Techs., Inc.*, 2016 WL 6778218. at *10 (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)).

Consistent with due-process requirements, the proposed Notice Plan here contemplates notice to be provided through first-class mail, email, and digital media publication. *See, e.g.*, Cecchi Decl., Ex. G (Pang Decl., Ex. A, Notice Plan (summarizing components of the proposed Notice Plan). TPPs are often claimants in similar pharmaceutical antitrust actions. Consequently, the proposed Claims Administrator, A.B. Data, maintains a proprietary database consisting of contact information for approximately 43,000 TPPs. *See* Cecchi Decl, Ex. G (Pang Decl.), ¶ 23. Should the Notice Plan be approved, the short-form notice will be formatted as a postcard and sent via first-class mail to A.B. Data's entire TPP database. *Id.* ¶ 24. The Claims Administrator will also email notices to Class Members with available email addresses, including the entities in A.B. Data's TPP database and any consumer or TPP Class Member who provided email addresses when claiming under the Wyeth Settlement. *Id.* Any Class Member who submitted a potentially valid claim under the Wyeth Settlement but did not provide an email address will be sent the short-form postcard notice. *Id.* ¶ 10. As the notice program for the Wyeth

45

settlement was conducted recently, the information for all active claimants should be up to date, ensuring notice will be provided.

Although direct notice by mail is the best notice practicable for those Settlement Class Members that are reasonably identifiable, it is not the appropriate method for those who are not. Accordingly, the Claims Administrator will also implement a paid media (digital and social media) and earned media campaign. *Id.* ¶¶ 16-21. The Claims Administrator will update the dedicated informational case website and maintain a case-specific toll-free telephone number to further ensure Class Members can easily access Settlement-related information. *Id.* ¶¶ 28-29.

The proposed Notice Plan will reach well over 70.5% of the target audience. *Id.* ¶ 40. Notice plans with these attributes have been routinely approved in pharmaceutical antitrust cases such as this. *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *15; *see also* ECF No. 739. Indirect Purchaser Plaintiffs submit that their proposed manner of giving notice should be approved.

The content of the proposed notices ("Notices") likewise satisfies all requirements of due process. The Notices are written in plain, simple terminology, and they describe the rights and obligations of Settlement Class Members. In essence, they provide (1) a description of the Settlement Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement; (4) the deadline and instructions for exercising the right to opt-out; (5) the date of the Fairness

Hearing; (6) an explanation of eligibility for appearing at the Fairness Hearing; and (7) the deadline for objecting to the Settlement. *See* Cecchi Decl., Exs. C & D (long- and short-form notices). The Notices provide Settlement Class Members with clear and accurate information as to the nature and principal terms of the Settlement Agreement so they may make informed and intelligent decisions about whether to object thereto. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 435.  In addition, pursuant to Rule 23(h), the Notices set forth the maximum amount of attorneys' fees and advises Class Members that reimbursement for costs and expenses will be sought from the Settlement Fund Amount pursuant to the Settlement Agreement.

Accordingly, the proposed long- and short-form Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (D.N.J. 2013) (approving notice plan that utilized post-card notices and website to provide settlement information as the "notice plan was thorough and included all of the essential elements necessary to properly apprise absent Settlement Class members of their rights"). Indirect Purchaser Plaintiffs proposed Notice Plan should be approved.

## VII.   A.B. DATA IS QUALIFIED TO SERVE AS CLAIMS ADMINISTRATOR

A.B. Data is an experienced national class-action and settlement administrator and has been appointed to the same or similar positions in many consumer and antitrust class actions, including pharmaceutical antitrust cases. This Court also previously approved A.B. Data as Claims Administrator for the Wyeth Settlement. ECF No. 739.

