# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re EFFEXOR XR ANTITRUST LITIGATION<br><br>This Document Relates To:<br>All Indirect Purchaser Class Actions | Civil Action No. 3:11-cv-05661 (ZNQ)(JBD)<br><br>Master Docket No. 3:11-cv-05479 (ZNQ)(JBD) |

---

## MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS

---

James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

[Additional Attorneys on Signature Page]

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   INCORPORATION BY REFERENCE ..........................................................3

III.  SUMMARY OF SETTLEMENT TERMS ....................................................4

  A.  Settlement Class ...............................................................................4

  B.  Settlement Amount ...........................................................................5

  C.  Released Claims ...............................................................................6

IV.   THE NOTICE PLAN COMPORTED WITH REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE ........................................................................6

V.    FINAL APPROVAL OF THE CLASS-ACTION SETTLEMENT IS MERITED .......................................................................................10

  A.  The Settlement Is Entitled to an Initial Presumption of Fairness..................10

  B.  The Settlement is Fair, Reasonable, and Adequate Under *Girsh*..................12

    1.  The complexity, expense, and likely duration of the litigation..................13

    2.  The reaction of the Class to the Settlement..................................14

    3.  The stage of the proceedings. ...............................................15

    4.  The risks of establishing liability and damages. ............................16

    5.  The risks of maintaining the class action. ..................................17

    6.  Teva's ability to withstand a greater judgment. ...........................18

    7.  The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. .........................................20

  C.  The *Prudential* Factors Also Support Final Approval of the Settlement.......21

VI.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED.................................................................................24

VII.  THE PLAN OF ALLOCATION SHOULD BE APPROVED .....................25

VIII. CONCLUSION .................................................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*In re AremisSoft Corp. Sec. Litig.*,
 210 F.R.D. 109 (D.N.J. 2002)...................................................................7, 25

*In re Auto. Refinishing Paint Antitrust Litig.*,
 617 F. Supp. 2d 336 (E.D. Pa. 2007)................................................17

*In re Baby Prods. Antitrust Litig.*,
 708 F.3d 163 (3d Cir. 2013) ...............................................................23

*Boone v. City of Phila.*,
 668 F. Supp. 2d 693 (E.D. Pa. 2009)................................................15

*Castro v. Sanofi Pasteur Inc.*,
 2017 WL 4776626 (D.N.J. Oct. 23, 2017) ..................................13, 14

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ..........................................................13, 18

*Chakejian v. Equifax Info. Servs., LLC*,
 275 F.R.D. 201 (E.D. Pa. 2011)..........................................................22

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ...............................................................18

*Cullen v. Whitman Med. Corp.*,
 197 F.R.D. 136 (E.D. Pa. 2000)..........................................................15

*In re Fasteners Antitrust Litig.*,
 2014 WL 285076 (E.D. Pa. Jan. 24, 2014)..................................22, 23

*In re Gen. Motors*,
 55 F.3d 768 (3d Cir. 1995) ...........................................................16, 18

*Girsh v. Jepson*,
 521 F.2d 153 (3d Cir. 1975) ......................................................*passim*

*Henderson v. Volvo Cars of N. Am., LLC*,
   2013 WL 1192479 (D.N.J. Mar. 22, 2013) ......................................................19

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
   209 F.R.D. 94 (E.D. Pa. 2002)...........................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)...............................................................................13

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012).........................................................16, 19, 20

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004)..................................................................15

*In re Lucent Techs., Inc. Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004).....................................................................16

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008).....................................................................11

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) .............................................................13

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
   2016 WL 7494259 (D.N.J. Sept. 30, 2016) ..........................................................7

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ........................................................................10, 15

*O'Brien v. Brian Research Labs.*,
   2012 WL 3242365 (D.N.J. Aug. 9, 2012) ...........................................................18

*In re Ocean Power Techs., Inc.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) .........................................................10

*P. Van Hove BVBA v. Univ. Travel Grp., Inc.*,
   2017 WL 2734714 (D.N.J. June 26, 2017)..........................................................23

*In re Par Pharm. Sec. Litig.*,
   2013 WL 3930091 (D.N.J. July 29, 2013) ..........................................................26

*In re Pet Foods Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ..........................................................16, 21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................*passim*

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ..........................................14

*In re Schering-Plough Corp. Sec. Litig.*,
2009 WL 5218066 (D.N.J. Dec. 31, 2009)..........................................19

*Sheinberg v. Sorensen*,
2016 WL 3381242 (D.N.J. June 14, 2016)..........................................16

*In re Suboxone Antitrust Litig.*,
2024 WL 815503 (E.D. Pa. Feb. 27, 2024)............................20, 22, 26

