# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| *In Re Effexor XR Antitrust Litigation* | Civil Action No. 3:11-cv-05661 (ZNQ) (JBD) |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Class Actions | Master Docket No. 3-11-cv-05479 (ZNQ) (JBD) |

## DECLARATION OF ERIC J. MILLER REGARDING
## (A) MAILING OF THE POSTCARD NOTICE;
## (B) PUBLICATION OF SUMMARY NOTICE; AND
## (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE

I, Eric J. Miller, declare as follows:

1. I am the Senior Vice President of Case Management at A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"), whose corporate office is located in Milwaukee, Wisconsin. My business address is 5080 PGA Boulevard, Suite 209, Palm Beach Gardens, FL 33418, and my telephone number is (561) 336-1801.

2. I submit this Declaration in connection with the above-referenced action (the "Action"). This Declaration is based upon my personal knowledge and information provided by my associates and A.B. Data staff members. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

3. Pursuant to the Court's Order Granting Preliminary Approval of Class-Action Settlement dated March 19, 2025 (the "Preliminary Approval Order"), A.B. Data was responsible for effectuating notice pursuant to the Notice Plan approved by the Court. This Declaration details

the steps taken by A.B. Data, which consisted of the following: a) direct notice to potential third-party payor ("TPP") Class Members using A.B. Data's proprietary database (the "TPP Database") and previous claims submissions; b) direct notice to consumer Class Members who could be identified through previous claims submissions; c) paid media notice (including social media and digital advertising); d) a news release disseminated over *PR Newswire*; and e) a toll-free telephone number and case-specific website to address potential Class Member inquiries.

## DIRECT MAIL NOTICE

4.      On April 18, 2025, A.B. Data mailed the Short-Form Notice formatted as a postcard ("Postcard Notice") via United States Postal Service First-Class Mail to 42,628 entities in A.B. Data's TPP Database. These entities include insurance companies, health maintenance organizations, self-insured entities, pharmacy benefits managers ("PBMs"), third-party administrators ("TPAs"), and other entities that represent potential TPP Class Members, as well as those who weren't in the TPP database that filed claims in the Wyeth settlement.  A copy of the Postcard Notice is attached as **Exhibit A**.

5.      In addition, on April 18, 2025, A.B. Data sent 1,284 emails to entities in the TPP Database and those who filed claims in the Wyeth settlement who weren't in the TPP database with available email addresses.

6.      Notice was also sent via email on April 18, 2025 to consumers who filed potentially valid claims in the Wyeth settlement and for whom a valid email address was available. Postcard Notices were sent to those whose emails were not delivered.

## PAID MEDIA

7.      A.B. Data implemented a paid media program, including digital and social media advertising, to reach potential Class Members.

8.     Between April 18, 2025 and May 18, 2025, digital banner and social media ads appeared on various websites and social media platforms (including Google Display Network, Facebook, Instagram, and YouTube) within the Class States and nationally.  This advertising—coupled with the Google search listings discussed below—delivered 238,434,616 gross impressions.  The banner ads included an embedded and trackable link to the case-specific website (EffexorXRIndirectSettlement.com).

9.     To reach potential TPP Class Members, banner ads also appeared on BenefitNews.com, SHRM.org, and ThinkAdvisor.com/life-health. These banner ads delivered additional gross impressions.

10.     Samples of the consumer and TPP digital banner ads as they appeared on several websites are attached as **Exhibit B**.

11.     Between April 18, 2025 and May 18, 2025, A.B. Data purchased sponsored-search listings on Google and Google Search Partners.  When a person searched for a specific target phrase and/or keyword in a search engine, the link to the case-specific website may have appeared on the search result pages.

## <u>EARNED MEDIA</u>

12.     To complement the direct and paid media notice, A.B. Data distributed the Short-Form Notice, formatted as a news release, via *PR Newswire's* US1 Newsline on April 18, 2025. This news release reached traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide.

13.     News about the settlement was also broadcast to the news media via X, the platform formerly known as Twitter. It was issued from *PR Newswire's* and A.B. Data's X accounts to media outlets, journalists, and other followers.

14.    A true and correct copy of the press release as it appeared is attached as **Exhibit C**.

<u>**TELEPHONE HELPLINE AND WEBSITE**</u>

15.    On June 14, 2024, A.B. Data established a case-specific toll-free number, 1-877-933-2882, with an interactive voice response ("IVR") system and live operators, to assist potential Class Members with questions about the Action. On April 18, 2025, the IVR was updated to provide potential Class Members with information regarding the settlement with Teva.

16.    On June 14, 2024, A.B. Data established the case-specific website, EffexorXRIndirectSettlement.com. The website contains important information regarding the Action, including the exclusion, objection, and claim filing deadlines, and the date, time, and location for the Court's Fairness Hearing. On April 18, 2025, the website was updated to provide potential Class Members with information about the settlement with Teva, including the exclusion, objection, and claim filing deadlines and the date, time, and location of the Court's Fairness Hearing. Copies of the Long-Form Notice (attached as **Exhibit D**), Consumer Claim Form (attached as **Exhibit E**), Third-Party Payor Claim Form (attached as **Exhibit F**), Complaint, Preliminary Approval Order, Plan of Allocation, Class-Action Settlement Agreement, and other relevant documents for the Teva settlement are posted on the website and available for potential Class Members to download. In addition, the website provides Class Members with the ability to submit their Claim Form through the website.  The website is accessible 24 hours a day, 7 days a week.

<u>**REPORT ON OPT OUT REQUESTS**</u>

17.    The deadline for Class Members to request exclusion from the Class was June 2, 2025. As of the exclusion deadline, A.B. Data received one (1) exclusion request. The list of entities who requested exclusion is attached as **Exhibit G**.

## <u>REPORT ON OBJECTIONS</u>

18.     The deadline for Class Members to object to the Settlement and/or request to speak in person at the Fairness Hearing was June 2, 2025. Objections must have been filed with the Court and mailed to Class Counsel and Defense Counsel on or before that date. As of the date of this Declaration, A.B. Data has not received or been made aware of any objections to the Settlement and/or requests to speak in person at the Fairness Hearing.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of July, 2025.



_____
Eric J. Miller

# EXHIBIT A

**Legal Notice**

Effexor XR Indirect Purchaser Settlement
c/o A.B. Data, Ltd.
P.O. Box 173005
Milwaukee, WI 53217

**Did You Purchase, Pay for, or Provide Reimbursement for Effexor XR and/or Its Generic Equivalent? You Could Get Money from a New Settlement.**

There is a new $2.25 million settlement (the "Settlement") with Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") in a class-action lawsuit claiming that Wyeth (also known as Wyeth LLC and formerly known as Wyeth, Inc. and American Home Products); Wyeth Pharmaceuticals, Inc.; Wyeth-Whitehall Pharmaceuticals; and Wyeth Pharmaceuticals Company (collectively, "Wyeth") and Teva unlawfully kept generic versions of Effexor XR off the market. Plaintiffs allege this conduct caused consumers and third-party payors to pay more for brand and generic Effexor XR than they should have. Wyeth and Teva deny they did anything wrong. The Court previously approved a $25.5 million settlement with Wyeth (the "Wyeth Settlement"). No one is claiming that Effexor XR is unsafe.

## Who is included in the Settlement?

You may be included in the Settlement if you are a person or entity who purchased, paid for, and/or reimbursed some or all of the cost of Effexor XR or AB-rated generic versions of Effexor XR for yourself, your family, or your members, employees, insureds, participants, or beneficiaries, from June 14, 2008 through May 31, 2011, in the following states: Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin.

A more detailed notice, including the full class definition and who is not included, is available at www.EffexorXRIndirectSettlement.com.

## What does the Settlement provide?

Teva will pay $2.25 million to settle this lawsuit. This amount will be used to pay (1) money to eligible Class Members; (2) notice and administration costs; (3) attorneys' fees; and (4) costs and expenses not previously reimbursed in connection with the Wyeth Settlement.

## How can I get a payment?

You must submit a valid Claim Form to apply for payment from the Settlement Fund. The amount of your payment will depend on the amount of Effexor XR or AB-rated generic versions of Effexor XR you purchased and the number of claims that are filed.

If you already filed a claim in connection with the Wyeth Settlement, you **do not** need to submit another claim; your previous Claim Form for the Wyeth Settlement will also serve as your Claim Form for this new Settlement with Teva. If you did not previously submit a claim in connection with the Wyeth Settlement, the Claim Forms, and information on how to submit them, are available at www.EffexorXRIndirectSettlement.com. Claim Forms must be postmarked (if mailed) or received (if submitted online) on or before **July 17, 2025**. You can no longer file a claim for the Wyeth Settlement.

## What are my rights?

Even if you do nothing, you will be bound by the Court's decisions. If you want to keep your right to sue Teva yourself, you must exclude yourself by **June 2, 2025**. If you do not exclude yourself, you may object to the Settlement by **June 2, 2025**. Detailed instructions about how to act on these rights are available at www.EffexorXRIndirectSettlement.com.

