**COHN LIFLAND PEARLMAN**
  **HERRMANN & KNOPF LLP**
Matthew F. Gately
mfg@njlawfirm.com
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
Fax:  (201) 845-9423

*(additional counsel on signature page)*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: EFFEXOR XR ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*All Direct Purchaser Class Actions* | **Master Docket No. 3:11-cv-05479 (ZNQ/JBD)** |

### DIRECT PURCHASER CLASS PLAINTIFFS'
### MEMORANDUM IN SUPPORT OF MOTION FOR CLASS
### CERTIFICATION
### (FILED UNDER SEAL)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   FACTS .....................................................................................3

      A.    *Wyeth v. Teva* Effexor XR Patent Litigation.........................3

      B.    The Wyeth-Teva Reverse Payment Agreement....................5

            1.    Reverse Payment #1: No-AG Promise .......................5

            2.    Reverse Payment #2: Effexor IR License Payment...................6

            3.    Reverse Payment #3: Canadian XR License Payment ...............7

      C.    The Pay-for-Delay Reverse Payment Agreement Substantially Delayed Generic Effexor XR Competition ...........................8

      D.    Facts From Similar Cases....................................................9

III.  ARGUMENT.............................................................................16

      A.    DPPs Satisfy the Requirements of Rule 23(a) ....................16

            1.    Rule 23(a)(1): Joinder is Impracticable ....................16

            2.    Rule 23(a)(2): There Are Many Common Questions..............28

            3.    Rule 23(a)(3): Plaintiffs' Claims are Typical of the Class .......28

            4.    Rule 23(a)(4): DPPs and Class Counsel Are Adequate...........29

      B.    DPPs Satisfy Rule 23(b)(3)'s Predominance Requirement ...............31

            1.    Common Issues Predominate With Respect to Teva's Violation of the Antitrust Laws .................................33

            2.    Common Issues Predominate With Respect to Injury.............34

            3.    Common Issues Predominate With Respect to Damages........37

      C.    DPPs Satisfy Rule 23(b)(3)'s Superiority Requirement ....................40

IV.   CONCLUSION...........................................................................40

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. Ollie's Bargain Outlet, Inc.*,
    37 F.4th 890 (3d Cir. 2022)...................................................................... 17

*Am. Sales Co. Inc. v. SmithKline Beecham Corp.*,
    274 F.R.D. 127 (E.D. Pa. 2010)........................................................... 2, 33

*Am. Sales Co., LLC v. Pfizer, Inc.*,
    2017 WL 3669604 (E.D. Va. July 28, 2017)................................. 2, 18, 29

*Am. Sales Co., LLC v. Pfizer, Inc.*,
    2017 WL 3669097 (E.D. Va. Aug. 24, 2017)..................................... 2

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................ 27, 31, 40

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)......................................................... 31, 32

*Bergen Drug Co. v. Parke, Davis & Co.*,
    307 F.2d 725 (3d Cir. 1962)................................................. 24

*Bing Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018)............................................. 17, 28

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015)................................................ 26

*Carr v. Flowers Foods, Inc.*,
    2019 WL 2027299 (E.D. Pa. May 7, 2019)............................ 17

*Castro v. Sanofi Pasteur Inc.*,
    134 F. Supp. 3d 820 (D.N.J. 2015)............................... 28, 29, 31, 34

*Chimenti v. Wetzel*,
    2018 WL 2388665 (E.D. Pa. May 24, 2018)......................... 29

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)............................................................ 38

*Eastman Kodak Co. of New York v. S. Photo Materials Co.*,
273 U.S. 359 (1927) ............................................................................ 38

*FTC v. Actavis, Inc.*,
570 U.S. 136 (2013) .............................................................................. 5

*Gordon v. Lewistown Hosp.*,
423 F.3d 184 (3d Cir. 2005) ............................................................. 33

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................... 32

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968) ........................................................................... 34

*Hawaii v. Standard Oil Co.*,
405 U.S. 251 (1972) ........................................................................... 27

*Ill. Brick Co. v. Ill.*,
431 U.S. 720 (1977) ........................................................................... 24

*In re AndroGel Antitrust Litig. (No. II)*, No.,
2018 WL 2984873 (N.D. Ga. June 14, 2018) ............................... 8, 11

*In re Buspirone Pat. Litig.*,
210 F.R.D. 43 (S.D.N.Y. 2002) ........................................................ 31

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 297 (E.D. Mich. 2001) .................................................. 39

*In re EpiPen Direct Purchaser Litig.*,
2024 WL 3256475 (D. Minn. July 1, 2024) ..................................... 15

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
545 F. Supp. 3d 922 (D. Kan. 2021) .................................................. 8

*In re Generic Pharms. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) .............................................. 33

*In re Generic Pharms. Pricing Antitrust Litig.*,
2025 WL 754546 (E.D. Pa. Mar. 7, 2025).................... 2, 17, 23, 25, 30

*In re Glumetza Antitrust Litig.*,
    336 F.R.D. 468 (N.D. Cal. 2020) .......................................................... 2, 31, 36, 37

*In re Glumetza Antitrust Litig.*,
    2021 WL 3773621 (N.D. Cal. Aug. 25, 2021) ..................................................... 8

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) .................................................................... 34

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012) .................................................................... 31

*In re Intuniv Antitrust Litig.*,
    2019 WL 4645502 (D. Mass. Sept. 24, 2019) ..................................................... 31

*In re K-Dur Antitrust Litig.*,
    2008 WL 2699390 (D.N.J. Apr. 14, 2008) ................................................... Passim

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012) ................................................................ Passim

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    957 F.3d 184 (3d Cir. 2020) .................................................................. 34, 37, 38

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    2021 WL 2349828 (D.N.J. June 7, 2021) ........................................................ 37

*In re Lidoderm Antitrust Litig.*,
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ................................................ Passim

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) .................................................................... 34

*In re Lipitor and Effexor Antitrust Litig.*,
    868 F.3d 231 (3d Cir. 2017) ..................................................................... 5

*In re Lipitor Antitrust Litig.*,
    2024 WL 2866650 (D.N.J. June 6, 2024) ........................................... 9, 25, 26, 27

*In re Loestrin 24 Fe Antitrust Litig.*,
    2019 WL 3214257 (D.R.I. July 2, 2019) ..................................................... Passim

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016)......................................................................Passim

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   319 F.R.D. 158 (E.D. Pa. 2016) .......................................................... 39

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   2017 WL 696983 (E.D. Pa. Feb. 22, 2017) .......................................... 39

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018)......................................................Passim

*In re Neurontin Antitrust Litig.*,
   2011 WL 286118 (D.N.J. Jan. 25, 2011) .......................................... 2, 28, 29, 39

*In re Nexium Antitrust Litig.*,
   296 F.R.D. 47 (D. Mass. 2013) ........................................................ 2, 20, 39

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)............................................................... 17

*In re Niaspan Antitrust Litig.*,
   67 F.4th 118 (3d Cir. 2023)............................................................... 25

*In re Niaspan Antitrust Litig.*,
   397 F. Supp. 3d 668 (E.D. Pa. 2019) ...................................................Passim

*In re Nifedipine Antitrust Litig.*,
   246 F.R.D. 365 (D.D.C. 2007).............................................................. 39

*In re Opana ER Antitrust Litig.*,
   2021 WL 3627733 (N.D. Ill. June 4, 2021) ...................................... 2, 20, 31, 36

*In re Prograf Antitrust Litig.*,
   2013 WL 2395083 (D. Mass. Apr. 23, 2013) ....................................... 30

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998).............................................................. 16

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021) .......................................................... 2

*In re Seroquel XR Antitrust Litig.*,
   2024 WL 1183524 (D. Del. Feb. 6, 2024) ....................................................... 1, 25

*In re Solodyn Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017)................................................Passim

*In re Solodyn Antitrust Litig.*,
   2018 WL 563144 (D. Mass. 2018) ...................................................................... 8

*In re Suboxone Antitrust Litig.*,
   421 F. Supp. 3d 12 (E.D. Pa. 2019) ............................................................Passim

*In re Suboxone Antirust Litig.*,
   967 F.3d 264 (3d Cir. 2020).........................................................................Passim

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
   2008 WL 1946848 (E.D. Pa. May 2, 2008) .............................................. 2, 29, 30

*In re Wellbutrin XL Antitrust Litig.*,
   2011 WL 3563385 (E.D. Pa. Aug. 11, 2011) ...............................................Passim

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2021 WL 3704727 (E.D. Va. Aug. 20, 2021)..................................................... 37

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   342 F.R.D. 95 (E.D. Va. 2022) ......................................................................... 11

*King Drug Co. of Florence v. Smithkline Beecham*,
   309 F.R.D. 195 (E.D. Pa. 2015)................................................................... 10, 36

*King Drug Co. of Florence v. Smithkline Beecham*,
   791 F.3d 388 (3d Cir. 2015).......................................................................... 5, 12

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   2017 WL 3705715 (E.D. Pa. Aug. 28, 2017) ...................................................... 10

*Mielo v. Steak 'n Shake Operations, Inc.*,
   897 F.3d 467 (3d Cir. 2018)............................................................................ 17

*Muse v. Holloway Credit Sols., LLC*,
   337 F.R.D. 80 (E.D. Pa. 2020) ........................................................................ 23

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008) ........................................................................ 28

*New Directions Treatment Servs. v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007) ............................................................................. 29

*Ortez v. Michael P. Morton, P.A.*,
    2019 WL 1417156 (D. Del. Mar. 29, 2019) ...................................................... 22

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ......................................................................................... 26

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ...................................................................... 28, 32

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................................. 17

*Rochester Drug Co-Operative, Inc. v. Braintree*,
    796 F. Supp. 2d 560 (D. Del. 2011) .................................................................. 24

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ......................................................................................... 38

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................. 16

*Teva Pharms. USA, Inc. v. Abbott Lab'ys*,
    252 F.R.D. 213 (D. Del. 2008) ................................................................. Passim

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................. 32, 39

*United Food & Commercial Workers Local 1776 & Partic. Emp'rs Health & Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) .............................................................. 8

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
    2023 WL 2314911 (E.D. Pa. Feb. 28, 2023) ....................................... 14, 25, 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 28

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ................................................................................. 34

**RULES**

Fed. R. Civ. P. 23 ................................................................................ Passim

**OTHER AUTHORITIES**

7AA Charles Alan Wright & Arthur R. Miller, Federal Practice
   and Procedure § 1781 (3d ed. 2025) ..................................................... 39

# I.    INTRODUCTION

Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc. d/b/a

SAJ Distributors, and Uniondale Chemists, Inc. ("Plaintiffs" or "DPPs") respectfully

move for certification of the "Class" or "Direct Purchaser Class", defined as:

> All persons or entities in the United States and its territories who purchased Effexor XR and/or AB-rated generic versions of Effexor XR directly from Wyeth or Teva[1] at any time during the period June 14, 2008 through and until May 31, 2011 (the "Class Period").

