KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Devora W. Allon, P.C.
To Call Writer Directly:
+1 212 446 5967
devora.allon@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

November 11, 2026

The Honorable Zahid N. Quraishi
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 4W
Trenton, NJ 08608

Re: *In re Effexor XR Antitrust Litigation*, No. 3:11-cv-05479 (ZNQ/JBD)

Dear Judge Quraishi:

Teva submits this response to the letter filed by the Retailer Plaintiffs on November 5, 2026. Dkt. 873. The Direct Purchaser Plaintiffs ("DPPs") and Teva agree that the Court should wait to resolve DPPs' pending class certification motion until after the Third Circuit issues a decision in the pending *Generics* Rule 23(f) appeal. *See* Dkt. 870; Dkt. 871. The Retailers do not disagree with that position, but they suggest the Court should revise the operative case schedule, Dkt. 764, and direct the parties to proceed to dispositive motion practice while the Court awaits guidance from the Third Circuit on class certification. Respectfully, Teva disagrees. For several reasons, the Retailers' proposal would be inefficient for the parties and the Court.

First, if the Court were to deny class certification, individual direct purchasers would have the right to intervene in the litigation as parties. They would have the right to retain their own counsel, and to conduct their own fact and/or expert discovery, and Teva would have the right to seek discovery from them. *See* 7C Wright & Miller, *Fed. Prac. & Proc. Civ.* §1920 (3d ed.) (noting that while the intervenor "must join subject to the proceedings that have occurred prior to his intervention," "the intervenor is entitled to litigate fully on the merits once intervention has been granted"). The Court, "in its discretion," would be able to "limit discovery," and Teva certainly would not seek discovery that would be "unreasonably cumulative or duplicative," *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 256 (3d Cir. 2016)—although Teva cannot predict whether any intervenors would seek to retain their own experts or to conduct any offensive fact discovery of their own. But until class certification is decided and the plaintiffs' identities are known, the parties cannot know for sure if the discovery record is complete. It would not be prudent to go forward with dispositive motion practice under these circumstances, which could require multiple rounds of briefing on different timelines, potentially wasting the parties' and the Court's resources.

Second, because the substance of the DPPs' claims and the Retailers' claims is the same, the rule against one-way intervention would prevent the Court from deciding any dispositive motions until class certification is resolved and the time for intervention, if any, has passed. *See,*

*e.g.*, *Koehler v. USAA Cas. Ins. Co.*, 2019 WL 4447623, at *5 (E.D. Pa. Sept. 17, 2019) ("In light of the above history of Rule 23(c)(1)(A), and the rule against one-way intervention it embodies, it would be inappropriate to decide Plaintiff's motion for partial summary judgment—over Defendant's objection—before deciding whether to certify a class."). DPPs and Retailers are pursuing the same liability theories, supported by the same factual record, with almost all of the same joint experts. DPPs and Retailers will be subject to the same summary judgment and *Daubert* arguments: for example, arguments that challenge whether there is a reasonable dispute that the Teva-Wyeth settlement agreement caused any delay in generic entry (an issue on which the Third Circuit recently affirmed the grant of summary judgment to defendants in a similar reverse-payment case, *see In re Lipitor Antitrust Litig.*, No. 24-2184, 2026 WL 2640714, at *4-6 (3d Cir. Sept. 8, 2026)); whether there is a reasonable dispute that the Teva-Wyeth settlement agreement contained any large and unjustified reverse payments; whether plaintiffs have any viable damages models; and whether plaintiffs' expert opinions are admissible. Given this degree of overlap, it would not make sense for dispositive motion practice to proceed on separate tracks. Doing so would be wasteful for the parties and the Court, and prejudicial to Teva.

These considerations explain why the Court was correct to order dispositive motion practice to follow a decision on class certification. Dkt. 764, at 2. Notably, the Retailers do not argue that they would suffer any prejudice from adhering to the existing case schedule. Nor do they argue that an amendment to the scheduling order would be justified under the "good cause" standard of Rule 16(b). *See* Fed. R. Civ. P. 16(b)(4). And the Retailers' letter does not acknowledge that the arguments they are making now are the same arguments they advanced previously, which the Court rejected. *See* Dkt. 759 at 2 ("Making class certification a threshold issue would unfairly force Retailer Plaintiffs to sit on the sidelines during class certification, further delaying resolution of their claims.").

We thank the Court for its attention to this matter.

Sincerely,

s/ *Devora W. Allon, P.C.*

Devora W. Allon, P.C.

cc: Counsel of Record (via ECF)