As Claims Administrator, A.B. Data will have the authority to contact the claimants as necessary to confirm information provided in the Claim Forms or to seek additional information as required.  Under the supervision of Lead Counsel, the Claims Administrator will ensure that Class Members' claims are handled appropriately, that HIPAA-protected data is maintained in a secure manner, that inquiries from Indirect Purchaser Class Members are responded to in a timely fashion, and that claims are administered fairly and accurately. *See id. passim*.

## VIII.  CITIBANK IS QUALIFIED TO BE THE ESCROW AGENT

Plaintiffs also request that, as it did in connection with the Wyeth Settlement, the Court approve Citibank as the Escrow Agent for the Settlement Fund, from which any taxes, court-awarded attorneys' fees, and costs and expenses will be deducted, with the remaining amount constituting the Net Settlement Fund for distribution to the Indirect Purchaser Settlement Class. Citibank is a well-known and highly respected expert in the field of escrow-account management. Citibank has

48

experience managing similar accounts resulting from class-action settlements—including the Wyeth Settlement—and was selected by interim Lead Counsel with Teva's consent. With the Court's approval, the Escrow Agent will establish the escrow account as a qualified Settlement fund ("QSF") and will comply with all other requirements for the account identified in Paragraph 8 of the Settlement Agreement.

## IX.    THE PROPOSED SCHEDULE FOR FINAL APPROVAL IS FAIR AND ADEQUATE

In connection with preliminary approval of the Settlement, Indirect Purchaser Plaintiffs request that the Court establish dates by which notice of the Settlement will be distributed to Class Members, dates by which Class Members may object to the Settlement, and a date on which the Court will hold the Fairness Hearing. The Indirect Purchaser Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Date for Fairness Hearing | 120 calendar days after entry of the Preliminary Approval Order |
| Mailing of Notice | No later than 30 calendar days after entry of Preliminary Approval Order (the "Notice Date") |

| **Event** | **Deadline for Compliance** |
|---|---|
| Enactment of Digital Media Plan | No later than 30 calendar days after entry of the Preliminary Approval Order |
| Filing deadline for objections | No later than 45 calendar days after the Notice Date |
| Filing deadline for requests for exclusion | No later than 45 calendar days after the Notice Date |
| Deadline for filing Claim Forms | No later than 120 calendar days after entry of the Preliminary Approval Order |
| Date for Indirect Purchaser Plaintiffs to file motion for final approval of the Settlement, the Plan of Allocation, and application for attorneys' fees and reimbursement of costs and expenses | 35 calendar days prior to the Fairness Hearing |
| Date for Indirect Purchaser Plaintiffs to file reply in further support of motion for final approval of the Settlement, the Plan of Allocation, and application for attorneys' fees and reimbursement of costs and expenses | 7 calendar days prior to the Fairness Hearing |

## X.    CONCLUSION

For all the foregoing reasons, Indirect Purchaser Plaintiffs respectfully request that the Court certify the Settlement Class, preliminarily approve their proposed Settlement with Teva, and grant the additional relief as outlined herein.

Dated: March 17, 2025

Respectfully submitted

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**

s/ *James E. Cecchi*_____
James E. Cecchi
Caroline F. Bartlett
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Lead Counsel*

Michael M. Buchman
MOTLEY RICE LLC
800 Third Avenue
New York, New York 10022
Telephone: (212) 577-0040

James R. Dugan, II
Douglas R. Plymale
David Scalia
DUGAN LAW FIRM, PLC
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180

Kenneth A. Wexler
Justin N. Boley
Bethany R. Turke
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, Illinois 60606
Telephone: (312) 346-2222

Jeffrey L. Kodroff
John Macoretta
SPECTOR, ROSEMAN & KODROFF, P.C.

2001 Market Street, Suite 3420
Philadelphia, Pennsylvania 19103
Telephone:  (215) 496-0300

Richard J. Burke
QUANTUM LEGAL LLC
2801 Lakeside Drive
Suite 100
Bannockburn, Illinois 60015
Telephone: (847) 433-4500

Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone: (312) 332-3400

***Class Counsel for Plaintiffs and the
proposed Class***