*Texas v. Organon USA Inc. (In re Remeron End-Payor Antitrust Litig.)*,
2005 WL 2230314 (D.N.J. Sep. 13, 2005) ..........................................11

*In re the Prudential Ins. Co. of Am.*,
962 F. Supp. 450 (D.N.J. 1997) ..........................................................14

*In re Valeant Pharm. Int'l Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020)..........................................13

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 358611 (D.N.J. Feb. 1, 2021) ..............................................26

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..............................................................10

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995)..........................................................17

## Statutes

28 U.S.C. § 1715(b) ..............................................................................9

California Civil Code § 1542 ..................................................................6

Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.* ............................................6

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) ........................................................................................10, 12

Fed R. Civ. P. 23(e)(2)(D) .........................................................................................25

Fed. R. Civ. P. 23 .................................................................................................1, 6

Fed. R. Civ. P. 23(c)(2) ...............................................................................................7

Fed. R. Civ. P. 23(e) ............................................................................................25, 27

Fed. R. Civ. P. 23(a) and (b)(3) ..................................................................................24

Pursuant to Federal Rule of Civil Procedure 23, Indirect Purchaser Plaintiffs,[1] by their counsel, on behalf of themselves and a class of similarly situated individuals, submit this Memorandum in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Class-Action Settlement and Final Certification of the Settlement Class.

## I.    INTRODUCTION

Class Counsel, who have zealously prosecuted Indirect Purchaser Plaintiffs' claims since 2011, have now reached a settlement with Defendant Teva[2] (the "Settlement") that will resolve this matter in its entirety. This resolution of the matter was reached only after an extensive investigation, protracted litigation—involving a successful appeal to the Third Circuit, a motion for judgment on the pleadings, multiple repleadings, and significant discovery efforts—and prolonged arms'-length negotiations. The $2.25 million Settlement, when combined with the previous

---

[1] Indirect Purchaser Plaintiffs are A. F. of L. – A.G.C. Building Trades Welfare Plan, IBEW - NECA Local 505 Health & Welfare Plan, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, Painters District Council No. 30 Health and Welfare Fund, Plumbers and Pipefitters Local 572 Health and Welfare Fund, City of Providence, Rhode Island, Sergeants Benevolent Association Health and Welfare Fund, and Patricia Sutter ("Indirect Purchaser Class Plaintiffs" or "Class Plaintiffs").

[2] The settling defendants are Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva," and together with the Indirect Purchaser Plaintiffs, the "Parties").

Wyeth Settlement,[3] provides substantial monetary benefits to the Settlement Class (a combined $27.75 million) while avoiding the risk of continued litigation.

On March 19, 2025, this Court preliminarily approved the Settlement, preliminarily certified the Indirect Purchaser Settlement Class, and ordered that notice be given to the Class. ECF No. 809 (the "Preliminary Approval Order").[4]

The Claims Administrator (A.B. Data, Ltd.)—with the help of the Parties—subsequently disseminated Notice to the Settlement Class pursuant to the Court-approved Notice Plan. Notice was provided to the Settlement Class via first-class mail, email, digital and social media, and a news release disseminated over *PR Newswire*. *See* Miller Decl.,[5] ¶¶ 3-14. The Notices were written in plain language, providing each Settlement Class Member with information regarding how to access

---

[3] The previous settling defendants are Wyeth—a/k/a Wyeth LLC, f/k/a Wyeth, Inc., f/k/a American Home Products—Wyeth Pharmaceuticals, Inc., Wyeth Pharmaceuticals Company, and Wyeth-Whitehall Pharmaceuticals (collectively, "Wyeth" and together with Teva, the "Defendants"). After the start of this litigation, Wyeth became a wholly owned subsidiary of Pfizer Inc. Wyeth is neither a party to, nor subject to the release under, the Settlement Agreement discussed herein. The Settlement with Wyeth was granted final approval on September 12, 2024, (ECF No. 761) and is referred to herein as the "Wyeth Settlement."

[4] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Settlement Agreement, which is attached as Exhibit A to the Declaration of James E. Cecchi in Support of Indirect Purchaser Class Plaintiffs' Unopposed Motion for Preliminary Approval of Class-Action Settlement, executed March 17, 2025 (ECF No. 807-3) ("Cecchi Preliminary Approval Decl.").