The Court will hold a hearing on **August 12, 2025,** to consider whether to approve the Settlement and a request for attorneys' fees of up to 34% of the Settlement, plus costs and expenses that were not previously reimbursed in connection with the Wyeth Settlement. You or your own lawyer may appear and speak at the hearing at your own expense. The Court may change these deadlines or the hearing date and time. Check the website below for updates. Please *do not* call the Court or the Clerk of the Court for information about the Settlement.

**For more information:  1-877-933-2882          www.EffexorXRIndirectSettlement.com**

# EXHIBIT B





# EXHIBIT C

# Carella, Byrne, Cecchi, Brody & Agnello, P.C.* Announces A New $2.25 Million Settlement of a Class-Action Lawsuit Involving Persons and Entities that Purchased, Paid For, and/or Provided Reimbursement for Effexor XR® and/or its Generic Equivalent

SHARE THIS ARTICLE

NEWS PROVIDED BY
**Carella, Byrne, Cecchi, Brody & Agnello, P.C.**
Apr 18, 2025, 10:00 ET

**\*In association with Wexler Boley & Elgersma LLP, Spector Roseman & Kodroff, P.C., Miller Law LLC, Motley Rice LLC, Quantum Legal LLC, and The Dugan Law Firm, PLC**

CHICAGO, April 18, 2025 /PRNewswire/ --

Legal Notice
**Did You Purchase, Pay for, or Provide Reimbursement for Effexor XR® and/or Its Generic Equivalent?**
**You Could Get Money from a New Settlement.**

There is a new $2.25 million settlement (the "Settlement") with Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") in a class-action lawsuit claiming that Wyeth (also known as Wyeth LLC and formerly known as Wyeth, Inc. and American Home Products); Wyeth Pharmaceuticals, Inc.; Wyeth-Whitehall Pharmaceuticals; and Wyeth Pharmaceuticals Company (collectively, "Wyeth") and Teva unlawfully kept generic versions of Effexor XR® off the market.  Plaintiffs allege this conduct caused consumers and third-party payors to pay more for brand and generic Effexor XR® than they should have.  Wyeth and Teva deny they did anything wrong.  The Court previously approved a $25.5 million settlement with Wyeth (the "Wyeth Settlement").  No one is claiming that Effexor XR® is unsafe.

### Who is included in the Settlement?

You may be included in the Settlement if you are a person or entity who purchased, paid for, and/or reimbursed some or all of the cost of Effexor XR® or AB-rated generic versions of Effexor XR® for yourself, your family, or your members, employees, insureds, participants, or beneficiaries, from June 14, 2008 through May 31, 2011, in the following
states: Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin.

A more detailed notice, including the full class definition and who is not included, is available at **www.EffexorXRIndirectSettlement.com**.

### What does the Settlement provide?

Teva will pay $2.25 million to settle this lawsuit.  This amount will be used to pay (1) money to eligible Class Members; (2) notice and administration costs; (3) attorneys' fees; and (4) costs and expenses not previously reimbursed in connection with the Wyeth Settlement.

### How can I get a payment?

You must submit a valid Claim Form to apply for payment from the Settlement Fund.  The amount of your payment will depend on the amount of Effexor XR® or AB-rated generic versions of Effexor XR® you purchased and the number of claims that are filed.

If you already filed a claim in connection with the Wyeth Settlement, you **do not** need to submit another claim; your previous Claim Form for the Wyeth Settlement will also serve as your Claim Form for this new Settlement with Teva.  If you did not previously submit a claim in connection with the Wyeth Settlement, the Claim Forms, and information on how to submit them, are available at **www.EffexorXRIndirectSettlement.com**.  Claim forms must be postmarked (if mailed) or received (if submitted online) on or before **July 17, 2025**.  You can no longer file a claim for the Wyeth Settlement.

### What are my rights?

Even if you do nothing, you will be bound by the Court's decisions.  If you want to keep your right to sue Teva yourself, you must exclude yourself by **June 2, 2025**.  If you do not exclude yourself, you may object to the Settlement by **June 2, 2025**.  Detailed instructions about how to act on these rights are available at **www.EffexorXRIndirectSettlement.com**.

The Court will hold a hearing on **August 12, 2025, at 11:00 a.m. ET** to consider whether to approve the Settlement and a request for attorneys' fees of up to 34% of the Settlement, plus costs and expenses that were not previously reimbursed in connection with the Wyeth Settlement.  You or your own lawyer may appear and speak at the hearing at your own expense.  The Court may change these deadlines or the hearing date and time.  Check the website below for updates.  Please *do not* call the Court or the Clerk of the Court for information about the Settlement.

**For more information: 1-877-933-2882**          **www.EffexorXRIndirectSettlement.com**

SOURCE Carella, Byrne, Cecchi, Brody & Agnello, P.C.

WANT YOUR COMPANY'S NEWS
FEATURED ON PRNEWSWIRE.COM?

440k+
Newsrooms &
Influencers

9k+
Digital Media
Outlets

270k+
Journalists
Opted In

GET STARTED

Contact PR Newswire

Call PR Newswire at 888-776-0942
from 8 AM - 9 PM ET

Chat with an Expert

Contact Us

Products

For Marketers
For Public Relations
For IR & Compliance
For Agency
All Products

About

About PR Newswire
About Cision
Become a Publishing Partner
Become a Channel Partner
Careers
Accessibility Statement

Global Sites

My Services

All New Releases
Online Member Center
ProfNet
Data Privacy

Do not sell or share my personal infor

- Submit via Privacy@cision.com
- Call Privacy toll-free: 877-297-89

Terms of Use | Privacy Policy | Information Security Policy | Site Map | RSS | Cookie Settings

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

# Did You Purchase, Pay for, or Provide Reimbursement for Effexor XR and/or Its Generic Equivalent?
## You Could Get Money from a New Settlement.

*A federal court authorized this Notice.  You are not being sued.*

*Para conseguir una notificación en español, llame a 1-877-933-2882 o visite el sitio web: www.EffexorXRIndirectSettlement.com.*

- There is a new settlement (the "Settlement") with Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") in a class-action lawsuit claiming that Wyeth (also known as Wyeth LLC and formerly known as Wyeth, Inc. and American Home Products); Wyeth Pharmaceuticals, Inc.; Wyeth-Whitehall Pharmaceuticals; and Wyeth Pharmaceuticals Company (collectively, "Wyeth") and Teva unlawfully kept generic versions of Effexor XR off the market. Plaintiffs allege this conduct caused consumers and third-party payors to pay more for brand and generic Effexor XR than they should have. Wyeth and Teva deny they did anything wrong.

- You may have seen a previous notice about a $25.5 million settlement with Wyeth (the "Wyeth Settlement").  The Wyeth Settlement was approved by the Court in September 2024. Now, Teva has agreed to pay $2.25 million to resolve the remaining claims in this lawsuit. This Notice is about the new Settlement with Teva.

- Generally, you are included in the Settlement if you purchased, paid for, and/or reimbursed some or all of the cost of Effexor XR or AB-rated generic versions of Effexor XR in certain states from June 14, 2008 through May 31, 2011. The included states are: Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin. You may be able to get money from this Settlement.

- The $2.25 million Teva is paying in the Settlement will be used to pay (1) money to eligible Class Members; (2) notice and administration costs; (3) attorneys' fees; and (4) costs and expenses not previously reimbursed in connection with the Wyeth Settlement.

- **Your legal rights are affected even if you do nothing. Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to get a payment from the Settlement.<br><br>If you already filed a claim for the Wyeth Settlement, you **do not** need to submit another claim.  Your previous claim for the Wyeth Settlement will also serve as your claim for this new Settlement with Teva. | **July 17, 2025** |
| **EXCLUDE YOURSELF** | You will not be bound by the Settlement and will not receive any benefits from the Settlement. You keep any rights to sue Teva on your own for the same legal claims made in this lawsuit. | **June 2, 2025** |
| **OBJECT** | Write to the Court about why you do not like the Settlement. Whether or not you object, you must still file a claim by the deadline above to receive money from the Settlement. | **June 2, 2025** |
| **GO TO A HEARING** | Attend a hearing to speak in Court about your opinion of the Settlement. | **August 12, 2025** |

| **DO NOTHING** | If you did not already file a claim in connection with the Wyeth Settlement and do nothing now, you will not get a payment from this Settlement. You will also give up your right to sue Teva on your own for the same legal claims made in this lawsuit. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still must decide whether to approve the Settlement.

- Payments will be made to those who qualify only after the Court approves the Settlement and any appeals are resolved. Please be patient.

## Basic Information

### 1.   Why was this Notice issued?

The Court authorized this Notice because you have a right to know about a new proposed Settlement, your rights, and your options before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights. Your legal rights are affected whether you act or not.