> Excluded from the Direct Purchaser Class are Wyeth and Teva and their officers, directors, management, employees, subsidiaries, or affiliates, all governmental entities, and all persons or entities that purchased Effexor XR directly from Wyeth during the Class Period that did not also purchase generic Effexor XR directly.

Conduct that delays the market entry of generic drugs inflicts predictable,

marketwide harm on direct purchasers in the form of overcharges. Accordingly,

numerous federal courts have certified similar classes of direct purchasers in similar

cases involving alleged impaired generic competition, including two decisions

affirmed by the Third Circuit (*Suboxone* and *K-Dur*) and seven others from district

courts within this Circuit.[2] This case likewise meets all requirements of Rule 23(a)

---

[1] "Wyeth" means Wyeth LLC, Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals LLC, and Wyeth Pharmaceuticals Company, collectively or individually. "Teva" means Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd., collectively or individually.

[2] *E.g.*, *In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd*, 967 F.3d 264 (3d Cir. 2020); *In re K-Dur Antitrust Litig.*, 2008 WL 2699390 (D.N.J. Apr. 14, 2008), *aff'd*, 686 F.3d 197 (3d Cir. 2012); *In re Seroquel XR Antitrust Litig.*, 2024 WL 1183524 (D. Del. Feb. 6, 2024); Ex. 17, *In re HIV Antitrust Litig.*, No. 19-

1

and 23(b)(3); the case raises issues common to the Class, which will be proven with

exclusively or predominantly Class-wide evidence and methodologies, including:

    a) whether Teva and Wyeth entered into an illegal contract, combination, conspiracy and/or other agreement in restraint of trade;

    b) whether Teva engaged in unlawful conduct causing antitrust impact in the form of Class members paying higher prices than they otherwise would have;

    c) whether Teva engaged in unlawful conduct that substantially affected interstate commerce; and

    d) whether damages in the form of overcharges can be readily and reliably measured and the quantum of aggregate overcharge damages to the Class.[3]

---

cv-02573, ECF 1452-7 (N.D. Cal. Sept. 27, 2022); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. 2021); *In re Opana ER Antitrust Litig.*, 2021 WL 3627733 (N.D. Ill. June 4, 2021), *remanded on other grounds*, 2021 WL 4047034 (7th Cir. July 13, 2021); *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468 (N.D. Cal. 2020); *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668 (E.D. Pa. 2019); *In re Loestrin 24 Fe Antitrust Litig.*, 2019 WL 3214257 (D.R.I. July 2, 2019); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018); *In re Solodyn Antitrust Litig.*, 2017 WL 4621777 (D. Mass. Oct. 16, 2017); *Am. Sales Co. v. Pfizer, Inc.*, 2017 WL 3669604 (E.D. Va. July 28, 2017), *adopted*, 2017 WL 3669097 (E.D. Va. Aug. 24, 2017) ("*Celebrex*"); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium Antitrust Litig.*, 296 F.R.D. 47 (D. Mass. 2013); *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385 (E.D. Pa. Aug. 11, 2011); *In re Neurontin Antitrust Litig.*, 2011 WL 286118 (D.N.J. Jan. 25, 2011); *Am. Sales Co. Inc. v. SmithKline Beecham Corp.*, 274 F.R.D. 127 (E.D. Pa. 2010); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 2, 2008); *Teva Pharms. USA, Inc. v. Abbott Lab'ys*, 252 F.R.D. 213 (D. Del. 2008) ("*TriCor*"); *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 754546, at *6 (E.D. Pa. Mar. 7, 2025) (certifying class alleging price fixing among generic manufacturers). All cited exhibits are to the accompanying Gately Certification.

    [3] *See* ECF 287 (2d Am. Compl.) ¶ 404; Proposed Trial Plan, filed herewith.

## II.    FACTS

### A.    *Wyeth v. Teva* Effexor XR Patent Litigation

Effexor XR was a very profitable Wyeth antidepressant drug: Effexor XR net sales rose from $204.7 million in 1998 to approximately $2.7 billion in 2009.[4] Teva was the first generic company to file an application with FDA seeking approval to launch generic Effexor XR.[5] As the first filer, Teva was entitled to 180 days of exclusivity during which the only generic Effexor XR competition it could face was from Wyeth's own authorized generic ("AG") Effexor XR.[6] Teva did not challenge Wyeth's venlafaxine compound patent (and did not seek to enter before the expiration of that patent in June 2008), but certified that Wyeth's other Effexor XR patents were "invalid, unenforceable, or [] not be infringed" by Teva's generic.[7]

Wyeth sued Teva on March 24, 2003 for allegedly infringing certain Wyeth Effexor XR patents (not the compound patent).[8] Judge Martini conducted a *Markman* hearing on August 29, 2005 that went well for Teva; an internal Wyeth email from the day of the hearing stated that Wyeth would need "new [forecast] scenarios based on the negative outcome in today's Teva ruling."[9] Judge Martini

---

[4] Ex. 2, McGuire Rpt. ¶¶ 96, 100; Ex. 1, Leitzinger Rpt. ¶ 19.

[5] Ex. 7, TEVA_EFFEX_0000001-267 at 017; Ex. 2, McGuire Rpt. ¶¶ 101-02.

[6] Ex. 2, McGuire Rpt. ¶¶ 30, 32, 101-02.

[7] Ex. 7, TEVA_EFFEX_0000001-267 at 029 (12/10/02 Teva patent certification); Ex. 5, Hrubiec Rpt. ¶ 56 & n.47.

[8] Ex. 2, McGuire Rpt. ¶¶ 101-02; Ex. 5, Hrubiec Rpt. ¶ 58.

[9] Ex. 2, McGuire Rpt. ¶ 103; Ex. 15, WYEFFAT2907466 (8/29/05 Wyeth email).

issued an Opinion on September 6, 2005 adopting the narrow claim construction sought by Teva, (a) concluding that the term "extended release formulation" as used in the patents was limited to the specific ingredients mentioned in the patent specifications; and (b) rejecting Wyeth's broad construction that would include all extended release venlafaxine formulations, including Teva's formulation.[10] On October 6, 2005, the court rejected Wyeth's request for re-argument.[11] By October 18, 2005, Wyeth and Teva had executed binding term sheets for the "Wyeth-Teva Agreement."[12] The Agreement includes the reverse payments DPPs challenge.

At the time of the Agreement, "a reasonable and competent patent attorney would have concluded and advised his or her client that Teva had at least a 70-80% chance of prevailing in the Wyeth-Teva patent litigation through trial and appeal."[13] Teva had a history of launching "at-risk" and, before the Agreement, projected it would receive approval and launch generic Effexor XR in June 2008, upon expiration of the unchallenged venlafaxine compound patent. This would have been an "at-risk" launch because the Wyeth-Teva patent litigation likely would not have

---

[10] Ex. 10, TEVA_EFFEX_0279317; Ex. 5, Hrubiec Rpt. ¶¶ 65-70.

[11] Ex. 13, TEVA_EFFEX_0771673-75.

[12] Ex. 11, TEVA_EFFEX_0619285-308 & Ex. 16, WYEFFAT04718483.00001-12 (binding term sheets (10/18/05)); Ex. 14, WYEFFAT2405314 at 386-523 (Settlement and Release Agreement with U.S. & Canada License Agreements) (collectively, "Wyeth-Teva Agreement" or "Agreement"); McGuire Rpt. ¶¶ 104-10.

[13] Ex. 5, Hrubiec Rpt. ¶ 31.b.

been concluded through appeals by June 2008.[14]

### B.    The Wyeth-Teva Reverse Payment Agreement

Wyeth and Teva conspired in violation of the antitrust laws through the

Wyeth-Teva Agreement. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██    ████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

---

[14] Ex. 2, McGuire Rpt. ¶ 337 & n.581; Ex. 5, Hrubiec Rpt. ¶ 32; Ex. 9, TEVA_EFFEX_0039706 at 708 (6/13/08 anticipated launch); Ex. 8, TEVA_EFFEX_0039685 at 687 (same).

[15] Ex. 2, McGuire Rpt. ¶¶ 10, 255, §VIII; Ex. 14, WYEFFAT2405314 at 444, 448.

[16] Ex. 1, Leitzinger Rpt. ¶¶ 8.c, 43-55.

[17] Ex. 2, McGuire Rpt. ¶¶ 230-32; Ex. 14, WYEFFAT2405314 at 448, 453-54.

[18] *In re Lipitor and Effexor Antitrust Litig.*, 868 F.3d 231, 257-62 (3d Cir. 2017); *King Drug Co. of Florence v. Smithkline Beecham*, 791 F.3d 388, 405 (3d Cir. 2015).



[19] *See* Ex. 4, Allen Rpt. ¶ 23; Ex. 2, McGuire Rpt. ¶¶ 220-29.
[20] Ex. 2, McGuire Rpt. ¶¶ 75, 78-84, 260-78, 294-305.
[21] *Id*. ¶¶ 235, 238-40.
[22]

[23] Ex. 2, McGuire Rpt. ¶¶ 117-18, 121.
[24] *Id*. ¶ 118; Ex. 14, WYEFFAT2405314-523 at 452-453.



---

[25] Ex. 2, McGuire Rpt. ¶¶ 246 & Tbl. 9, 275, Attach. F.6. The cost to Wyeth was higher because the lost brand sales were higher priced than the generic sales.

[26] *Id*. ¶¶ 10, 119-20, 250.

[27] 

[28] Ex. 2, McGuire Rpt. ¶ 252 & Tbl. 11.

[29] *Id*. ¶¶ 276-77, Attach. F.3 (subtract Total in row [7] from Total in row [3]).