[5] Citations to "Miller Decl." refer to the Declaration of Eric J. Miller Regarding (A) Mailing of the Postcard Notice; (B) Paid and Earned Media Notice; and (C) Report on Requests for Exclusion Received to Date, dated July 7, 2025, filed herewith.

the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. *See id.*, Exs. A-D. Out of the over 40,000 third-party payor ("TPP") Settlement Class Members and consumer Settlement Class Members who were mailed and/or emailed direct notice of the Settlement and vast numbers of Settlement Class Members who received notice via the robust online campaign, only one would-be Class Member has sought to be excluded from the Settlement, and **none** has objected. *See id.* ¶¶ 4-6, 17-18.

Put simply, nothing that has transpired since the Preliminary Approval Order warrants a change in course. Class Plaintiffs thus now move for final approval of the Settlement so that the monetary relief to the Settlement Class can be delivered without delay.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Indirect Purchaser Class Plaintiffs refer the Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class-Action Settlement (ECF No. 807-1), filed on March 17, 2025, and the accompanying Exhibits, including the proposed Settlement Agreement. Class Plaintiffs also refer the Court to and incorporate their Motion for Attorneys' Fees and Reimbursement of Litigation Expenses and supporting documents, filed contemporaneously herewith.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Settlement Class

The Settlement provides for direct monetary relief to both TPPs and Consumers. The Indirect Purchaser Settlement Class is defined as:

> All persons or entities in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin (the "Class States") who purchased, paid, and/or provided reimbursement for Effexor XR or AB-rated generic versions of Effexor XR for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries, from June 14, 2008 through May 31, 2011 (the "Class Period"). For purposes of this definition, persons or entities "purchased" Effexor XR or its generic versions if they paid or reimbursed some or all of the purchase price.

Excluded from the Indirect Purchaser Settlement Class are: 1) Wyeth and Teva and their respective subsidiaries and affiliates; (2) state and local governments to the extent their claims may be asserted under applicable state law only by the state Attorney General, or are otherwise prohibited by applicable law from being asserted by private counsel on a contingent fee basis; (3) all persons or entities who purchased Effexor XR or its generic equivalent for purposes of resale or directly from Wyeth, Teva, or their affiliates; (4) fully insured health plans (*i.e.*, Plans that purchased insurance from another third-party payor covering 100% of the Plan's reimbursement obligations to its members); (5) pharmaceutical benefit managers;

and (6) the judges in this case and any members of their immediate families.

### B.   Settlement Amount

The proposed Settlement provides for a non-reversionary cash fund of $2,250,000. After payment of the costs of notice and claims administration, escrow administration, and taxes, reimbursement of any not-previously-reimbursed costs and expenses incurred by Class Counsel in litigating the case and bringing it to a conclusion, and payment of Class Counsel's attorneys' fees, the common fund will be used to pay Qualifying Claims[6] for two categories of Class Members: TPPs (78% of the Net Settlement Fund) and Consumers (22% of the Net Settlement Fund). *See* ECF No. 807-3, Ex. B (Plan of Allocation), ¶¶ 1, 9.

Each Allocation Fund (*i.e.*, the TPP Fund or the Consumer Fund) will be distributed to Eligible Claimants in that Allocation Fund on a *pro rata* basis. *Id.* ¶¶ 1, 14. To determine each Eligible Claimant's *pro rata* share of an Allocation Fund, the Claims Administrator will multiply the total value of that Allocation Fund by a fraction, for which (a) the numerator is the Qualifying Claim for that Eligible Claimant for that Allocation Fund, and (b) the denominator is the sum total of all

---

[6] "Qualifying Claim" shall mean (i) for consumers, the amount paid for the prescriptions of Effexor XR and/or AB-rated generic versions Effexor XR purchased in the Class States during the Class Period; (ii) for TPPs, the amount paid and/or reimbursed for Effexor XR and AB-rated generic versions of Effexor XR purchased in the Class States during the Class Period. Plan of Allocation (ECF No. 807-3, Ex. B), ¶ 11.

Qualifying Claims by all Eligible Claimants for that Allocation Fund. *Id.* ¶ 14.

### C.    Released Claims

Indirect Purchaser Plaintiffs, on behalf of themselves and the Indirect Purchaser Class, have agreed to release Teva and its related entities from all claims arising out of or relating to any conduct, events, or transactions, prior to the date of preliminary approval of this Settlement Agreement, (a) alleged, or which reasonably could have been alleged, in the Indirect Purchaser Class Action concerning the alleged anticompetitive scheme to prevent and delay approval and market entry of AB-rated generic equivalents of Effexor XR, or (b) concerning end-payor purchases of Effexor XR and/or its AB-rated generic equivalents in the Class States and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq*., or any other federal or state statute or common-law doctrine relating to antitrust or consumer protection. *See* ECF No. 807-3, Ex. B, ¶ 12(a). The Indirect Purchaser Plaintiffs, on behalf of themselves and the Indirect Purchaser Class, also agreed to waive their rights under § 1542 of the California Civil Code, respecting unknown claims, and any similar state or federal laws. *Id.* ¶ 12(b). These Releases do not apply to certain claims specified in Paragraph 12(d) of the Settlement. *Id.* ¶ 12(d).