Judge Zahid N. Quraishi of the United States District Court for the District of New Jersey is overseeing this case. This lawsuit is known as *In re Effexor XR Antitrust Litigation*, Master Docket No. 3:11-cv-05479. The people who sued are called the "Plaintiffs." Wyeth and Teva are the "Defendants."

 On September 12, 2024, the Court gave final approval to the $25.5 million Wyeth Settlement.

This Notice is about a new $2.25 million Settlement with Teva. If the Court approves it, the Settlement will resolve the claims against Teva.

### 2.   What is this lawsuit about?

The consumers and third-party payors who brought the lawsuit (the "Plaintiffs") claim that Wyeth took several actions to keep generic versions of Effexor XR off the market, causing brand and generic Effexor XR prices to be higher than they otherwise would have been. This meant that consumers and third-party payors paid more for brand Effexor XR and generic Effexor XR than they should have.

The lawsuit says that, in order to delay generic Effexor XR from coming to the market, Wyeth fraudulently obtained three patents covering Effexor XR and used those patents to wrongfully sue manufacturers who were applying to make, use, or sell a generic version of Effexor XR. It claims Wyeth then settled those lawsuits by agreeing to pay the generic manufacturers *if* those manufacturers agreed to delay selling their generic versions of Effexor XR.

The lawsuit also says Wyeth and generic manufacturer Teva entered into an unlawful agreement, called a horizontal market-allocation and price-fixing agreement, in which Wyeth paid generic manufacturer Teva to delay entering the market with its generic version of Effexor XR. Specifically, the lawsuit claims that Wyeth agreed to delay selling Wyeth's own generic version of Effexor XR once Teva was permitted to enter the market. This meant that Teva was allowed to sell its generic version of Effexor XR without any generic competitors for a longer time than it normally would have and could charge higher prices than it would have otherwise.

Plaintiffs allege that, if Wyeth and Teva did not take these actions or make this agreement, generic versions of Effexor XR would have been available sooner. Because of the delay in generic competition, consumers and third-party payors who paid for brand and generic Effexor XR were overcharged.

Wyeth and Teva deny all these allegations, including that the Plaintiffs or Class Members are entitled to damages or any other relief.

There has been no determination by the Court or a jury that the allegations against Wyeth and Teva have been proven or that, if proven, their conduct caused harm to the Class. This Notice is not an expression of any opinion by the Court as to the claims against Wyeth or Teva or the defenses asserted by Wyeth or Teva.

This lawsuit is not about the safety or efficacy of Effexor XR, and the Settlement does not involve any claims about the safety or efficacy of Effexor XR.

This Notice is only a summary. More details are provided in the Settlement Agreement, available at www.EffexorXRIndirectSettlement.com.

| **3.    Why is this a class action?** |
| --- |

In a class action, one or more people or entities called "class representatives" (in this case, A. F. of L. – A.G.C. Building Trades Welfare Plan, IBEW - NECA Local 505 Health & Welfare Plan, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, Painters District Council No. 30 Health and Welfare Fund, Plumbers and Pipefitters Local 572 Health and Welfare Fund, City of Providence, Rhode Island, Sergeants Benevolent Association Health and Welfare Fund, and Patricia Sutter) sue on behalf of those who have similar claims. Together, all these people and entities are a "class" or "class members." One court and one case resolve the issues for all class members, except for those who exclude themselves from ("opt out" of) the class.

| **4.    Why is there a new Settlement?** |
| --- |

The Court previously approved the Wyeth Settlement. Now, Plaintiffs and Teva have agreed to settle Plaintiffs' claims against Teva. The Court has not decided in favor of the Plaintiffs or Teva. By agreeing to the Settlement, Plaintiffs and Teva avoid the costs and uncertainty of a trial, and Class Members receive the benefits described in this Notice. The proposed Settlement does not mean that any law was broken or that Teva did anything wrong. The parties believe the Settlement is best for all Class Members.

## Who is in the Settlement?

If you received a mailed Notice, then you may be a Class Member. But even if you did not receive a mailed Notice, you may be a Class Member, as described below.

| **5.    Who is included in the Settlement?** |
| --- |

You are included in the Settlement if, you:

> Are a person or entity who purchased, paid for, and/or reimbursed some or all of the cost of Effexor XR or AB-rated generic versions of Effexor XR for yourself, your family, or your members, employees, insureds, participants, or beneficiaries, from June 14, 2008 through May 31, 2011, in the following states: Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin.

| **6.    Who is not included in the Settlement Class?** |
| --- |

The Class does <u>not</u> include:
- Teva and Wyeth and their subsidiaries and affiliates;

- State and local governments that by state law can only make claims through the state Attorney General, or are prohibited by law from being represented in legal matters by private counsel on a contingent fee basis;
- Anyone who purchased Effexor XR or its generic equivalent for resale;
- Anyone who purchased Effexor XR or its generic equivalent directly from Wyeth, Teva, or their affiliates;
- Fully insured health plans (*i.e.*, plans that purchased insurance from another third-party payor that covered 100% of the plan's reimbursement for its members);
- Pharmaceutical benefit managers;
- The judges in this case and any members of their immediate families; and
- Anyone that properly excludes themselves from the Class (*see* Question 16).

| **7.    What if I am still not sure if I am included in the Settlement Class?** |
| --- |

If you are not sure whether you are a Class Member, or have any other questions about the Settlement, visit the website, www.EffexorXRIndirectSettlement.com, or call the toll-free number, 1-877-933-2882. You may also send questions to the Claims Administrator at Effexor XR Indirect Purchaser Settlement, c/o A.B. Data, Ltd., P.O. Box 173005, Milwaukee, WI 53217.

## The Benefits of the Settlement

| **8.    What does this Settlement provide?** |
| --- |

If the Settlement with Teva is approved and becomes final, it will provide money to Class Members. Teva will pay $2.25 million to settle the claims against it in this lawsuit. This Settlement would resolve all Class Members' claims against Teva.

This Settlement amount will be used to pay:
- Payments to eligible Class Members;
- Attorneys' fees of up to 34% of the Settlement amount;
- Costs and expenses that were not previously reimbursed in connection with the Wyeth Settlement; and
- Notice and administration costs and expenses.

The Court already approved a settlement with Wyeth totaling $25.5 million.

The Settlement Agreement and Plan of Allocation, available at www.EffexorXRIndirectSettlement.com, have more information.

| **9.    What can I get from this Settlement?** |
| --- |

You can get money from the Settlement with Teva. To get a payment, you must submit a valid Claim Form (*see* Question 11). **Note:** If you already filed a claim in the Wyeth Settlement, you **do not** need to submit another Claim Form; your previous claim for the Wyeth Settlement will also serve as your claim for this new Settlement with Teva.

At this time, it is unknown how much each individual or entity who submits a valid claim will receive. The amount of your payment will depend on the amount of Effexor XR or AB-rated generic versions of Effexor XR you purchased and the number of claims that are filed. Complete details of how your recovery will be calculated are in the Plan of Allocation, which can be viewed at www.EffexorXRIndirectSettlement.com.

| **10.  When will I get my payment from this Settlement?** |
| --- |

The Court must approve the Settlement, and any appeals of that decision must be resolved before any money is distributed to Class Members. The Claims Administrator must also finish processing all the Claim Forms and determine distribution amounts. This process can take several months. Please be patient.

## How to Get a Payment

**11. How can I get a payment from this Settlement?**

To apply for a payment from the Settlement with Teva, you must complete and submit a valid Claim Form. You **do not** need to submit another Claim Form if you already filed a claim in the previous settlement with Wyeth; your previous claim for the Wyeth Settlement will also serve as your claim for this new Settlement with Teva.

If you are a consumer and unless you consent, your identity will not be made public during any part of the claims process.

Claim Forms should be mailed to the address below and must be postmarked by **July 17, 2025**. You can get a Claim Form at www.EffexorXRIndirectSettlement.com or by calling 1-877-933-2882 or writing the address below and requesting a Claim Form.

Effexor XR Indirect Purchaser Settlement
c/o A.B. Data, Ltd.
P.O. Box 173005
Milwaukee, WI 53217

You may also submit a Claim Form online at www.EffexorXRIndirectSettlement.com. If you submit a Claim Form online, you must do so by **July 17, 2025**. Unless a consumer consents, all Claim Form submissions will be kept confidential.

**12. If I previously filed a claim in connection with the Wyeth Settlement, do I need to submit a claim to get a payment from this Settlement?**

No. If you already submitted a claim in connection with the Wyeth Settlement, you do not need to submit another claim to get a payment from this Settlement with Teva.

**13. Can I get a payment from this Settlement if I excluded myself from the previous Wyeth Settlement?**

Yes. If you excluded yourself from the previous Wyeth Settlement (and do not exclude yourself from the new Settlement with Teva), you can file a claim seeking payment from this Settlement with Teva.