███████████████████████████████████████████

### C. The Pay-for-Delay Reverse Payment Agreement Substantially Delayed Generic Effexor XR Competition

Absent the reverse payments, rational companies in the positions of Wyeth and Teva still would have been incentivized to settle, and would have reached an agreement based on the merits of the patents and the claims in dispute (and not including any unlawful payments). According to DPPs' economic expert Dr. McGuire, such a no-payment agreement would have permitted Teva to launch generic Effexor XR on or around May 15, 2009.[30] DPPs' other experts opined that Teva would have obtained FDA approval by and launched Effexor XR on or around May 15, 2009.[31] Wyeth would have launched AG Effexor XR when Teva launched.[32] In addition, Mylan, another company that sought to sell generic Effexor XR, would have been able to obtain FDA approval and launch its generic Effexor

---

[30] Ex. 2, McGuire Rpt. ¶¶ 365, 368. Courts allow plaintiffs to establish causation through an alternative agreed-upon entry date with no illegal reverse payment (i.e., no antitrust violation) based on economic evidence. *See, e.g.*, *In re Glumetza Antitrust Litig.*, 2021 WL 3773621, at *17-19 (N.D. Cal. Aug. 25, 2021); *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 545 F. Supp. 3d 922, 992-93 (D. Kan. 2021); *In re Solodyn Antitrust Litig., 2018 WL 563144*, at *21-23 (D. Mass. 2018); *United Food & Commercial Workers Local 1776 & Partic. Emp'rs Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1186-90 (N.D. Cal. 2017); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 172-74, 199-202 (S.D.N.Y. 2018); *In re AndroGel Antitrust Litig. (No. II)*, 2018 WL 2984873, at *15-17 (N.D. Ga. June 14, 2018).

[31] Ex. 3, Rivera-Muzzio Rpt. ¶¶ 7, 82-84; Ex. 5, Hrubiec Rpt. ¶¶ 32, 217-29 (Teva would have won patent litigation through appeals by Feb. 2009); Ex. 2, McGuire Rpt. ¶¶ 12-13, 365.

[32] Ex. 2, McGuire Rpt. ¶¶ 13, 220-29, 368; Ex. 4, Allen Rpt. ¶¶ 23, 84-87.

XR eleven months after Teva's launch.[33] As a result of the earlier and increased generic competition, Class members would have paid lower prices.[34]

### D. Facts From Similar Cases Show that Joinder of All Class Members Here is Impracticable

While numerous similar classes have been certified, there are five cases alleging impaired generic drug competition (*Modafinil, AndroGel, Zetia, Lamictal,* and *Value Drug*) where proposed direct purchaser classes were not certified because courts determined that the requirements of Rule 23(a)(1) had not been met. Those five cases all involved proposed classes smaller than the proposed 67-member class here.[35] Even if the Court applies *Modafinil*'s "rigorous analysis" applicable to classes below 40, those five cases show that "a class action would have been a substantially more efficient mechanism of litigating [the] suit than joinder of all parties", and that many pharmaceutical direct purchasers, including many who are absent class members here, lack the ability and motivation to pursue joinder litigation. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 257 (3d Cir. 2016). As detailed in §III.A.1 below, evidence that many Class members would not, as a practical matter, recover if class certification were denied is proof that the

---

[33] Ex. 3, Rivera-Muzzio Rpt. ¶¶ 85-87.

[34] Ex. 1, Leitzinger Rpt. ¶¶ 8.b, 36-42; *infra* § III.B.2.

[35] Courts denied class certification under Rule 23(a)(1) for proposed classes of fewer than 40 members in *Modafinil, AndroGel, Zetia*, and *Lamictal*. Class certification was denied under 23(a)(1) in *In re Lipitor Antitrust Litig.*, 2024 WL 2866650 (D.N.J. June 6, 2024), but *Lipitor* is on appeal in the Third Circuit, so there are no relevant facts regarding joinder actions following denial of class certification.

requirements of Rule 23(a)(1) have been met because joinder of all Class members is impracticable.

On remand from the Third Circuit in *Modafinil*, the district court denied certification of a proposed class of 24-25 members.[36] Some absent class members submitted declarations and testified they would not sue due to the risk of retaliation and, despite a prior class-wide settlement with some defendants for $512 million, 4-5 members did not sue after class certification was denied.[37]

In *King Drug Co. v. Abbott Labs* ("*AndroGel*"), the proposed class included 33 members (4 class representatives and 29 absent class members).[38] After class certification was denied, 13 former class members filed suit[39] in a different jurisdiction (the Eastern District of Pennsylvania) from the class action, and the case

---

[36] *King Drug Co. of Florence, Inc. v. Cephalon, Inc*., 2017 WL 3705715, at *1-2, *7 (E.D. Pa. Aug. 28, 2017) ("*Modafinil*").

[37] *In re Zetia Antitrust Litig*., No. 18-md-02836, ECF 872-6, Tr. 39:22-40:25 (E.D. Va. Feb. 20, 2020) (excerpts of 4/18/2017 *Modafinil* Hrg. Tr. describing *Modafinil* absent class members' declarations and testimony regarding fear of retaliation). *Compare Modafinil*, No. 06-cv-1797 at ECF 1108-1, ¶ 14 (13 joinder plaintiffs, including AmerisourceBergen Corp., a parent company that was not a class member in *Modafinil*), *and Modafinil*, 309 F.R.D. 195, 216 (E.D. Pa. 2015) (8 class representatives), *with Modafinil*, 2017 WL 3705715, at *7 (class of 24 or 25). *See also Modafinil*, No. 06-cv-1797, ECF 795-3, ¶ 8(a) ($512 million settlement) (E.D. Pa.).

[38] *In re AndroGel Antitrust Litig. (No. II)*, No. 09-2084, ECF 1747 at 2 n.1, 5 (N.D. Ga. July 16, 2018).

[39] *King Drug Co. v. Abbott Labs.*, No. 2:19-cv-03565, ECF 1, ¶ 42 (E.D. Pa. Aug. 7, 2019) (listing joinder plaintiffs, including AmerisourceBergen Corp., a parent company that was not a previously an absent class member).

remained in Pennsylvania following denial of defendants' motion to transfer.[40]
Sixteen former class members did not sue despite the court having previously largely
denied defendants' motion for summary judgment.[41] Five years after denial of class
certification, the parties were still in discovery when the case ended.[42]

In *In re Zetia Antitrust Litig.*, the proposed class included 35 members, 3 class
representatives plus 32 former absent class members.[43] Of the 32 former absent class
members, 16 filed joinder complaints after class certification was denied, including
with new counsel; the other 16 did not.[44] Nine of the 16 former *Zetia* class members
that did not join are also absent Class members here.[45] The former *Zetia* class

---

[40] *King Drug Co. v. Abbott Labs.*, No. 2:19-cv-03565, ECF 98 (E.D. Pa. Jan. 6, 2020) (denying motion to transfer).

[41] *In re AndroGel Antitrust Litig. (No. II)*, No. 09-md-02084, 2018 WL 2984873 (N.D. Ga. June 14, 2018).

[42] *King Drug Co. v. Abbott Labs.*, No. 2:19-cv-03565, ECFs 398 (ordering 10/28/2024 fact discovery deadline), 430 (order staying action), 436-438 (stipulations of dismissal against all defendants).

[43] *In re Zetia (Ezetimibe) Antitrust Litig.*, 342 F.R.D. 95 (E.D. Va. 2022) (denying class certification); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-md-02836, ECF 1356-1 (list of putative class members), ECF 1583-1 at 1 (redline of complaint adding joinder plaintiffs, originally listing three named plaintiffs).

[44] *Compare id.*, ECF 1583-1, ¶10(a)-(n) (listing plaintiffs in joinder complaint), *with id.*, ECF 1356-1 (list of class members). Multiple joinder complaints were filed, and the former class members that filed retained six law firms (11 attorneys) not previously involved in the case to represent them. *Compare Burlington Drug Co. v. Merck & Co.*, 2:22-cv-00269, ECF 1 (E.D. Va. June 30, 2022) (joinder complaint) *and Zetia*, 2:18-md-02836, ECF 1642 (E.D. Va. Aug. 3, 2022) (joinder complaint) *with Zetia*, 2:18-md-02836, ECF 315 (E.D. Va. June 27, 2019) (class complaint).

[45] Capital Wholesale, Discount Drug Mart, Dixon Shane / R & S Northeast (R & S Northeast is the assumed name of Dixon-Shane LLC, *see* Ex. 36), DMS

members who filed joinder actions were served with extensive new discovery requests that generated numerous disputes requiring repeated court intervention.[46]

In *In re Lamictal Direct Purchaser Antitrust Litig.*, plaintiffs initially sought to certify a class of 65, 3 class representatives and 62 absent class members.[47] Ultimately, the district court declined to certify a proposed class of 32 class members (including the 3 class representatives), finding it did not satisfy Rule 23(a)(1).[48] Thereafter, only 18 former absent class members filed joinder complaints.[49] Thus,

---

Pharmaceutical, Drogueria Betances, Drugs Unlimited, Henry Schein, Morris & Dickson, and Pharmacy Buying Association. *Compare Zetia*, No. 18-md-02836, ECF 1356-1 (list of putative class members), *with id.*, ECF 1583-1, ¶10 (listing joinder plaintiffs in redline, showing nearly half the class did not sue), and Ex. 1, Leitzinger Rpt. at Ex. 6 (listing *Effexor XR* Class members, excluding from the Class the Retailer Plaintiffs who have already filed individual actions in this case).

[46] *Zetia*, No. 18-md-02836, ECFs 1653 (motion requesting discovery briefing schedule), 1663 (order scheduling briefing), 1665-69 (briefing regarding discovery disputes), 1680-81 (same), 1686 (same), 1667 at 10-11 (joinder plaintiffs served with 21 interrogatories, 18 requests for admission, and 49 requests for production), 1693 at Tr. 127:23-174:2 (8/17/2022 Hrg.), 1709 (objections to court ruling), 1731 (opposition), 1734 (reply).

[47] *See Lamictal*, No. 19-1655, ECF 117 at A578 (3d Cir. Feb. 18, 2020) (list of class members); *Lamictal*, No. 12-995, ECF 543 at 1 (D.N.J. May 20, 2022) (class representatives). *See generally King Drug Co. of Florence*, 791 F.3d at 393.