## IV.    THE NOTICE PLAN COMPORTED WITH REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Notice Plan and the Form of Notice satisfy the requirements of Rule 23

and constitutional due process.[7] The Notice Plan approved by this Court in its Preliminary Approval Order provided for 1) individual direct notice to TPPs who could be identified through previous claims submissions and other reasonable efforts; 2) individual direct notice to consumers who submitted potentially valid claims in the Wyeth Settlement; 3) a comprehensive digital and social media campaign; and 4) earned media notice. *See* ECF No. 809 (Preliminary Approval Order), ¶¶ 20-21; Cecchi Preliminary Approval Decl., Ex. G (Decl. of Elaine Pang of A.B. Data, Ltd.). The Notice Plan further provided for the creation of a dedicated Settlement website and toll-free hotline through which Class Members can learn more about their rights and options under the Settlement. ECF No. 809 (Preliminary Approval Order), ¶ 20; Cecchi Preliminary Approval Decl., Ex. G, ¶¶ 28-29.

A.B. Data effectuated notice pursuant to the Court-approved Notice Plan. Specifically, on April 18, 2025, A.B. Data mailed direct notice, via United States Postal Service ("USPS") first-class mail, to 41,913 TPP Class Members in A.B.

---

[7] To satisfy due process, "notice to class members must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002) (internal quotation marks omitted). For those whose names and addresses cannot be determined by reasonable efforts, notice by publication suffices under both Rule 23(c)(2) and the Due Process Clause. *See In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 WL 7494259, at *3 (D.N.J. Sept. 30, 2016) (combination of direct notice, publication of summary notice, targeted internet advertising, and dedicated case website was best notice practicable and satisfied due process).

Data's TPP Database and to 715 TPPs that were not in A.B. Data's TPP Database, but which had filed claims in the Wyeth Settlement. Miller. Decl. ¶ 4. A.B. Data also sent email notice to 1,284 entities in the TPP Database with available email addresses and to 73 entities that were not in the TPP Database, but which had filed claims in the Wyeth Settlement and for which A.B. Data had email addresses. *Id.* ¶ 5. A.B. Data also sent email notice on April 18, 2025 to 1,140 consumers who filed potentially valid claims in the Wyeth Settlement and for whom A.B. Data had email addresses; A.B. Data subsequently sent Postcard Notices via First-Class Mail to those consumers whose emails were undeliverable. *Id.* ¶ 6.

Additionally, A.B. Data conducted a comprehensive paid-media notice campaign, including digital and social-media advertising. *Id.* ¶ 7. This campaign commenced on April 18, 2025 and concluded on May 18, 2025, and consisted of digital banner and social media advertisements. *Id.* ¶¶ 7-8. The advertisements appeared on various websites—including on BenefitNews.com, SHRM.org, and ThinkAdvisor.com/life-health—and social media platforms—including Facebook, Instagram, and YouTube. *Id.* ¶¶ 8-9. AB Data also purchased sponsored search listings on Google and Google Search Partners. *Id.* ¶ 11. This campaign delivered approximately 238,434,616 gross impressions. *Id.* ¶ 8.

In addition, as a complement to the direct and paid-media notice, A.B. Data distributed a news release via *PR Newswire's* US1 Newsline on April 18, 2025. *Id.*

¶ 12. This news release reached traditional media outlets (*e.g.*, television, radio, newspapers, magazines), news websites, and journalists nationwide. *Id.* Finally, news about the settlement was broadcast to the news media via X, the platform formerly known as Twitter. *Id.* ¶ 13. It was issued from *PR Newswire's* and A.B. Data's X accounts to media outlets, journalists, and other followers. *Id.* A.B. Data also updated the interactive voice response system on the case-specific toll-free number and the case-specific website—which it had established in connection with the Wyeth Settlement—to provide potential Class Members with information regarding the Teva Settlement. *Id.* ¶¶ 15-16.

Moreover, on April 29, 2025, as required by 28 U.S.C. § 1715(b), Teva caused notice of the proposed settlement to be served on the appropriate officials pursuant to the Class Action Fairness Act. Decl. of James E. Cecchi in Supp. of Mot. for Indirect Purchaser Class Pls.' Mot. For Final Approval of Class-Action Settlement and Final Certification of the Settlement Class and Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, ¶ 8.