**14. Can I submit a new claim for the previous Wyeth Settlement?**

No. The deadline to submit a claim in the Wyeth Settlement has passed, and you can no longer submit a new claim to get a payment from that Settlement.

## Excluding Yourself from the Settlement

If you do not want a payment from this Settlement with Teva, but you want to keep the right to sue or continue to sue Teva on your own concerning the legal issues in this case, then you must take steps to get out of the Class. This is called excluding yourself and is sometimes referred to as "opting out" of the Class.

**15. What am I giving up if I stay in the Settlement?**

If the Settlement becomes final, you will give up your right to sue Teva on your own for the claims being resolved by this Settlement. Unless you exclude yourself, the Court's decisions will bind you.

The specific claims you are giving up (the "released claims") against Teva are described in the Settlement Agreement, available at www.EffexorXRIndirectSettlement.com. The Settlement Agreement describes the released claims in detail, so please read it carefully.

If you have any questions, you can talk to the lawyers listed in Question 21 for free, or you can talk to your own lawyer if you have questions about what this means.

| **16.  What if I do not want to be a part of this Settlement?** |
| --- |

If you do not want to be part of the Settlement with Teva, you must exclude yourself from the Class. If you exclude yourself, you will not receive any benefits that may result from this Settlement, but you will keep your right to sue Teva on your own for the claims in this lawsuit.

To exclude yourself, you must email or mail a letter to the Claims Administrator stating that you want to exclude yourself from the Class in this Settlement. The Claims Administrator's email address is info@EffexorXRIndirectSettlement.com, and its mailing address is:

Effexor XR Indirect Purchaser Settlement
EXCLUSIONS
c/o A.B. Data, Ltd.,
P.O. Box 173001
Milwaukee, WI 53217

Your email or letter must include:
- Your full name, current mailing address, and telephone number;
- A statement that you want to be excluded from the Teva Settlement Class in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-05479; and
- Your signature (NOTE: You must personally sign the letter).

You must mail or email your letter so that it is postmarked or submitted by **June 2, 2025**. This will be the only opportunity you will have to exclude yourself from the Settlement Class.

Third-party payors wishing to exclude themselves from the Settlement Class must also submit data (i) sufficient to establish Class membership, and (ii) reflecting their purchases of, and payments for, branded and generic Effexor XR. Class Members shall not be permitted to exclude other Class Members. Moreover, group or class-wide exclusions shall not be permitted. A request for exclusion must be submitted by each Class Member on an individual basis, and any request for exclusion by a purported authorized agent or representative of a Class Member must include proof of the representative's legal authority and authorization to act and request exclusion on behalf of each Class Member they seek to opt out.

You cannot exclude yourself over the telephone. Consumer identities will not be made public as part of the exclusion process. Unless a consumer consents, the Claims Administrator, the Court, Class Counsel, and Defense Counsel will keep that information confidential.

| **17.  If I exclude myself, can I still get a payment from this Settlement?** |
| --- |

No. You will not get a payment from the Teva Settlement if you exclude yourself from this Settlement.

| **18.  If I do not exclude myself, can I sue Teva for the same thing later?** |
| --- |

No. If the Court approves the proposed Settlement and you do not exclude yourself, you give up (or "release") the right to sue Teva for the claims made in this lawsuit. The specific claims you are giving up against Teva are described in detail in the Settlement Agreement, available at www.EffexorXRIndirectSettlement.com. Please read the Settlement Agreement carefully.

**19.  If I excluded myself from the Class in the Wyeth Settlement, do I need to exclude myself again?**

Yes. If you do not want to be part of this Settlement with Teva, you need to exclude yourself by the deadline set forth above, even if you previously excluded yourself from the previous Wyeth Settlement.

**20.  Can I still exclude myself from the previous Wyeth Settlement?**

No. The deadline to exclude yourself from the previous Wyeth Settlement has passed.

## The Lawyers Representing You

**21.  Do I have a lawyer in the case?**

Yes. The Court has appointed lawyers to represent you and the other Class Members. These lawyers are called "Class Counsel:"

| CLASS COUNSEL | |
|---|---|
| James E. Cecchi<br>Carella, Byrne, Cecchi, Brody &<br>Agnello, P.C.<br>5 Becker Farm Road<br>Roseland, NJ 07068 | Michael M. Buchman<br>Motley Rice LLC<br>800 Third Avenue<br>Suite 2401<br>New York, NY 10022 |
| Kenneth A. Wexler<br>Wexler Boley & Elgersma LLP<br>311 S. Wacker Drive<br>Suite 5450<br>Chicago, IL 60606 | Richard J. Burke<br>Quantum Legal LLC<br>2801 Lakeside Drive<br>Suite 100<br>Bannockburn, IL 60015 |
| Jeffrey L. Kodroff<br>Spector, Roseman & Kodroff, P.C.<br>2001 Market Street, Suite 3420<br>Philadelphia, PA 19103 | James R. Dugan, II<br>The Dugan Law Firm, PLC<br>One Canal Place<br>365 Canal Street, Suite 1000<br>New Orleans, LA 70130 |
| Marvin A. Miller<br>Miller Law LLC<br>53 W. Jackson Blvd., Suite 1320<br>Chicago, IL 60604 | |

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one at your own expense.

**22.  How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees of up to 34% of the Settlement amount, plus costs and expenses that were not previously reimbursed in connection with the Wyeth Settlement. Any attorneys' fees, expenses, and costs approved by the Court will be paid from the Settlement amount.

## Objecting to the Settlement

| **23.  How do I comment on or object to the Settlement?** |
| --- |

To comment on or object to the Settlement, you (or your lawyer if you have one) must send a written comment or objection to the Court and the counsel identified below, by way of the Court's electronic filing system or by First-Class Mail. You must send your comment or objection postmarked on or before **June 2, 2025**. Your written comment or objection must include all grounds for your objection and can include any supporting materials, papers, or briefs you want the Court to consider. Your written comment or objection must include:

- Your name, address, telephone number, and an explanation of your objection;
- The case name and number: *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-05479;
- The name, address, and telephone number of any counsel representing you in connection with your objection;
- A statement as to whether you intend to appear at the Fairness Hearing (discussed further in Questions 26-28 below) and the identities of any counsel who will be appearing on your behalf;
- A list of all other objections submitted by you, or your counsel, to any class-action settlements submitted in any court in the United States in the previous five (5) years, including the full case name, the jurisdiction in which the objection was filed, and the docket number (or a statement that there are no such objections); and
- Documentation demonstrating that you are a member of the Class and/or this statement, followed by your signature: "I declare under penalty of perjury under the laws of the United States of America that [insert your name] is a member of the Class."

You <u>must</u> mail your comment or objection to the Court and mail copies to Class Counsel and Teva's Counsel (mailing addresses below). All comments and objections must be postmarked by **June 2, 2025**.

Individual consumers who do not want their identities to be put on the public record as part of the objection process may send their objection only to the Claims Administrator (mailing address also included below), who will redact (or "black out") such consumers' names, addresses, and telephone numbers and then provide such redacted versions to the Court for filing on the public court docket. The Claims Administrator will also send copies of the original, unredacted objections to the Court, Class Counsel, and Teva's Counsel. How the Judge and the parties treat the merits of your objection does not depend on whether you keep your identifying information off the public record.

| Court | Class Counsel | Teva's Counsel | Claims Administrator |
| --- | --- | --- | --- |
| Clerk<br>United States District Court<br>District of New Jersey<br>Clarkson S. Fisher Building<br>& U.S. Courthouse<br>402 East State Street<br>Room 2020<br>Trenton, NJ 08608 | James E. Cecchi<br>Carella, Byrne, Cecchi, Brody<br>& Agnello, P.C.<br>5 Becker Farm Road<br>Roseland, NJ 07068<br>jcecchi@carellabyrne.com | Devora W. Allon, P.C.<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>devora.allon@kirkland.com | Effexor XR Indirect<br>Purchaser Settlement<br>OBJECTIONS<br>c/o A.B. Data, Ltd.,<br>P.O. Box 173001<br>Milwaukee, WI 53217 |

Any lawyer representing a Class Member for the purpose of making comments or objections must also file a Notice of Appearance with the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system.

You may file a claim even if you object to, or comment on, the Settlement. Whether or not you object, you must have previously filed a claim in connection with the Wyeth Settlement or file a claim by the deadline in Question 11 above to receive money from the Settlement with Teva.

**24.  Can I object to the previous settlement with Wyeth?**

No. The deadline to object to the previous Wyeth Settlement has passed.

**25.  What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can only object if you stay in the Class. If you object to the Settlement, you are still a Class Member, and you can submit a Claim Form by **July 17, 2025** (if you did not do so already in connection with the Wyeth Settlement, in which case, you do not need to submit another claim to get a payment from this Settlement with Teva).

Excluding yourself is telling the Court that you do not want to be a part of the Class. If you exclude yourself, you cannot receive a payment from this Settlement. You also will have no basis to object to the Settlement or appear at the Fairness Hearing (discussed below) because it no longer affects you.