[48] *Lamictal*, No. 12-995, ECF 553. The members of the 32-member class consisted of purchasers of brand Lamictal (the initially proposed 62-member class also included entities that had purchased only generic Lamictal). *Id.*

[49] *Compare Lamictal*, No. 19-1655, ECF 117 at A578 (3d Cir. Feb. 18, 2020) (original class list), *and Lamictal*, No. 12-995, ECFs 543 at 1 (class representatives), 543-2 (revised class list) (D.N.J. May 20, 2022), *with MLI Rx LLC v. GlaxoSmithKline*, No. 23-cv-429, ECF 1 (E.D. Pa. Feb. 2, 2023) (joinder complaint); *Morris & Dickson v. GlaxoSmithKline*, No. 23-cv-480, ECF 1 (E.D. Pa. Feb. 7, 2023) (joinder complaint); *FWK Holdings, LLC v. GlaxoSmithKline*, No. 23-cv-757,

from the 65-member originally proposed class, 44 of 62 former absent class members did not sue (and 26 of these are Class members here); from the 32-member class for which class certification was ultimately denied under Rule 23(a)(1), 11 of 29 former absent class members did not sue (6 of which are Class members here).[50]

In addition, in *Lamictal*, defendants requested extensive discovery of the joinder plaintiffs,[51] resulting in disputes requiring court intervention and delaying the schedule.[52] Expert discovery is ongoing and the schedule has already been extended.[53] The *Lamictal* defendants recently indicated that they intend to serve expert reports that go beyond the calculation of individual plaintiffs' damages (though merits expert discovery was completed in 2018 in the class action), a dispute

---

ECF 1 (E.D. Pa. Feb. 27, 2023) (joinder complaint). The *Lamictal* joinder plaintiffs filed in a new jurisdiction, creating a dispute over a motion to transfer. *E.g.*, *MLI*, No. 23-cv-429, ECFs 59-60 (granting motion to transfer).

[50] *Compare Lamictal*, No. 19-1655, ECF 117 at A578 (3d Cir. Feb. 18, 2020) (original class list), *and Lamictal*, No. 12-995, ECFs 543 at 1 (class representatives), 543-2 (revised class list) (D.N.J. May 20, 2022), *with MLI Rx LLC v. GlaxoSmithKline*, No. 23-cv-429, ECF 1 (E.D. Pa. Feb. 2, 2023) (joinder complaint); *Morris & Dickson v. GlaxoSmithKline*, No. 23-cv-480, ECF 1 (E.D. Pa. Feb. 7, 2023) (joinder complaint); *FWK Holdings, LLC v. GlaxoSmithKline*, No. 23-cv-757, ECF 1 (E.D. Pa. Feb. 27, 2023) (joinder complaint); *and* Ex. 1, Leitzinger Rpt. at Ex. 6 (listing *Effexor XR* Class members, excluding Retailer Plaintiffs).

[51] *See Lamictal*, No. 12-995, ECF 617-1 at 13 (29 requests for production, 23 interrogatories, and Rule 30(b)(6) notices with 33 topics).

[52] *See id.*, ECFs 592 (extending deadlines), 599 (extending deadline for fact discovery), 607 (discovery disputes briefed), 11/18/2024 Minute Entry for discovery hearing, 618 (ordering in-person meet-and-confer regarding discovery dispute in Newark, New Jersey), 622 (extending deadlines).

[53] *See id.*, ECF 642 (extending deadlines).

that has already required court intervention.[54]

In *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, the proposed class consisted of 49 members (1 class representative and 48 absent class members).[55] Of the 48 absent class members, only 15 filed suit after class certification was denied.[56] Thus, 33 former class members—two-thirds of the proposed class—did not sue at all, and 17 of the 33 former class members that did not sue in *Value Drug* are also absent Class members here.[57] Absent class members with the smallest claims overwhelmingly failed to vindicate their claims—21 of the class members with the smallest claims did not sue,[58] and 14 of these 21 are absent class members here.[59] In

---

[54] *See id.*, ECF 639 (letter raising dispute); 276 (expert discovery closed June 2018); ECF 641 (ordering conference regarding expert report disputes).

[55] *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2023 WL 2314911 (E.D. Pa. Feb. 28, 2023) (denying class certification under Rule 23(a)(1)).

[56] *Compare Value Drug*, No. 21-cv-03500, ECF 724-3 at p.408 of 879 (class members), *with* ECF 905, ¶ 1 (complaint adding joinder plaintiffs).

[57] Auburn Pharmaceuticals, Capital Wholesale, Cesar Castillo, Drogueria Betances, Express Scripts, Genetco, Humana, KPH Healthcare, Pharmacy Buying Association, QK Healthcare, Quality Care Products, R & S Northeast, Richie Pharmacal, Schnucks, Thrifty White, Top Rx, and Walmart. *Compare Value Drug*, No. 21-cv-03500, ECF 724-3 at p.408 of 879 (class members) *with* ECF 905, ¶ 1 (joinder complaint) *and* Ex. 1, Leitzinger Rpt. at Ex. 6.

[58] *Compare Value Drug*, No. 21-cv-03500, ECF 724-3 at p.409 of 879 (listing class members' damages) *with* ECF 905, ¶ 1 (joinder complaint).

[59] Cesar Castillo, Quality Care Products, QK Healthcare, Genetco, Richie Pharmacal, Auburn Pharmaceutical, Capital Wholesale, R & S Northeast, Schnucks, KPH Healthcare, Pharmacy Buying Association, Humana, Drogueria Betances, and Top Rx. *Compare Value Drug*, No. 21-cv-03500, ECF 724-3 at p.409 of 879 (listing class members' damages) *and* ECF 905, ¶ 1 (complaint adding joinder plaintiffs), *with* Ex. 1, Leitzinger Rpt. at Ex. 6.

addition, there were numerous discovery disputes concerning joinder plaintiffs requiring repeated court intervention.[60]

There are at least 30 Class members here that were members of the proposed classes in *Modafinil, AndroGel, Zetia, Lamictal*, and/or *Value Drug* that did not join after class certification was denied in those matters.[61] The facts demonstrate that

---

[60] *Value Drug*, No. 21-cv-03500, ECFs 915 (defendants' motion to compel), 916 (opposition), 917 (recommendation on motion to compel), 919 (order regarding motion to compel), 918 (defendants' motion to compel), 920 (opposition), 924 (recommendation on motion to compel), 927-28 (plaintiffs' objection to recommendation), 929 (opposition), 930 (order regarding motion to compel), 922 (plaintiffs' motion for protective order), 925 (opposition), 926 (recommendation on motion for protective order), 933 (order regarding motion for protective order), 940 (defendants' motion to compel), 942 (opposition), 964 (recommendation on motion to compel), 967 (order on motion to compel), 944 (defendants' motion to compel), 948 (opposition), 947 (scheduling conference on motions to compel), 965 (recommendation on motion to compel), 969 (order on motion to compel).

[61] The 30 are: Atlantic Apothecary, Auburn Pharmaceuticals, Bartell Drug Company, Bloodworth Wholesale, Capital Wholesale, Cigna, Delhaize America, Discount Drug Mart, DMS Pharmaceutical, Drogueria Betances, Drugs Unlimited, Express Scripts, Genetco, Henry Schein, Humana, Kash N Karry Food Stores, Medco, Optum Rx, Pharmacy Buying Association, Prime Therapeutics, QK Healthcare, Quality Care Products, Quest Pharmaceuticals, R & S Northeast, Richie Pharmacal, Schnucks, Thrifty White, Top Rx, Wakefern Food, Walmart. In addition, the court in *In re EpiPen Direct Purchaser Litig.*, denied certification of a proposed class of 66 (or 46) direct purchasers of EpiPens, finding Rule 23(a)(1), (a)(4), and (b)(3) not met; only one former absent class member joined after class certification was denied. *In re EpiPen Direct Purchaser Litig.*, 2024 WL 3256475, at *1-2, *19 (D. Minn. July 1, 2024); *id.*, No. 20-cv-827 at ECF 800 (D. Minn. Feb. 11, 2025) (intervenor complaint). However, *EpiPen* involved a claim that brand company Mylan "paid bribes and kickbacks to a group of pharmacy benefit managers ... to ensure that Mylan could raise the price of EpiPen with impunity" in violation of the Racketeer Influenced and Corrupt Organizations Act and Sherman Act. *EpiPen*, 2024 WL 3256475, at *1. There may be more, as the proposed class lists from

many Class members lack the ability and motivation to litigate via joinder and likely would be effectively and improperly denied recovery if class certification were denied, supporting certification. *Infra* § III.A.1.

## III.   ARGUMENT

DPPs must satisfy the requirements of Rule 23(a) and Rule 23(b)(3).[62] The Court should find each satisfied here, just as courts have repeatedly found in similar cases, including in this Circuit (*supra* n.2 (citing cases)) and just as the Court previously found in certifying the same class (excluding the Retailer Plaintiffs) for settlement, which further supports class certification. *See* ECF 732; *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) ("a district court must first find a class satisfies the requirements of Rule 23, regardless [of] whether it certifies the class for trial or for settlement") (citations omitted).

### A.    DPPs Satisfy the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): Joinder is Impracticable

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable[.]" *Modafinil*, 837 F.3d at 249 (citation omitted). "Impracticable does not mean impossible"—"[n]o minimum number of plaintiffs is required." *Id.*

---

*AndroGel* and *Modafinil* are not public, so we do not know which of the former absent class members that did not sue in those cases are also Class members here.

[62] *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). In addition, to the extent that Class members must be "ascertainable," they are here, as every Class member can and has been identified using computerized sales data.

(citations omitted). Generally, if "the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[63]

In *Allen*, the Third Circuit reiterated that proposed classes of more than 40 members—like the 67-member Class here—"face[] a relaxed burden under [Third Circuit] precedent" and only for classes with fewer than forty members should the "inquiry into impracticability [] be particularly rigorous." 37 F.4th at 896. Consistent with this law, courts have held that proposed classes above 40 satisfy Rule 23(a)(1), without engaging in a detailed analysis of the *Modafinil* factors, including in *Suboxone*, which found that the requirements of Rule 23(a)(1) were met for a similar class of direct pharmaceutical purchasers because "the proposed class is larger than forty, as it includes seventy-one members identified by [defendant's] sales data as direct purchasers." 421 F. Supp. 3d at 47, *aff'd*, 967 F.3d 264 (3d Cir. 2020).[64]

---

[63] *Id.* at 250 (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) for the proposition that "difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable"). *See also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) (similar); *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022) ("We presume joinder is impracticable when the potential number of class members exceeds forty."); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) ("a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'") (citation omitted); *Bing Li v. Aeternal Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) (similar).