As of July 7, 2025, A.B. Data has received one request for exclusion, and zero objections to the Settlement. Miller Decl. ¶¶ 17-18.

## V.    FINAL APPROVAL OF THE CLASS-ACTION SETTLEMENT IS MERITED

### A.    The Settlement Is Entitled to an Initial Presumption of Fairness.

"[A] class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal quotation omitted); *see also* Fed. R. Civ. P. 23(e)(2).

To further the policy of favoring settlement, the Third Circuit applies "'an initial presumption of fairness in reviewing a class settlement when: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016)). This presumption applies even where, as here, "the settlement negotiations preceded the actual certification of the class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Here, all four factors are readily met.

As to the first three factors, this Court previously determined when granting Plaintiffs' Motion for Preliminary Approval that the Settlement "was arrived at by arm's-length negotiations of disputed claims, including through the use and assistance of an experienced third-party neutral mediator." ECF No. 809

(Preliminary Approval Order), ¶ 15. Indeed, the Settlement was reached by counsel with decades of experience representing indirect purchasers in antitrust litigation, after years of intense litigation involving, *inter alia*, the exchange of millions of pages of discovery. *See* August 2024 Cecchi Decl.[8] ¶¶ 6-60 (detailing the procedural history of the litigation, including the extensive discovery that took place, the negotiations that led to the Settlement, and the experience and skill of Class Counsel). Class Counsel conducted an extensive and in-depth analysis of the case during negotiations and concluded the Settlement was in the best interest of the Settlement Class. Cecchi Preliminary Approval Decl., ¶ 16. As a result, counsel for all Parties had significant knowledge of the strengths and weaknesses of the Parties' claims and defenses when the Settlement was reached.

As to the fourth factor, there have been zero objections to the Settlement and only one Class Member has opted out of the Settlement. *See* Miller Decl. ¶¶ 17-18. The absence of objections and a small percentage of exclusions supports a presumption of fairness. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 459 (D.N.J. 2008) (holding that 601 opt-outs and 9 objections in a class of over 200 million people qualified for a presumption of fairness); *Texas v. Organon USA Inc.*

---

[8] Citations to "August 2024 Cecchi Decl." refer to the Declaration of James E. Cecchi in Support of Indirect Purchaser Class Plaintiffs' Motion for Final Approval of Class-Action Settlement and Motion for (1) Award of Attorneys' Fees; (2) Reimbursement of Litigation Expenses; and (3) Payment of Service Awards to Class Representatives, dated August 8, 2024, ECF No. 751-1.

*(In re Remeron End-Payor Antitrust Litig.)*, 2005 WL 2230314, at *17-18 (D.N.J. Sep. 13, 2005) (finding that 70 opts outs and 8 objections from a class of 850,000 qualified for a presumption of fairness). Accordingly, all four factors are satisfied here, and the Court should apply an initial presumption of fairness to the Settlement.

> **B.    The Settlement is Fair, Reasonable, and Adequate Under *Girsh*.**

Even where there is a presumption of fairness, the Court must still find that "the proposed settlement is fair, reasonable and adequate." *In re Prudential Ins.*, 148 F.3d at 316 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2) (stating that a district court may approve a proposed settlement "only after a hearing and . . . on finding that it is fair, reasonable, and adequate").

The Third Circuit has affirmed the applicability of nine factors, established in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which are to be considered when determining the fairness of a proposed settlement. *In re Prudential Ins.*, 148 F.3d at 317. The elements of this test—known as the "*Girsh* factors"—are, generally (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Id.*

12

"These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Valeant Pharm. Int'l Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020). Analysis of the *Girsh* factors supports a finding that the proposed Settlement is fair, reasonable, and adequate.

### 1. The complexity, expense, and likely duration of the litigation.

The first *Girsh* factor looks to the "complexity, expense, and likely duration of the litigation." *Girsh*, 521 F.2d at 157. This factor addresses the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). Settlements are favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, at 103 (D.N.J. 2012) (quoting *In re Warfarin*, 391 F.3d at 536); *accord Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *3 (D.N.J. Oct. 23, 2017) ("Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." (internal quotations omitted)); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement).

Pharmaceutical antitrust cases are known to be among the most complex,

lengthy, and expensive cases to litigate. This case has been pending since 2011, and continued litigation would involve additional fact discovery, depositions, expert discovery, summary-judgment and class-certification briefing, pre-trial motions, trial, and likely post-trial appeals. Thus, if this litigation continued, Plaintiffs likely would not recover for many years and only after incurring considerable additional expenses. Taking all these factors together, the first *Girsh* factor weighs in favor of the fairness of the Settlement.