# The Fairness Hearing

The Court will hold a hearing, called a Fairness Hearing, to decide whether to approve the Settlement. You may attend and ask to speak, but you do not have to do so.

**26.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on **August 12, 2025** at **11:00 a.m. Eastern** in Courtroom 4W of the United States District Court for the District of New Jersey, Clarkson S. Fisher Building & U. S. Courthouse, 402 East State Street, Trenton, New Jersey. The hearing may be moved to a different date, time, or location without additional notice, so it is a good idea to check www.EffexorXRIndirectSettlement.com for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to people who have asked to speak at the Fairness Hearing. The Court may also decide whether to award attorneys' fees, costs, and expenses. After the Fairness Hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**27.  Do I have to come to the Fairness Hearing?**

No. Class Counsel will answer questions the Court may have at the Fairness Hearing. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**28.  May I speak at the Fairness Hearing?**

Yes, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send or email a letter stating that it is your "Notice of Intention to Appear in *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-05479." Be sure to include your name, address, telephone number, and your signature, along with copies of any papers, exhibits, or other evidence and the identity of all witnesses you intend to present to the Court in connection with the Fairness Hearing. Your Notice of Intention to Appear must be postmarked no later than **June 2, 2025** and emailed or sent to the addresses listed in Question 23.

# If You Do Nothing

**29.  What happens if I do nothing?**

If you already filed a claim in the Wyeth Settlement and do nothing, your previous claim for the Wyeth Settlement will also serve as your claim for this new Settlement with Teva, and you may get a payment from this Settlement too.  If you did not already file a claim and do nothing now, you will not get a payment from this Settlement.

You will also be legally bound by the Court's orders, good or bad. You will remain in the Class and give up your right to sue Teva on your own for the legal claims made in this lawsuit.

## Getting More Information

| **30. How do I get more information?** |
| --- |

This Notice is only a summary. More details are in the Settlement Agreement, available at www.EffexorXRIndirectSettlement.com. You also may write with questions to the Claims Administrator at Effexor XR Indirect Purchaser Settlement, c/o A.B. Data, Ltd., P.O. Box 173005, Milwaukee, WI 53217, or call the toll-free number at 1-877-933-2882.

Complete copies of public pleadings, Court rulings, and other filings are available for review and copying at the Clerk's office during normal business hours. The address is United States District Court for the District of New Jersey, 402 East State Street, Trenton, NJ 08608.

Please do not contact the Court or the Judge regarding this Notice.

DATED: April 18, 2025                                BY ORDER OF THE COURT
                                                                    UNITED STATES DISTRICT COURT
                                                                    DISTRICT OF NEW JERSEY

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re Effexor XR Antitrust Litigation* | Civil Action No. 3:11-5661 (ZNQ)(JBD) |
| This Document Relates To: All Indirect Purchaser Class Actions | Master Docket No. 3:11-cv-05479 (ZNQ)(JBD) |

## Instructions for Submitting Your Consumer Claim Form

If you are a Class Member who is a consumer and would like to qualify to receive a payment from the Teva Settlement, you must complete and submit this Claim Form. However, if you already submitted a Claim Form in connection with the previous settlement with Wyeth in this litigation (the "Wyeth Settlement"), you **do not** need to submit another claim to receive a payment from the Teva Settlement.

Your identity will not be made public during any part of the claims process. If you did not already file a claim in connection with the Wyeth Settlement, you must complete this Claim Form and mail it to the Claims Administrator at the address provided below, postmarked **no later than July 17, 2025,** or you can submit your claim online at www.EffexorXRIndirectSettlement.com, **no later than July 17, 2025**.

- Complete all required portions of the attached Claim Form:

1. Complete *Section A*. You must provide your name and contact information.

2. Review and complete *Section B* to confirm you qualify to file a claim.

3. Complete *Section C* to provide information about your total purchases of Effexor XR or generic versions of Effexor XR (also known as extended-release venlafaxine hydrochloride).

4. Review *Section D* and provide documentation to show you purchased or paid for Effexor XR or generic versions of Effexor XR at least once.

5. Review *Section E* and sign the Claim Form to certify that the information you provided is true and correct to the best of your knowledge.

- By signing and submitting the Claim Form, you are swearing under penalty of perjury that you qualify to submit a claim according to the criteria given in *Section B*.

- You have two options to submit your Claim Form:

    o You can mail your completed and signed Claim Form and supporting documents by First-Class U.S. Mail, postage prepaid, postmarked no later than **July 17, 2025**, to:

*Effexor XR Indirect Purchaser Settlement*
**c/o A.B. Data, Ltd.**
**P.O. Box 173005**
**Milwaukee, WI 53217**

**OR**

    o You can complete and submit the Claim Form and upload supporting documents on the Settlement website, www.EffexorXRIndirectSettlement.com, no later than **July 17, 2025**. If you complete the online Claim Form, you will receive a receipt saying that your claim was submitted. If you choose this option and file a claim electronically, your electronic signature and submission of the form will conform to the requirements of the Electronic Signatures Act, 15 U.S.C. § 7001, *et seq.*, and will have the same force and effect as if you signed the Claim Form in hard copy.

- If you did not already submit a completed Claim Form in connection with the Wyeth Settlement, or your completed Claim Form in connection with the Teva Settlement is not postmarked (if mailed) or received (if

submitted) online by **July 17, 2025**, you will not receive any payment from the Teva Settlement. Submitting this Claim Form does not guarantee that you will receive payment from the Teva Settlement. If the Claims Administrator rejects or reduces your Claim, you may follow the dispute resolution process described on page 5.

<table>
<tr><td>

**MUST BE POSTMARKED ON OR BEFORE, OR SUBMITTED ONLINE BY, JULY 17, 2025**

</td></tr>
</table>

*In re Effexor XR Antitrust Litigation*
*Indirect Purchaser Settlement*

## <u>CONSUMER CLAIM FORM</u>

Use Blue or Black Ink Only

**Attention: This form should only be filled out if you are a <u>Consumer</u> and you did not already file a claim in connection with the Wyeth Settlement.**

If you are a Third-Party Payor and you did not already file a claim in connection with the Wyeth Settlement, please fill out the Third-Party Payor Claim Form, available at www.EffexorXRIndirectSettlement.com.

### Section A: Claimant Identification

Claimant's Name

Agent/Legal Representative (if any)

Street Address

City                                    State                    Zip Code

Daytime Telephone Number                Email Address*

*By providing your email address, you authorize the Claims Administrator to use that email address to send you information relevant to this claim.

### Section B: Should I File a Claim Form?

You may be eligible to file a Claim Form and receive a payment from this Settlement if you are a member of the certified Class. If you already filed a claim in connection with the Wyeth Settlement, you **do not** need to submit another Claim Form.  For consumers, the certified Class is defined as follows:

All persons in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin (the "Class States") who purchased, paid, and/or provided reimbursement for Effexor XR or AB-rated generic versions of Effexor XR for consumption by themselves or their families from June 14, 2008 through May 31, 2011 (the "Class Period"). For purposes of the Indirect Purchaser Class definition, persons "purchased" Effexor XR or its generic versions if they paid or reimbursed some or all of the purchase price. A person is considered to be "in" a given Class State if their purchase took place in that Class State (*i.e.*, if the individual purchased Effexor XR or an AB-rated generic version of Effexor XR in a pharmacy in that Class State or received the drug by mail-order prescription in that Class State).

Please note, certain consumers are **not included** in the Teva Settlement. You should not file a claim for yourself or on behalf of any of the following consumers:

- Persons who purchased Effexor XR or its generic equivalent for resale (not for personal use) or directly from Wyeth, Teva, or their affiliates;
- Judges in this case and any members of their immediate families; and/or
- Persons who excluded themselves from (or opted out of) the Class in the Teva Settlement.

**If you excluded yourself from the Class in the Teva Settlement, you may not file a claim. However, you may still file a claim if you excluded yourself from the Class in the Wyeth Settlement, so long as you did not also exclude yourself from the Class in the Teva Settlement.**

☐ Check this box and sign the certification in *Section E* to confirm that the claimant indicated in *Section A* is a consumer Class Member and none of the exclusion criteria above is applicable. If any of the exclusion criteria applies to the claimant, the Claims Administrator may reject this claim.