[64] *See also, e.g.*, *Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, at *9 (E.D. Pa. May 7, 2019) (classes with 64 and 83 members satisfied numerosity based on the number of class members alone; a 28-member class satisfied numerosity after analysis of the additional *Modafinil* factors); *Generic Pharms.*, 2025 WL 754546, at

The Class here well exceeds 40—there are 67 Class members, as identified in Teva's and Wyeth's sales data (59 excluding Retailer Plaintiffs that have sued individually).[65] Each Class member is a distinct legal entity today, and so counts as a separate Class member for purposes of Rule 23(a)(1), as courts have repeatedly ruled in similar cases, including in this Circuit.[66] The Class size alone is evidence that joinder of all class members would be impracticable and satisfies Rule 23(a)(1) without the need for a rigorous inquiry into the *Modafinil* factors.

Even if the Court were to consider the *Modafinil* factors, the Court should certify the class. In *Modafinil*, the Third Circuit provided a "non-exhaustive list" of factors for district court judges to consider: "judicial economy, the claimants' ability

---

*6 ("DPPs have demonstrated that both classes exceed 40 members, and thus the Court will assess numerosity for both classes under a relaxed burden.").

[65] Ex. 1, Leitzinger Rpt. ¶¶ 34-35 & Exs. 5 & 6. The Retailer Plaintiffs are properly counted because, although "they may well opt out, it is impossible to say for sure at this juncture." Ex. 17, *HIV Antitrust Litig.*, slip op. at 74-75 (counting retailer plaintiffs who filed actions as separate class members). Even if the Retailer Plaintiffs were excluded, the resulting 59-member Class would satisfy Rule 23(a)(1).

[66] *See* Exs. 18-38 (certificates of good standing for Class members that Teva may argue are related corporate entities to other Class members); *Niaspan*, 397 F. Supp. 3d at 677-79 (subsidiaries count as separate class members); *Namenda*, 331 F. Supp. 3d 152, 207 (S.D.N.Y. 2018) ("I join with other courts that have considered this issue and have ruled that where there is distinct and separate injury, a corporate relationship with another class member does not defeat individual member status."); *Celebrex*, 2017 WL 3669604, at *8 ("subsidiaries should be considered as potential class members to vindicate their own antitrust injury"); *Solodyn*, 2017 WL 4621777, at *4 ("The Court rejects Defendants' consolidation of class members based upon corporate structure."); *Loestrin*, 2019 WL 3214257, at *10 (corporate affiliates are separate class members where "separately listed in [defendant's] transactional sales data, and are distinct from their corporate affiliates").

18

and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages"— emphasizing that "both judicial economy and the ability to litigate as joined parties are of primary importance." *Modafinil*, 837 F.3d at 252-53 (citation omitted).

*Judicial economy.* Judicial economy "looks to the administrative burden that multiple or aggregate claims place upon the courts." *Id.* at 254 (citation omitted). Courts should "determine whether a class action would have been a substantially more efficient mechanism of litigating this suit than joinder of *all* parties," which "primarily involves considerations of docket control, taking into account practicalities as simple as that of every attorney making an appearance on the record." *Id.* at 257 (emphasis added). As recognized in *Niaspan*, 397 F. Supp. 3d 668, "the sheer size of the forty-eight member DPP putative class raises a presumption of impracticable joinder and poses a far greater challenge to judicial economy if the case were to proceed through joinder." *Id.* at 679. The same is true of the even-larger 67-member DPP Class here.

Judicial economy favors certification because, if all Class members had filed their own individual cases instead of this case proceeding as a class action, the courts would have been flooded with additional complaints, including by additional counsel, and there would have been additional disputes requiring court intervention,

as demonstrated from the experience from the few cases that have denied class certification in similar cases. *Supra* §II.D.[67] Denial of class certification on the basis of numerosity leads to the filing of multiple complaints (as in *AndroGel* and *Lamictal*), sometimes with new or additional counsel (as in *Zetia*), and the plaintiffs may file in different jurisdictions (as in *AndroGel* and *Lamictal*). Where plaintiffs file in different jurisdictions, there is briefing and argument surrounding motions to transfer. Where plaintiffs litigate the same claims in different jurisdictions, this plainly does not benefit judicial economy. In addition, discovery into new plaintiffs results in myriad discovery disputes and related motion practice.[68] The *Value Drug*,

---

[67] *Modafinil*, 837 F.3d at 257 ("each plaintiff may need to hire his own counsel to protect his individual interests" in a joinder action); *Niaspan*, 397 F. Supp. 3d at 677 ("Judicial economy will be served by allowing this case to proceed as a class action. If this case proceeds through joinder, the Court faces the prospect of individual plaintiffs represented by dozens of different attorneys with the potential for a multitude of summary judgment briefs espousing an array of arguments and additional complications at trial."); *Opana*, 2021 WL 3627733, at *5 ("This case will be a more impractical than average to join[] additional parties, and it will be a particularly efficient use of judicial resources in this litigation to have a single class of direct purchasers represented amongst the other plaintiffs."); *Loestrin*, 2019 WL 3214257, at *10 (judicial economy supports certification); *Nexium*, 296 F.R.D. at 53 (same).

[68] While *Modafinil* suggested that the denial of class certification "does not mean that the litigation would have to begin anew for the unnamed class members ... the District Court could, in its discretion, limit discovery" (837 F.3d at 256), DPPs' evidence shows that district courts have, in fact, been burdened in joinder actions in similar cases with extensive motion practice stemming from defendants' attempts to seek extremely broad discovery from the joinder plaintiffs, and in one case (*Lamictal*), defendants have indicated they may seek to re-open expert discovery into topics that had been previously fully addressed several years prior, when the case was litigated as a putative class action. *See supra* §II.D.

court resolved numerous discovery motions and related objections. *Supra* n.60. In *Zetia*, defendants and the joinder plaintiffs also engaged in additional motion practice over which prior orders and rulings would bind joinder plaintiffs.[69] These discovery disputes consumed significant judicial resources and are evidence that a class action here "would have been a substantially more efficient mechanism of litigating" than "joinder of all parties." *Modafinil*, 837 F.3d F. 3d at 257.

   ***Ability and motivation to litigate as joined plaintiffs.*** "The second purpose behind the numerosity requirement is to further the broader class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims." *Modafinil*, 837 F.3d at 257. The ability and motivation to join factor "primarily involves an examination of the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims." *Id.* The value of absent class members' claims, absent class members' fear of retaliation, and the costs of litigating, including the burden of discovery, are relevant to this inquiry. *Id.* at 257 & n.20. "If joinder would be uneconomical for an individual with a negative value claim (after factoring in the costs of litigation, including hiring counsel and seeking discovery),

---

[69] *Zetia*, No. 18-md-2836, ECFs 1627 at Tr. 10:5-12:13 (7/22/2022 Hrg.), 1657 (notice regarding decided issues and motions), 1669 (reply), 1686 (response), 1693 at 124:21-127:5 (8/17/2022 Hrg.), 1696 (stip.), 1701 (motion), 1730 (Order).

that tends to weigh in favor of certification."[70]

Here, real-world experience following denial of class certification in *Modafinil*, *AndroGel*, *Zetia*, *Lamictal*, and *Value Drug*—involving many of the same class members (direct purchaser pharmaceutical wholesalers), in the same type of litigation (alleging antitrust violations that impaired generic drug competition), against the same type of defendants (pharmaceutical manufacturers, who supply the class members)—is compelling evidence that many or most absent Class members here lack the ability and motivation to join. *Supra* §II.D. In total, 30 Class members here were also absent putative class members in one or more of *Modafinil*, *AndroGel*, *Zetia*, *Lamictal*, and/or *Value Drug* and declined to file suit following denial of class certification—powerful evidence that, if the proposed Class here were not certified, at least 30 Class members (nearly half of the Class) lack the "ability and motivation to litigate as joined plaintiffs." *Id.* In *none* of the prior similar cases where class certification was denied did *all* proposed class members file joinder actions. *Id.*

In addition, many absent Class members here have small claims: 30 have trebled claims worth less than $3.7 million, which was the cost of litigating a similar pharmaceutical antitrust class action, *Nexium*, through trial; 11 have trebled overcharges of under $1 million; and 8 under $500,000. Leitzinger Rpt. ¶ 61 & Ex.

---

[70] *Ortez v. Michael P. Morton, P.A.*, 2019 WL 1417156, at *5 (D. Del. Mar. 29, 2019) (citing *Modafinil*).

13. This further supports certification.[71] That three Class members have large shares of total damages "only heightens the conclusion as to impracticality of joinder given the smaller-size of the other DPPs' claims." *Lidoderm*, 2017 WL 679367, at *14.[72]

While many Class members have small claims, the costs to pursue them are high. As shown by real-world evidence, *see supra* § II.D, defendants pursue extensive discovery of joined plaintiffs. *See Muse v. Holloway Credit Sols., LLC*, 337 F.R.D. 80, 87 (E.D. Pa. 2020) (considering that class members in a joinder action may face "potential hassles, inconveniences, and demands on their time"). The burdens of discovery, especially for smaller absent class members, are particularly high relative to the value of their claims. Two former *Zetia* class members— including one that is an absent Class member here—submitted affidavits in support of class certification there stating that they would "likely not be able to pursue [their] claim" in a joinder action, citing the burden and expense of litigating relatively small claims—and these two former class members in fact did not sue when class certification was denied in *Zetia* and the case proceeded via joinder.[73]

In addition, the Class members' fear of retaliation undermines their

---

[71] *See Generic Pharms.*, 2025 WL 754546, at *6 (crediting similar evidence).

[72] Courts routinely certify classes including the same three class members, *e.g.*, in *Suboxone*, 421 F. Supp. 3d 12, *aff'd*, 967 F.3d 264 (3d Cir. 2020).

[73] *Zetia*, No. 18-md-2836, ECFs 1358, 1360 (affidavits); Ex. 1, Leitzinger Rpt. at Ex. 6 (Pharmacy Buying Association is a Class member). Both were then deposed about their affidavits. *Id.*, ECF 1363 (9/30/2021 hearing) (ordering depositions).

motivation to pursue their claims through joinder and supports certification. Fear of retaliation from defendants (Class members' suppliers) is not merely hypothetical. As the Supreme Court has recognized, "direct purchasers sometimes may refrain from bringing a treble-damages suit for fear of disrupting relations with their suppliers." *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 746 (1977).[74] Multiple drug wholesalers have been terminated by their suppliers after filing suit,[75] and absent class members in *Modafinil* and *Zetia* voiced fears of retaliation. *Supra* § III.D & n.73. In *Zetia*, Pharmacy Buying Association (a Class member here)[76] submitted an affidavit stating it would "likely not be able to pursue [its] claim" in a joinder action, citing, *inter alia*, a risk of retaliation, and as noted above, it did not sue.