### 2.    The reaction of the Class to the Settlement.

The second *Girsh* factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013); *see also In re the Prudential Ins. Co. of Am.*, 962 F. Supp. 450, 537 (D.N.J. 1997) (small number of negative responses to settlement favors approval). It is well-established that the lack of objections to a proposed class-action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See Castro*, 2017 WL 4776626, at *4 n.3.

The Claims Administrator sent over 40,000 Postcard Notices and email Notices to potential Settlement Class Members and has undertaken significant other measures to ensure adequate notice was provided to the Settlement Class. *See*

discussion *supra*, Section IV. Despite these notices, as of the objection deadline on June 2, 2025, no Class Member has filed or served any objections to the Settlement and only one Class Member has requested exclusion. *See* Miller Decl. ¶¶ 17-18. Accordingly, the reaction of the Settlement Class, to date,[9] overwhelmingly supports the fairness of the proposed Settlement.

### 3. The stage of the proceedings.

"The third Girsh factor 'captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 438-39 (quoting *In re Warfarin*, 391 F.3d at 537). "[C]ourts generally recognize that a proposed class action settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000); *see also In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 630 (E.D. Pa. 2004). Post-discovery settlements "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

---

[9] The July 17, 2025 deadline to file claims has not yet passed.

At the time of Settlement, millions of pages of documents had been exchanged during discovery. Indirect Purchaser Plaintiffs had also responded to multiple motions to dismiss, filed multiple amended complaints, and consulted with class, liability, and damages experts. Plaintiffs were thus "able to gain an appreciation of the merits of the case as well as the legal theories and risks." *In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010); *see also Sheinberg v. Sorensen*, 2016 WL 3381242, at *7 (D.N.J. June 14, 2016) (recognizing the role of "meaningful discovery" in evaluating and arriving at a proper settlement amount (quoting *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006)).

### 4. The risks of establishing liability and damages.

"The fourth and fifth [*Girsh*] factors survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 483 (D.N.J. 2012) (internal quotations omitted). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors*, 55 F.3d 768, at 814 (3d Cir. 1995). In making this assessment, however, "a court should not conduct a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re Lucent Techs., Inc. Sec.*

16

*Litig.*, 307 F. Supp. 2d 633, 644-45 (D.N.J. 2004) (internal quotations omitted). In complex cases, "[t]he risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995). And "no matter how confident one may be of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).

Indirect Purchaser Plaintiffs continue to believe their claims are meritorious. However, Class Counsel have already had to defend on appeal the dismissal of their reverse-payment allegations and lost certain claims to a judgment on the pleadings. Class Counsel are also experienced counsel who understand "[t]he risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. Teva has defended itself at every step of the litigation and would certainly continue to press forward with its defenses through trial. The Settlement provides certainty to the Class and substantial relief now, without the risks of litigating the case through a jury trial and certain appeals.

### 5.    The risks of maintaining the class action.

The sixth *Girsh* factor—the risks of maintaining a class action—also supports approving the proposed settlement. Indirect Purchaser Plaintiffs would need to move to obtain class certification, which Teva would challenge. *See Prudential*, 148 F.3d at 321. Further, even if class certification were granted in the litigation context, class

certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *O'Brien v. Brian Research Labs.*, 2012 WL 3242365, at *18 (D.N.J. Aug. 9, 2012). Plaintiffs believe the Court will certify the Class as to Teva. However, the uncertainty of that result, as well as the time and expense necessary to litigate class certification generally, further supports final approval of the Settlement with Wyeth. *In re Ikon Off. Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002); *In re Gen. Motors*, 55 F.3d at 817 ("The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.").

### 6.    Teva's ability to withstand a greater judgment.

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. The proposed Settlement recovers $2.25 million for the Settlement Class. Although Teva could withstand a judgment of considerably more, this is a favorable result for the Class. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may amount to a fraction of the

potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."); *see also In re Schering-Plough Corp. Sec. Litig.,* 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"); *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral").

The Settlement guarantees a significant recovery for the Settlement Class, and together with the Wyeth Settlement provides a total recovery of $27.75 million in relief for these longstanding claims. The consideration to be paid by Teva and obtained by the Settlement Class—when balanced against the risks and potential benefits of continued litigation that could result in no recovery at all—demonstrates that the Settlement falls well within the range of what is fair, reasonable, and adequate. That Teva may have been able to withstand a greater judgment does not justify a finding to the contrary. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *11 (D.N.J. Mar. 22, 2013) ("'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement] is within the range of reasonableness and provides substantial benefits to the Class" (citing cases where settlement was approved despite defendants' ability to withstand a greater judgment)); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d at 484

19

("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement" (internal quotations and citations omitted)).