## Section C: Purchase Information

If you are an eligible claimant, please type or print in the boxes below the total number of prescriptions and amounts you paid, from June 14, 2008 through May 31, 2011, for Effexor XR or generic Effexor XR purchases in the Class States listed in *Section B*. For retail purchases, the State of purchase is the State where the pharmacy is physically located. If any purchases were made by mail order, the State to which the prescription was sent—most likely your state of residence—is considered the place of purchase. For example, if you purchased Effexor XR or generic Effexor XR by mail order and had the prescription sent to Arizona, Arizona would be considered the place of purchase for that transaction and the purchase would be eligible for a recovery. On the other hand, if you purchased Effexor XR or generic Effexor XR by mail order and had the prescription sent to South Carolina, that transaction would not be eligible for a recovery because the place of purchase would be considered South Carolina, which is not one of the Class States listed in *Section B* that are covered by the Settlement.

| | |
|---|---|
| Total number of prescriptions of Effexor XR or generic Effexor XR purchased in the Class States from June 14, 2008 through May 31, 2011: | |
| Total amount of out-of-pocket payments for the Effexor XR or generic Effexor XR purchases identified above: | $ |

Were the Effexor XR or generic Effexor XR purchases identified above made using some form of insurance benefit that covered some of the costs of those purchases?   Yes _____    No _____    (Please check one.)

## Section D: Claim Documentation and Disputes Regarding Claim Amounts

You may file a claim by providing the information requested in *Sections A, B,* and *C* and completing the Certification in *Section E*, below.

You should also submit any of the following acceptable documents to support your claim:

1) Records from your pharmacy or insurer showing that you purchased Effexor XR or generic versions of Effexor XR at least once;
2) A note from your doctor (or records) describing the amount of Effexor XR or generic versions of Effexor

XR you were prescribed;

3) An explanation of benefits ("EOB") from your health plan or insurer describing transactions in Effexor XR or generic versions of Effexor XR; and/or

4) Other records showing purchases of Effexor XR or generic versions of Effexor XR, in the Class States, at any time during the period from June 14, 2008 through May 31, 2011, including but not limited to receipts, checkbook entries, and credit-card statements.

**Note**: You must submit documentation of your purchases and complete the certification below. If you do not provide documentation, the Claims Administrator will ask for additional claim documentation after you submit your Claim Form, so please keep all records of your purchases, such as receipts, checkbook entries, credit-card statements, and insurance EOBs. Claims may be selected for audit and rejected because of fraud concerns or potentially inaccurate amounts based on expected average purchases.

If the Claims Administrator rejects or reduces your claim and you believe the rejection or reduction is in error, you may contact the Claims Administrator to request further review. If the dispute about your claim cannot be resolved by the Claims Administrator and Class Counsel, you may ask the Court to review your claim.

To request Court review, you must send the Claims Administrator a signed written statement (a) stating your reasons for contesting the rejection or payment determination regarding your claim; and (b) specifically stating that you "request that the Court review the determination regarding this claim." You must include all documentation supporting your argument(s). The Claims Administrator and Class Counsel will present the dispute to the Court for review, which may include one or more public filings with the Court describing the dispute and arguments concerning it. Personal medical data and history relating to the dispute, however, will be filed under seal to preserve confidentiality. Please note that Court review should be sought only if you disagree with the Claims Administrator's determination regarding your claim.

| Section E: Certification |
| --- |

By signing below, I hereby swear and affirm that I have read and am familiar with the content of the instructions accompanying this Claim Form. I certify that the information I provided in this Claim Form and in any documents attached by me are true, correct, and complete to the best of my knowledge.

I certify further that I, or the consumer Class Member I represent, purchased, paid, and/or provided reimbursement for some or all of the purchase price of the cost of Effexor XR or generic versions of Effexor XR for personal consumption or consumption by family member(s), from June 14, 2008 through May 31, 2011, where the drug was purchased in a pharmacy in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin, or received in one of those Class States by mail-order prescription.

I also certify that I, or the Class Member(s) I represent, did not ask to be excluded ("opt out") from the Class in the Teva Settlement and did not purchase Effexor XR or generic versions of Effexor XR for purposes of resale (not for personal use). In addition, I am not (or the represented Class Member is not) among the persons or entities that have been excluded from the Class, which are listed above in *Section B*.

I further certify that I have provided all of the information requested above to the extent I have it.

I further certify that I, and the Class Member(s) I represent, have read and are familiar with the releases stated in Paragraph 12 of the Settlement Agreement. The releases in that Paragraph provide as follows:

a) Upon the occurrence of the Effective Date as defined in Paragraph 6 hereof, and in consideration for the Settlement Fund Amount described in this Settlement Agreement, Indirect Purchaser Plaintiffs and the Indirect Purchaser Class—except those who requested exclusion from the Indirect Purchaser Class and whose request was approved by the Court—on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives (the "Releasing Parties"), shall release and forever discharge, and covenant not to sue Teva and its respective

past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers, directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys, and any of their legal representatives (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing) (the "Released Parties"), with respect to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions, prior to the date of preliminary approval of this Settlement Agreement, (a) alleged, or which reasonably could have been alleged, in the Indirect Purchaser Class Action concerning the alleged anticompetitive scheme to prevent and delay approval and market entry of AB-rated generic equivalents of Effexor XR, or (b) concerning end-payor purchases of Effexor XR and/or its AB-rated generic equivalents in the Class States and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common-law doctrine relating to antitrust or consumer protection (collectively, the "Released Claims"). Upon the Effective Date, the Releasing Parties will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against the Released Parties.

b) In addition, Indirect Purchaser Plaintiffs, on behalf of themselves and all other Releasing Parties, hereby expressly waive, release, and forever discharge, upon the Settlement becoming final, any provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party; or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Releasing Parties may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 12, but each Releasing Party hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

c) Reservation of Claims. The Releasing Parties intend by this Settlement Agreement to release only Teva and the Released Parties with respect to the Released Claims. The Releasing Parties specifically do not intend this Settlement Agreement, or any part hereof or any other aspect of the proposed Settlement Agreement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, company, or corporation whatsoever, including Wyeth. The release set forth in this Paragraph 12 is not intended to and shall not release any claims other than the Released Claims.

d) This Settlement is not intended to and does not release claims arising in the ordinary course of business between the Releasing Parties and the Released Parties that are unrelated to the allegations in the Indirect Purchaser Class Action, such as claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury.

To the extent a consumer Class Member authorized me to submit this Claim Form on their behalf and I am submitting this Claim Form as an authorized agent, and to the extent I have been authorized to receive any and all amounts from the Teva Settlement that may be allocated to this consumer Class Member on their behalf, I certify that such authority has been properly vested in me and that I will fulfill all duties I may owe the consumer Class Member. If amounts from the Teva Settlement are distributed to me, and a consumer Class Member later claims I did not have the authority to claim and/or receive those amounts on their behalf, I and/or my employer will hold the Class, Class Counsel, and the Claims Administrator harmless with respect to any claims made by the consumer Class Member.

I hereby submit to the jurisdiction of the United States District Court for the District of New Jersey for all purposes connected with this Claim Form, including resolving disputes related to this Claim Form. I acknowledge that if I provided any false information or representations related to this claim, I may be subject to sanctions, including criminal prosecution. If the Claims Administrator requests additional supporting documents to supplement this Claim Form and the information in it, I agree to provide them.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge, and this Claim Form was signed on _____, 2025.**

| Signature | Print or Type Name |
|---|---|
|  |  |

Mail your completed Claim Form, along with any available documents supporting your claim, to the address below, postmarked no later than **July 17, 2025**, or submit the information online at the website below by that date:

Effexor XR Indirect Purchaser Settlement
c/o A.B. Data, Ltd.
P.O. Box 173005
Milwaukee, WI 53217
Toll-Free Telephone: 1-877-933-2882
Website: www.EffexorXRIndirectSettlement.com

**REMINDER CHECKLIST:**

1. Please complete and sign the above Claim Form or complete the online Claim Form. Attach or upload any documents supporting your claim.

2. Keep a copy of your Claim Form and supporting documents for your records.

3. If you would also like a receipt acknowledging your Claim Form was received, please complete the form online or mail this form via Certified Mail, Return Receipt Requested.

4. If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims Administrator at info@EffexorXRIndirectSettlement.com or via U.S. Mail at the address above.

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re Effexor XR Antitrust Litigation*<br><br>This Document Relates To:<br>All Indirect Purchaser Class Actions | Civil Action No. 3:11-5661 (ZNQ)(JBD)<br><br>Master Docket No. 3:11-cv-05479 (ZNQ)(JBD) |

## <u>INSTRUCTIONS FOR SUBMITTING YOUR THIRD-PARTY PAYOR CLAIM FORM</u>

To qualify to receive a payment from the new Settlement with Teva (the "Teva Settlement"), you must complete and submit this Claim Form. However, if you already submitted a Claim Form in connection with the previous settlement with Wyeth in this litigation (the "Wyeth Settlement"), you **do not** need to submit another claim to receive a payment from the Teva Settlement.

A third-party payor ("TPP") Class Member, or an authorized agent for a TPP, can complete this Claim Form. If both a TPP Class Member and its authorized agent submit a Claim Form, the Claims Administrator will consider only the TPP Class Member's Claim Form. The Claims Administrator may ask for supporting documents in addition to the documents and information requested below. The Claims Administrator may reject a claim if the TPP Class Member or its authorized agent does not provide all requested documents in a timely manner.