In short, the DPPs' evidence establishes that the impracticability requirement of Rule 23(a)(1) is met.

**Geographic dispersion.** The Class members here are dispersed across the

---

[74] *See also Lidoderm*, 2017 WL 679367, at *14 ("smaller [direct purchasers] also may not have the market- power security to challenge defendants [in a joinder action] when they need to negotiate to purchase drugs from these same entities in the future."); *Loestrin*, 2019 WL 3214257, at *10 (class members lack "incentives to bring suit individually against their supplier(s)"); 5 Moore's Fed. Prac. – Civ. (Matthew Bender 3d ed.) §23.22 (noting that "courts will be more likely to find impracticability of joinder if fear or retaliation or prejudice could deter individual class members from bringing suit").

[75] *See, e.g.*, *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725 (3d Cir. 1962) (drug wholesaler terminated after filing antitrust litigation against its drug company supplier); *Rochester Drug Co-Operative, Inc. v. Braintree Lab'ys*, 796 F. Supp. 2d 560, 563-64 (D. Del. 2011) (supplier cut off three small wholesalers who had sued).

[76] Ex. 1, Leitzinger Rpt. at Ex. 6 (listing Pharmacy Buying Association).

country, in Puerto Rico and 24 states, as far away as Washington State and California. Leitzinger Rpt. ¶ 35 & Ex. 7. This weighs in favor of class certification,[77] especially where joinder plaintiffs would be required to travel to appear in person for, for instance, settlement conferences and the final pretrial conference absent permission from the Magistrate Judge.[78] Plus, trial will be in person.

**_Ability to identify future claimants._** This factor either weighs neutrally or supports class certification since the Class is "ascertainable." _See generally In re Niaspan Antitrust Litig._, 67 F.4th 118, 129-30 (3d Cir. 2023); _supra_ n.62.

For these reasons, courts have found in similar cases that similar classes with more than 40 direct pharmaceutical purchasers satisfy Rule 23(a)(1).[79]

Respectfully, _Value Drug_, 2023 WL 2314911, and _In re Lipitor Antitrust_

---

[77] _Generic Pharms._, 2025 WL 754546, at *7 (geographic dispersion supports certification); _Niaspan_, 397 F. Supp. 3d at 678 (same); _K-Dur_, 2008 WL 2699390, at *3 n.4 (numerosity satisfied due to, _inter alia_, geographic dispersion); _TriCor_, 252 F.R.D. at 225 n.26 (similar). _See generally Modafinil_, 837 F.3d at 253 (when determining whether joinder is impracticable, courts should consider, _inter alia_, judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, and the geographic dispersion of class members).

[78] _See_ J. Brendan Day, U.S. Magistrate Judge, Case Management Order (Jan. 2025), available at https://www.njd.uscourts.gov/content/j-brendan-day.

[79] _Generic Pharms._, 2025 WL 754546, at *4 (certifying classes of 69 and 128 members); _Seroquel_, 2024 WL 1183524, at *1 (51); _Niaspan_, 397 F. Supp. 3d at 677-79 (48); _Namenda_, 331 F. Supp. 3d at 221 (62); _Solodyn_, 2017 WL 4621777, at *4 (48); _Lidoderm_, 2017 WL 679367, at *14 (53). Illustrating the significance of whether a class includes more or fewer than 40 members is _HIV Antitrust Litig._, which, citing _Modafinil_, certified classes of 51 and 78 purchasers, while ruling a proposed class with fewer than 40 did not satisfy 23(a)(1). Ex. 17, slip op. at 82-87.

*Litig.*, 2024 WL 2866650 (D.N.J. June 6, 2024) (appeal pending) were wrongly decided. *Value Drug* faulted the plaintiff for not providing "affidavits or declarations from purchasers about lack of motivation to sue or fear of retaliation necessary to back these arguments" (2023 WL 2314911 at *12), but no such affidavits or declarations are required to support certification of above-40 cases, and none was provided in any of the above-40 classes certified after *Modafinil*. *Supra* n.79 (citing cases). Absent Class members who wish to "do nothing," just as the Supreme Court has said they may,[80] need not submit affidavits—and thus open themselves to being deposed by defendants (*see supra* n.73)—to "prove" they wish to do nothing.[81] And the Class here is 25% larger than the proposed class in *Value Drug*, closer to the size of the 71-member *Suboxone* class (certification affirmed by the Third Circuit), and larger than several other certified classes, *e.g.*, *Niaspan*. *Supra* n.79.

---

[80] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course"; absent class members "need not hire counsel or appear").

[81] *Value Drug* also improperly largely disregarded geographic dispersion when assessing the impracticality of joinder. 2023 WL 2314911, at *14. In *Modafinil*, the Third Circuit specifically enumerated geographic dispersion of class members as a factor to assess in determining the impracticality of joinder. 837 F.3d at 259. Further, *Value Drug* found that the plaintiffs' ability to identify all class members favored joinder over class certification. 2023 WL 2314911, at *14. But this finding is contrary to Third Circuit law requiring that members of a class to be ascertainable— that the class members here are ascertainable supports class certification under Third Circuit law, and does not weigh against it (as *Value Drug* wrongly concluded). *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163-165 (3d Cir. 2015) (describing the ascertainability requirement and explaining that "[t]he separate ascertainability requirement ensures that class members can be identified after certification").

*Lipitor* too was wrongly decided—and is on appeal in the Third Circuit—including because it was an improper advisory opinion issued after the court already had granted summary judgment to the defendant and was inconsistent with the *Lipitor* court's own prior order certifying the same class for settlement purposes.[82]

In short, real-world evidence demonstrates with "facts on the grounds" that "joinder of all Class members is impracticable," and would leave their injuries entirely unredressed while allowing defendants to escape liability for those same injuries. This would undermine the important role of private enforcement of federal antitrust law. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972) ("Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions [enforcing antitrust laws] by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.").

Finally, the Court's prior certification of the Class of direct Effexor XR purchasers for settlement (defined the same way as the Class DPPs seek to certify now except that the Retailer Plaintiffs were excluded by definition from the settlement class, ECF 732 ¶ 3) further supports certification. The 23(a)(1) analysis is the same for settlement and litigation classes.[83] There is no basis for the Court to

---

[82] *Compare In re Lipitor Antitrust Litig.*, 12-cv-2389, ECF 1374 (D.N.J. Mar. 8, 2024), *with Lipitor*, 2024 WL 2866650.

[83] *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (holding that settlement classes must meet Rule 23 requirements, other than manageability under

render a ruling inconsistent with the prior settlement class certification order.

### 2.    Rule 23(a)(2): There Are Many Common Questions

Rule 23(a)(2) is met if the named plaintiffs share at least one question of fact or law with the Class.[84] The claims "must depend upon a common contention ... of such a nature that it is capable of classwide resolution" and have the capacity to "generate common answers apt to drive the resolution of the litigation."[85] "In the antitrust context 'courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite.'"[86]

Here, commonality is "easily met."[87] As in dozens of prior similar cases, DPPs allege injury due to the same misconduct that impaired generic competition.[88] There are numerous common issues here (*see supra*), easily satisfying Rule 23(a)(2).

### 3.    Rule 23(a)(3): Plaintiffs' Claims are Typical of the Class

The claims or defenses of the named plaintiffs must be typical of the class.

---

Rule 23(b)(3)(D), because "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context").

[84] *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 844 (D.N.J. 2015).

[85] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).

[86] *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting *Newberg on Class Actions* § 3.10 (4th ed. 2002)).

[87] *Bing Li*, 324 F.R.D. at 339; *Neurontin*, 2011 WL 286118, at *3 (similar).

[88] *E.g.*, *Suboxone*, 421 F. Supp. 3d at 64-65 (commonality met); *Niaspan*, 397 F. Supp. 3d at 679 (same); *Wellbutrin XL*, 2011 WL 3563385, at *4 (same); *K-Dur*, 2008 WL 2699390, at *4-5 (same). *See also supra* n.2 (citing cases).

The Third Circuit has a "low threshold" for satisfying typicality.[89] "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."[90] As in prior similar cases, typicality is met here because DPPs assert that Teva's conduct impaired generic competition marketwide, and the overcharges DPPs seek for themselves and the Class are based on the same factual allegations and legal theories.[91]

### 4. Rule 23(a)(4): DPPs and Class Counsel Are Adequate

Rule 23(a)(4) requires that "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."[92] Here, both criteria are met. Class Counsel have litigated this case vigorously and effectively,

---

[89] *E.g.*, *Niaspan*, 397 F. Supp. 3d at 680; *Chimenti v. Wetzel*, 2018 WL 2388665, at *6 (E.D. Pa. May 24, 2018).

[90] *Chimenti*, 2018 WL 2388665, at *6 (citation omitted). *See Castro*, 134 F. Supp. 3d at 844 (claims typical if they "arise from the same alleged wrongful conduct and are based upon 'the same general legal theories'") (citation omitted).

[91] *See Suboxone*, 421 F. Supp. 3d at 49 (typicality generally satisfied where defendants engaged in a common scheme relative to all class members); *Loestrin*, 2019 WL 3214257, at *11 (typicality satisfied because "members' claims plainly stem from a unitary course of conduct" in delayed generic antitrust case); *Celebrex*, 2017 WL 3669604, at *11; *Neurontin*, 2011 WL 286118, at *4; *K-Dur*, 2008 WL 2699390, at *6; *TriCor*, 252 F.R.D. at 226; *Wellbutrin SR*, 2008 WL 1946848, at *3.

[92] *Suboxone*, 967 F.3d at 272 (the adequacy analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent") (rejecting defendant's challenge to class representatives' adequacy); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (similar).

including through appeal to the Third Circuit, and are well-qualified and
experienced, as the Court found in appointing them Lead Class Counsel for the
Settlement Class. ECF 732 ¶ 10 (Class Counsel satisfied Rule 23(g)(1)(A)).[93] The
named Plaintiffs are also adequate; they have litigated this case vigorously on behalf
of the Class, and have been found adequate in similar cases.[94] The Court should enter
the accompanying proposed order appointing Co-Lead Counsel and Liaison Counsel
for the Class, and appointing DPPs representatives of the Class.