> **7.    The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.**

The eighth and ninth *Girsh* factors, taken together, ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In conducting this evaluation, it is recognized that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Johnson & Johnson*, 900 F. Supp. 2d at 484-85 (internal quotations omitted).

Assessment of a settlement, however, need not be tied to an exact formula. *See Prudential*, 148 F.3d at 322. The Third Circuit has cautioned against demands that a settlement approach the maximum possible recovery, noting that a settlement is, after all, a compromise. *Id.* at 316-17. The Settlement "becomes even more favorable when considered against the attendant risks of litigation." *In re Suboxone Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024) (entering final

approval in pharmaceutical antitrust action). Here, the Settlement is reasonable in the context of the risks Indirect Purchaser Plaintiffs face with continued litigation. *See generally* Sections V.B.1 and V.B.3-5, *supra.*

**C.    The *Prudential* Factors Also Support Final Approval of the Settlement.**

Although the Court must apply the *Girsh* factors in analyzing for final approval, it may also consider the "*Prudential* Factors" set forth in the Third Circuit decision, *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998), when appropriate. *See In re Pet Food*, 629 F.3d at 350. These additional factors include:

1.    [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

2.    the existence and probable outcome of claims by other classes and subclasses;

3.    the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;

4.    whether class or subclass members are accorded the right to opt out of the settlement;

5.    whether any provisions for attorneys' fees are reasonable; and

6.    whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* at 323.

The first *Prudential* factor has been met. As discussed *supra*, Indirect Purchaser Plaintiffs and Class Counsel gained a well-developed understanding of the strengths and weaknesses of the case against Teva through extensive litigation, including an appeal, motions to dismiss, a motion for judgment on the pleadings, the production of substantial documents, and a long-running mediation with retired Judge Faith S. Hochberg. August 2024 Cecchi Decl. ¶¶ 6-60; *see also In re Fasteners Antitrust Litig.*, 2014 WL 285076, at *11 (E.D. Pa. Jan. 24, 2014) ("A substantial amount of information has been provided to Settlement Class Counsel such that counsel are capable of making an informed decision about the merits of the case if it were to proceed to trial, and about the fairness of the settlement terms."); *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding first *Prudential* factor supported settlement approval where the underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of the case, and mediation efforts undertaken").

"Factors two and three look at the outcomes by other classes and other claimants," *In re Suboxone*, 2024 WL 815503, at *9, and also support final approval of the Settlement. There are no subclasses at issue, and Class Counsel are unaware of any individual indirect purchaser litigation involving the claims at issue here. Although Teva faces antitrust claims from groups of differently situated claimants—

including a class of direct purchasers—those claims continue to be litigated. Consistent with the direct purchasers' claims, however, the combined $27.75 million in settlements allows indirect purchaser claimants to recover a portion of their overcharges. There are no apparent "disparities in the success of the settlements obtained by the various claimants" that merit construing these factors against approval of the Settlement. *See Vista Healthplan*, 2020 WL 1922902, at *23.

The remaining *Prudential* factors all further support approval of the Settlement. The limited number of requests for exclusion—just one—supports approval. *See In re Fasteners*, 2014 WL 285076, at *11 (finding it "significant" that, despite being given the opportunity to opt out, only one class member did so). The fifth *Prudential* factor is met because, as set forth in the accompanying Fee Brief, Class Counsel's request for attorneys' fees is reasonable. The sixth factor is met, too, because the Plan of Allocation outlines the criteria for processing claims and the allocation of Settlement funds. *See* ECF No. 807-3, Ex. B. Courts generally accept such routine claims-administration processes as fair and reasonable. *See, e.g.*, *P. Van Hove BVBA v. Univ. Travel Grp., Inc.*, 2017 WL 2734714, at *9 (D.N.J. June 26, 2017).

Finally, the Third Circuit has added an additional factor to test the reasonableness of a settlement: whether the settlement provides a "direct benefit" to members of the class. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d

Cir. 2013). Here, this factor is easily satisfied as every eligible Class Member who files a valid claim form will receive a monetary payment.

## VI.  CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested, for purposes of the Settlement only, that the Court preliminarily certify the Settlement Class under Rules 23(a) and (b)(3). The Court did so. ECF No. 809 (Preliminary Approval Order). As Subdivision (f) to the Committee Notes on Rules – 2018 Amendment to Federal Rules of Civil Procedure directs, however, the Court's decision at preliminary approval "determin[es] that the prospect of eventual class certification justifies giving notice," but the Court cannot actually certify the Settlement Class until this final approval stage.