If you are a TPP Class Member submitting a Claim Form on your own behalf, complete "Section A – COMPANY OR HEALTH PLAN THIRD-PARTY PAYOR CLASS MEMBER ONLY," in addition to the other information requested by this Claim Form.

If you are an authorized agent of one or more TPP Class Members, you must provide the information requested in "Section B – AUTHORIZED AGENT ONLY," in addition to the other information requested by this Claim Form. **Do not submit a Claim Form on behalf of any other TPP Class Member unless that TPP Class Member provided you with prior written authorization to submit this Claim Form. If any conflicts arise that require resolution, you may be required to provide such written authority to the Claims Administrator.**

If you are submitting a Claim Form only as an authorized agent of one or more TPP Class Members, you may submit a separate Claim Form for each TPP Class Member OR you may submit one Claim Form for all such TPP Class Members, so long as you provide the information required for each TPP Class Member on whose behalf you are submitting this Claim Form.

If you are submitting Claim Forms on both your own behalf as a TPP Class Member AND as an authorized agent on behalf of one or more TPP Class Members, you should submit one Claim Form for yourself, completing Section A, and another Claim Form or Claim Forms as an authorized agent for the other TPP Class Member(s), completing Section B.

You can submit your Claim Form by mail or electronically on the Settlement website (www.EffexorXRIndirectSettlement.com). You may need to provide certain requested documents to substantiate your claim.

If you did not already submit a completed Claim Form in connection with the Wyeth Settlement, or you do not complete and submit your Claim Form postmarked (if mailed) or received (if submitted online) by **July 17, 2025**, you will not receive a payment from the Teva Settlement. Submitting a Claim Form does not guarantee you will receive payment from the Teva Settlement. If the Claims Administrator rejects or reduces your Claim, you may follow the dispute resolution process described on pages 6-7.

**CLAIM INFORMATION AND DOCUMENTATION REQUIREMENTS**

Please provide information to support your Claim of membership in the Class in the Teva Settlement, which for TPPs is defined as follows:

All entities in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and Wisconsin (the "Class States") that purchased, paid, and/or provided reimbursement for Effexor XR or AB-rated generic versions of Effexor XR for consumption by their members, employees, insureds, participants, or beneficiaries, from June 14, 2008 through May 31, 2011 (the "Class Period"). For purposes of the Class definition, persons or entities "purchased" Effexor XR or its generic versions if they paid or reimbursed some or all of the purchase price. An entity is considered to be "in" a given Class State if a purchase took place in that Class State (*i.e.*, if a person for whom the entity purchased, paid, or provided reimbursement for Effexor XR or an AB-rated generic version of Effexor XR purchased the drug in a pharmacy, or received the drug by mail-order prescription, in that Class State).

The Class **does not include** the following entities:

a) Wyeth, Inc.; Wyeth—a/k/a Wyeth LLC, f/k/a Wyeth, Inc., f/k/a American Home Products; Wyeth Pharmaceuticals, Inc.; Wyeth-Whitehall Pharmaceuticals; Wyeth Pharmaceuticals Company (collectively, "Wyeth"); Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd. (collectively, "Teva"); and their respective subsidiaries and affiliates;

b) State and local governments to the extent their claims may be asserted under applicable state law only by the state Attorney General, or are otherwise prohibited by applicable law from being asserted by private counsel on a contingent fee basis;

c) All entities that purchased Effexor XR or its generic equivalent for purposes of resale or directly from Wyeth, Teva, or their affiliates;

d) Fully insured health plans (*i.e.*, plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

e) Pharmaceutical benefit managers; and

f) Entities who excluded themselves from (or opted out of) the Class in the Teva Settlement.

The following information should be provided to support your claim as a TPP Class Member:

a) Name of TPP Class Member;

b) NDC Number (the Settlement website provides a list of the NDCs the Claims Administrator will accept) – *e.g.*, 00000-0000-00; or Drug Name – *e.g.*, extended-release venlafaxine hydrochloride;

c) Fill Date or Date of Purchase – *e.g.*, 06/01/2012;

d) Location (State) of Purchase – *e.g.*, CA;

e) Location (State) of insured or beneficiary; and

f) Amount Paid by TPP net of co-pays, deductibles, and co-insurance – *e.g.*, $20.00.

If you are submitting a Claim Form on behalf of multiple TPP Class Members, also provide the following information for each purchase or reimbursement:

g) Plan or Group Name; and

h) Plan or Group FEIN – provide group number for each transaction.

An exemplar spreadsheet containing these categories and a list of applicable NDC Numbers can be downloaded from the Settlement website, www.EffexorXRIndirectSettlement.com. Please use this format if possible, and provide the electronic data in Microsoft Excel, ASCII flat file pipe "|", tab-delimited, or fixed-width format.

Data and/or information demonstrating membership in the class is mandatory. Transaction data is mandatory for claims of

$300,000 or more, but the Claims Administrator may also require transaction data for claims of less than $300,000, so keep related transaction data and any other documentation supporting your claim in case the Claims Administrator requests it later. If your claim is for less than $300,000, you should still provide the transaction data with your claim submission if you can. If, after an audit of your claim, the Claims Administrator still has questions about your claim and you have not provided sufficient substantiation of your claim, the Claims Administrator may reject your claim.

Please contact the Claims Administrator at 1-877-933-2882 with any questions about the required claims information or documentation.  Please do not contact the Court concerning these issues.

<table>
<tr><td>

**MUST BE POSTMARKED ON OR BEFORE, OR SUBMITTED ONLINE BY, JULY 17, 2025**

</td><td>

*In re Effexor XR Antitrust Litigation Indirect Purchaser Settlement*

</td></tr>
</table>

## THIRD-PARTY PAYOR CLAIM FORM

Use Blue or Black Ink Only

**Attention: This form should only be filled out on behalf of a <u>Third-Party Payor</u> (or its <u>authorized agent</u>) and only if you *did not* already file a claim in connection with the Wyeth Settlement.** If you are a Consumer who did not already file a claim in connection with the Wyeth Settlement, please fill out the Consumer Claim Form, available at www.EffexorXRIndirectSettlement.com.

<span style="background:black"> </span>

- Complete Section A only if you are filing as an individual TPP Class Member.
- Complete Section B only if you are an authorized agent filing on behalf of one or more TPP Class Members.

### Section A: Company or Health Plan Class Member Only

Company or Health Plan Name

_____

Contact Name

_____

Address 1

_____

Address 2                                                          Floor/Suite

_____            _____

City                                  State            Zip Code

_____      _____      _____

Area Code - Telephone Number                  Tax Identification Number

_____            _____

Email Address

_____

List other names by which your company or health plan has been known or other Federal Employer Identification Numbers ("FEINs") it has used since June 14, 2008.

_____

☐ Health Insurance Company/HMO          ☐ Self-Insured Employee Health or Pharmacy Benefit Plan

☐ Self-Insured Health & Welfare Fund

☐ Other (Explain): _____

**Section B: Authorized Agent Only**

As an authorized agent, please check how your relationship with the TPP Class Member is best described. (You must provide documents demonstrating this relationship.)

☐ Third-Party Administrator or Administrative Services Only Provider

☐ Pharmacy Benefits Manager

☐ Other (Explain): _____

Authorized Agent's Company Name
_____

Contact Name
_____

Address
_____    Floor/Suite
                                                  _____

City                                State          Zip Code
_____    _____    _____

Area Code - Telephone Number                Authorized Agent's Tax Identification Number
_____              _____

Email Address
_____

Please list the name and FEIN of every TPP Class Member (*i.e.*, company or health plan) for which you were authorized to submit this Claim Form. (Attach additional sheets to this Claim Form as needed.) Alternatively, you may submit the requested list of TPP Class Member names and FEINs in an electronic format, such as Excel or a tab-delimited text file. Please contact the Claims Administrator to determine which formats are acceptable.

| TPP CLASS MEMBER'S NAME | TPP CLASS MEMBER'S FEIN |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

## Section C: Purchase Information

Please type or print in the box below, the total amount, from June 14, 2008 through May 31, 2011, that you paid or reimbursed for Effexor XR or AB-rated generic versions of Effexor XR, for consumption by your members, employees, insureds, participants, or beneficiaries, where the person(s) purchased the drug in a pharmacy, or received Effexor XR or AB-rated generic versions of Effexor XR by mail-order prescription, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, West Virginia, and/or Wisconsin.

Please note: For retail purchases, the State of purchase is the State where the pharmacy is physically located. If any purchases were made by mail order, the State to which the prescription was sent is considered the place of purchase. For example, if Effexor XR or generic Effexor XR was purchased by mail order and the prescription was sent to Arizona, Arizona would be considered the place of purchase for that transaction and the purchase would be eligible for a recovery. On the other hand, if Effexor XR or generic Effexor XR was purchased by mail order and the prescription was sent to South Carolina, that transaction would not be eligible for a recovery because the place of purchase would be considered South Carolina, which is not one of the Class States covered by the Settlement.