DPPs' interests are aligned with, and not in conflict with, the absent Class
members'—all share a common interest in proving Teva's antitrust violation and in

---

[93] Counsel has extensive experience in cases like this challenging restraints of
generic drug competition. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*,
No. 16-md-2724 (E.D. Pa.) (NastLaw LLC (lead class counsel); Berger Montague
PC (executive committee); Hagens Berman Sobol Shapiro LLP (executive
committee); Faruqi & Faruqi, LLC, Taus, Cebulash & Landau LLP, Barrett Law
Group, P.A. (counsel)); *In re Niaspan Antitrust Litig.*, No. 2:13-md-02460 (E.D. Pa.)
(Berger Montague (co-lead class counsel), Hagens Berman Sobol Shapiro (co-lead
class counsel); Faruqi & Faruqi, Taus, Cebulash & Landau (counsel)); *In re
Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.) (Hagens Berman Sobol
Shapiro (co-lead class counsel); Faruqi & Faruqi (co-lead class counsel); Berger
Montague, Taus, Cebulash & Landau, NastLaw (counsel)); *In re Suboxone Antitrust
Litig.*, No. 13-md-2445 (E.D. Pa.) (Hagens Berman Sobol Shapiro (co-lead class
counsel); Faruqi & Faruqi (co-lead class counsel); Berger Montague, Taus, Cebulash
& Landau (counsel)); *see also* ECF 740-2 ¶ 93 (Pearlman Decl.) (Class Counsel have
decades of relevant experience); *id.* ¶¶ 1-92 (describing Class Counsel's work).

[94] *E.g.*, *Niaspan*, 397 F. Supp. 3d at 680-81 (Rochester Drug Co-Operative
adequate); *Generic Pharms.*, 2025 WL 754546, at *10 (same); *Lidoderm*, 2017 WL
679367, at *2 n.5, *15 (same); *Wellbutrin SR*, 2008 WL 1946848, at *3-4 (Stephen
L. LaFrance Holdings); *In re Prograf Antitrust Litig.*, 2013 WL 2395083, at *2 (D.
Mass. Apr. 23, 2013) (Stephen L. LaFrance Holdings and Uniondale Chemists).

recovering overcharge damages. "Only 'fundamental' conflicts 'will defeat the adequacy requirement.'"[95] There are no conflicts here, much less "fundamental" conflicts defeating certification.[96] And the Third Circuit has twice rebuffed adequacy challenges in similar direct purchaser antitrust cases.[97]

### B.    DPPs Satisfy Rule 23(b)(3)'s Predominance Requirement

Predominance is "readily met" in antitrust cases like this one.[98] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t]

---

[95] *Suboxone*, 967 F.3d at 272 (citation omitted).

[96] The named plaintiffs are representative of the Class even though the named plaintiffs are wholesalers and some absent Class members are pharmacies or generic-only purchasers because this distinction is irrelevant to class certification, as courts have repeatedly found. *E.g.*, *Opana*, 2021 WL 3627733, at *5 (certifying class that includes "generic-only" purchasers); *Glumetza*, 336 F.R.D. at 482 (same); *In re Intuniv Antitrust Litig.*, 2019 WL 4645502, at *3, *9-10 (D. Mass. Sept. 24, 2019) (same); *Niaspan*, 397 F. Supp. 3d at 685 (same); *Loestrin*, 2019 WL 3214257, at *3, *14 (same); *Namenda*, 331 F. Supp. 3d at 215-16 (same); *Solodyn*, 2017 WL 4621777, at *7-8 (same); *Lidoderm*, 2017 WL 679367, at *9-10 (same) (rejecting that "a class cannot be certified covering all the types of DPPs given their various market positions"; and certifying a class of "national wholesalers, regional wholesalers, mail order wholesalers, hospitals, and retail pharmacies" that included "generic-only" purchasers); *In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 57-60 (S.D.N.Y. 2002) (certifying class of national and regional wholesalers certified despite differences in size); *Castro*, 134 F. Supp. 3d at 845 ("wholesalers, distributors, hospitals, clinics, retailers"); *Tricor*, 252 F.R.D. at 224-25 (similar).

[97] *Suboxone*, 967 F.3d at 273 ("each conflict that [the defendant] identifies is speculative or without basis."); *K-Dur*, 686 F.3d at 223 (Rule 23(a)(4) met).

[98] *See, e.g.*, *Amchem*, 521 U.S. at 625. *See also Castro*, 134 F. Supp. 3d at 845 ("Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members.") (citation omitted); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement").

of [its] claim [is] susceptible to classwide proof.' Rather the rule requires that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013) (citing Fed. R. Civ. P. 23(b)(3)) (alterations and emphasis in original). Rule 23(b)(3) requires that "*questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 459 (emphasis in original). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* at 460 (citation omitted). Predominance is met when common issues predominate, even if there are individualized questions.[99]

Here, the evidence at trial will consist mostly or exclusively of evidence common to the Class as a whole, including testimony and documents from Wyeth's and Teva's employees and files and expert testimony based on common evidence,

---

[99] *See*, *e.g.*, *Halliburton Co. v. Erica P. John Fund*, *Inc.*, 573 U.S. 258, 276 (2014) (even if there are "individualized questions of reliance in the case, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate") (citation omitted); *Tyson Foods*, *Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'") (citation omitted); *Reyes*, 802 F.3d at 489 ("Rule 23 does not require ... the elimination of all individual circumstances."); *TriCor*, 252 F.R.D. at 227 ("[T]he existence of an individual inquiry does not preclude class certification, especially where all members face the necessity of proving the same fraudulent scheme.").

so Rule 23(b)(3) is met. *See* Proposed Trial Plan (filed herewith).

### 1. Common Issues Predominate With Respect to Teva's Violation of the Antitrust Laws

DPPs allege that Teva violated Section 1 of the Sherman Act. 2d Am. Compl. ¶¶ 421-427. The elements of a Section 1 claim are "(1) concerted actions; '(2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that [plaintiffs were] injured as a proximate result of the concerted action.'"[100]

If litigating separately, each Class member would have to prove, *e.g.*, the same anticompetitive conduct of Teva, using the same documents and witnesses. Indeed, DPPs' experts all use common evidence to opine on, *inter alia*, when Teva would have been permitted to launch under an agreement with Wyeth that did not include unlawful reverse payments; Teva's ability to launch generic Effexor XR earlier; and Wyeth's plans and incentive to launch AG Effexor XR.[101] Predominance is therefore satisfied on the issue of antitrust violation alone.[102]

---

[100] *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438 (E.D. Pa. 2018) (quoting *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005)).

[101] *See* Exs. 1-6 (Leitzinger Rpt.; McGuire Rpt.; Rivera-Muzzio Rpt.; Allen Rpt.; Hrubiec Rpt.; Lin Rpt.).

[102] *See TriCor*, 252 F.R.D. at 228 ("each putative class member, had they pursued their claims individually, would have been required to prove identical facts, such as defendants' monopoly power, exclusionary scheme, effect on interstate commerce, conspiracy, and unreasonable restraint of trade. Therefore, these common issues predominate"); *SmithKline*, 274 F.R.D. at 135 (predominance met because defendants' "actions did not vary with respect to individual direct purchasers, aside

## 2.    Common Issues Predominate With Respect to Injury

Antitrust injury, or impact, requires showing "some damage" due to the antitrust violation.[103] Plaintiffs "need not prove antitrust injury at this stage, but rather it suffices if they show only that injury is *capable of common proof at trial*."[104] The question is whether DPPs' evidence "could establish" classwide injury, not whether DPPs "will" or "did" already prove classwide injury.[105] Class certification is proper even if the class includes some uninjured members.[106]

DPPs allege that the Agreement unlawfully delayed the market entry of generic Effexor XR (both Teva's generic and the AG), causing all or nearly all Class members to suffer overcharges, a classic form of antitrust injury.[107] DPPs offer

---

from the price charged. …The evidence thus should be identical for all 33 members of the Proposed Class."); *K-Dur*, 2008 WL 2699390, at *12 ("Courts routinely find that proof of a violation of the antitrust law focuses on the defendants' conduct and not on the conduct of individual class members.") (citations omitted).

[103] *Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 114 n.9 (1969). *See also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 325 (3d Cir. 2008); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 151 (3d Cir. 2002).

[104] *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) (emphasis added) (citing *Hydrogen Peroxide*, 552 F.3d at 311-12 ("[T]he task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members.") (emphasis added)). *See K-Dur*, 686 F.3d at 222 ("[F]or certification[,] plaintiff need not prove antitrust injury actually occurred.").

[105] *Lamictal*, 957 F.3d at 192 ("could establish," not "will" or "did" establish).

[106] *K-Dur*, 686 F.3d at 221-22 (certification appropriate even if some class members might have "zero or negative damages"); *Linerboard*, 305 F.3d at 158 (affirming certification despite "limited exceptions" of uninjured class members); *Castro*, 134 F. Supp. 3d at 847 (similar).

[107] *E.g.*, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968)

34

expert testimony from economist Dr. Jeffrey J. Leitzinger, who has vast experience in antitrust class action cases, including in similar cases. Leitzinger Rpt. ¶ 3 & n.2.

DPPs will prove Class-wide injury here using three forms of common evidence: (1) extensive research showing that generics quickly capture brand sales and at lower prices, and that generic prices drop with more generics competing on the market;[108] (2) Wyeth's, Teva's, and non-party generic companies' forecasts showing they expected this same pattern with generic Effexor XR;[109] and ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████  *Id.* ¶¶ 8.b, 14-17,

20-21, 25-27, 29-30, 36-42. Significantly, as noted above, *all* Class members paid

---

("[W]hen a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage"); *K-Dur*, 686 F.3d at 221.

[108] For example, a 2010 FTC study found that, one year following generic entry, generics typically captured 90% of sales; a 2019 FDA study found that generic prices declined by an additional 50% with three generics on the market as compared to just one. Ex. 1, Leitzinger Rpt. ¶¶ 13-15, 30 (citing literature).