Nothing has changed to alter the propriety of the Court's preliminary certification, and to date, no Class Member has objected to class certification. For all the reasons stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class-Action Settlement, Certification of the Settlement Class, and Approval of Notice of Settlement (ECF No. 807-1), incorporated herein by reference, Plaintiffs requests the Court grant final certification to the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Indirect Purchaser Class Plaintiffs as Class Representatives, and appoint Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Lead Class Counsel and

Motley Rice LLC, Dugan Law Firm, PLC, Wexler Boley & Elgersma LLP, Spector, Roseman & Kodroff, P.C., Miller Law LLC, and Quantum Legal LLC as Class Counsel for the Settlement Class.

## VII.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

In assessing plans of allocation, the same standards of review applicable to the Court's review of the settlement itself apply: courts consider whether an allocation plan is fair, reasonable, and adequate. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D.N.J. 2002); *see also* Fed R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably to each other"). The Plan of Allocation, which was preliminarily approved by the Court as in compliance with Rule 23(e) and "otherwise fair and reasonable," meets this standard. *See* ECF No. 807-3, Ex. B (Plan of Allocation); ECF No. 809 (Preliminary Approval Order), ¶ 18.

Specifically, the proposed plan of distribution apportions the Net Settlement Fund between TPPs and consumers based on the percentage of damages suffered by each group (as determined by Indirect Purchasers' consulting economic expert). ECF No. 807-3, Ex. B, ¶ 1. Once apportioned to the respective TPP and consumer pools, Settlement Class Members submitting valid claims will be reimbursed their damages from the Net Settlement Fund on a *pro rata* basis, subject to the proof submitted with their respective claim forms and/or procured by the Claims Administrator. *See id.* ¶¶ 14, 17, 21-22. This method of allocation, which distributes

recovery to claimants in proportion to the share of overcharges each suffered, is reasonable. *In re Suboxone*, 2024 WL 815503, at *12 (plan of allocation "fair, reasonable, and adequate as it provides a straightforward method for determining each Class Member's *pro rata* share of the Net Settlement Fund based upon purchases"); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (approving plan of allocation that "provides for the distribution of the Net Settlement Funds on a *pro rata* basis based on a formula tied to liability and damages").

Further, Class Counsel highly recommend the Plan of Allocation, which further supports approval. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021) ("In determining whether a plan of allocation is fair, reasonable, and adequate, courts give great weight to the opinion of qualified counsel"). So, too, does the fact that no Class Member has objected to the Plan of Allocation. Accordingly, the Plan of Allocation should be approved as fair, reasonable and adequate.

## VIII. CONCLUSION

For the reasons discussed herein and in other supporting documents, Indirect Purchaser Plaintiffs respectfully request that the Court enter the Proposed Order Granting Final Approval of the Class-Action Settlement, approving the Plan of

Allocation, and finally certifying the Settlement Class pursuant to Fed. R. Civ. P.

23(e).

Dated:  July 8, 2025                    Respectfully submitted

                                        **CARELLA, BYRNE, CECCHI,
                                        OLSTEIN, BRODY & AGNELLO, P.C.**

                                        s/ *James E. Cecchi*_____
                                        James E. Cecchi
                                        5 Becker Farm Road
                                        Roseland, New Jersey 07068
                                        Telephone: (973) 994-1700

                                        ***Lead Counsel***

                                        Michael M. Buchman
                                        **MOTLEY RICE LLC**
                                        800 Third Avenue
                                        New York, New York 10022
                                        Telephone: (212) 577-0040

                                        James R. Dugan, II
                                        Douglas R. Plymale
                                        David Scalia
                                        **DUGAN LAW FIRM, PLC**
                                        One Canal Place
                                        365 Canal Street, Suite 1000
                                        New Orleans, Louisiana 70130
                                        Telephone: (504) 648-0180

                                        Kenneth A. Wexler
                                        Justin N. Boley
                                        Bethany R. Turke
                                        **WEXLER BOLEY & ELGERSMA LLP**
                                        311 S. Wacker Drive, Suite 5450
                                        Chicago, Illinois 60606
                                        Telephone: (312) 346-2222

Jeffrey L. Kodroff
John Macoretta
**SPECTOR, ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, Pennsylvania 19103
Telephone: (215) 496-0300

Richard J. Burke
**QUANTUM LEGAL LLC**
2801 Lakeside Drive
Suite 100
Bannockburn, Illinois 60015
Telephone: (847) 433-4500

Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois  60603
Telephone: (312) 332-3400

***Class Counsel for Plaintiffs and the proposed Class***