If you are an authorized agent completing this Claim on behalf of more than one TPP Class Member, enter the total amount paid by all the TPP Class Members included in this Claim. You must also provide the information required for each TPP Class Member on whose behalf you are submitting this Claim Form. An exemplar spreadsheet containing the required categories of information can be downloaded from the Settlement website, www.EffexorXRIndirectSettlement.com.

Do not submit a Claim Form for or on behalf of any of these entities:

    a)   Wyeth, Teva, and their respective subsidiaries and affiliates;

    b)   State and local governments to the extent their claims may be asserted under applicable state law only by the state Attorney General, or are otherwise prohibited by applicable law from being asserted by private counsel on a contingent fee basis;

    c)   All entities that purchased Effexor XR or its generic equivalent for purposes of resale or directly from Wyeth, Teva, or their affiliates;

    d)   Fully insured health plans (*i.e.*, plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

    e)   Pharmaceutical benefit managers; and

    f)   Any entity that excluded themselves from (or opted out of) the Class in the Teva Settlement.

| | |
|---|---|
| Total amount (net of co-pays, deductibles, and co-insurance) you paid or reimbursed for **Effexor XR** and/or **its AB-rated generic version(s)**, in the Class States, from **June 14, 2008 through May 31, 2011,** for consumption by your members, employees, insureds, participants, or beneficiaries: | $ |

☐   Check this box and sign the certification in Section E to confirm that the Claimant indicated in Section A is a TPP Class Member and none of the exclusion criteria above is applicable. If any of the exclusion criteria is applicable to the Claimant, the Claims Administrator may reject the Claim.

## Section D: Proof of Payment and Disputes Regarding Claim Amounts

Please provide as much of the information requested above in the "CLAIM INFORMATION AND DOCUMENTATION REQUIREMENTS" section as possible.

Transaction data supporting claims is **mandatory** for claims of $300,000 or more, but the Claims Administrator may also require transaction data for claims of less than $300,000, so please keep related transaction data and any other documentation supporting your claim (*e.g.*, invoices) in case the Claims Administrator requests it later. If, after an audit of your claim, the Claims Administrator still has questions about your claim and you have not provided sufficient substantiation of your claim, the Claims Administrator may reject your claim. The business records utilized to establish the list of transactions claimed may be requested during the review process; please maintain this information.

If the Claims Administrator rejects or reduces your claim and you believe the rejection or reduction is in error, you may contact the Claims Administrator to request further review. If the dispute concerning your claim cannot be resolved by the Claims Administrator and Class Counsel, you may ask the Court to review your claim.

To request Court review, you must send the Claims Administrator a signed written statement (a) stating your reasons for contesting the rejection or payment determination regarding your claim and (b) specifically stating that you "request that the Court review the determination regarding this claim." You must include all documentation supporting your argument(s). The Claims Administrator and Class Counsel will present the dispute to the Court for review, which may include public filing with the Court of your claim and the supporting documentation. Please note: Court review should only be sought if you disagree with the Claims Administrator's determination regarding your claim.

## Section E: Certification

By signing below, I hereby swear and affirm that (1) I have read and am familiar with the contents of the instructions accompanying this Claim Form; (2) the information I provided in this Claim Form and in any documents I have attached are true, correct, and complete to the best of my knowledge; and (3) I have provided all the information requested above to the extent I have it.

I further certify that I, or the TPP Class Member(s) I represent:

a) am/is/are an entity that purchased, paid for, or reimbursed some or all of the purchase price of Effexor XR or AB-rated generic versions of Effexor XR for consumption by my/its/their members, employees, insureds, participants, or beneficiaries, in one or more of the Class States, from June 14, 2008 through May 31, 2011; and

b) am/is/are not one of the following:

   i.)    Wyeth, Teva, and their respective subsidiaries and affiliates;

   ii.)   State and local governments to the extent their claims may be asserted under applicable state law only by the state Attorney General, or are otherwise prohibited by applicable law from being asserted by private counsel on a contingent fee basis;

   iii.)  Entities that purchased Effexor XR or its generic equivalent for purposes of resale or directly from Wyeth, Teva, or their affiliates;

   iv.)   Fully insured health plans (*i.e.*, plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members); or

   v.)    Pharmaceutical benefit managers.

I further certify that neither I, nor the TPP Class Member(s) I represent, asked to be excluded ("opted out") from the Class in the Teva Settlement.

I further certify that I, and the TPP Class Member(s) I represent, have read and are familiar with the releases stated in Paragraph 12 of the Settlement Agreement. The releases in that Paragraph provide as follows:

a)  Upon the occurrence of the Effective Date as defined in Paragraph 6 hereof, and in consideration for the Settlement Fund Amount described in this Settlement Agreement, Indirect Purchaser Plaintiffs and the Indirect Purchaser Class—except those who requested exclusion from the Indirect Purchaser Class and whose request was approved by the Court—on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives (the "Releasing Parties"), shall release and forever discharge, and covenant not to sue Teva and its respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers, directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys, and any of their legal representatives (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing) (the "Released Parties"), with respect to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions, prior to the date of preliminary approval of this Settlement Agreement, (a) alleged, or which reasonably could have been alleged, in the Indirect Purchaser Class Action concerning the alleged anticompetitive scheme to prevent and delay approval and market entry of AB-rated generic equivalents of Effexor XR, or (b) concerning end-payor purchases of Effexor XR and/or its AB-rated generic equivalents in the Class States and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common-law doctrine relating to antitrust or consumer protection (collectively, the "Released Claims").  Upon the Effective Date, the Releasing Parties will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against the Released Parties.

b)  In addition, Indirect Purchaser Plaintiffs, on behalf of themselves and all other Releasing Parties, hereby expressly waive, release, and forever discharge, upon the Settlement becoming final, any provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party; or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  The Releasing Parties may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 12, but each Releasing Party hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

c) Reservation of Claims.  The Releasing Parties intend by this Settlement Agreement to release only Teva and the Released Parties with respect to the Released Claims.  The Releasing Parties specifically do not intend this Settlement Agreement, or any part hereof or any other aspect of the proposed Settlement Agreement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, company, or corporation whatsoever, including Wyeth.  The release set forth in this Paragraph 12 is not intended to and shall not release any claims other than the Released Claims.

d) This Settlement is not intended to and does not release claims arising in the ordinary course of business between the Releasing Parties and the Released Parties that are unrelated to the allegations in the Indirect Purchaser Class Action, such as claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury.

To the extent I was authorized to submit this Claim Form on behalf of one or more TPP Class Members and accordingly am submitting this Claim Form as an authorized agent, and to the extent I have been authorized to receive on behalf of the TPP Class Member(s) any and all amounts from the Settlement that may be allocated to them, I certify that such authority has been properly vested in me in writing, that I can and will submit such written authorization to the Claims Administrator if any conflicts arise that require resolution, and that I will fulfill all duties I may owe the TPP Class Member(s).  If amounts from the Settlement are distributed to me, and a TPP Class Member later claims I did not have the authority to claim and/or receive such amounts on its behalf, I and/or my employer will hold the Class, Class Counsel, and the Claims Administrator harmless with respect to any claims made by the TPP Class Member.

I/We hereby submit to the jurisdiction of the United States District Court for the District of New Jersey for all purposes connected with this Claim Form, including resolving disputes related to this Claim Form. I/We acknowledge that if I/we provided any false information or representations related to this claim, I/we may be subject to sanctions, including criminal prosecution.  I agree to supplement the Claim Form by furnishing documentary backup for the information provided herein upon request of the Claims Administrator.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge and that this Claim Form was executed this _____ day of _____, 2025.**

Signature

Position/Title

Print Name

Date

Mail your completed Claim Form, along with any supporting documents as described in the CLAIM INFORMATION AND DOCUMENTATION REQUIREMENTS on pages 2-3 above, to the address below, postmarked no later than **July 17, 2025**, or submit the information online at the website below by that date:

Effexor XR Indirect Purchaser Settlement
c/o A.B. Data, Ltd.
P.O. Box 173005
Milwaukee, WI 53217
Toll-Free Telephone: 1-877-933-2882
Website: www.EffexorXRIndirectSettlement.com

### REMINDER CHECKLIST:

1. Please complete and sign the above Claim Form or complete the online Claim Form.  Attach or upload documents supporting your claim.
2. Keep a copy of your Claim Form and supporting documents for your records.
3. If you would also like a receipt acknowledging your Claim Form was received, please complete the form online or mail this form via Certified Mail, Return Receipt Requested.

If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims Administrator at info@EffexorXRIndirectSettlement.com or via U.S. Mail at the address above.

# EXHIBIT G

## EXHIBIT G – REQUESTS FOR EXCLUSION

Citation Gas & Oil, Inc.