[109] ████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
██████████████████████████████████

lower prices for the generic than the brand, and *all* paid lower generic prices with several generics on the market as compared to just one. *Id.* ¶¶ 20-21 & Ex. 3. Class members were injured on brand Effexor XR purchases because, with earlier generic competition starting in May 2009 (or at other alternative entry dates), they would have converted some of their brand purchases to the lower-priced generic; Class members were injured on their generic purchases because, absent Wyeth's promise to Teva not to launch an AG, Class members would have paid lower generic prices because an AG would have launched at the same time as Teva, driving down the generic price Class members paid as compared to the generic prices they paid during the period while Teva sold as the only generic on the market. *Id.* ¶ 37; *supra* §II.C.[110]

These are the same types of common evidence found sufficient in numerous similar cases, including on appeal in the Third Circuit in *K-Dur*, 686 F.3d 197 and *Modafinil*, 837 F.3d 238, and in similar cases involving classes comprised of direct purchasers of the brand pharmaceuticals and/or its generic equivalent.[111]

---

[110] The Class period starts June 2008 but, if the Class period were to instead start on May 15, 2009, the Class membership would not change because all Class members had direct purchases after May 15, 2009. Ex. 1, Leitzinger Rpt. ¶ 42 n.58.

[111] *K-Dur*, 2008 WL 2699390, at *14-19 (government and academic studies, defendants' forecasts and projections, and sales data showing the effect of generic entry on pricing sufficient forms of common evidence to satisfy predominance); *King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 209-12 (E.D. Pa. 2015) (similar), *Rule 23(b)(3) holding aff'd sub nom. Modafinil*, 837 F.3d at 260-66; *Niaspan*, 397 F. Supp. 3d at 685-88 (similar) (collecting cases). *See also Opana*, 2021 WL 3627733, at *5 (similar; class of brand and generic Opana purchasers);

*Lamictal*, 957 F.3d 184—the only delayed generic entry direct purchaser case finding common issues do *not* predominate with respect to Class-wide injury—is inapposite. Defendants in *Lamictal* presented a unique factual argument that the brand agreed to not launch an AG and instead lowered its brand price upon generic entry; and in response the generic allegedly lowered its price down to a level it would have charged had it faced AG competition, which if proven, would leave a large number of class members allegedly uninjured.[112] There is no such issue here or in the other similar cases that have been certified.[113] Moreover, before and after *Lamictal*, the Third Circuit has repeatedly affirmed district courts' findings that classes satisfy 23(b)(3) based on the same forms of proof DPPs rely on here.[114]

### 3.    Common Issues Predominate With Respect to Damages

Dr. Leitzinger reliably calculated overcharges with common evidence and methodology. Leitzinger Rpt. ¶¶ 8.c, 8.d, 43-55. A "defendant whose wrongful

---

*Glumetza*, 336 F.R.D. at 476-79 (similar); *Loestrin*, 2019 WL 3214257, at *13-14 (similar); *Namenda*, 331 F. Supp. 3d at 215-17 (similar); *Solodyn*, 2017 WL 4621777, at *7-8 (similar); *Lidoderm*, 2017 WL 679367, at *9-10 (similar); *Wellbutrin XL*, 2011 WL 3563385, at *12 (similar).

[112] *See id.* at 189, 193; *In re Lamictal Direct Purchaser Antitrust Litig.*, 2021 WL 2349828, at *7 (D.N.J. June 7, 2021) (on remand).

[113] *See, e.g.*, *Glumetza*, 336 F.R.D. at 478-79 (*Lamictal*'s "unique pricing facts" "do not apply here."); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 3704727, at *3 (E.D. Va. Aug. 20, 2021) (explaining that *Lamictal* "involved evidence of 'nuances' in that particular market" and concluding that "Defendants do not attempt to analogize the salient facts at issue in *Lamictal*, and therefore fail to provide persuasive evidence that the use of averages is inappropriate here.").

[114] *Suboxone*, 967 F.3d at 272; *Modafinil*, 837 F.3d at 266, *K-Dur*, 686 F.3d at 222.

conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."[115] "Calculations need not be exact," though "any model supporting a plaintiff's damages case must be consistent with its liability case[.]"[116]

The Third Circuit in *Lamictal* explained that courts "apply a more lenient predominance standard for damages" and that "damages need not be susceptible of measurement across the entire class for purposes of Rule 23(b)(3)[.]"[117] More recently, in *Suboxone*, the Third Circuit reaffirmed that predominance is readily satisfied as to damages where, as here, aggregate Class damages can and have been reliably measured using Class-wide evidence.[118] Even before *Suboxone*, courts in similar cases uniformly found that common issues predominate with respect to damages and rejected defendants' arguments that individual damage questions and pricing variation, rebates, and damage amounts preclude certification.[119] Common

---

[115] *Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927). *See also Niaspan*, 397 F. Supp. 3d at 682 ("imperfect damages calculations are more often forgiven in the antitrust context") (citations omitted). Damages may be estimated from available evidence. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

[116] *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citations marks omitted).

[117] *Lamictal*, 957 F.3d at 195 (quotation and citations omitted).

[118] *Suboxone*, 967 F.3d at 272.

[119] *See supra* n.2 (citing cases). *See also, e.g.*, *Suboxone*, 967 F.3d at 272 ("Individualized determinations, however, are of no consequence in determining

38

issues predominate as to damages here as well.

Individualized damages and allocation issues do not preclude certification.[120] Once a jury determines aggregate Class damages, allocation is of no concern to Teva and may be done with, *e.g.*, a special master or *pro rata* distribution, as the Third Circuit found acceptable in *Suboxone* and as was used, with Court approval, to distribute the Wyeth settlement to Class members earlier in this case.[121] Disputes

---

whether there are common questions concerning liability."); *K-Dur*, 686 F.3d at 221-22 (certification affirmed despite pricing variation among class members); *Niaspan*, 397 F. Supp. 3d at 688 ("[I]ndividualized rebuttal does not cause individual questions to predominate.") (citation omitted); *Neurontin*, 2011 WL 286118, at *9 n.24 ("Any arguments regarding the variable rates at which Class Members substituted generic ... for [brand] relate to the quantum of injury, rather than the fact of injury, and therefore do not defeat predominance with respect to the impact element."); *Wellbutrin XL*, 2011 WL 3563385, at *12-14 (similar); *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 206 (E.D. Pa. 2016) (rejecting arguments "premised on the notion that variation of damages between and among class members defeats predominance. … The determination of the aggregate classwide damages is something that can be handled most efficiently as a class action, and the allocation of that total sum among the class members can be managed individually") (citations omitted), *recon. denied*, 2017 WL 696983 (E.D. Pa. Feb. 22, 2017); *Lidoderm*, 2017 WL 679367, at *11 (variation in direct purchasers' prices and damages amounts no bar to certification); *Tricor*, 252 F.R.D. at 231 (approving aggregate damages analysis); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 318-19 (E.D. Mich. 2001) (similar); *Nexium*, 296 F.R.D. at 57-58 (similar); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 370-71 (D.D.C. 2007) (similar).

[120] *Suboxone*, 967 F.3d at 271-72 & n.12; 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1781 (3d ed. 2025) ("[I]t uniformly has been held that differences among the members as to the amount of damages incurred does not mean that a class action would be inappropriate.").

[121] *E.g.*, *Tyson Foods*, 577 U.S. at 461 (allocation issues premature at class certification and insufficient to challenge predominance; "a challenge to the proposed method of allocation" is properly raised at the time of "disbursal of the

about inputs to damages calculations also do not preclude certification.[122]

## C.    DPPs Satisfy Rule 23(b)(3)'s Superiority Requirement

The superiority requirement of Rule 23(b)(3) ensures that a class action will "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted). This case concerns overwhelmingly common issues and evidence. Certification avoids congesting the courts with multiple suits, prevents inconsistent results, and allows Class members with smaller claims an opportunity for redress many will otherwise be denied. *See supra* § III.A.1. Courts in similar cases have uniformly found that a class action is the superior method of adjudication (*supra* n.2 (citing cases)) and the Court should so find here, as well.

## IV.    CONCLUSION

DPPs respectfully request that the Court certify the Class.

---

award"); *Suboxone*, 967 F.3d at 271 ("Antitrust plaintiffs may satisfy the predominance requirement by using a model that estimates the damages attributable to the antitrust injury, even if more individualized determinations are needed later to allocate damages among class members."); ECF 729-3 (describing *pro rata* Plan of Allocation); ECF 746 ¶ 9 (approving Plan of Allocation). Here, just as in *Suboxone*, DPPs have "proposed a trial plan for the pro rata allocation of Purchasers' damages." 967 F.3d at 272 n.13; Proposed Trial Plan (filed herewith), § V.

[122] *Suboxone*, 421 F. Supp. 3d at 44 (expert's "lack of accounting for generic bypass has no impact on either the admissibility of his report under *Daubert* or on whether damages can be proven with evidence common to the class"); *Wellbutrin XL*, 2011 WL 3563385, at *16 ("the Court need not resolve whether the effects of generic bypass must be deducted from damages" at class certification).

Dated: May 22, 2025                    Respectfully submitted,

                                       */s/ Matthew F. Gately*
                                       **COHN LIFLAND PEARLMAN**
                                       **HERRMAN & KNOPF LLP**
                                       Matthew F. Gately
                                       Park 80 West, Plaza One
                                       250 Pehle Avenue, Suite 401
                                       Saddle Brook, NJ 07663
                                       mfg@njlawfirm.com

*Liaison Counsel for the Direct Purchaser Class Plaintiffs*

**HAGENS BERMAN SOBOL**              **BERGER MONTAGUE PC**
**SHAPIRO LLP**                      David F. Sorensen
Thomas M. Sobol                      Caitlin G. Coslett
Gregory T. Arnold                    1818 Market Street, Suite 3600
One Faneuil Hall, Square, 5th Floor  Philadelphia, PA 19103
Boston, MA 02109                     dsorensen@bm.net
tom@hbsslaw.com                      ccoslett@bm.net
grega@hbsslaw.com

**FARUQI & FARUQI LLP**              **TAUS, CEBULASH & LANDAU, LLP**
Peter Kohn                           Barry S. Taus
One Penn Center, Suite 1550          123 William Street, Suite 1900A
1617 John F. Kennedy Boulevard       New York, NY 10038
Philadelphia, PA 19103               btaus@tcllaw.com
pkohn@faruqilaw.com

**NASTLAW LLC**                      **BARRETT LAW GROUP, P.A.**
Dianne M. Nast                       Don Barrett
1101 Market Street, Suite 2801       404 Court Square
Philadelphia, PA 19107               P.O. Box 927
dnast@nastlaw.com                    Lexington, MS 39095
                                     donbarrettpa@gmail.com

*Interim Executive Committee for the Direct Purchaser Class Plaintiffs*